# EXHIBIT 1



**COLORADO PARKS & WILDLIFE**
# CASE REPORT

**Citation Number:**  F253105

**Defendant:**

| First | MI | Last | DOB | CID # |
|---|---|---|---|---|
| PATRICK | S | MONTGOMERY | ▇▇▇ | ▇▇▇ |

**Additional Parties:**   No

**Evidence Seized:**

| Seizure Tag # | Description/Location of Evidence |
|---|---|
| 84919 | One Bobcat Hide/Woodhouse SWA Evidence Freezer |
| 62732 | Voice recording of officers and MONTGOMERY from 01/25/21/CD in Case File |
| 62733 | Voice recording of officer and MONTGOMERY from 02/01/21/CD in Case File |
| 62734 | Voice recording of officers and MONTGOMERY from 01/25/21/CD in Case File |
| 62735 | Photo log/CD in Case File |

**Additional Officer(s):**

| First | Last | Badge | Agency |
|---|---|---|---|
| ▇▇▇ | ▇▇▇ | ▇▇▇ | Colorado Parks and Wildlife |
| ▇▇▇ | ▇▇▇ | ▇▇▇ | Colorado Parks and Wildlife |

**Narrative:**
**Summary:**

On January 25, 2021, PATRICK S. MONTGOMERY (DOB: ▇▇▇) contacted Colorado Parks and Wildlife (CPW) Officer ▇▇▇ K▇▇▇ to have a bobcat sealed. MONTGOMERY met Officer K▇▇▇ at the CPW Littleton Office located at 13787 US Highway 85 in Douglas County, Colorado. During the contact, MONTGOMERY admitted to Officer K▇▇▇ that he and his dogs pursued the bobcat for approximately 11 miles and his dogs killed the bobcat. Under CPW's hunting regulations, dogs are not a lawful manner of take for furbearers, which include bobcats. MONTGOMERY was issued a citation for

**Details:**

On January 25, 2021 at approximately 12:54pm, Colorado Parks and Wildlife (CPW) Officer ▇▇▇ K▇▇▇ was contacted through a text message by PATRICK S. MONTGOMERY (DOB: ▇▇▇). MONTGOMERY requested to have a bobcat sealed, as required through CPW Regulation 2 CCR 406-3-324.B.2a whereas all bobcats, or their pelts, must be personally presented by the licensee for inspection and must be sealed within 30 days of take, or within 5 days after the close of the season. Officer K▇▇▇ agreed to meet MONTGOMERY at the Littleton CPW Office located at 13787 US Highway 85 in Douglas County, Colorado.

After arranging to meet MONTGOMERY at 3:00pm at the Littleton CPW Office, Officer K▇▇▇ had a phone discussion with Colorado Wildlife Officer ▇▇▇ W▇▇▇, who informed Officer K▇▇▇ he had heard through a third party person that MONTGOMERY's dogs had killed the bobcat after Montgomery knocked it out of the tree with a slingshot. Per CPW Regulation 2 CCR-406-3-300.B, bobcats are defined as "furbearers" in the State of Colorado. Additionally, CPW Regulation 2 CCR 406-3-303.E identifies that neither the use of a slingshot nor allowing dogs to kill a bobcat or other furbearer are legal manners of take. Officer W▇▇▇

said the third party person had received the information from a resident that lived that near the Pike National Forest, where MONTGOMERY killed the bobcat. The resident was identified ▇▇▇▇, who lived at ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Officer K▇▇ and Colorado Wildlife Officer ▇▇ D▇▇ met MONTGOMERY at the Littleton Office on January 25, 2021. At approximately 3:00PM, MONTGOMERY pulled into the CPW Office parking lot in a white SUV. Upon approaching the officers, MONTGOMERY identified the bobcat as a little female and mentioned getting her mounted. MONTGOMERY presented a single small bobcat hide which was split down the back. The rest of the bobcat carcass was not present. MONTGOMERY said he got the bobcat near Bennett Mountain, which is on Russell Ridge in the Pike National Forest in Douglas County.

MONTGOMERY presented a valid small game license (indicated on his primary hunting license). MONTGOMERY said he hunted for the bobcat for one day without setting traps. During the course of the interview MONTGOMERY also stated:

- "We actually ran that bobcat, trailed that bobcat for 11 miles."
- He hunted this particular bobcat for one day, but stated it took 5 hours to catch her.
- Her tracks went from Bennett Mountain into Waterton Canyon, hooked around and followed Highway 67, back up Pine Creek and then turned.
- He walked close to 8 miles and ended up catching her about a quarter mile from where he started.
- Once the dogs "jumped" her it was probably only about a mile that she ran.
- He got the bobcat about 200 yards to the south side of Bennett Mountain.

Officer K▇▇ began entering required information into the CPW database for the mandatory check on the bobcat in which lawfully harvested bobcats receive a numbered seal required for possession. Officer K▇▇ asked MONTGOMERY which manner of take he used to harvest the bobcat and MONTGOMERY stated "that one, actually the dogs killed." MONTGOMERY also stated, "It jumped out of the tree and the dogs killed it. So, I don't know what I'm supposed to do about that."

Officer K▇▇ explained to MONTGOMERY that allowing dogs to kill a bobcat was not a legal manner of take for hunting a bobcat (or any furbearer) and that a hunter had to kill the bobcat his or herself with a legal manner of take. MONTGOMERY responded that he killed it and took back his original statement. MONTGOMERTY stated the dogs caught the cat on the ground and they were fighting and killing it, and claimed he disposed of the cat by dropping his knee on the ribcage. Officer K▇▇ informed MONTGOMERY that dropping a knee on the ribcage of the bobcat was still not a legal manner of take for the bobcat. MONTGOMERY stated "I don't know exactly what it is I'm supposed to do about it when the dogs catch it." MONTGOMERY argued with the officers about wildlife he believed were frequently killed in a similar manner.

Officer K▇▇ informed MONTGOMERY she would be retaining the hide since it was not lawfully taken. Officer K▇▇ attempted to explain the sealing process with respect to hunting and MONTGOMERY stated, "I was hunting." MONTGOMERY asked what he was supposed to do when four of his dogs catch a bobcat on the ground and the cat ends up dead. Officer K▇▇ continued to explain that the bobcat was not taken in a legal hunting manner per CPW regulations. MONTGOMERY stated, "Okay well then, take the bobcat, I'll get my lawyer, we'll press charges against the State of Colorado for taking my income."

MONTGOMERY stated his dogs caught the bobcat on the ground and he does not have any control over that. Officer D▇▇ explained to MONTGOMERY that the appropriate response in this situation would be to pull the dogs off and if it does end up dead to call CPW. Officer D▇▇ told MONTGOMERY "I mean, mistakes happen," and MONTGOMERY responded "It's not a mistake. It's not a mistake."

MONTGOMERY told Officer K▇▇ he disposed of the rest of the carcass in the trash. MONTGOMERY asked if a slingshot was a legal manner of take and Officer D▇▇ attempted to locate a small game brochure for MONTGOMERY, which outlines legal manners of take. CPW Regulation 2 CCR 406-3-303.E lists lawful manners of take, and slingshots are not listed as a lawful manner of take for furbearers (see detailed regulation below).

Officer K▇▇ told MONTGOMERY she would follow up with MONTGOMERY at a later date. The conversation between Officer K▇▇, Officer D▇▇, and MONTGOMERY from January 25, 2021 was recorded by both Officer K▇▇ and Officer D▇▇ (Seizure Tag #62732 and #62734).

On January 26, 2021, Officer K█████ left a voicemail message for ████████ asking him to return her call regarding MONTGOMERY.

On January 27, 2021, Officer K█████ drove the bobcat hide to veterinarian Dr. ██████ F█ at the CPW Wildlife Health Lab to inspect. Dr. F█ identified multiple bite wounds on the bobcat hide. Dr. F█ also discovered the bobcat was a young male, rather than a female. See attached report from Dr. F███.

On January 29, 2021, Officer K█████ received a text message from MONTGOMERY asking if he was going to get the bobcat back. Officer K█████ informed MONTGOMERY she would be issuing a citation and that it would be up to the courts to decide if MONTGOMERY was going to get the bobcat hide back. MONTGOMERY also stated in the text message; "Okay fair enough. I looked over the regs carefully and believe that you could be correct." Officer K█████ and MONTGOMERY agreed to meet on February 1, 2021 at the CPW Littleton Office.

On January 31, 2021, Officer K█████ received a phone call from ████████. Officer K█████ asked ████ if he could give her any information about MONTGOMERY killing the bobcat that day. ████ said he ran into MONTGOMERY near Russell Ridge and MONTGOMERY told ████ his dogs had killed the bobcat. Officer K█████ asked ████ if he knew anything about a slingshot and ████ said he only knew about the dogs.

**Officer Kaknes met MONTGOMERY to issue a citation:**

On February 1, 2021 at approximately 1:03pm, Officer K█████ met MONTGOMERY at the Littleton CPW Office to issue a citation. MONTGOMERY disputed receiving a citation asking why he was not receiving a "break." Officer K█████ told MONTGOMERY he had a great deal of experience using hounds while hunting and she expected him to know the regulations. Additionally, Officer K█████ told MONTGOMERY she would issue the same citation to any other person with his skills and knowledge if the circumstances were the same. During the contact, MONTGOMERY stated he shot the bobcat with a .25 caliber pellet gun and said he was sorry he lied to Officer K█████. Officer K█████ told MONTGOMERY she had evidence that said otherwise. MONTGOMERY also claimed whatever happened out there was an accident (which MONTGOMERY had stated in the January 25, 2021 interview that it was not a mistake).

During the contact, MONTGOMERY made comments to Officer K█████ which insinuated he may release allegedly damaging information about CPW to the media if he was written a ticket. Officer K█████ told MONTGOMERY that she knew nothing of the situation MONTGOMERY was referring to and it had nothing to do with this case.

Per Colorado Revised Statute (CRS) 33-6-102 (25.5) to "Hunt" means to pursue, attract, stalk, lie in wait for, or attempt to shoot, wound, kill, trap, capture, collect, or take wildlife. MONTGOMERY had several years of experience using hounds while hunting and continued to pursue the bobcat for miles without a lawful manner of take. Officer K█████ issued MONTGOMERY citation #F253105 for:

- 2 CCR 406 303E – Manner of Take: Did unlawfully take a furbearer with an unlawful manner of take (to wit: bobcat)
- CRS 33-6-109(1) – Illegal Possession: Did unlawfully take wildlife (to wit: bobcat taken by illegal manner of take).

Officer K█████ explained the citation to MONTGOMERY. The conversation between Officer K█████ and MONTGOMERY from February 1, 2021 was recorded (Seizure Tag #62733).

**Manner of Take (Furbearers):**

2 CCR 406-3-300B "Furbearers" means those species with fur having commercial value and which provide opportunities for sport harvest including mink, pine marten, badger, red fox, gray fox, swift fox, striped skunk, western spotted skunk, beaver, muskrat, long-tailed weasel, short-tailed weasel, coyote, bobcat, opossum, ring-tailed cat and raccoon.

303E Manner of Take - Furbearers

1. Any rifle or handgun.

2. Any shotgun.

3. Handheld bows and crossbows.

4. Any air gun, except that for coyote or bobcat the air gun must be a pre-charged pneumatic air gun .25 caliber or larger.

5. Live traps, limited to cage or box traps. All live-trapped wildlife shall be released immediately or dispatched by any legal method of take for that species in regulations #303.E.1-4. If local ordinances or public safety prohibit all legal methods of take from being used, American Veterinary Medical Association Guidelines for Euthanasia of FreeRanging Wildlife, as provided in S7.6 of the 2013 edition of the AVMA Guidelines for Euthanasia of Animals, may alternatively be used to the extent allowable by law.

6. Electronic call devices.

7. Artificial light (private land) may be used at night to take beaver, bobcat, coyote, gray fox, raccoon, red fox, striped skunk and swift fox on private land with written permission of the landowner, designated agent, lessee, or authorized employee.

8. Artificial light (public land) may be used at night to take beaver, bobcat, coyote, gray fox, raccoon, red fox, striped skunk and swift fox on public lands by permit only, as follows: a. Each permit shall be valid only for the time, species, and location specified on the permit. No permit will be valid during any deer, elk or pronghorn rifle season or during the 24-hour period prior to the opening weekend; nor during the opening weekend of any grouse, pheasant, quail, turkey or waterfowl season in those areas where such seasons are in progress. b. An artificial light which is permanently attached to, or projected from within a vehicle is prohibited. c. Taking shall not be permitted within 500 yards of a dwelling, building, or other structure, or in any area of public concentration where human safety would be jeopardized. d. Such permit shall be carried while hunting and available for inspection upon demand. e. Area wildlife managers and district wildlife managers may deny a permit where there is a potential that night hunting activities may result in significant adverse impact on wildlife resources by causing movement of large numbers of big game or otherwise. Provided further that night hunting permits for bobcat will not be issued on public 5 lands in the Canada lynx recovery area where Canada lynx are known to be present. When one Canada lynx has been taken by a bobcat hunter during the current year's hunting season no night hunting permits for bobcat will be issued for the remainder of the calendar year in the Canada lynx recovery area or in the area outside the Canada lynx recovery area where the Canada lynx was taken. In such instance, any night hunting permits for bobcat already issued under this provision shall be terminated. f. A permit shall not be required of any person, member of the person's family, lessee, designated agent, authorized employee, or identified designee with written authorization when necessary to protect such person's property. Refer to Chapter W17, Damage Caused by Wildlife for applicable regulations.

9. Baits a. Furbearers may be taken with the aid of baiting. Where permitted, baits shall consist solely of material of animal or plant origin and shall not contain any materials of metal, glass, porcelain, plastic, cardboard or paper. Wildlife used as bait shall be the carcass, or parts thereof, of legally taken furbearers, carp, shad, white and longnose suckers, and nonedible portions of legally obtained game mammals, birds and game fish.

End of report

**The above is true and correct**

**Officer (print)**  K    **Badge**

**Signature**    **Date:** 03/22/2021