UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :     CASE NO. 21-cr-46 (RDM) |
| v. | : |
| | : |
| PATRICK MONTGOMERY and | : |
| BRADY KNOWLTON, | : |
| | : |
| Defendants. | : |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
COUNT TEN OF THE INDICTMENT**

    The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes co-defendants Brady Knowlton and Patrick Montgomery's Motion to Dismiss Count Ten of the Indictment, which charges them with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2). In their motion, defendants make two unsupported allegations. First, they claim that the indictment provides insufficient "notice" of the "proceeding before Congress" that they obstructed, even though they later admit that they are "well aware" of the official proceeding they obstructed—namely, the Joint Session of Congress convened on January 6, 2021, to certify the Electoral College vote in the 2020 Presidential Election.  Defendants also allege that, in any event, the indictment fails to state a cognizable offense and attempt to convince the Court—without authority—to circumscribe the nature of the offense to only prohibiting obstruction of congressional hearings that are related to the "administration of justice." But nowhere do defendants address the fact that a Joint Session of Congress—a proceeding enshrined in and prescribed by the United States Constitution and federal law—plainly constitutes "a proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and therefore is an "official proceeding" under § 1512(c)(2).  Defendants' motion is unsupported by the law and facts of this case and should be denied.

## PROCEDURAL HISTORY

On January 13, 2021, defendant Patrick Montgomery was charged by complaint for his actions on January 6, 2021, when large crowds breached the U.S. Capitol Building (hereinafter "the Capitol") as Congress convened a Joint Session to certify the Electoral College vote in the 2020 Presidential Election. (ECF No. 1, dated 01/13/2021) About three months later, on April 1, 2021, Brady Knowlton was also charged by complaint, for his actions on January 6, 2021. (ECF No. 1, dated 04/01/2021) Shortly thereafter, the Grand Jury returned an indictment charging both Knowlton and Montgomery—who communicated before, during and after January 6—as co-defendants. Knowlton and Montgomery are charged with obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2), along with five misdemeanor charges. Montgomery is also charged with assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1), civil disorder in violation of 18 U.S.C. § 231(a)(3), and two additional misdemeanor charges. (ECF No. 23) On June 18, 2021, Knowlton filed a motion to dismiss Count Ten of the indictment (ECF No. 39), which charges Montgomery and him with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) and aiding and abetting. On June 23, 2021, Montgomery filed a motion to adopt and join the motion filed by Knowlton and requested the right to file additional motions. (ECF No. 40).[1] The next hearing is scheduled for July 28, 2021, as a status hearing.

## FACTUAL BACKGROUND

The statement of facts supporting the complaints against Knowlton and Montgomery detail at length the commencement of the Joint Session of Congress around 1:00 p.m. in the Capitol, the

---

[1] The government does not oppose Montgomery's motion to adopt and join filed by co-defendant and preserve right to file additional motions, *see* ECF No. 40.

unlawful entry of crowd members into the Capitol without authorization, the suspension of the Joint Session while law enforcement worked to restore order and clear the Capitol of the unlawful occupants, and the resumption of the Joint Session around 8:00 p.m., approximately six hours after the crowd breached the Capitol.  ECF Nos. 1.

The statement of facts further described how video footage shows Knowlton and Montgomery, among other things, entering the Capitol at about 2:35 p.m.  About one minute later, video shows both defendants enter the Capitol Rotunda.  They stayed there for several minutes and then left the Rotunda and entered the Rotunda Lobby.  From there, both defendants walked upstairs to the Senate Chamber Gallery.  Video footage shows them inside the Senate Gallery with their cellphones out, likely videotaping the scene.

The government later became aware of body-worn camera footage from the Metropolitan Police Department that shows Knowlton and Montgomery outside the Capitol at around 2:00 p.m.[2] In the video, Knowlton confronts officers who are making their way through the crowed and yells at them saying, "You took an oath! You took an oath!" and pointedly asking them, "Are you our brothers?"  Montgomery is standing right behind Knowlton.  The government also located another body-worn camera video of both defendants after they left the Senate Gallery, confronting officers inside the Capitol in a hallway near Senate Majority Leader Schumer's office. In the video, both Knowlton and Montgomery direct officers to move out of the way.  Knowlton tells the officers, "We don't wanna push through there.  We do not wanna push through there."  Knowlton also tells the officers, "This is happening. Our vote doesn't matter, so we came here for change."[3]

---

[2] This video has been provided to the defense in preliminary discovery.
[3] This video was provided to the defense in preliminary discovery.

**LEGAL STANDARD**

A defendant may move to dismiss an indictment or count thereof for failure to state a claim prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). The government agrees with defendants that "[a]n indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged. *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.* An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is defective and must be dismissed." *See United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017); Mot. 3.[4]

Section 1512(c)(2) of Title 18 of the U.S. Code provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." The "Definitions" provision, 18 U.S.C. § 1515, states that "[a]s used in section[] 1512, (1) the term 'official proceeding' means— (A) a proceeding before a judge or court of the United States … or a Federal grand jury; (B) a proceeding before the Congress; (C) a proceeding before a Federal Government agency which is authorized by law; or (D) a proceeding involving the business of insurance … before any insurance regulatory official or agency…." 18 U.S.C. § 1515(a)(1).

Federal Rule of Criminal Procedure 7(c)(1) governs the "Nature and Contents" of an indictment. The rule states, in relevant part, that "[t]he indictment … must be a plain, concise, and

---

[4] All citations to the defendants' motion are to the motion filed by Knowlton, ECF No. 39, and the page number citations are to the page numbers at the bottom of the page. For purposes of the government's response, we are treating Knowlton's motion as having been adopted by Montgomery, *see* ECF No. 40 (Motion for Joinder by Patrick Montgomery).

definite written statement of the essential facts constituting the offense charged," and that "[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

## ARGUMENT

Defendants' motion essentially advances two unsupported claims: first, they argue that they are not on "notice" as to what "official proceeding" they allegedly obstructed, though they admit that they are "well aware" of the official proceeding they obstructed—namely, the Joint Session of Congress convened on January 6, 2021, to certify the Electoral College vote in the 2020 Presidential Election. Second, they argue that as a matter of law, the Joint Session of Congress convened for the Electoral College vote certification is not an "official proceeding" under § 1512(c) and therefore the indictment fails to state a cognizable offense. Yet they fail to grapple with the plain language of § 1515(a)(1)(B), which defines "official proceeding" in no uncertain terms as "a proceeding before the Congress," which is precisely what they are charged with obstructing.

### A. Defendants have adequate notice of what "official proceeding" they are charged with obstructing.

Defendants contend that the indictment is deficient because it "fails to allege what type of proceeding Mr. Knowlton [and Mr. Montgomery] allegedly obstructed." Mot. 3. But this contention is belied by their own admission that they are "*well aware* that the 'proceeding before Congress' that [they] allegedly obstructed was the certification of the electoral college vote for the 2020 Presidential Election." Mot. 12-13 (emphasis added). Defendants are "well aware" of that fact because they received ample notice from the indictment itself, as well as the criminal complaint, which devoted a page to detailing the commencement, disruption, and resumption of the Joint Session of Congress to affirm the Electoral College vote on January 6, 2021. They

received further notice through discovery—where the government provided (and even highlighted in an FBI-created document) several body-worn camera videos of Knowlton telling officers that they had come to the Capitol because "[o]ur vote doesn't matter, so we came here for change." There is no basis for suggesting that defendants are unable to sufficiently understand what conduct they are being charged with or to prepare their defense.[5]

Nor is there any defect in the indictment. To be sufficient under the Constitution, an indictment "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014); *see United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). Federal Rule of Criminal Procedure 7(c) effectuates that understanding, requiring "a plain, concise, and definite written statement of the essential facts constituting the offense charged." As this Court has stated, "'an indictment must contain every element of the offense charged *and* must fairly apprise the accused *of the conduct allegedly constituting the offense* so as to enable him to prepare a defense against those allegations.'" *Hillie*, 227 F. Supp. at 81 (emphases in original).

The indictment here readily meets this standard. Section 1512(c)(2) penalizes a person who "corruptly obstructs, influences, or impedes any official proceeding." Count 10 of the indictment provides that:

---

[5] Even if defendants had lacked notice, a Bill of Particulars and not dismissal would be the appropriate remedy where the indictment is facially valid. *See United States v. Hajecate*, 683 F.2d 894, 898 (5th Cir. 1982); *United States v. Hillie*, 227 F. Supp. 3d 57, 81 (D.D.C. 2017). But defendants do not even meet the threshold for a Bill of Particulars, which requires that they "demonstrate surprise or prejudice by the lack of particularization." *United States v. Pollack*, 534 F.2d 964, 970 (D.C. Cir. 1976); *see also United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987) ("[I]f the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required.").

> On or about January 6, 2021, Patrick Montgomery and Brady Knowlton attempted to, and did corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and committing an act of civil disorder and engaging in disorderly and disruptive conduct.

ECF No. 23. The indictment thus sets forth all essential elements of the offense.

Defendants rely on *Hillie* to argue that the indictment here is deficient. But the challenged indictment in *Hillie* only broadly stated the date of the offenses as "periods of time that span two to three years," the location of the offenses as "the District of Columbia," and was "devoid of any facts regarding the circumstances of Hillie's behavior" that led to the charges. *Id.* at 71-72. Here, the indictment against Knowlton and Montgomery not only tracks and echoes the statute, but also specifies the date of the obstruction ("January 6, 2021"), its precise location ("in the United States Capitol"), the acts amounting to obstruction ("entering and remaining … without authority and committing an act of civil disorder and engaging in disorderly and disruptive conduct"), and the type of official proceeding ("that is, a proceeding before Congress"). *See United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (upholding sufficiency of indictment that echoed statute while specifying time and place of the offense and identity of the threatened officer); *United States v. Williamson*, 903 F.3d 124, 131 (D.C. Cir. 2018) (same). Defendants are in no way uncertain about what conduct "allegedly constitut[es] the offense." *Hillie*, 2127 F. Supp. 3d at 81. And they are in no way unable to prepare a defense or invoke double jeopardy if they were prosecuted again for the same conduct.

Defendants further claim that the indictment's specification of the "official proceeding" as "a proceeding before Congress" must be *further* specified to state the particular proceeding before Congress on January 6, 2021 that they are accused of obstructing. Mot. 3. But statutory and case law does not require such minutia. For example, in *United States v. Williamson*, Williamson was charged with "threatened assault with intent to retaliate against the officer on account of the

performance of official duties." The D.C. Circuit explained that *which* "official duty" was at issue was "not at all 'central to every prosecution under the statute'" nor "'the very core of criminality' under the statute." 903 F.3d at 131; *see also Resendiz-Ponce*, 549 U.S. at 108-09 (indictment's "word 'attempt'" adequately encompassed "three overt acts" performed in the attempt; overt acts did not need to be specified). The statute was written "not to draw attention to a particular official duty, but to assure that the threat generally relates to the officer's performance of official duties rather than to a personal dispute." *Williamson*, 903 F.3d at 131. Here too, a "proceeding before Congress" serves to generally ensure that the defendant knows what type of enumerated "official proceeding" he is charged with obstructing. The defendants received that notice here, so there was no infirmity in the indictment. The language fairly informed defendants of the charge against them in accordance with both the Constitution and Rule 7(c).

    **B. The certification of the Electoral College vote is an official proceeding.**

Defendants argue (Mot. 3-14) that Congress's certification of the Electoral College vote on January 6, 2021, does not qualify as an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2). That argument lacks merit.

    1. Background

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote. Two separate provisions in the Constitution mandate that the Vice President, while acting as the President of Senate, "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted." U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII. Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15. Section 15 details the steps to be followed: the President of the Senate opens the votes, hands

them to two tellers from each House, ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives." *Id.* The President of the Senate is empowered to "preserve order" during the Joint Session. 3 U.S.C. § 18. Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once." 3 U.S.C. § 17. The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared." 3 U.S.C. § 16.

The obstruction statute with which defendants are charged prohibits corruptly obstructing, influencing, or impeding any official proceeding. 18 U.S.C. § 1512(c)(2). An official proceeding for purposes of § 1512(c)(2) is defined as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) *a proceeding before the Congress*;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1) (emphasis added).

        2. <u>Certification of the Electoral College vote is a proceeding before the Congress</u>

The certification of the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and, therefore, an

"official proceeding" for purposes of 18 U.S.C. § 1512(c)(2). That conclusion flows principally from the obstruction statute's plain text. Skipping past the text, defendants argue that Congress's intent and other language in the obstruction statute import a requirement that the "official proceeding" relates to "the administration of justice." Mot. 8, 13. That argument is incorrect.

Understanding what qualifies as an official proceeding "depends heavily on the meaning of the word 'proceeding'" because "official proceeding" is defined "somewhat circularly" as, among other things, a congressional "proceeding." *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013). The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term. In its broadest and most "general sense," a proceeding refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior." *Id.* (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com). Defendants do not meaningfully contend that the certification of the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is not a proceeding—and indeed an official proceeding— under that broad definition. And there is good reason to construe "proceeding" as used in 18 U.S.C. § 1515 broadly. Section 1515's text encompasses not only congressional proceedings, but judicial proceedings, grand jury proceedings, any legally authorized proceedings before federal government agencies, and proceedings "involving the business of insurance." 18 U.S.C. § 1515(a)(1); *see* S. Rep. No. 97-532, at 17 (1982) (noting that the "term 'official proceeding'" in the obstruction statute is "defined broadly").

But even if the "legal—rather than the lay—understanding" of proceeding governs Section 1515's interpretation, *see Ermoian*, 752 F.3d at 1170, the Electoral College vote certification qualifies. This narrower definition includes the "business conducted by a court or other official

body; a hearing." Black's Law Dictionary, "proceeding" (11th ed. 2019). Taken with its modifier "official," the term proceeding thus "connotes some type of formal hearing." *Ermoian*, 752 F.3d at 1170; *see United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) (the "more formal sense" of "official proceeding" is "correct in the context of § 1512"). For example, in cases assessing whether a law enforcement investigation amounts to an "official proceeding" as defined in Section 1515—including the cases relied upon by defendants—courts analyze the degree of formality involved in an investigation. *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"), *cert. denied*, 140 S. Ct. 1106 (2020); *Ermoian*, 752 F.3d at 1170-72 (same); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (internal investigation conducted by a review panel within the Bureau of Prisons was an "official proceeding" because the review panel's "work [was] sufficiently formal"); *Ramos*, 537 F.3d at 463 (internal investigation conducted by Customs and Border Patrol not an "official proceeding" because that term *"*contemplates a formal environment"); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) (investigation conducted by Bureau of Alcohol, Tobacco, and Firearms not an "official proceeding" because that term encompasses "events that are best thought of as hearings (or something akin to hearings)"); *see also United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (holding that a "*formal* investigation" conducted by the Officer of the Inspector General at the Agency for International Development qualified as a "proceeding" for purposes of 18 U.S.C. § 1505) (emphasis added).

The formality involved in the certification of the Electoral College vote places it "comfortably within the category" of an official proceeding. *See Perez*, 575 F.3d at 169. Few events are as solemn and formal as a Joint Session of the Congress. That is particularly true for

the certification of the Electoral College vote, which is expressly mandated under the Constitution and federal statute. Required by law to begin at 1:00 p.m. on the January 6 following a presidential election, the certification of the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body." *See* Black's Law Dictionary, *supra*. The Vice President, as the President of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election. 3 U.S.C. § 15. As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection. *Id.* And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall." *See* 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker "immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform"). The Electoral College vote certification, moreover, must terminate with a decision: no recess is permitted until "the count of electoral votes" is "completed," and the "result declared." *Id.* In short, the certification of the Electoral College vote is a "proceeding before the Congress." *See* 18 U.S.C. § 1515(a)(1)(B).

> 3. <u>The "proceeding before Congress" is not limited to proceedings solely related to the administration of justice</u>

The defendants incorrectly ask this Court to limit the interpretation of the "proceeding before the Congress" to encompass only the "corrupt obstruction of proceedings before Congress related to the administration of justice such as a congressional committee investigating a violation of the law where witnesses are subpoenaed to appear and give testimony or to provide relevant evidence." Mot. 13. But this narrow reading of the statute finds no textual support when applied

to Section 1515(a)(1)(B), which speaks broadly of a proceeding "before the Congress." Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting, as the defendant contends, it needed look only a few provisions away to 18 U.S.C. § 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency. Indeed, § 1505 expressly criminalizes obstruction of "any inquiry or investigation [that] is being had by" Congress, including by congressional committees and subcommittees. 18 U.S.C. § 1505; *see United States v. Bowser*, 964 F.3d 26, 31 (D.C. Cir. 2020). If Congress could limit the obstruction prohibition under § 1505 to congressional investigations, it could have done so in the text of § 1515(a)(1)(B). But it did not. Instead, Congress enacted broader language—"a proceeding before the Congress"—to cover a broader range of proceedings than the "inquir[ies] and investigation[s]" envisioned in Section 1505. That broader definition includes the Electoral College vote certification.

Rather than engage with Section 1515's text, defendants rely on "surrounding statutory provisions" and "legislative intent" to argue that the certification of the Electoral College vote is not an "official proceeding" because it does not affect the "administration of justice." Mot. 8-12. That approach fails in three respects. First, it is methodologically flawed. To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). In ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is a congressional proceeding, a proceeding before the Congress. Because Section 1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete." *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted). The defendant offers no rationale for breezing past the statute's plain text to reach for other interpretive tools.

Second, the other statutory tools on which defendants purport to rely do not aid their argument. Defendants contend (Mot. 8) that Section 1512's title—"Tampering with a witness, victim, or an informant"—implies that the "official proceeding" definition in Section 1515 does not cover the Electoral College vote certification. But this contention runs headlong into "the wise rule" that neither "the title of a statute" nor "the heading of a section" can "limit the plain meaning of the text." *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947).[6] In any event, the specific statutory provision under which defendants are charged, 18 U.S.C. § 1512(c)(2), explicitly reaches more broadly than tampering: it "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense. *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2104)).

Other provisions outside § 1512, such as those elsewhere in Chapter 73, have even less bearing on the plain meaning of § 1512(c)(2). Mot. 10. If anything, those neighboring provisions—which criminalize obstruction of other types of investigations and protect judges, jurors, witnesses and the like—merely underscore how robustly Congress sought to penalize obstructive conduct across a vast range of settings. That Congress wished to penalize efforts to obstruct everything from a federal audit to a bankruptcy case to an examination by an insurance regulatory official only crystallizes that it is more the acts of obstructing, influencing, or

---

[6] The defendants' invocation of the Justice Manual similarly has no bearing on the Court's analysis. The USAM (the previous name of the Justice Manual) "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." *United States v. Goodwin*, 57 F.3d 815, 818 (9th Cir. 1995) (quoting USAM §1-1.100). *Cf. United States v. Caceras*, 440 U.S. 741, 754 (1979) (IRS manual does not confer any substantive rights on taxpayers but is instead only an internal statement of penalty policy and philosophy).

impeding—than the particular type of hearing—that lie at "'the very core of criminality' under the statute[s]." *Williamson*, 903 F.3d at 131.

Finally, the defendants' narrowed reading of "proceeding before the Congress" in 18 U.S.C. § 1515(a)(1)(B)—importing an extra-textual "administration of justice" requirement—would undercut the broad statute that Congress enacted. Other than a reference to "a congressional committee investigating a violation of the law where witnesses are subpoenaed to appear and give testimony or to provide relevant evidence,"[7] Mot. 13, the defendant does not explain which congressional proceedings would fall within the ambit of his narrowed definition. That crabbed approach fails to recognize that the certification of the Electoral College vote is an official proceeding that is "crucial to the conduct of government" and therefore "entitled to go forward free of corrupting influences that not only delay [it] but increase the chances of false and unjust outcomes." *Sutherland*, 921 F.3d at 426. Whatever the outer limits of a "proceeding before the Congress" for purposes of the obstruction statute, the Electoral College vote certification falls well within them.[8]

---

[7] Defendants do not grapple with the anomalous result that follows from their argument: an investigation by a committee—not even a full House, let alone both Houses—would qualify as a "proceeding before the Congress," but a constitutionally required Joint Session to resolve disputes over and ultimately certify the result of a presidential election would not.

[8] Defendants' challenge fails even if they were correct—and they are not—that for a proceeding to constitute an "official proceeding" under the obstruction statute, that proceeding must be related to the "administration of justice." Far from informal, the certification of the Electoral College vote comprises features that resemble an adjudicative proceeding. It involves the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President as President of the Senate, "presid[es]." 3 U.S.C. § 15. That body convenes to render judgment on whether to certify the votes cast by Electors in the presidential election. As in an adjudicative setting, parties may lodge objections to the certification, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it. *Id.* And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result." 3 U.S.C. § 16.

        4.   <u>Charging the defendant under 18 U.S.C. § 1512(c)(2) was entirely proper.</u>

The defendant contends (Mot. 13-14) that, to the extent his role in interfering with the Electoral College vote certification warranted prosecution, he only should have been charged under a statute other than Section 1512.  The premise and the merits of that claim are flawed.  The mere fact that multiple criminal statutes apply to an individual's conduct does not render prosecution under one (or more) of those statute suspect; indeed, "overlap" is "not uncommon in [federal] criminal statutes."  *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014); *accord Hubbard v. United States*, 514 U.S. 695, 714 n.14 (1995) (opinion of Stevens, J.) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct."); *see also United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.").

## CONCLUSION

In short, defendants are "well aware" of the official proceeding they obstructed—namely, the Joint Session of Congress convened on January 6, 2021, to certify the Electoral College vote in the 2020 Presidential Election. And that Joint Session of Congress to certify the Electoral College vote constitutes a "proceeding before the Congress." Defendants' conduct falls squarely within the ambit of 18 U.S.C. § 1512(c)(2).

WHEREFORE, the United States respectfully requests that defendants' Motion to Dismiss be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
United States Attorney
D.C. Bar No. 415793

By: *Elizabeth Kelley*
Elizabeth C. Kelley
D.C. Bar No. 1005031
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7238
Elizabeth.kelley@usdoj.gov