<pre>
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,
                                        Criminal Action
 4             Plaintiff,               No. 1:21-cr-0046

 5        vs.                           Washington, DC
                                        August 3, 2021
 6   PATRICK MONTGOMERY, et al.,
                                        11:06 a.m.
 7             Defendants.
     _____/
 8

 9

                    TRANSCRIPT OF VIDEO MOTION HEARING
10            BEFORE THE HONORABLE RANDOLPH D. MOSS
                    UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the Government:    JAMES PEARCE
                           U.S. Department of Justice
14                         Criminal Division
                           950 Pennsylvania Ave, NW, Suite 1250
15                         Washington, DC 20530

16                         ELIZABETH KELLEY
                           U.S. Attorney's Office
17                         555 4th Street
                           Washington, DC 20530
18
                           JAMES PETERSON
19                         U.S. Department of Justice
                           1331 F Street, NW, 6th Floor
20                         Washington, DC 20530

21
     For Defendant
22   Montgomery:           DANI JAHN
                           Federal Public Defender's Office
23                         District of Columbia
                           625 Indiana Ave, NW, Suite 500
24                         Washington, DC 20004

25
</pre>

1    **APPEARANCES CONTINUED:**

2    **For Defendant**
     **Knowlton:**              **RONALD SULLIVAN, JR.**
3                                Ronald S. Sullivan, Jr.
                                 6 Everett Street
4                                Cambridge, MA 02138

5                               **THOMAS MAYR**
                                 Mayr Law, P.C.
6                                5300 Memorial Drive, Suite 750
                                 Houston, TX 77007
7
                                **CAMILLE WAGNER**
8                                Wagner PLLC
                                 1629 K Street, NW, Suite 300
9                                Washington, DC 20006

10

11

12

13

14

15

16

17

18

19

20

21

22

23   **Court Reporter:**         **JEFF M. HOOK**
                                 Official Court Reporter
24                               U.S. District & Bankruptcy Courts
                                 333 Constitution Avenue, NW
25                               Washington, DC 20001

1         **P R O C E E D I N G S**

2              **DEPUTY CLERK:**  Your Honor, this is criminal action

3    21-46, the United States of America vs. Patrick Montgomery

4    and Brady Knowlton.  Both defendants are appearing by video.

5    Also by video for the Government, James Pearce, Elizabeth

6    Kelley and James Peterson; for Defendant Patrick Montgomery,

7    Dani Jahn; for Defendant Knowlton, Camille Wagner, Ronald

8    Sullivan and Thomas Mayr.

9              **THE COURT:**  Well, thank you all.  Before we get

10   going, let me just ask, Ms. Jahn, have you conferred with

11   Mr. Montgomery about our doing this by video today, and if

12   so, what are his views?

13             **MS. JAHN:**  I have, your Honor.  And in light of

14   the CARES Act and the pandemic, the defense agrees to appear

15   in this manner.

16             **THE COURT:**  Mr. Sullivan, same question to you

17   with respect to Mr. Knowlton?

18             **MR. SULLIVAN:**  Yes, I have, your Honor.  He

19   consents.

20             **THE COURT:**  Well, in light of the ongoing pandemic

21   and where everyone is located, the Court does conclude it is

22   proper -- it is appropriate for us to proceed by

23   videoconference today.  So we're here today on the

24   defendants' motion to dismiss count 10 of the indictment,

25   which is the count brought under 18 U.S.C. section 1512(c).

1    I'm interested in hearing your argument today.

2           Mr. Pearce, are you going to be arguing on behalf

3    of the Government today?

4           **MR. PEARCE:**  Yes, I will, your Honor.

5           **THE COURT:**  Okay, thank you.  So let me just give

6    you all some initial reactions which may be helpful for you

7    in framing your arguments to me.  It may be necessary to

8    have some additional briefing, and conceivably even some

9    additional argument, down the road in light of the issues

10   that I want to raise for you.

11          I have to say, at least at this point, I am not

12   yet persuaded at least that the defendants are correct that

13   the proceedings to certify the electoral vote do not

14   constitute official proceedings within the meaning of

15   1512(c)(2).  My reaction to that at this point is Congress

16   actually defined official proceeding to include a proceeding

17   before the Congress.  It does make sense to me that the

18   notion of an official proceeding is something that has the

19   trappings that would make it official in nature in some way,

20   and that Congress may have had in mind proceedings that are

21   similar in certain respects to judicial proceedings.

22          But it's hard to imagine a proceeding, short of an

23   impeachment proceeding, that has more of the trappings of an

24   official proceeding or even that are analogous to a judicial

25   proceeding that occur before Congress than the certification

1  process.  The statute and the Constitution are very precise

2  about what's required.  They set forth the requirement that

3  the Vice President preside; specify not only the day but the

4  time the proceeding has to commence; provides a process for

5  objections, for consideration of those objections, returning

6  then to the Hall for purposes of then resolving what is in

7  essence ultimately an evidentiary issue.  It may be an

8  evidentiary issue which is a very narrow one, and that what

9  Congress is called upon to do is quite narrow.  But as I

10  said before, at least at this point I'm unpersuaded that the

11  proceeding is not an official proceeding.

12        But in the course of making their argument,

13  defendants point to the structure of the statute more

14  generally, and argue more generally that 1512(c) has to be

15  viewed as part of title 73; and that in that context, what

16  Congress must have had in mind are things that are like what

17  we think of more traditionally as obstruction of justice.

18  And that then leads me to the questions that I have and that

19  I really would like to hear from the parties about, and that

20  I may want to have additional briefing about.

21        The real question that I have at this point is

22  what the phrase "otherwise obstructs, influences or impedes"

23  means.  That sentence follows a sentence which is focused on

24  the alteration, destruction, mutilation or concealment of a

25  record, document or other object.  And the question I have

1    is whether the otherwise clause needs to be construed in

2    light of what comes before it to do two things.  One is to

3    actually add something and to be meaningful in addition to

4    what is in clause one.  But also, I guess I have a question

5    about whether it needs to be also construed in a similar

6    vein to the terms that are in clause one.

7         And as you all know, in Yates vs. The United

8    States, the Supreme Court interpreted section 1519 of Title

9    18 which was adopted at the same time that 1512(c) was added

10   to the statute.  A lot of what the plurality opinion says in

11   that case might arguably apply here as well.  And so the

12   plurality says that 1519 was enacted as part of the

13   Sarbanes-Oxley Act, and that it would cut section 1519 loose

14   from its financial fraud moorings to hold that it

15   encompasses any and all objects, whatever their size or

16   significance, destroyed with obstructive intent.

17        So I think question one is whether 1512(c)(2) also

18   needs to be construed in light of what Congress was

19   intending to do and was focused on in Sarbanes-Oxley.  In

20   addition, the Court in -- or the plurality in Yates applies

21   the noscitur a sociis canon which is that a word is known by

22   the company it keeps.  I guess the question is would the

23   same apply here or not.  The Court also applies the ejusdem

24   generis canon in its interpretation, and perhaps that

25   applies here.  Arguably it doesn't apply here because the

1  structure of the two provisions is different, whereas in

2  1519 it's all in a single sentence.  Here, there are two

3  different provisions, and the second provision is introduced

4  with the term "otherwise" which perhaps distinguishes this

5  from Yates.  But I do wonder whether at least there's a

6  difficult question here in light of Yates.

7          The same thing with respect to Begay vs. United

8  States where the Supreme Court was interpreting the residual

9  clause in ACCA, and again concluded that an otherwise

10  clause -- which again was part of the same sentence I

11  believe, had to be construed in light of what came before

12  it.  And I have a question about whether that applies here

13  as well.

14          And then sort of more generally, I guess I have

15  the question of what limiting principle does apply here.  If

16  in fact clause two stands on its own and Congress was

17  intending to sweep broadly, and Congress was saying, look,

18  the courts have repeatedly cut back on everything we do when

19  we adopt an obstruction statute; and we want a very broad

20  provision here, because we want to make clear that we're

21  really intending to reach everything that is obstructing an

22  official proceeding.  And if the Court does adopt that view,

23  what is the limiting principle that applies here.

24          So, for example -- and Mr. Pearce, this will be a

25  question for you, but you can be thinking about it a little

1   bit.  But, for example, is it the Government's position that

2   1512(c)(2) would apply to somebody who stands up at a

3   congressional hearing and shouts out in a disruptive way

4   requiring a brief adjournment of the hearing; or somebody

5   who -- a group of people who are upset about an FCC rule

6   that is being adopted, and they sit in on the front steps

7   and block the entrance to the FCC before a hearing is

8   scheduled to take place.  Would it apply there?  Would it

9   apply to somebody who slashes the tires of the chairman of

10  the committee?  Would it apply to somebody who makes an

11  unlawful campaign contribution with the intent of

12  influencing a congressional hearing?

13          And it may apply to all of those things, but then

14  that leads me to the question of if it does apply to all of

15  those things, does it in fact render superfluous virtually

16  every other provision of title 73.  So that's, to my mind,

17  where the focus of the question is.  I do think, in response

18  to everything that I've just said here, that the response

19  might be the language is clear and you only apply these

20  canons where the language isn't clear.  And the language

21  refers to obstructing, influencing or impeding an official

22  proceeding, and it has to be done corruptly and that that's

23  enough.  But those are the issues that I want to hear about.

24  In all candor, I really don't know the answer to those

25  questions and I'm struggling with this.  And I want your

1    help from all of you in trying to figure out these important

2    questions.

3              So with that, why don't I hear from the defense

4    first; it's the defense's motion.  Mr. Sullivan, are you

5    going to take the lead?

6              **MR. SULLIVAN:**  Yes, your Honor.

7              **THE COURT:**  Okay.

8              **MR. SULLIVAN:**  Pardon my cough, your Honor, I'll

9    try to mute if I have to cough.  So let me start -- and

10   thank you for letting us know where the Court's head is and

11   what the Court's concerns are.  So why don't I start by

12   highlighting what I think is going on in the doctrine, and

13   hold in relief for the Court what I think is a clear

14   doctrinal thread that connects the circuit court cases that

15   have looked at 1512, and how that applies and how that

16   answers your question -- or your questions.

17             So first, I think as an initial matter, the Court

18   can and should consider the circuits that have already

19   looked at 1512.  In other words, I'll address the 1519

20   question and analogy.  But we've got three circuit courts,

21   Ninth, Fifth and Third, that have looked squarely at 1512.

22   And from those cases, I think a clear doctrinal thread

23   emerges.  My analysis is somewhat similar to the questions

24   that the Court articulated.  I come out in a different way.

25   But this doctrinal thread is that official proceeding, what

1      does that mean.  So that's what everyone's trying to figure

2      out, what does that mean.

3              The circuit courts have essentially said that it

4      means that the event that we're talking about has to

5      substantially share in the -- in features consistent with a

6      judicial proceeding.  And courts use different words to

7      express that.  So in our briefs, we use administration of

8      justice.  That's a marker for sharing in the features of a

9      judicial proceeding.  The courts have tried to draw a line

10     between other types of proceedings and what official

11     proceedings under 1512 mean, and they --

12             **THE COURT:**  Let me ask you this, Mr. Sullivan,

13     with respect to that.  I'm aware of those cases.  Accepting

14     that premise, what would be an official proceeding before

15     Congress?  Because we know there's something before

16     Congress, because Congress is included in the definition.

17             What would be an official proceeding before

18     Congress other than impeachment?

19             **MR. SULLIVAN:**  So any proceeding -- impeachment

20     obviously is one, but any proceeding that has enough of

21     these features.  So where there are witnesses called, for

22     example, subpoenas issued for something.  Congressional

23     committees tend to issue subpoenas all the time.  And what's

24     critical here in the Court's analysis is whether those

25     features -- so you mentioned evidence in respect of 1512 and

1   the January 6th hearing.  If that is evidence, I would

2   suggest that that's very thin in terms of what courts mean

3   by the production of evidence.  But that's getting at -- so

4   courts are groping at a definition to draw the line.  It

5   wouldn't just be one feature, but it would be substantial

6   features, similar to, functional equivalence of,

7   procedurally akin to.

8          **THE COURT:**  But here there was evidence; the

9   evidence was in the form of the electoral returns from the

10  states.  Congress was examining those returns and was

11  entertaining objections.  There was a presiding officer.  It

12  sure feels a lot like a judicial proceeding, and a lot more

13  perhaps than a hearing.  For example, it does strike me that

14  it would be a pretty hard argument for you if somebody came

15  into the Capitol and either attempted or actually got their

16  hands on the electoral votes and tried to destroy them.

17  That sure seems to me like that would fall within (c)(1)

18  under those circumstances.  That would be a pretty straight

19  forward application of (c)(1) if they were trying to destroy

20  the evidence that was before Congress that Congress was

21  considering.

22          **MR. SULLIVAN:**  I'm sorry, I didn't know the Court

23  was finished.  So I don't see that as evidence in the sense

24  that we think of evidence in, say, the federal rules of

25  evidence.  Evidence in a traditional judicial setting is

1      something produced by parties to a -- some sort of

2      convocation.  And this is the language that the circuit

3      courts use to get at this event.  These results were not

4      produced by adverse parties.  In other words, another party

5      didn't come in and say, hey, here's more evidence to it.

6              To the degree that it is a feature that looks

7      something like a court, my argument would be it's not

8      enough.  It's one feature, it's not enough.  It doesn't

9      capture the essence of that proceeding.  The essence of that

10     proceeding is a certification.  It's not quasi-judicial in

11     nature.  So I would think that that's not quite what the

12     courts are looking at when it's determining whether

13     something is an official proceeding for purposes of 1512.

14          **THE COURT:**  What about the impeachment trial?

15     There were not witnesses at the impeachment trial.  So if

16     somebody were to obstruct an impeachment trial, do you think

17     that would not fall within the statute because there weren't

18     witnesses or subpoenas at the trial?

19          **MR. SULLIVAN:**  It likely would.  So again, what

20     the courts have said is that it has to be substantially akin

21     to or procedurally or functionally akin to.  There's no --

22     there are no talismanic elements that convert an event to an

23     official hearing for the purposes of 1512.  So courts have

24     to use their discretion to determine whether or not enough

25     of these features exist.

1          To answer your question directly, an impeachment

2     is an impeachment what?  It's an impeachment trial.  It has

3     a presiding officer.  The courts can -- the presiding

4     officer rules on forms of evidence.  Impeachment trials also

5     have witnesses.

6          **THE COURT:**  I mean, doesn't the same thing happen

7     here, the Vice President is the presiding officer and he

8     makes determinations?

9          **MR. SULLIVAN:**  The Vice President himself said

10    that he certainly didn't have discretion to make the sorts

11    of determinations that certain elements wanted him to make.

12    Rather, the Vice President I think correctly construed his

13    role to simply certify something that was already done at

14    the states.  And that's different.  So your Honor doesn't

15    just certify what I say.  I would like that:  Sullivan says

16    X, and you certify it as true.  But that's not -- your

17    function is different, it's judicial.  The Vice President's

18    function was qualitatively different from the quasi-judicial

19    nature that's contemplated under 1512.

20         **THE COURT:**  Well, I agree that his role was

21    circumscribed by the statute and the Constitution.  But my

22    role at times is also quite circumscribed.  There are times

23    when things come in front of me in which my discretion is

24    completely limited, and there's only one determination that

25    I can reasonably or appropriately make in a case and I make

1    it.

2              **MR. SULLIVAN:**  That's not the whole of your

3    Honor's function, though.  That's the whole of the Vice

4    President's function in that circumstance.  The principal

5    majority of this Court's function is to make decisions, to

6    rule on the admissibility of evidence, to subpoena

7    witnesses.  These are the sorts of attributes or features

8    that are absent in January 6th.  And because they're absent

9    in January 6th, it doesn't fall under 1512.

10             It's not a comment on the importance or the

11   significance of January 6th; it's a significant

12   constitutional event that takes place.  It's simply not the

13   type of event contemplated by 1512, at least in accord with

14   what three circuits have said.  And to the degree that your

15   Honor --

16             **THE COURT:**  They were dealing with very, very

17   different circumstances in those cases, you know, is an FBI

18   investigation a proceeding.  That is a lot further afield of

19   an official proceeding.  One can debate, I think just as a

20   matter of plain language, whether an FBI investigation is an

21   official proceeding.  But I think that if you just pick up

22   the dictionary or you ask a person on the street was that an

23   official proceeding going on before Congress, just as a

24   matter of plain language, it's pretty hard to argue it

25   wasn't an official proceeding.  It was certainly official

1    and it was a proceeding.

2         **MR. SULLIVAN:**  Well, I disagree with that under

3    the principles of textualism.  And even the father of

4    textualism, Justice Scalia, he would say it very differently

5    and he would analyze the case.  And I think a textualist

6    approach to the case would be analyzed as follows, let's

7    look at the term, you know, proceeding.  And the Ninth

8    Circuit says let's look at it, there are at least two

9    definitions.  One is a sort of a lay definition, and the

10   sort of definition that your Honor just put forward.  But

11   the other is a rather technical definition.  How do we know

12   which one it is?  We look at what is surrounding it, and we

13   make reasoned determinations based on it.  So that's --

14        **THE COURT:**  But even if you pick up the legal as

15   opposed to the common usage of the term proceeding, the

16   legal usage of the term proceeding would mean something with

17   official trappings; rules that govern perhaps criteria with

18   respect to both the rules of process of when and where and

19   how the proceeding's going to take place, and perhaps rules

20   of substance as to what is the rule of decision that's going

21   to be applied.  Those are all legal definitions of

22   proceeding that would, again, seem to apply here.

23        Even taking your point that the role of the Vice

24   President and the role of the Congress as a whole was

25   exceedingly limited at the time, they nonetheless were

1    making a determination pursuant to a set of rules.  The

2    rules may have been ones that limited their authority.  It

3    didn't say you get to just second guess what the states have

4    done or second guess the electoral vote.  But there still

5    were rules, and they still adjourned into their separate

6    chambers for purposes of considering objections.  That all

7    fits within a legal definition of what a proceeding is.

8         **MR. SULLIVAN:**  Well, the Ninth Circuit looks at a

9    legal definition, and cites to the Oxford English dictionary

10   at page 1,170 and says, "An act done by authority of a court

11   of law; a step taken by either party in a legal case."  The

12   Fifth and Third Circuits do something similarly.  The Third

13   Circuit looks at Black's Law Dictionary, and it has the

14   vocabulary of a court of law.  And this is the point of

15   departure that the circuit courts have made.

16        So I agree that the facts of those cases are

17   different, but I'm attempting to focus the Court's attention

18   on the line that the circuit courts have drawn.  They have

19   legal definitions that speak explicitly to court and

20   judicial functions.  And when you have that difference, that

21   definitional difference, two things have to happen.  The

22   first thing is the Court, your Honor has to decide, well,

23   what does 1512 mean.  The Government is inviting you

24   essentially to have a circuit split.  You've got three

25   circuits that say it means this quasi-judicial functioning,

1    and the Government is urging your Honor to come to a

2    different sort of -- they characterize it as a plain meaning

3    read.  But I think that's not -- what the Government does in

4    its brief is not textualism.  It may be exactism or

5    something like that, but textualism has a pronged process.

6              The second thing is the rule on --

7         **THE COURT:**  Let me ask you this, though,

8    Mr. Sullivan:  If somebody were to obstruct today's oral

9    argument that we're having right now, would it be covered or

10   not?  No subpoenas, no witnesses, no evidence.

11        **MR. SULLIVAN:**  Yes, this is a judicial proceeding.

12   The parties are ordered by your Honor to be here.  Rights

13   were waived in terms of physical presence -- I'm sorry, your

14   Honor?

15        **THE COURT:**  Well, what I was going to say is I

16   guess I don't see how that differs in any material way from

17   what was taking place before Congress.  The Constitution and

18   a statute commanded that the members of Congress assemble,

19   that they do so at 1:00 o'clock on January 6th.  The statute

20   defined who the presiding officer would be.  And there was

21   argument that was made by members of the Congress.  There

22   were disagreements, and they adjourned into their separate

23   chambers to consider objections and came back to the Hall,

24   as it's referred to in the statute.  And the rules specify

25   that unless both Houses -- a member of both Houses objects,

1    that you don't then adjourn to separately consider it.

2              So there were rules that were considered; there

3    were arguments that were considered; there was a presiding

4    officer.  It sure feels in many respects just like what

5    we're doing today, if not even more so official in its

6    nature, and more of a --

7              MR. SULLIVAN:  I think -- I'm sorry, your Honor, I

8    accidentally cut you off.

9              THE COURT:  No, go ahead.

10             MR. SULLIVAN:  I think it's different on at least

11   two registers.  So with respect to today's hearing, there

12   are judicial orders in place.  This is expressly a judicial

13   function.  I understand your Honor is engaging in a

14   hypothetical.  We know the statute that we're talking about

15   does not in and of itself apply to this hearing, we're

16   talking about Congress.  But I just want to be clear, I

17   understand the Court's hypothetical in sort of drawing

18   parallels between what is judicial and what's judicial-like.

19             The Court is correct that the Constitution

20   requires certain presence, but that's very different from a

21   summons where a failure to follow the summons is contempt of

22   court, maybe even a substantive criminal violation.  Yes,

23   the Constitution says members should be there, and if they

24   don't come they don't come.  But if my client doesn't show

25   up, he has violated a court order.  That's different.

1          The second --

2          **THE COURT:**  I don't think I actually ordered

3    anybody to be here today.  I mean, I set the schedule, but I

4    don't think I ordered anyone to be here today.

5          **MR. SULLIVAN:**  I would respectfully suggest if the

6    parties didn't show up, your Honor wouldn't take too kindly

7    at that and could have enforced an understanding that we

8    were supposed to be here.  But I don't want to sort of

9    quibble about the minutia.  There's another distinction, and

10   it's an important distinction that I'd invite the Court to

11   consider.  When we're talking about what's going on in

12   Congress and the legislative branch, there is much more

13   space for forms of protest than someone coming in and

14   disrupting a criminal case in a courthouse.  There are just

15   different rules for that.

16         Indeed, as your Honor knows, you can't protest on

17   the steps of the Supreme Court.  I just litigated that case

18   with pastors within the last year or so.  Different rules

19   for judicial proceedings, whereas protests in Congress are

20   at the heart of our First Amendment privileges.  So the

21   analogy there sort of conflicts with the different aims of

22   the First Amendment.  There's very limited rights with

23   respect to a judicial hearing.  You can't come in and just

24   do what you want to do in front of a judicial hearing.

25         But the Constitution actually asks us to -- or

1    empowers us to redress grievances with the Government.  So I

2    think that's an important distinction.  We may or may not

3    get to some First Amendment and notice arguments, but I

4    think it's different on that point.

5              THE COURT:  Can I ask you to turn also to some

6    other issues I raised.  I guess one question is whether

7    there are arguments that you are pressing or not in this

8    case with respect to the otherwise obstructs, influences or

9    impedes?  And if that is an argument that you are pressing

10   or want to press, sort of what your views are on that

11   question.

12             MR. SULLIVAN:  So --

13             THE COURT:  And take your time if you want a glass

14   of water or something.

15             MR. SULLIVAN:  Thank you, your Honor.  So yes,

16   your Honor, again, it is the same predicate argument that

17   the alleged conduct here is simply not covered by the

18   statutory language.  The statutory language must be read in

19   total, must be read as a whole.  Many of the courts cite

20   to -- and my apologies, I'm looking at the wrong one.  Many

21   of the statutes cite to the very title of 1512, Tampering

22   with a Witness, Victim or an Informant.  There is something

23   about the essence of 1512, its history.  Sarbanes-Oxley,

24   when it was written --

25             THE COURT:  Although that is the title of 1512,

1  the title of the provision of Sarbanes-Oxley that added the

2  language that we're talking about today is Tampering with a

3  Record or Otherwise Impeding an Official Proceeding.  So it

4  does employ the -- I'm not sure it helps a lot because it

5  just tracks the language of the statute.

6           **MR. SULLIVAN:**  Exactly.

7           **THE COURT:**  But it does include broader language.

8           **MR. SULLIVAN:**  And the courts have said that that

9  doesn't do -- again, the Ninth, Fifth and Third circuit

10  courts have said that that doesn't do a lot of work because

11  it's circular.  It defines an official proceeding as a

12  proceeding, and a proceeding as an official proceeding.  So

13  it just takes you in a big circle back to and forces you to

14  deal squarely with, well, what is an official proceeding.

15  It has to have --

16           **THE COURT:**  I have to say, I feel the same way,

17  though, about the title of 1512 itself.  Because my

18  suspicion is -- although I haven't gone back to check, is

19  that that was the title of the provision before (c) was

20  added.  So it doesn't tell us a whole lot about what (c)

21  means if that was the title before (c) was added.  And

22  titles, also, are not the most helpful indicia of

23  congressional intent.

24           Let me ask you, what do you think -- in your view,

25  what -- putting aside your argument about this not being an

1    official proceeding, what do you think section (c)(2) means?

2    What does it cover?

3            MR. SULLIVAN:  So it would cover any

4    quasi-judicial hearing of the Congress.  And by

5    quasi-judicial, one that deals with the administration of

6    justice.  That's the phrase that we use, because we think

7    that that phrase captures the features that differentiate

8    it.

9            THE COURT:  So if there were a congressional

10    hearing that was going on, and there were witnesses who had

11    been subpoenaed to testify and were appearing before the

12    congressional committee; and there were folks out there that

13    were angry that the committee was getting ready to recommend

14    the passage of some legislation or recommending going

15    forward or not with respect to a particular nominee, and

16    they storm the committee room.  And as a result of them

17    storming the committee room, the committee had to adjourn

18    and could not act.

19            Would that violate the statute?

20            MR. SULLIVAN:  From the Court's hypothetical, it

21    appears that that is the sort of hearing that has features

22    that are significant enough or similar enough to a judicial

23    hearing.  So that would be the question and that would be

24    the analysis.  Without obviously a full sort of factual

25    record in front of me, it's hard to say.  But what I can say

1    is that the January 6th hearing does not have enough of

2    those features to constitute an official proceeding.

3           THE COURT:  But what I guess I'm asking you to do

4    for a moment -- I'm trying to put aside the official

5    proceeding language, is put that aside for a minute and ask

6    you if someone were to storm a hearing, that you agree --

7    for purposes of this hypothetical, you agree that this is an

8    official proceeding, this hearing.  If they were to storm

9    into the room, and as a result of it the members of Congress

10   would have to flee the hearing and could not continue with

11   the hearing, would that violate 1512(c)(2)?

12          MR. SULLIVAN:  If it were an official proceeding,

13   yes, if it met that definition of an official proceeding.  I

14   know the Court's telling me to put that aside, but that

15   seems to be the sine qua non, that's the thing that

16   separates 1512 from other things.  So it's difficult for me

17   to do that, unless I'm misunderstanding the hypothetical.

18          THE COURT:  Well, I'm going back to my

19   introductory remarks that I made where I explained that I at

20   least initially was not persuaded by your argument on

21   official proceeding, but I did have a question about what

22   the remainder of the statutory language means.  That's what

23   I'm trying to probe here.

24          So I'm trying to understand that if in fact you

25   agreed that there was a hearing that was an official

1  proceeding, and a group stormed into that hearing with the

2  intent of preventing that hearing from going forward, and

3  the result of it was that the members had to adjourn and the

4  hearing had to adjourn and could not be completed, it's my

5  understanding that you've said that in your view that would

6  violate the statute?

7         MR. SULLIVAN:   If it's an official proceeding, and

8  that's the big if.   But yes, that's the -- yes, if it's an

9  official proceeding pursuant to 1512, then yes.

10        THE COURT:   Okay.   Was there anything else you

11 wanted to add?

12        MR. SULLIVAN:   Your Honor, at this point, and with

13 the Court's permission, because we can't sort of whisper to

14 each other, may I invite my co-counsel, Mr. Mayr, to add

15 anything that I may have forgotten?

16        THE COURT:   Yes, of course.   Mr. Mayr.

17        MR. MAYR:   Your Honor, I can do this however you'd

18 like to.   There's just a couple of things that I would like

19 to add.   Again, this is hard, because normally I'd be

20 passing notes to Mr. Sullivan in court saying bring this up

21 or bring that up.   I can do that now or I can let the -- or

22 if the Court -- I would be fine with the Government sort of

23 responding as long as I could come back and sort of give

24 some finishing points to the Court.

25        If you want to hear from me now, I'll tell you

1    what needs to be heard or I can come back later; it's up to

2    you.

3              THE COURT:  I'm happy to do whatever you prefer.

4    If you want to send some texts or e-mails to Mr. Sullivan

5    and engage in an exchange with him, you're welcome to do

6    that.  If you want to make some points now you're welcome

7    to -- or later; whatever you'd like.

8              MR. MAYR:  I'd like to yield my time to the

9    Government.  That will allow Mr. Sullivan and myself and our

10   other attorneys working with us to kind of confer.  And then

11   if I could come back sort of in rebuttal and answer some of

12   these questions that you've raised, I would prefer to do it

13   that way.

14             THE COURT:  Okay, that's fine.  Let me, though,

15   before we turn to Mr. Pearce ask Ms. Jahn, is there anything

16   else you'd like to add to the argument?

17             MS. JAHN:  No, your Honor.  I'm going to rely on

18   Mr. Sullivan's presentation.  Thank you.

19             THE COURT:  Okay, thank you.  Mr. Pearce.

20             MR. PEARCE:  Thank you, your Honor.  I want to

21   start on the official proceeding question, but then get to

22   what I understand to be the Court's questions about sort of

23   the scope of (c)(2) and then the limiting principles.  And I

24   don't want to spend a lot of time on the official proceeding

25   question, because I think many of the arguments that I had

1    planned to make and that we've made in our briefings are

2    ones that you've already sort of fronted in your initial

3    discussion and in some of your colloquy with Mr. Sullivan.

4           There's the plain textual reading of

5    1515(a)(1)(C) -- excuse me, (a)(1)(B), right, a proceeding

6    before the Congress that has to mean something.  And when

7    you've got a presiding officer in the chair and you've got

8    members sitting in the chamber, you've got all of this

9    captured on the congressional record, that's an official

10   proceeding.  The Court certainly doesn't need to struggle

11   with some of the -- I know in the reply briefs, some

12   questions about a congressional award board or reports from

13   the CBO, right.  I think here we've got a high degree of

14   formality.

15          And just on the point of formality, I mean, the

16   cases -- Ermoian out of the Ninth Circuit, Ramos out of the

17   Fifth Circuit, some of the others that are interpreting, as

18   your Honor noted, an entirely different provision, right,

19   1515(a)(1)(C) which talks about a proceeding before a

20   federal government agency that's authorized by law.  There,

21   those courts were trying to figure out how to interpret

22   whether agency investigations looked enough like (a)(1)(A),

23   the judicial proceedings, to qualify as an official

24   proceeding.  And that entire sort of interpretive exercise

25   is not one that this Court needs to engage in.  We are

1    talking about (a)(1)(B), a proceeding before the Congress.

2         But even if the Court were to engage in that, I

3    think for the reasons that your Honor's already given, there

4    are the types of both trappings of formality in terms of the

5    presiding officers, et cetera, as well as arguably enough of

6    the quasi-adjudicative or quasi-judicial function that is

7    happening.  Now, we don't think that that's required.  We

8    think plainly under the text, a joint session where there

9    was the certification of the electoral college votes is a

10   proceeding before the Congress.  But even if the Court were

11   then to look to some of those cases interpreting a different

12   provision of 1515, that that would still be sufficient to

13   get you to an official proceeding.

14        I'm happy to answer any particular questions about

15   that.  We have sort of additional arguments that we put in

16   our briefing, but I think that's sort of the core argument.

17   I'm happy then to just flip over and talk about the noscitur

18   a sociis and some of the other questions the Court raised.

19        **THE COURT:**  That would be helpful, thank you.

20        **MR. PEARCE:**  Sure.  So in 2009, Judge Huvelle in

21   United States vs. Ring confronted the very question that

22   your Honor has talked about, which is what does (c)(2) do.

23   Is it simply kind of an add on document destruction --

24   you've got it right in front of you, document destruction

25   provision.  And admittedly, there's not a whole lot of

1  analysis there, but there's discussion to say what happens

2  in (c)(1) is the alter and mutilate, et cetera, that does

3  resemble what 1519 does.  But then (c)(2) is not a document

4  destruction provision, and Judge Huvelle held that I think

5  it was statements to outside counsel that would then be

6  presented to a grand jury fell within the scope of (c)(2).

7  And that's consistent -- I'm sorry?

8          THE COURT:  Well, she decided that before Yates.

9  I do wonder whether Yates may have changed things, and

10  whether she would come out the same way in light of Yates.

11          MR. PEARCE:  Of course, it would be impossible to

12  speculate.  But courts before and after Yates have held that

13  (c)(2) is not simply a kind of -- I'll call it sort of a

14  residual document destruction provision, right.  I mean, I

15  think we've cited some of these in our briefs.  If not, I

16  would be happy certainly to submit additional briefing to

17  the Court.

18          But before Yates, the Seventh Circuit in United

19  States vs. Berg rejected this argument.  It's a 2013 case.

20  I believe the Seventh Circuit again in United States vs.

21  Volpendesto did the same thing, said (c)(2) is essentially a

22  residual catchall; not as to document destruction, but as to

23  general destructive acts.  United States vs. Petruk,

24  P-E-T-R-U-K, out of the Eighth Circuit did the same thing.

25  I know that Yates was decided in 2015.  I don't know whether

1    Petruk was before or after Yates.

2           And then most recently, a district court I believe

3    out of the Southern District of Texas -- I want to say it's

4    De Bruhl-Daniels -- I can certainly cite this for the Court

5    in a filing, also confronted this argument clearly post

6    Yates, and said what (c)(2) does is serve as a residual

7    catchall for obstructive acts that are different than the

8    type of document destructions that are discussed in (c)(1)

9    and that are captured in 1512(c)(1) as well as 1519, the

10   provision that was at issue in Yates.

11          And I think that's not only a matter of how the

12   courts have viewed it, but it flows from the structure of

13   the statute itself.  I think the Court referenced Begay and

14   the act of interpretation of otherwise as well as what the

15   Supreme Court did in Yates itself.  I mean, in Begay, you

16   had a list of -- I don't remember precisely, arson, burglary

17   and then conduct that otherwise involves a substantial risk.

18   So you've got this kind of nestling of these terms together,

19   and so you read the otherwise there as interpreting that

20   list that it sits as part of.

21          And then similarly in Yates, tangible object, I

22   don't believe that the term otherwise is used.  But tangible

23   object is there as part of this list of record, document,

24   tangible object, right.  And so (c)(2) differs in that it

25   sits alone as a separate clause, and then it is otherwise --

1    and what follows are a series of verbs that are clearly

2    different in kind than the verbs that come in (c)(1).

3    (c)(1) talks about mutilate, conceal, alter, the kinds of

4    things that you do to documents, right, the kinds of things

5    that are done to records.  The verbs that follow in (c)(2)

6    are things like influence, impede, interfere.  You don't

7    influence a document, right.  You don't obstruct a document

8    or an object.

9             And that's also consistent with the way that

10   courts -- the way that the Government has used (c)(2), and

11   the way that courts have upheld those prosecutions in many

12   of the cases I just mentioned like Volpendesto and Petruk.

13   Phillips is another case out of the Tenth Circuit where the

14   types of obstructive acts -- and this will sort of tend

15   towards I think a concession Mr. Sullivan made that

16   essentially answers the question here.  It doesn't -- it

17   covers things like disclosing the identity of an undercover

18   agent.  That's the Phillips case out of the Tenth Circuit.

19   Or tipping -- a police officer tipping someone off about an

20   investigation.  These are not things that look like document

21   destruction.

22            And it would include -- and certainly the

23   Government has taken this view consistently throughout the

24   January 6th cases, forcibly storming an official proceeding;

25   in this case, the certification of the electoral college

1    vote.  And so that forcible storming and breaching of the

2    Capitol is an obstructive act that falls within the scope of

3    (c)(2).

4            Now, admittedly this particular type of conduct

5    I'm not aware of having been prosecuted under this statute

6    before.  But I also think what we saw on January 6th was

7    unprecedented in scope and violence.  So its application --

8    the Government's application of 1512(c)(2) follows both from

9    sort of the first part of this argument that the electoral

10   college proceeding is an official proceeding for the reasons

11   we've already discussed, but also that the otherwise

12   influences, obstructs or impedes captures the kind of

13   obstructive conduct that defendants like the defendants

14   before this Court engaged in, forcibly pushing through the

15   Capitol and getting inside to break up the proceeding.

16           **THE COURT:**  So how would you define that phrase?

17   What is captured by that phrase?  For example, do I look to

18   the first sentence in any way to help inform me about it or

19   is it just unmoored from the first sentence completely and

20   that I just say is this anything that obstructs, influences

21   or impedes in any way?  And if so, then that gets to my

22   question of what the limiting principle is particularly

23   since we're talking about a statute here that has a 20-year

24   maximum sentence, which was another aspect I think of what

25   was motivating maybe the plurality in Yates.

1      **MR. PEARCE:**  Certainly.  And just for me to be

2      clear, I think obviously "whoever corruptly" sits on top of

3      both of these.  But I do think that (c)(2) sits

4      independently of (c)(1).  Your Honor quoted section 1102 of

5      the Sarbanes-Oxley Act that enacted these two provisions.

6      And Congress, when it wrote that -- and again, I don't think

7      the Court needs to go to legislative history to make this

8      determination, it's a matter of the plain text.  But I think

9      the legislative history in this case confirms that it was

10     both tampering with a document, i.e., (c)(1), and otherwise

11     obstructing an official proceeding.

12             Reading it that way would be consistent with,

13     again, a number of the courts I've already cited treating

14     1512(c)(2) as a residual clause much like the omnibus clause

15     in 1503, which the Supreme Court in Aguilar, including

16     Justice Scalia, referred to or understand as a kind of

17     catchall that catches or pertains to conduct that isn't

18     otherwise set out in other parts of 1503.  Similarly,

19     1512(c)(2) refers more broadly to conduct than simply a kind

20     of residual just sitting on top of 1512(c)(1).

21             **THE COURT:**  Although that argument gives the --

22     gives 15(c)(2) -- or 1512(c)(2) enormous breadth; in fact, a

23     breadth in which I think one might wonder what work the rest

24     of title 73 does at all if you had that.  And then it's a

25     little odd to think that Congress adopted such a sweeping

1    anti-obstruction statute, but did so in Sarbanes-Oxley, a

2    statute which dealt with financial wrongdoing and which was

3    motivated in part through the destruction of documents.  And

4    that it did that without mentioning a word of it in any of

5    the debate.

6           And in fact, to the extent there was debate about

7    1512(c)(2), as I understand it, it was largely in the nature

8    of saying, you know, yeah, this is redundant of 1519, but

9    belt and suspenders never hurt anybody.  And 1519 is a

10   statute which deals with destruction of evidence.

11          **MR. PEARCE:**  So I think that it's certainly right

12   that 1512(c)(1) deals with destruction of evidence, and 1519

13   deals with destruction of evidence.  But the Court looks

14   first and foremost to the plain language that the statute --

15   that Congress enacts.  If the language is broad -- and

16   certainly I would agree that it is, that's the language that

17   Congress selected.  And that's consistent with how courts

18   have interpreted the way that the Government has prosecuted

19   1512(c)(2) cases.

20          Now, if some of the policy concerns that the

21   defendants here and that I heard your Honor also ask

22   about -- and that I'm eager to address in a moment in terms

23   of limiting principles, comes into play, then I think that

24   that's a job for Congress, right.  That's a job for Congress

25   to say, well, wait a minute, this very broad language that

1    we enacted, we didn't mean it to be used as broadly as the

2    Government has used it.  We actually would like to limit it

3    in this particular way.  That's not a job for the courts.

4              THE COURT:  That is what Justice Kagan said in

5    Yates, but she was in dissent.

6              MR. PEARCE:  Well, I mean, that's consistently

7    what the courts have said in terms of the role of the court.

8    I can't remember, but the computer fraud and abuse case that

9    the Supreme Court just interpreted this term, you know, the

10   same dynamic where the idea is we look at the language that

11   Congress enacted.  I mean, in Yates, right, there's the list

12   of terms.  Sure, I think Justice Kagan had a good argument

13   that a fish is a tangible object.  I mean, it certainly has

14   a certain common-sense appeal.  But when you set it next to

15   terms as part of that same provision, the plurality relying

16   on these canons prevailed.  Here, I think there are

17   structural reasons or sort of structural differences in the

18   statute itself.  I don't want to repeat all of those, but --

19             THE COURT:  Well, actually I would like to hear

20   that.  But what I was saying is I guess my argument is

21   not -- and I don't mean to be raising a policy argument,

22   because I understand that's not my role.  But my role is to

23   interpret the statute as Congress wrote it and trying to

24   figure out what Congress had in mind.  The terms instructs,

25   influences or impedes are broad terms.  I think as the D.C.

1    Circuit noted in the North case and in the Poindexter case,

2    those terms can apply differently when you're dealing with

3    Congress than with a court.  What may be appropriate to do

4    before Congress may not be appropriate to do before a court.

5    And I'm not suggesting that storming Congress or storming a

6    court is ever appropriate.  But I still have to figure out

7    what the words mean in order to decide the case, and

8    eventually perhaps to instruct a jury on that.  So I need to

9    know what those words mean.  It's not, to me at least,

10   obvious what those words mean.

11          So when I ask you sort of what the limiting

12   principle is, I'm also asking you just what do those words

13   mean.  Impede, you know -- and I understand corruptly does

14   some work, and I want to ask you how you understand the term

15   corruptly.  Corruptly simply means with a bad purpose.  If

16   somebody calls up a member of a committee and says to the

17   member of the committee, "We're going to spend a ton of

18   money defeating you in the next election unless you go along

19   with us on this," does that violate -- is that corruptly

20   impeding a congressional proceeding?  I don't know.

21          **MR. PEARCE:**  I don't think so.

22          **THE COURT:**  But I think that was the type of thing

23   that the Court was concerned about -- the D.C. Circuit was

24   concerned about in North and Poindexter, sort of what it

25   does mean.  And maybe the answer -- it may be the answer to

1  my question is if somebody stands up at a hearing and starts

2  shouting in a hearing and disrupts the hearing and impedes

3  it from going forward, maybe your answer to that question is

4  yes, that does violate the statute, but that no sane judge

5  would give that person 20 years in jail for doing that.  I

6  guess that's what I'm trying to get at from you is do you

7  think that would violate the statute; and if so, is the

8  answer just that it's up to judges not to impose sentences

9  that are too harsh in those cases?

10         **MR. PEARCE:**  So I'll try to be as absolutely

11  precise as I can here, because I think it's sort of a

12  complicated thing to work through.  I think that standing up

13  in a proceeding would involve the actus reus of impeding,

14  interfering or obstructing.  That would be an obstructive,

15  an impeding or an interfering act, right.  So I think in

16  terms of what -- you know, what do the verbs mean, that kind

17  of thing would be obstructive behavior.

18         Would that violate 1512 is a separate question,

19  because I do think that corruptly does some of the work

20  here.  I think that's really the teachings of the Poindexter

21  and the North opinions, which is -- I mean, there is some

22  discussion of the verbs, but also kind of what work does

23  corruptly mean.  We view it to mean both intent to obstruct

24  as well as wrongfulness.  And that's consistent with the

25  Seventh Circuit's jury instructions of corruptly under 1512.

1    That's largely consistent with how courts have interpreted

2    corruptly post Arthur Andersen -- the Supreme Court's Arthur

3    Andersen decision in 2005.  And so I think to run through

4    some of the hypotheticals that your Honor gave would be sort

5    of useful in sussing that out.  One is basically one you've

6    already said, right.  Here, I'll even back it up a little

7    bit to include the official proceeding.

8           Let's say somebody barges into a meeting that a

9    representative is having with a foreign delegation, you

10   know, "I really don't want you to meet with this

11   delegation," and yells and shouts.  I think in that case of

12   a meeting, it's probably not a proceeding, right, and so it

13   probably falls out under that.  How about somebody who goes

14   inside a committee hearing -- or something that we will

15   agree is an official proceeding for purposes of the

16   hypothetical, and gets up and yells and shouts and says, "I

17   don't want this thing to go forward."  I think it's clear

18   that that person will have acted with intent to obstruct.  I

19   think there's a genuinely hard question about whether there

20   is adequate wrongfulness for us to prosecute that case.

21          As the Court probably knows, there are north of

22   500 defendants in the January 6th cases as a whole.  Many of

23   those were individuals who went inside the building, and

24   so -- and in so doing, violated a federal law.  But not all

25   of them have been charged, and we have not taken the

1    position that all of them have acted corruptly.  They have

2    all engaged in the actus reus of influencing, impeding or

3    obstructing, so that all falls within the verbs.  But it's

4    corruptly there that's doing the limiting principle work.

5         **THE COURT:**  I guess you need to explain to me a

6    little bit more then about what corruptly means.  Because I

7    would have thought that somebody who stands up in the middle

8    of a hearing -- particularly after maybe the chair has

9    repeatedly said, "There will be order in here; anyone will

10   be ejected who disrupts," and then stands up and starts

11   shouting in the middle of the hearing, they know they can't

12   do that.  They know they're impeding the proceeding.  They

13   have been warned that they'll be treated as a trespasser.

14   The person just sits down on the floor and makes the Capitol

15   Police drag them out of the room.  So they know in some

16   sense they're trespassing, they're not permitted to be

17   there.

18        How does -- why is that not corrupt at that point?

19        **MR. PEARCE:**  I'm loathe to kind of articulate a

20   precise point at which someone whose conduct tips over from

21   simply intent to obstruct with sort of willful behavior,

22   because there is some work that statutes like 18 U.S.C. 1752

23   and 40 U.S.C. 5104, which are misdemeanor -- basically

24   misdemeanor obstruction statutes.  I do think we can build

25   in facts until we get to a point where I think that person

1    probably has acted corruptly.

2              But the point is that the wrongfulness component

3    of corruptly, as the Government understands the term -- and

4    there's not a whole lot of guidance from the D.C. Circuit

5    case law.  But kind of understanding it as a matter of first

6    principles, as well as how courts have interpreted it in

7    other circuits, there's got to be some significant act of

8    wrongfulness.  So again, thinking about this in the context

9    of these cases:  Aggressively confronting a law enforcement

10   officer; going into the actual place where the certification

11   is happening and maybe sitting in the presiding officer's

12   chair and writing something.  These are the types of things

13   that get past sort of the wrongfulness component of the

14   corruptly post.

15             THE COURT:  So what troubles me a little bit about

16   that argument is it's a sort of trust us argument:  We're

17   only going to charge this in cases that we think are really

18   bad.  I think following D.C. Circuit precedent and Supreme

19   Court precedent, I need to figure out for myself what those

20   terms mean.  And if it really means something that is worse

21   than standing up in front of a committee and yelling,

22   knowing you shouldn't be doing it; and is as bad as

23   assaulting a police officer or a Capitol police officer or

24   engaging in threatening activity, I then worry about

25   whether -- as again I think was the case in -- I can't

1    remember if it was North or Poindexter.  But there may be a

2    constitutional vagueness problem that you walk into at that

3    point in time if you can't articulate to the Court sort of

4    what corruptly means in a way that would put the average

5    person on notice of when they're violating this statute

6    versus engaged in trespass or unlawful parading; and you say

7    oh, at this point I am now moving from committing a

8    misdemeanor to committing a felony.  And unless we can tell

9    the public where that line is, there's a problem.

10          **MR. PEARCE:**  Well, I think that's the question

11   that courts following Poindexter and North, right -- I mean,

12   there was the change to 1505, right.  I mean, that

13   didn't happen as to 1512.  I think following the Arthur

14   Andersen decision, right, there is content to what corruptly

15   is.  And respectfully, I think ultimately it's not so much a

16   question of vagueness or determination for kind of courts

17   figuring out where the line is, it's a jury question to

18   determine did this person -- right, so I think the standard

19   is intent to obstruct plus wrongfulness.

20          And how much wrongfulness is enough?  Well, I

21   mean, ultimately that's a question that's submitted to 12

22   jurors to determine whether or not that wrongfulness is

23   felony obstruction as opposed to some kind of a misdemeanor,

24   right.

25          **THE COURT:**  By wrongfulness, though, I'd like to

1  better understand what that means.  Is it with a bad

2  purpose?  You know, in some contexts -- I mean, I guess

3  maybe this is willfulness, with the knowledge that one's

4  actions are unlawful.

5         Where, for purposes of this statute, does that

6  line get drawn in a way that puts people on reasonable

7  notice instead of having to say, look, I don't really know,

8  it's going to depend what 12 people think as to whether they

9  think that was really bad or not?

10         **MR. PEARCE:**  So we think that the jury instruction

11  that the Seventh Circuit uses to interpret corruptly is

12  helpful.  It does refer to wrongfulness.  And I think that

13  that sits on top of, again, the way the Supreme Court in

14  Arthur Andersen interpreted corruptly.  These are terms

15  that, certainly as the Court -- as the D.C. Circuit said in

16  Poindexter and in North, do have some -- like there is -- I

17  don't want to call them vague, but there are aspects of them

18  that are not facially obvious on a first reading.  So giving

19  them content in the way that Arthur Andersen does and the

20  way that the Seventh Circuit jury instructions, wrongfulness

21  being wicked or corrupt I think is a way to do it.  And then

22  it's a question of what does that mean in the context of --

23  you know, in these cases, in the context of what happened on

24  January 6th.

25         Again, I don't think that that's a question that

1    ultimately is decided by the Court, right.  I mean, the

2    Court obviously gives the jury instruction.  It's a question

3    of the jury determining whether a person's conduct in

4    walking inside the Capitol at a time when the certification

5    vote could have happened and then leaving, is that

6    adequately wrongful.  You know, we as an office have not

7    taken that position writ large.  I suppose one could make

8    that argument.

9            But that is not the position -- that's not how we

10   interpret 1512(c)(2), in part for some of the concerns that

11   your Honor has listed, and kind of concerns about I think

12   that the Supreme Court over the years worried that the trust

13   us type argument doesn't fly, right.  I mean, there would

14   have to be some limiting principles.  I think corruptly does

15   that in the first sort of tweaked hypothetical.  I think the

16   official proceeding piece of that does that.

17           I mean, I'm happy to run through some of the other

18   hypotheticals that the Court gave, but I do think that those

19   are built in largely to corruptly, and to some extent into

20   the official proceeding language.

21           **THE COURT:**  Well, I guess I am interested in the

22   other hypotheticals.  I guess the ones I'm really most

23   interested in are the sit ins, the people standing up and

24   blurting things out.  Because all those cases are ones where

25   there are other statutes, and people typically do get

1       prosecuted for those things for misdemeanors.

2              And the question here is whether that's simply a

3       matter of prosecutorial discretion or whether it really is

4       that 1512(c) just doesn't -- (c)(2) just doesn't reach that

5       type of conduct.  And if it doesn't reach it, then I'm still

6       back to this question of why, and that's a difficult

7       question.

8              **MR. PEARCE:**  I think it's a difficult question.  I

9       think that for let's say the folks who come in and, again,

10      disrupt some kind of a hearing, I think typically that

11      isn't -- you don't get there with corruptly.  Getting up and

12      standing -- and I think part of what colors this under this

13      hypothetical is the concern articulated in Poindexter about

14      how to interpret corruptly in a legislative context, right.

15      I mean, you know, another way to say intent to obstruct is

16      intent to advocate.  And I think Poindexter gives the

17      example, consistent with the example your Honor just gave a

18      few minutes ago, if you call up a legislator and say, "Hey,

19      I really don't like that you're spending your time engaged

20      in this investigation, I think you really ought to be

21      pursuing some legislative agenda that I, one of your

22      constituents, thinks is preferable," that I suppose could be

23      described as intent to obstruct.  But I think we'd all

24      recognize that's also a perfectly valid and important part

25      of democratic advocacy, right.

1        And so in the context there, the wrongfulness

2   component of corruptly does need to do more work.  And I

3   think that that's a matter not just of prosecutorial

4   discretion, that's a matter of understanding the scope of

5   the statute under the context of trying to stop a

6   legislative proceeding -- which clearly is envisioned under

7   the official proceeding definition by Congress.

8        **THE COURT:**  I suppose one way to get at what's

9   concerning me may be to look at this through the lens, at

10  least partially, that Mr. Sullivan has been advocating.  I'm

11  not sure it gets ultimately to the result that Mr. Sullivan

12  is advocating; it may or it may not.  But it also may be a

13  way of giving the statute some greater meaning and clarity

14  in that the obstructive conduct has to be in the nature of

15  the types of things that we think of typically as

16  obstruction of justice.  And that you don't really think of

17  a sit in, and it's not traditionally understood, for

18  example, to be in the nature of obstruction of justice.

19       On the other hand, chasing the jurors out of a

20  building or chasing the presiding officer out of a building

21  might get closer.  Maybe that's one way to think about it

22  and put some meat on the bones here as to what these

23  concepts mean, is that corruptly obstructing, influencing or

24  impeding doesn't capture everything that one might do, even

25  with a bad purpose, for the purposes of impeding a

1    congressional proceeding.

2         So imagine that you are counsel for a big

3    corporation that's being investigated by a congressional

4    committee.  And you decide to take the key document that you

5    know they're looking for, and instead of putting it on the

6    top of the pile of documents, you're going to put it

7    somewhere 8,000 pages into the documents which is going to

8    buy you and your client some time while some poor staffer

9    has to search through it to find that document.  It's

10   certainly not a good purpose, it's perhaps a bad purpose --

11   it probably is a bad purpose to do that.  You're trying to

12   obstruct them.

13        On the other hand, it's not the sort of thing that

14   you usually classically think of as obstruction of justice.

15   On the other hand, running through a building saying, "Where

16   is Mike Pence?  We're going to hang Mike Pence," might feel

17   a little bit like running into a courthouse saying, "Where's

18   the judge?  We're going to hang the judge."  And if the

19   judge then flees the building as a result of that -- or the

20   courtroom, that feels a lot more like classic obstruction of

21   justice and threats to judicial officers.

22        As you can see, I'm struggling with this a little

23   bit to try and figure out how to give meaning to these words

24   in a way that construes the statute in a way that provides

25   fair notice to people about what's lawful and what's not

1    lawful, and tries also to cohere with what Congress really

2    may have been getting at.  Because I don't think Congress

3    was intending to say we're just going to pass a statute here

4    that makes it unlawful to do anything with a bad purpose

5    that impedes an official proceeding in any way.  Because

6    that's just an extremely capacious statute where you would

7    expect them to have said something, and not to have just put

8    it in the obstruction of justice section of the code to do

9    so.

10           **MR. PEARCE:**  So I think that's right, but I also

11    think the problem that your Honor's identifying is a problem

12    that inheres in interpreting many statutes.  I'm not -- I

13    don't want to resist a way of thinking about this that

14    likens the type of conduct that we saw on January 6th to

15    something that we might call somewhat amorphously

16    traditional obstruction of justice.  That's sort of likened

17    to chasing the Vice President and other members as either

18    jurors or the judge and the juror, and therefore say that

19    that -- I mean, I think that's a totally fair way to view

20    it, and a way that would -- you know, consistent -- you

21    know, would amount to a violation as I would understand it

22    of 1512.

23           I think it's a part of struggling with some of the

24    hard -- you know, the limits of statutes is there are going

25    to be hard, borderline cases.  In our view, charging into an

1    official -- a building where the only thing happening there

2    was a joint session of Congress engaged in an official

3    proceeding, that is the type of influencing, obstructing or

4    impeding done corruptly.  And obviously one has to adduce

5    the relevant facts as to each defendant to determine whether

6    that action was adequately corrupt and adequately -- and I

7    think frankly the obstructive act -- the actus reus is going

8    to be pretty similar in many instances.  And then the

9    question will be what is the -- what is it that

10   distinguishes a defendant's actions acting corruptly versus

11   someone who didn't.

12            Again, I think that's a perfectly legitimate

13   question for a jury to decide.  I don't see how on a Rule 12

14   motion that's something that ultimately is -- you know,

15   we've alleged the statutory terms.  There was a challenge of

16   course to notice as to the certification.  But I think the

17   defendants largely concede that they know that that's

18   what -- the legislative proceeding that we're talking about

19   here.  So while there may be hard cases on the margins, as

20   there always are going to be, I don't think that section

21   1512(c)(2) is very different from many federal statutes in

22   that respect.

23            THE COURT:  Mr. Pearce, you did touch on another

24   issue that I wanted to ask about, which is whether the

25   motion to dismiss the indictment is the right way to raise

1    these issues or whether these are issues that go to the

2    question of what the jury instructions should say.

3          In thinking about this, it did occur to me that

4    this may be an issue in which both the parties and the

5    Government would have an interest in having some early

6    resolution of the question rather than waiting for a couple

7    of years from now to have a resolution.  And obviously

8    whatever I say on this is going to be far from the last word

9    on this question.  There are other judges on this Court who

10   have similar motions pending, we're going to have to decide

11   them.  And then the D.C. Circuit's going to have to decide

12   the question, and then perhaps the Supreme Court.

13         You wonder whether the Government might run into

14   double jeopardy problems or just real headaches if we wait

15   and resolve all these issues in jury instructions, which the

16   Court of Appeals may or may not think are proper.  And then

17   you may -- depending on whatever the Court of Appeals sees,

18   see all sorts of motions with respect to other proceedings

19   that have taken place and whether they need to be set aside.

20   And whether there may be just some interest or appetite from

21   everyone involved, given the number of cases here, to try

22   and get a resolution sooner rather than later as to what

23   this provision means.

24         And among other things, if the Court of Appeals

25   were to conclude that the provision is not as capacious as

1    the Government contends, there may be other statutes that

2    you would want to use instead.  That obviously is not any of

3    my business.  But again, it's a reason why perhaps everyone

4    might have an interest in having some guidance sooner rather

5    than later on this question.  So I'd be interested in what

6    your thoughts are on that.

7              MR. PEARCE:  I mean, we certainly don't want to

8    spend a lot of time and prosecutorial energy and resources

9    prosecuting cases only to find that the view of the statute

10   that we're taking is not the view that the Court's taken,

11   and that undoes a lot of the work that's done.  I certainly

12   think resolution of the question of official proceeding --

13   that's a purely legal question, I think that would be

14   appropriately done right now.  And obviously that's the

15   particular issue that's teed up for the Court.

16             THE COURT:  Right.

17             MR. PEARCE:  The question of kind of the precise

18   definition and the appropriate jury instruction -- or the

19   appropriate interpretation which would then be codified in

20   the jury instruction.  Corruptly, I mean, that's of course

21   not before this Court.  I do think, though, that ultimately

22   that is going to be something where we will want to have a

23   jury instruction that is consistent across these cases that

24   we think accurately reflects what the law is.  But I don't

25   think that's a Rule 12 issue.  I do think that that's one

1    that's ultimately something that is appropriate for a jury

2    to decide.  Because the jury is not necessarily

3    understanding this term in the abstract, it's understanding

4    this term in the context of the allegations as to a

5    particular defendant.

6           So I don't think sort of resolving precisely what

7    corruptly means is appropriate, but I certainly think

8    resolving the official proceeding question would be.

9           **THE COURT:**  And I think I probably agree with you

10   with respect to both of those propositions, but it still

11   leaves unanswered the third question, which is whether

12   resolving the meaning of obstructs, influences or impedes or

13   otherwise obstructs, influences or impedes falls into the

14   first or the second of the two categories that you outline.

15   And it does seem to be -- I understand on corruptly why in

16   each and every one of these cases the evidence is going to

17   be different:  What motivated someone may be different; what

18   they said about what motivated them may be different; what

19   their actions were will be different.  So I can see how

20   corruptly is going to apply differently in each and every

21   case.  But the meaning of otherwise obstructs, influences or

22   impedes may be something that is a legal question that would

23   apply across the cases.

24          The question for me that I'm struggling with is

25   whether that is something that I should be deciding at this

1    point.  It's not clear whether it's in front of me at this

2    point, and whether it's something that I should be deciding,

3    in any event, at this point in the process.  I know it's

4    been teed up in at least one of the cases in front of one of

5    the other judges here.

6           **MR. PEARCE:**  So I don't think it's teed up at the

7    moment in front of you.  I mean, obviously you could -- and

8    I think you indicated earlier there's a potential you would

9    issue an order asking for additional briefing and

10   potentially argument focused on that.  I mean, I think that

11   is something that is potentially resolvable at Rule 12, but

12   I do think it does incorporate again the same kind of

13   questions of -- I mean, I'll put our cards on the table as

14   clearly is already the case.  The Government thinks

15   influences, impedes, interferes with is more broad and

16   covers the type of conduct at issue in this case and in many

17   others.  It's not simply, as I mentioned before, a residual

18   or a follow on from what happens in (c)(1).

19           But in terms of the Court resolving that, I mean,

20   I suppose there's a nontrivial argument that resolving it

21   earlier rather than later would have sort of more litigation

22   certainty.  But again, I think this Court should not do

23   that -- and I don't think you're saying otherwise, absent

24   some additional opportunities for the parties to kind of get

25   some thoughts in front of you on that.

1          **THE COURT:**  I certainly am not -- I'm raising it

2     at this point because it seems to me to be adjacent to the

3     argument that Mr. Sullivan has made, and it's also just an

4     important question for purposes of my thinking through what

5     the statute means.  But on the other hand, I don't want to

6     step out of my lane.  It's certainly not my intent to decide

7     some issue that has not been briefed to me or raised with

8     me.  But I also want to make sure that we're proceeding in

9     an orderly fashion, and that I'm not going to face this

10    issue two or three months down the road or have to revisit

11    this case in light of something that happens in another case

12    down the road.  I'm just trying to make sure that we're

13    proceeding in an orderly fashion.

14         Mr. Pearce, was there anything else you wanted to

15    add?

16         **MR. PEARCE:**  I could run through some of the other

17    hypotheticals.  I think we've probably exhausted kind of the

18    discussion.  I mean, I could say more about them, but I

19    think that sort of the principles that we, as the

20    Government, are using to understand 1512 and apply them I

21    hope are clear.  But if it would be useful to the Court -- I

22    mean, you mentioned the slashing tires example and the

23    campaign contribution example.

24         Well, I guess I'll just say I think both of those,

25    there's a stronger argument that 1512(c)(2) would apply

1   under those cases, assuming we've got an official proceeding

2   on the back end in terms of whether that would hit sort of

3   the corruptly feature as well as potentially also the

4   influence, impede or obstruct.  Whereas I think the

5   committee disruption cases, as I mentioned earlier, are less

6   likely to fall or potentially do not fall because they do

7   not meet the corruptly piece.  But I think that's probably

8   duplicative of other things that I've said.

9          **THE COURT:**  Fair enough.  Let me ask you one last

10   question, which is I know that nothing like this has ever

11   happened previously, and you're not going to be able to

12   point to some case that says yes, the Sixth Circuit said

13   that storming the Capitol during certification of the

14   election constitutes impeding an official proceeding.  But I

15   guess the question I had is the phrase obstructs, influences

16   or impedes appears either in that exact formulation or in

17   similar formulations throughout title 73.

18          Are there other cases in which the United States

19   has ever brought a successful prosecution for someone --

20   under a provision that deals with obstructing, influencing

21   or impeding, for someone for disruptive behavior for

22   preventing a trial from going forward, you know, by calling

23   in a bomb threat to the courthouse so everyone had to leave

24   the courthouse; or preventing a proceeding before the FCC

25   from going forward by standing in front of the building and

1    not letting anyone enter or anything like that?

2           I mean, I realize that there are other statutes

3    that those cases are often prosecuted under dealing with

4    unlawful parading or trespassing and things like that.  But

5    I guess the question I have is has the Justice Department,

6    or more importantly a court, ever construed the phrase

7    "obstructs, influences or impedes," or a similar phrase, to

8    include actions that force the evacuation of a building,

9    force people to flee, force people to leave, prevent people

10   from discharging their duties because they just can't get

11   there and do what they need to do?

12          MR. PEARCE:  I'm not aware of 1512(c)(2) -- sorry,

13   I have a dog in the background, being used in that --

14          THE COURT:  I think your dog has the answer to the

15   question.

16          MR. PEARCE:  It may have something more

17   informative to say than I do.  No, I'm not aware, though, of

18   a prosecution under title 73 -- excuse me, under chapter 73

19   used in that way.  As you mentioned, your Honor, there are

20   other statutes that have been used under those

21   circumstances.  Although you kind of prefaced your question

22   in this way, I think there's a strong argument that the

23   types of activities and events and conduct that we saw on

24   January 6th is quantitatively and qualitatively different

25   from any of the other conduct that was not prosecuted under

1    1512(c)(2).

2              **THE COURT:**  Okay, fair enough.

3         (Discussion off the record with the court reporter)

4              **THE COURT:**  Okay, Mr. Mayr.

5              **MR. MAYR:**  Thanks again, your Honor, for having

6    this hearing and having this dialogue with us.  This

7    dialogue has been very helpful.  It's been helpful to hear

8    the Court's position.  It's been helpful to hear some of the

9    Government's responses to some of the sub issues that you've

10   raised.  And we would welcome the opportunity to provide

11   additional briefing on many of these things that the Court

12   has brought up.

13             I will say this, you know, we are all struggling

14   with this difficult question as to whether this is an

15   official proceeding or not.  I think it's important to

16   recognize if this is difficult for the Court, imagine how

17   difficult it is for these two gentlemen that we see here on

18   the screen, for Mr. Knowlton and for Mr. Montgomery.

19   There's been lots of questions about fair notice.  There's

20   been questions about vagueness and whether it applies, and

21   all these questions that are being raised and asked and

22   discussed.  It really does raise this question about whether

23   they are placed on fair notice.  We appreciate that the

24   Court grasps that.

25             But I do want to turn back to just the question

1    before the Court, which is how do we interpret official

2    proceeding.  I would like to suggest a third way of looking

3    at this that hasn't been raised by either Mr. Sullivan or

4    Mr. Pearce, and it is as follows.  It's not about the

5    formality.  It's not about the seriousness of the

6    proceedings.  It's not about the wrongfulness of the actions

7    in disrupting the proceedings.  What it's about is the

8    consequence of the proceedings.  We've thrown out all these

9    different hypothetical scenarios, but I think this makes it

10   a clear, easy way to understand.

11          If someone were to interfere with this proceeding

12   right here -- which is clearly a judicial proceeding and is

13   clearly an official proceeding, at its very core it affects

14   these two gentlemen that we see here on the screen,

15   Mr. Knowlton and Mr. Montgomery.  This proceeding is to

16   decide whether they're going to face incarceration of up to

17   20 years in prison.  There are victims from their alleged

18   conduct, and that I think is an important thing to grasp

19   here.  When we look at what the obstruction statutes are

20   about and what the administration of justice is about, it's

21   that you have a victim of a crime, and you have someone

22   seeking to hold that person accountable for that.

23          Here's an example of a proceeding, an official

24   proceeding that any obstructive conduct could be prosecuted

25   under 1512.  Let's look at why -- what this was created for.

1    This was created as a result of the Enron crisis, right.

2    We've all seen in the briefing that this statute was created

3    in response to Arthur Andersen's destruction of property,

4    right.  Congress wanted to hold that conduct accountable.

5    Why?  Because there were victims as a result of that

6    conduct.  And information that Congress would have obtained

7    in an official proceeding before Congress would have been

8    referred to the Department of Justice for prosecution of

9    those individuals responsible for that document destruction,

10   and that's why the law was passed was to close that

11   loophole.

12        If we look at every single one of these scenarios,

13   what we see -- the common thread that we see through all of

14   them is where there is obstruction of an official proceeding

15   under 1512, it's for some conduct where a person's life or

16   liberty is at stake; where someone's property is at stake;

17   and where someone -- you have an alleged victim and you have

18   an alleged perpetrator.  So when we take that and we apply

19   it to the certification proceedings that are pending before

20   Congress, that's the thing, yes, it's a solemn proceeding;

21   yes, it's a formal proceeding.  Many would argue that what

22   occurred that day was incredibly wrongful and that there was

23   a ton of corruption.

24        But the problem is, is the decision made by

25   Congress that day on January 6th was not going to result in

1    someone's life or liberty being deprived from them, from a

2    person being incarcerated.  And that is the common thread

3    that you see across all of these cases, from Yates to

4    Poindexter to Berg.  In all of these cases where there's

5    obstructive conduct, obstructive of an official proceeding,

6    at its very core you're dealing with a proceeding where

7    someone -- whether it's Congress, whether it's a judge,

8    whether it's a grand jury, whether it's a law enforcement

9    agency, they are deciding to hold someone accountable for

10   breaking the law, period.

11        So that --

12        **THE COURT:**  So when would that ever happen in

13   Congress other than an impeachment proceeding?

14        **MR. MAYR:**  Well, again, look at the Enron

15   situation.  So we've seen multiple instances where Congress

16   has held -- pursuant to their powers of inquiry, have held

17   hearings and have obtained evidence by subpoenaing documents

18   and subpoenaing witnesses to appear.  Information that they

19   obtain gets referred to the Department of Justice for

20   criminal prosecution.  That would be the perfect scenario.

21        **THE COURT:**  But the one thing we know, though, is

22   that Congress is not in the business of enforcing the law.

23   I mean, that's a constitutional dictate.  Mazars makes clear

24   that Congress' power of inquiry is not a power that is

25   appurtenant to the prosecutorial powers of the United

1    States.  Congress' power of inquiry is simply for purposes

2    of legislating.

3           **MR. MAYR:**  I agree.  As I like to say it, the

4    legislative branch creates the laws, but the administration

5    of justice is for when those laws are broken.  Just because

6    Congress is -- there's nothing -- Congress can always refer

7    what evidence they obtain in a hearing to the Department of

8    Justice for prosecution.  And that's the distinction here,

9    is that when Congress is doing that, it's not like their

10   hands are tied.  It's not like whatever they gain or they

11   obtain in a congressional inquiry can't be referred to

12   prosecution.  That's why there's congressional grants of

13   immunity, because that's going to limit the ability of that

14   evidence to be used over in the judicial context.

15          So it's when Congress is engaged in that

16   fact-finding -- you know, some of the cases talk about the

17   judicial inquiry or a fact-finding mission, right.  When

18   they're engaged in those sort of fact-finding missions that

19   can be referred for criminal prosecution, that would be the

20   type of official proceeding that Congress intended.  Because

21   if we look at what the statute -- here's what we do is look

22   at the punishments, okay.  Congress -- there are statutes to

23   prohibit the person who obstructs a meeting between a

24   congressman and a foreign delegate.  There are statutes that

25   prohibit the person who speaks -- stands up during a hearing

1    on whether to pass legislation and obstructs that, right.

2    There are statutes designed to do that, and they're

3    punishable by six months, a year.  There's misdemeanors

4    offenses.

5           But what Congress says when they passed 1512 is

6    when you have someone obstructing justice, when you have

7    someone obstructing an official proceeding that is going to

8    result -- that is ultimately going to result in whether a

9    person is going to spend 20 years in prison or not, that's

10   much, much, much more serious.  We don't want to have people

11   obstructing or impeding with those proceedings, and

12   therefore we're going to put a higher punishment for

13   something like that.  It's because a person's life and

14   liberty is at stake.

15          I think that looking at that in addition to all

16   the other things that have been raised here today can truly

17   help, because what that does is it squares it with all the

18   case law that's out there.  Every single case where there's

19   been any sort of prosecution under chapter 73 or 1512,

20   there's always been some investigation related to someone

21   breaking the law at its very core.

22          Now, I do also want to address some other things

23   that have been brought up very briefly, as I'm going through

24   this.  I will say this -- and one of our associates brings

25   up a good point.  You know, Congress can -- if someone --

1  remember, with an official proceeding where Congress is --

2  Mr. Sullivan talked about calling witnesses, where a person

3  is subpoenaed to appear or documents are subpoenaed to be

4  brought before a congressional committee.  If people don't

5  comply with that, they can be held in contempt by Congress;

6  they can be locked up in the basement.

7          No one -- if someone -- you do not have those same

8  components on January 6th where people were subpoenaed;

9  where there were witnesses; where there was actual

10  testimony.  And the failure to comply with that would have

11  resulted in further prosecution.  False statements would

12  have been made that would have resulted in prosecutions

13  under 1001 for lying to Congress.  So again, I think that

14  those are all helpful.

15          But again, to turn back to -- I think, again, a

16  classic example is look at what the Congress wanted to do

17  with the Enron investigation but couldn't.  They wanted to

18  know everything that there was about the Enron prices.  When

19  they found out that Arthur Andersen was out there destroying

20  evidence -- okay, Arthur Andersen wasn't storming in and

21  protesting, they weren't doing anything that could even be

22  akin to this.  But when they were destroying documents,

23  Congress was upset that there was this loophole that they

24  wanted to close.  That's why they included this in there.

25          Again, if Congress can call people -- and we know

1    they did, they called Ken Lay to testify, they called

2    numerous witnesses to testify about what happened.  And we

3    know that evidence that they obtained from that hearing was

4    subsequently used to prosecute those individuals.  That

5    would clearly fall within the bounds of an official -- that

6    would fall within an official proceeding before Congress

7    where the obstruction would violate 1512.

8              That's not what we have in this particular case.

9    There's none of those features that exist in this particular

10   case.  So what you're left with is, again, individuals like

11   Mr. Knowlton and Mr. Montgomery sort of scratching their

12   heads.  I mean, Mr. Knowlton is in law school.  He knows a

13   little bit about how to read case law.  And I'm not

14   representing to the Court that he did this before

15   January 6th, but a person could be -- could go through all

16   of the case law and see, well, all these cases talk about an

17   official proceeding being related to something like related

18   to the administration of justice.  Me going to the Capitol

19   to protest and for my voice to be heard, I don't see how

20   that could violate the statute.  There really are some

21   concerns here.

22             One thing that I do want to bring up is in regards

23   to this using the other language that's in the statute, and

24   what about the otherwise language.  One thing I would submit

25   to the Court -- and again, we can -- I think with additional

1  briefing we can clear this up and make this clearer.  But if

2  otherwise obstructs in 1512(c) has no limitation, then

3  anything can really be considered to be obstructive conduct.

4  It really is going to raise a concern that based on that

5  interpretation, that this statute is just going to become

6  void for vagueness.

7          The rule of lenity I think is something to

8  consider here, your Honor.  We kind of brought it up in a

9  footnote in our reply.  The Court is aware of the rule of

10  lenity, and how when you're stuck with a situation like

11  this, you have to resolve it in the favor of a defendant

12  limiting the interpretation so that it's clear to a person

13  what is in violation of the statute and what's not in

14  violation of the statute.  I'd like the Court to consider

15  that.  And again, we can further brief on that issue as

16  well.

17          But again, at the end of the day, your Honor, the

18  legislative -- the legislature is there to create the laws.

19  These statutes -- 1512 is designed when someone interferes

20  with someone breaking those laws created by statute.  That

21  is the simplest way to look at this.  And combined with all

22  the other reasons that Mr. Sullivan has presented to the

23  Court, I think that there's a strong -- a very strong case

24  based on the case law that the legal interpretation is what

25  applies.  It is the legal definition and not this lay

**1** understanding of what is an official proceeding; but this

**2** legal distinction and looking at the context and

**3** understanding that this statute was designed to prohibit

**4** conduct that corruptly obstructs an official proceeding;

**5** namely, something related to the administration of justice.

**6**      **THE COURT:**  All right.  Well, thank you.  So

**7** Mr. Sullivan, how would you like to proceed at this point?

**8**      **MR. SULLIVAN:**  So as a housekeeping matter, your

**9** Honor, we formally would request some briefing schedule on

**10** the scope of corruptly and otherwise obstructs.  So if it

**11** helps the Court, I'll make an oral motion that count 10 be

**12** dismissed as to Mr. Knowlton.  Ms. Jahn of course will speak

**13** for her client.  If the Court is inclined to ask us to brief

**14** that, then we will welcome an opportunity to brief it.

**15**      So we'd make that oral motion to dismiss the

**16** count.

**17**      **THE COURT:**  When would you like to file a brief?

**18**      **MR. SULLIVAN:**  Your Honor, give us -- the Court's

**19** indulgence.  Give me two seconds to confer with co-counsel

**20** via text.

**21**      **THE COURT:**  That's fine.  I realize August is a

**22** difficult month.  I'm not pressing you for a super prompt

**23** turnaround, I'll leave up to you what you think is

**24** appropriate.

**25**      **MR. SULLIVAN:**  Okay.  In that event, your Honor,

1   is 30 days appropriate?

2           **THE COURT:**  Any objection, Mr. Pearce?

3           **MR. PEARCE:**  Sorry, I was having trouble with my

4   mute button.  No objection, your Honor.

5           **THE COURT:**  So then 30 days from today, why don't

6   I give you until September 3rd which is a Friday.

7           **MR. SULLIVAN:**  Very well, your Honor.

8           **THE COURT:**  Mr. Pearce, how much time would the

9   Government like for a response?

10          **MR. PEARCE:**  I think we would be comfortable with

11  just a couple weeks; we could respond within a couple weeks.

12          **THE COURT:**  Okay.  So how about the 17th for the

13  Government to file its response?

14          **MR. PEARCE:**  That's fine, your Honor.

15          **THE COURT:**  And Mr. Sullivan, are you going to

16  want to reply?

17          **MR. SULLIVAN:**  Very brief turnaround for a reply,

18  yes, your Honor.

19          **THE COURT:**  Okay.  September 24th for the reply

20  then.

21          **MR. SULLIVAN:**  That's agreeable.

22          **THE COURT:**  And it would be helpful for me if the

23  parties can think about what the terms that I've been

24  highlighting mean, and whether there are cases or examples

25  that might help elucidate what they mean.

1              Mr. Pearce, even if it's an example, for example,

2      such as witness tampering or destroying other types of

3      evidence, anything that you have that will help sort of

4      elucidate what the phrase obstructs, influences or impedes

5      means from both the case law and cases that have been

6      brought where they might not even be reported cases, that

7      would be helpful.

8              **MR. PEARCE:**  Certainly, your Honor.

9              **MR. SULLIVAN:**  And the final housekeeping matter,

10     your Honor.  I know there have been a lot of hypotheticals

11     throughout the course of the discussion.  I just wanted to

12     point out to the Court with respect to Mr. Knowlton that he

13     did not, and the Government does not allege, that he stormed

14     the Senate floor; he did not, nor does the Government

15     allege, that he set foot on the Senate floor; he did not,

16     and the Government does not allege, that he struck an

17     officer.  So I know for purposes of fleshing out some of

18     these issues we use certain hypotheticals.  But the facts

19     also, particularly with respect to what we're going to

20     brief, play an important role.

21              As the Court knows, when legislators start

22     throwing adjectives, that tends to suggest that they are

23     wanting to indicate a heightened mens rea with respect to a

24     given alleged criminal act.  So that's going to be obviously

25     a big part of what we're going to ask your Honor to

1    consider.  But I just wanted to say that point on the

2    record, your Honor.  Thanks for the indulgence.

3              **THE COURT:**  Thank you, Mr. Sullivan, for raising

4    that.  Just to be clear to everyone involved here, I've

5    thrown out a whole bunch of hypotheticals on both extremes

6    here, including circumstances that I think are a far cry

7    from what is alleged to have happened here such as sit ins

8    and people standing up and saying things at hearings.  I

9    don't mean to analogize any of that to what has allegedly

10   happened here or to suggest that your client did or didn't

11   do anything.

12             My purpose in raising all those hypotheticals is

13   that in addition to having to decide what to do in this

14   case -- or these cases, I have to just figure out what the

15   statute means in all sorts of other cases.  And I just want

16   to make sure that I'm not adopting an interpretation or

17   reading the statute which could have effects in other cases

18   that are not before the Court.  And so when you read a

19   statute, you're not only deciding the case in front of you,

20   but you're deciding potentially other cases based on the

21   meaning that you're ascribing to the statute.

22             Mr. Sullivan, anything further?

23             **MR. SULLIVAN:**  Nothing on behalf of Mr. Knowlton,

24   your Honor.

25             **THE COURT:**  Ms. Jahn, anything further?

1      **MS. JAHN:**  No, your Honor.  I'll just submit

2  additional argument in the supplemental briefing that you've

3  instructed us to file.

4      **THE COURT:**  And you're welcome to file your own

5  brief on that same schedule.

6      **MS. JAHN:**  Thank you, your Honor.  We may join

7  forces, we'll collaborate.

8      **THE COURT:**  Well, I'll leave that up to you to

9  decide.

10     Mr. Pearce, anything further today?

11     **MR. PEARCE:**  Not from the Government, your Honor.

12     **THE COURT:**  Well, thank you all.  This was helpful

13  for me, I appreciate it.

14     (Proceedings adjourned at 12:50 p.m.)

15

16

17

18

19

20

21

22

23

24

25

1                        **C E R T I F I C A T E**

2

3              I, **Jeff Hook, Official Court Reporter**,

4     certify that the foregoing is a true and correct transcript

5     of the remotely reported proceedings in the above-entitled

6     matter.

7                        **PLEASE NOTE:**  This hearing occurred during

8     the COVID-19 pandemic and is therefore subject to the

9     technological limitations of court reporting remotely.

10

11

12

13        **August 4, 2021**

14            **DATE**                              **Jeff M. Hook**

15

16

17

18

19

20

21

22

23

24

25

**0**

0046 [1]    1/4
02138 [1]    2/4

**1**

1,170 [1]    16/10
10 [2]    3/24 64/11
1001 [1]    61/13
1102 [1]    32/4
11:06 [1]    1/6
12 [5]    40/21 41/8
    47/13 49/25 51/11
1250 [1]    1/14
12:50 p.m [1]    68/14
1331 [1]    1/19
15 [1]    32/22
1503 [2]    32/15
    32/18
1505 [1]    40/12
1512 [51]    3/25 4/15
    5/14 6/9 6/17 8/2
    9/15 9/19 9/21
    10/11 10/25 12/13
    12/23 13/19 14/9
    14/13 16/23 20/21
    20/23 20/25 21/17
    23/11 23/16 24/9
    29/9 31/8 32/14
    32/19 32/20 32/22
    33/7 33/12 33/19
    36/18 36/25 40/13
    42/10 43/4 46/22
    47/21 52/20 52/25
    54/12 55/1 56/25
    57/15 60/5 60/19
    62/7 63/2 63/19
1515 [3]    26/5 26/19
    27/12
1519 [10]    6/8 6/12
    6/13 7/2 9/19 28/3
    29/9 33/8 33/9
    33/12
1629 [1]    2/8
1752 [1]    38/22
17th [1]    65/12
18 [3]    3/25 6/9
    38/22
19 [1]    69/8
1:00 [1]    17/19
1:21-cr-0046 [1]
    1/4

**2**

20 [3]    36/5 56/17
    60/9
20-year [1]    31/23
20001 [1]    2/25
20004 [1]    1/24
20006 [1]    2/9
2005 [1]    37/3
2009 [1]    27/20
2013 [1]    28/19
2015 [1]    28/25
2021 [1]    1/5
20530 [3]    1/15 1/17
    1/20
21-46 [1]    3/3
24th [1]    65/19

**3**

30 [2]    65/1 65/5
300 [1]    2/8
333 [1]    2/24
3rd [1]    65/6

**4**

40 [1]    38/23
46 [1]    3/3
4th [1]    1/17

**5**

500 [2]    1/23 37/22
5104 [1]    38/23
5300 [1]    2/6
555 [1]    1/17

**6**

625 [1]    1/23
6th [16]    1/19 11/1
    14/8 14/9 14/11
    17/19 23/1 30/24
    31/6 37/22 41/24
    46/14 54/24 57/25
    61/8 62/15

**7**

73 [7]    5/15 8/16
    32/24 53/17 54/18
    54/18 60/19
750 [1]    2/6
77007 [1]    2/6

**8**

8,000 [1]    45/7

**9**

950 [1]    1/14

**A**

a.m [1]    1/6
ability [1]    59/13
able [1]    53/11
above [1]    69/5
above-entitled [1]
    69/5
absent [3]    14/8
    14/8 51/23
absolutely [1]
    36/10
abstract [1]    50/3
abuse [1]    34/8
ACCA [1]    7/9
Accepting [1]    10/13
accidentally [1]
    18/8
accord [1]    14/13
accountable [3]
    56/22 57/4 58/9
accurately [1]
    49/24
across [3]    49/23
    50/23 58/3
act [11]    3/14 6/13
    16/10 22/18 29/14
    31/2 32/5 36/15
    39/7 47/7 66/24
acted [3]    37/18
    38/1 39/1

acting [1]    47/10
action [3]    1/3 3/2
    47/6
actions [5]    41/4
    47/10 50/19 54/8
    56/6
activities [1]
    54/23
activity [1]    39/24
acts [3]    28/23 29/7
    30/14
actual [2]    39/10
    61/9
actually [7]    4/16
    6/3 11/15 19/2
    19/25 34/2 34/19
actus [3]    36/13
    38/2 47/7
add [7]    6/3 24/11
    24/14 24/19 25/16
    27/23 52/15
added [4]    6/9 21/1
    21/20 21/21
addition [4]    6/3
    6/20 60/15 67/13
additional [10]    4/8
    4/9 5/20 27/15
    28/16 51/9 51/24
    55/11 62/25 68/2
address [3]    9/19
    33/22 60/22
adduce [1]    47/4
adequate [1]    37/20
adequately [3]    42/6
    47/6 47/6
adjacent [1]    52/2
adjectives [1]
    66/22
adjourn [4]    18/1
    22/17 24/3 24/4
adjourned [3]    16/5
    17/22 68/14
adjournment [1]    8/4
adjudicative [1]
    27/6
administration [6]
    10/7 22/5 56/20
    59/4 62/18 64/5
admissibility [1]
    14/6
admittedly [2]
    27/25 31/4
adopt [2]    7/19 7/22
adopted [3]    6/9 8/6
    32/25
adopting [1]    67/16
adverse [1]    12/4
advocacy [1]    43/25
advocate [1]    43/16
advocating [2]
    44/10 44/12
affects [1]    56/13
afield [1]    14/18
again [29]    7/9 7/10
    12/19 15/22 20/16
    21/9 24/19 28/20
    32/6 32/13 39/8
    39/25 41/13 41/25
    43/9 47/12 49/3
    51/12 51/22 55/5

58/14 61/13 61/15
    61/15 61/25 62/10
    62/25 63/15 63/17
agency [3]    26/20
    26/22 58/9
agenda [1]    43/21
agent [1]    30/18
Aggressively [1]
    39/9
ago [1]    43/18
agree [8]    13/20
    16/16 23/6 23/7
    33/16 37/15 50/9
    59/3
agreeable [1]    65/21
agreed [1]    23/25
agrees [1]    3/14
Aguilar [1]    32/15
ahead [1]    18/9
aims [1]    19/21
akin [4]    11/7 12/20
    12/21 61/22
al [1]    1/6
allegations [1]
    50/4
allege [3]    66/13
    66/15 66/16
alleged [7]    20/17
    47/15 56/17 57/17
    57/18 66/24 67/7
allegedly [1]    67/9
allow [1]    25/9
alone [1]    29/25
along [1]    35/18
alter [2]    28/2 30/3
alteration [1]    5/24
although [4]    20/25
    21/18 32/21 54/21
always [3]    47/20
    59/6 60/20
Amendment [3]    19/20
    19/22 20/3
AMERICA [2]    1/3 3/3
among [1]    48/24
amorphously [1]
    46/15
amount [1]    46/21
analogize [1]    67/9
analogous [1]    4/24
analogy [2]    9/20
    19/21
analysis [4]    9/23
    10/24 22/24 28/1
analyze [1]    15/5
analyzed [1]    15/6
Andersen [7]    37/2
    37/3 40/14 41/14
    41/19 61/19 61/20
Andersen's [1]    57/3
angry [1]    22/13
anti [1]    33/1
anti-obstruction [1]
    33/1
apologies [1]    20/20
appeal [1]    34/14
Appeals [3]    48/16
    48/17 48/24
appear [3]    3/14
    58/18 61/3
APPEARANCES [2]

**A**

APPEARANCES... [2]
1/12 2/1
appearing [2]   3/4
22/11
appears [2]   22/21
53/16
appetite [1]   48/20
application [3]
11/19 31/7 31/8
applied [1]   15/21
applies [8]   6/20
6/23 6/25 7/12 7/23
9/15 55/20 63/25
apply [19]   6/11
6/23 6/25 7/15 8/2
8/8 8/9 8/10 8/13
8/14 8/19 15/22
18/15 35/2 50/20
50/23 52/20 52/25
57/18
appreciate [2]
55/23 68/13
approach [1]   15/6
appropriate [10]
3/22 35/3 35/4 35/6
49/18 49/19 50/1
50/7 64/24 65/1
appropriately [2]
13/25 49/14
appurtenant [1]
58/25
arguably [3]   6/11
6/25 27/5
argue [3]   5/14
14/24 57/21
arguing [1]   4/2
argument [30]   4/1
4/9 5/12 11/14 12/7
17/9 17/21 20/9
20/16 21/25 23/20
25/16 27/16 28/19
29/5 31/9 32/11
34/12 34/20 34/21
39/16 39/16 42/8
42/13 51/10 51/20
52/3 52/25 54/22
68/2
arguments [6]   4/7
18/3 20/3 20/7
25/25 27/15
arson [1]   29/16
Arthur [8]   37/2
37/2 40/13 41/14
41/19 57/3 61/19
61/20
articulate [2]
38/19 40/3
articulated [2]
9/24 43/13
ascribing [1]   67/21
aside [5]   21/25
23/4 23/5 23/14
48/19
aspect [1]   31/24
aspects [1]   41/17
assaulting [1]
39/23
assemble [1]   17/18

associates [1]
60/24
assuming [1]   53/1
attempted [1]   11/15
attempting [1]
16/17
attention [1]   16/17
Attorney's [1]   1/16
attorneys [1]   25/10
attributes [1]   14/7
August [2]   1/5
64/21
authority [2]   16/2
16/10
authorized [1]
26/20
Ave [2]   1/14 1/23
Avenue [1]   2/24
average [1]   40/4
award [1]   26/12
aware [5]   10/13
31/5 54/12 54/17
63/9

**B**

back [13]   7/18
17/23 21/13 21/18
23/18 24/23 25/1
25/11 37/6 43/6
53/2 55/25 61/15
background [1]
54/13
bad [9]   35/15 39/18
39/22 41/1 41/9
44/25 45/10 45/11
46/4
Bankruptcy [1]   2/24
barges [1]   37/8
based [4]   15/13
63/4 63/24 67/20
basement [1]   61/6
basically [2]   37/5
38/23
become [1]   63/5
Begay [3]   7/7 29/13
29/15
behalf [2]   4/2
67/23
behavior [3]   36/17
38/21 53/21
belt [1]   33/9
Berg [2]   28/19 58/4
better [1]   41/1
big [4]   21/13 24/8
45/2 66/25
bit [7]   8/1 37/7
38/6 39/15 45/17
45/23 62/13
Black's [1]   16/13
block [1]   8/7
blurting [1]   42/24
board [1]   26/12
bomb [1]   53/23
bones [1]   44/22
borderline [1]
46/25
both [14]   3/4 15/18
17/25 17/25 27/4
31/8 32/3 32/10
36/23 48/4 50/10

52/24 66/5 67/5
bounds [1]   62/5
Brady [1]   3/4
branch [2]   19/12
59/4
breaching [1]   31/1
breadth [2]   32/22
32/23
break [1]   31/15
breaking [3]   58/10
60/21 63/20
brief [9]   8/4 17/4
63/15 64/13 64/14
64/17 65/17 66/20
68/5
briefed [1]   52/7
briefing [10]   4/8
5/20 27/16 28/16
51/9 55/11 57/2
63/1 64/9 68/2
briefings [1]   26/1
briefly [1]   60/23
briefs [3]   10/7
26/11 28/15
bring [3]   24/20
24/21 62/22
brings [1]   60/24
broad [5]   7/19
33/15 33/25 34/25
51/15
broader [1]   21/7
broadly [3]   7/17
32/19 34/1
broken [1]   59/5
brought [7]   3/25
53/19 55/12 60/23
61/4 63/8 66/6
Bruhl [1]   29/4
build [1]   38/24
building [8]   37/23
44/20 44/20 45/15
45/19 47/1 53/25
54/8
built [1]   42/19
bunch [1]   67/5
burglary [1]   29/16
business [2]   49/3
58/22
But courts [1]
28/12
button [1]   65/4
buy [1]   45/8

**C**

call [5]   28/13
41/17 43/18 46/15
61/25
called [4]   5/9
10/21 62/1 62/1
calling [2]   53/22
61/2
calls [1]   35/16
Cambridge [1]   2/4
came [3]   7/11 11/14
17/23
CAMILLE [2]   2/7 3/7
campaign [2]   8/11
52/23
can [30]   7/25 9/18
13/3 13/25 14/19

20/5 22/25 24/17
24/21 24/21 25/1
29/4 35/2 36/11
38/24 40/8 45/22
50/19 59/6 59/19
60/16 60/25 61/5
61/6 61/25 62/25
63/1 63/3 63/15
65/23
candor [1]   8/24
canon [2]   6/21 6/24
canons [2]   8/20
34/16
capacious [2]   46/6
48/25
Capitol [8]   11/15
31/2 31/15 38/14
39/23 42/4 53/13
62/18
capture [2]   12/9
44/24
captured [3]   26/9
29/9 31/17
captures [2]   22/7
31/12
cards [1]   51/13
CARES [1]   3/14
case [38]   6/11
13/25 15/5 15/6
16/11 19/14 19/17
20/8 28/19 30/13
30/18 30/25 32/9
34/8 35/1 35/1 35/7
37/11 37/20 39/5
39/25 50/21 51/14
51/16 52/11 52/11
53/12 60/18 60/18
62/8 62/10 62/13
62/16 63/23 63/24
66/5 67/14 67/19
cases [39]   9/14
9/22 10/13 14/17
16/16 26/16 27/11
30/12 30/24 33/19
36/9 37/22 39/9
39/17 41/23 42/24
46/25 47/19 48/21
49/9 49/23 50/16
50/23 51/4 53/1
53/5 53/18 54/3
58/3 58/4 59/16
62/16 65/24 66/5
66/6 67/14 67/15
67/17 67/20
catchall [3]   28/22
29/7 32/17
catches [1]   32/17
categories [1]
50/14
CBO [1]   26/13
certain [5]   4/21
13/11 18/20 34/14
66/18
certainly [18]
13/10 14/25 26/10
28/16 29/4 30/22
32/1 33/11 33/16
34/13 41/15 45/10
49/7 49/11 50/7
52/1 52/6 66/8

**C**

certainty [1]   51/22
certification [9]
4/25 12/10 27/9
30/25 39/10 42/4
47/16 53/13 57/19
certify [5]   4/13
13/13 13/15 13/16
69/4
cetera [2]   27/5
28/2
chair [3]   26/7 38/8
39/12
chairman [1]   8/9
challenge [1]   47/15
chamber [1]   26/8
chambers [2]   16/6
17/23
change [1]   40/12
changed [1]   28/9
chapter [2]   54/18
60/19
characterize [1]
17/2
charge [1]   39/17
charged [1]   37/25
charging [1]   46/25
chasing [3]   44/19
44/20 46/17
check [1]   21/18
circle [1]   21/13
circuit [26]   9/14
9/20 10/3 12/2 15/8
16/8 16/13 16/15
16/18 16/24 21/9
26/16 26/17 28/18
28/20 28/24 30/13
30/18 35/1 35/23
39/4 39/18 41/11
41/15 41/20 53/12
Circuit's [2]   36/25
48/11
circuits [5]   9/18
14/14 16/12 16/25
39/7
circular [1]   21/11
circumscribed [2]
13/21 13/22
circumstance [1]
14/4
circumstances [4]
11/18 14/17 54/21
67/6
cite [3]   20/19
20/21 29/4
cited [2]   28/15
32/13
cites [1]   16/9
clarity [1]   44/13
classic [2]   45/20
61/16
classically [1]
45/14
clause [9]   6/1 6/4
6/6 7/9 7/10 7/16
29/25 32/14 32/14
clear [15]   7/20
8/19 8/20 9/13 9/22
18/16 32/2 37/17

51/1 52/21 56/10
58/23 63/1 63/12
67/4
clearer [1]   63/1
clearly [7]   29/5
30/1 44/6 51/14
56/12 56/13 62/5
client [4]   18/24
45/8 64/13 67/10
close [2]   57/10
61/24
closer [1]   44/21
co [2]   24/14 64/19
co-counsel [2]
24/14 64/19
code [1]   46/8
codified [1]   49/19
cohere [1]   46/1
collaborate [1]
68/7
college [3]   27/9
30/25 31/10
colloquy [1]   26/3
colors [1]   43/12
COLUMBIA [2]   1/1
1/23
combined [1]   63/21
comfortable [1]
65/10
coming [1]   19/13
commanded [1]   17/18
commence [1]   5/4
comment [1]   14/10
committee [13]   8/10
22/12 22/13 22/16
22/17 22/17 35/16
35/17 37/14 39/21
45/4 53/5 61/4
committees [1]
10/23
committing [2]   40/7
40/8
common [4]   15/15
34/14 57/13 58/2
common-sense [1]
34/14
company [1]   6/22
completed [1]   24/4
completely [2]
13/24 31/19
complicated [1]
36/12
comply [2]   61/5
61/10
component [3]   39/2
39/13 44/2
components [1]   61/8
computer [1]   34/8
conceal [1]   30/3
concealment [1]
5/24
concede [1]   47/17
conceivably [1]   4/8
concepts [1]   44/23
concern [2]   43/13
63/4
concerned [2]   35/23
35/24
concerning [1]   44/9
concerns [5]   9/11

33/20 42/10 42/11
62/21
concession [1]
30/15
conclude [2]   3/21
48/25
concluded [1]   7/9
conduct [22]   20/17
29/17 31/4 31/13
32/17 32/19 38/20
42/3 43/5 44/14
46/14 51/16 54/23
54/25 56/18 56/24
57/4 57/6 57/15
58/5 63/3 64/4
confer [2]   25/10
64/19
conferred [1]   3/10
confirms [1]   32/9
conflicts [1]   19/21
confronted [2]
27/21 29/5
confronting [1]
39/9
Congress [69]   4/15
4/17 4/20 4/25 5/9
5/16 6/18 7/16 7/17
10/15 10/16 10/16
10/18 11/10 11/20
11/20 14/23 15/24
17/17 17/18 17/21
18/16 19/12 19/19
22/4 23/9 26/6 27/1
27/10 32/6 32/25
33/15 33/17 33/24
33/24 34/11 34/23
34/24 35/3 35/4
35/5 44/7 46/1 46/2
47/2 57/4 57/6 57/7
57/20 57/25 58/7
57/13 58/15 58/22
59/6 59/6 59/9
59/15 59/20 59/22
60/5 60/25 61/1
61/5 61/13 61/16
61/23 61/25 62/6
Congress' [2]   58/24
59/1
congressional [14]
8/3 8/12 10/22
21/23 22/9 22/12
26/9 26/12 35/20
45/1 45/3 59/11
59/12 61/4
congressman [1]
59/24
connects [1]   9/14
consents [1]   3/19
consequence [1]
56/8
consider [7]   9/18
17/23 18/1 19/11
63/8 63/14 67/1
consideration [1]
5/5
considered [3]   18/2
18/3 63/3
considering [2]
11/21 16/6
consistent [10]

10/5 28/7 30/9
32/12 33/17 36/24
37/1 43/17 46/20
49/23
consistently [2]
30/23 34/6
constituents [1]
43/22
constitute [2]   4/14
23/2
constitutes [1]
53/14
Constitution [7]
2/24 5/1 13/21
17/17 18/19 18/23
19/25
constitutional [3]
14/12 40/2 58/23
construed [6]   6/1
6/5 6/18 7/11 13/12
54/6
construes [1]   45/24
contemplated [2]
13/19 14/13
contempt [2]   18/21
61/5
contends [1]   49/1
content [2]   40/14
41/19
context [10]   5/15
39/8 41/22 41/23
43/14 44/1 44/5
50/4 59/14 64/2
contexts [1]   41/2
continue [1]   23/10
CONTINUED [1]   2/1
contribution [2]
8/11 52/23
convert [1]   12/22
convocation [1]
12/2
core [4]   27/16
56/13 58/6 60/21
corporation [1]
45/3
correctly [1]   13/12
corrupt [3]   38/18
41/21 47/6
corruption [1]
57/23
corruptly [36]   8/22
32/2 35/13 35/15
35/15 35/19 36/19
36/23 36/25 37/2
38/1 38/4 38/6 39/1
39/3 39/14 40/4
40/14 41/11 41/14
42/14 42/19 43/11
43/14 44/2 44/23
47/4 47/10 49/20
50/7 50/15 50/20
53/3 53/7 64/4
64/10
corruptly post [1]
39/14
cough [2]   9/8 9/9
counsel [4]   24/14
28/5 45/2 64/19
count [4]   3/24 3/25
64/11 64/16

## C

couple [4]   24/18
48/6 65/11 65/11
course [7]   5/12
24/16 28/11 47/16
49/20 64/12 66/11
court [84]
Court in [1]   6/20
Court's [14]   9/10
9/11 10/24 14/5
16/17 18/17 22/20
23/14 24/13 25/22
37/2 49/10 55/8
64/18
courthouse [4]
19/14 45/17 53/23
53/24
courtroom [1]   45/20
courts [31]   2/24
7/18 9/20 10/3 10/6
10/9 11/2 11/4 12/3
12/12 12/20 12/23
13/3 16/15 16/18
20/19 21/8 21/10
26/21 28/12 29/12
30/10 30/11 32/13
33/17 34/3 34/7
37/1 39/6 40/11
40/16
cover [2]   22/2 22/3
covered [2]   17/9
20/17
covers [2]   30/17
51/16
COVID [1]   69/8
COVID-19 [1]   69/8
cr [1]   1/4
create [1]   63/18
created [4]   56/25
57/1 57/2 63/20
creates [1]   59/4
crime [1]   56/21
criminal [8]   1/3
1/14 3/2 18/22
19/14 58/20 59/19
66/24
crisis [1]   57/1
criteria [1]   15/17
critical [1]   10/24
cry [1]   67/6
cut [3]   6/13 7/18
18/8

## D

D.C [6]   34/25 35/23
39/4 39/18 41/15
48/11
DANI [2]   1/22 3/7
Daniels [1]   29/4
DATE [1]   69/14
day [4]   5/3 57/22
57/25 63/17
days [2]   65/1 65/5
DC [7]   1/5 1/15
1/17 1/20 1/24 2/9
2/25
De [1]   29/4
De Bruhl-Daniels [1]
29/4

deal [1]   21/14
dealing [4]   14/16
35/2 54/3 58/6
deals [5]   22/5
33/10 33/12 33/13
53/20
dealt [1]   33/2
debate [3]   14/19
33/5 33/6
decide [11]   16/22
35/7 45/4 47/13
48/10 48/11 50/2
52/6 56/16 67/13
68/9
decided [3]   28/8
28/25 42/1
deciding [5]   50/25
51/2 58/9 67/19
67/20
decision [4]   15/20
37/3 40/14 57/24
decisions [1]   14/5
defeating [1]   35/18
defendant [7]   1/21
2/2 3/6 3/7 47/5
50/5 63/11
defendant's [1]
47/10
defendants [9]   1/7
3/4 4/12 5/13 31/13
31/13 33/21 37/22
47/17
defendants' [1]
3/24
Defender's [1]   1/22
defense [2]   3/14
9/3
defense's [1]   9/4
define [1]   31/16
defined [2]   4/16
17/20
defines [1]   21/11
definition [1]
10/16 11/4 15/9
15/10 15/11 16/7
16/9 23/13 44/7
49/18 63/25
definitional [1]
16/21
definitions [3]
15/9 15/21 16/19
degree [3]   12/6
14/14 26/13
delegate [1]   59/24
delegation [2]   37/9
37/11
democratic [1]
43/25
Department [6]   1/13
1/19 54/5 57/8
58/19 59/7
departure [1]   16/15
depend [1]   41/8
depending [1]   48/17
deprived [1]   58/1
described [1]   43/23
designed [3]   60/2
63/19 64/3
destroy [2]   11/16
11/19

destroyed [1]   6/16
destroying [3]
61/19 61/22 66/2
destruction [13]
5/24 27/23 27/24
28/4 28/14 28/22
30/21 33/3 33/10
33/12 33/13 57/3
57/9
destructions [1]
29/8
destructive [1]
28/23
determination [4]
13/24 16/1 32/8
40/16
determinations [3]
13/8 13/11 15/13
determine [4]   12/24
40/18 40/22 47/5
determining [2]
12/12 42/3
dialogue [2]   55/6
55/7
dictate [1]   58/23
dictionary [3]
14/22 16/9 16/13
didn't happen [1]
40/13
difference [2]
16/20 16/21
differences [1]
34/17
different [28]   7/1
7/3 9/24 10/6 13/14
13/17 13/18 14/17
16/17 17/2 18/10
18/20 18/25 19/15
19/18 19/21 20/4
26/18 27/11 29/7
30/2 47/21 50/17
50/17 50/18 50/19
54/24 56/9
differentiate [1]
22/7
differently [3]
15/4 35/2 50/20
differs [2]   17/16
29/24
difficult [8]   7/6
23/16 43/6 43/8
55/14 55/16 55/17
64/22
directly [1]   13/1
disagree [1]   15/2
disagreements [1]
17/22
discharging [1]
54/10
disclosing [1]
30/17
discretion [5]
12/24 13/10 13/23
43/3 44/4
discussed [3]   29/8
31/11 55/22
discussion [6]   26/3
28/1 36/22 52/18
55/3 66/11
dismiss [3]   3/24

47/25 64/15
dismissed [1]   64/12
disrupt [1]   43/10
disrupting [2]
19/14 56/7
disruption [1]   53/5
disruptive [2]   8/3
53/21
disrupts [2]   36/2
38/10
dissent [1]   34/5
distinction [5]
19/9 19/10 20/2
59/8 64/2
distinguishes [2]
7/4 47/10
district [7]   1/1
1/1 1/10 1/23 2/24
29/2 29/3
Division [1]   1/14
doctrinal [3]   9/14
9/22 9/25
doctrine [1]   9/12
document [15]   5/25
27/23 27/24 28/3
28/14 28/22 29/8
29/23 30/7 30/7
30/20 32/10 45/4
45/9 57/9
documents [7]   30/4
33/3 45/6 45/7
58/17 61/3 61/22
dog [2]   54/13 54/14
done [8]   8/22 13/13
16/4 16/10 30/5
47/4 49/11 49/14
double [1]   48/14
down [4]   4/9 38/14
52/10 52/12
drag [1]   38/15
draw [2]   10/9 11/4
drawing [1]   18/17
drawn [2]   16/18
41/6
Drive [1]   2/6
duplicative [1]
53/8
during [3]   53/13
59/25 69/7
duties [1]   54/10
dynamic [1]   34/10

## E

e-mails [1]   25/4
eager [1]   33/22
earlier [3]   51/8
51/21 53/5
early [1]   48/5
easy [1]   56/10
effects [1]   67/17
Eighth [1]   28/24
either [5]   11/15
16/11 46/17 53/16
56/3
ejected [1]   38/10
ejusdem [1]   6/23
election [2]   35/18
53/14
electoral [7]   4/13
11/9 11/16 16/4

**E**

electoral... [3]
27/9 30/25 31/9
elements [2]   12/22
13/11
ELIZABETH [2]   1/16
3/5
else [3]   24/10
25/16 52/14
elucidate [2]   65/25
66/4
emerges [1]   9/23
employ [1]   21/4
empowers [1]   20/1
enacted [4]   6/12
32/5 34/1 34/11
enacts [1]   33/15
encompasses [1]
6/15
end [2]   53/2 63/17
energy [1]   49/8
enforced [1]   19/7
enforcement [2]
39/9 58/8
enforcing [1]   58/22
engage [3]   25/5
26/25 27/2
engaged [7]   31/14
38/2 40/6 43/19
47/2 59/15 59/18
engaging [2]   18/13
39/24
English [1]   16/9
enormous [1]   32/22
enough [13]   8/23
10/20 12/8 12/8
12/24 22/22 22/22
23/1 26/22 27/5
40/20 53/9 55/2
Enron [4]   57/1
58/14 61/17 61/18
enter [1]   54/1
entertaining [1]
11/11
entire [1]   26/24
entirely [1]   26/18
entitled [1]   69/5
entrance [1]   8/7
envisioned [1]   44/6
equivalence [1]
11/6
Ermoian [1]   26/16
essence [4]   5/7
12/9 12/9 20/23
essentially [4]
10/3 16/24 28/21
30/16
et [3]   1/6 27/5
28/2
evacuation [1]   54/8
even [14]   4/8 4/24
15/3 15/14 15/23
18/5 18/22 27/2
27/10 37/6 44/24
61/21 66/1 66/6
event [7]   10/4 12/3
12/22 14/12 14/13
51/3 64/25
events [1]   54/23

eventually [1]   35/8
Everett [1]   2/3
everyone [5]   3/21
48/21 49/3 53/23
67/4
everyone's [1]   10/1
evidence [24]   10/25
11/1 11/3 11/8 11/9
11/20 11/23 11/24
11/25 11/25 13/11
13/4 14/6 17/10
33/10 33/12 33/13
50/16 58/17 59/7
59/14 61/20 62/3
66/3
evidentiary [2]   5/7
5/8
exact [1]   53/16
exactism [1]   17/4
Exactly [1]   21/6
examining [1]   11/10
example [14]   7/24
8/1 10/22 11/13
31/17 43/17 43/17
44/18 52/22 52/23
56/23 61/16 66/1
66/1
examples [1]   65/24
exceedingly [1]
15/25
exchange [1]   25/5
excuse [2]   26/5
54/18
exercise [1]   26/24
exhausted [1]   52/17
exist [2]   12/25
62/9
expect [1]   46/7
explain [1]   38/5
explained [1]   23/19
explicitly [1]
16/19
express [1]   10/7
expressly [1]   18/12
extent [2]   33/6
42/19
extremely [1]   46/6
extremes [1]   67/5

**F**

face [2]   52/9 56/16
facially [1]   41/18
fact [8]   7/16 8/15
23/24 32/22 33/6
59/16 59/17 59/18
fact-finding [3]
59/16 59/17 59/18
facts [4]   16/16
38/25 47/5 66/18
factual [1]   22/24
failure [2]   18/21
61/10
fair [6]   45/25
46/19 53/9 55/2
55/19 55/23
fall [7]   11/17
12/17 14/9 53/6
53/6 62/5 62/6
falls [4]   31/2
37/13 38/3 50/13

False [1]   61/11
far [2]   48/8 67/6
fashion [2]   52/9
52/13
father [1]   15/3
favor [1]   63/11
FBI [2]   14/17 14/20
FCC [3]   8/5 8/7
53/24
feature [4]   11/5
12/6 12/8 53/3
features [11]   10/5
10/8 10/21 10/25
11/6 12/25 14/7
22/7 22/21 23/2
62/9
federal [5]   1/22
11/24 26/20 37/24
47/21
feel [2]   21/16
45/16
feels [3]   11/12
18/4 45/20
fell [1]   28/6
felony [2]   40/8
40/23
few [1]   43/18
Fifth [4]   9/21
16/12 21/9 26/17
figure [8]   9/1 10/1
26/21 34/24 35/6
39/19 45/23 67/14
figuring [1]   40/17
file [4]   64/17
65/13 68/3 68/4
filing [1]   29/5
final [1]   66/9
financial [2]   6/14
33/2
find [2]   45/9 49/9
finding [3]   59/16
59/17 59/18
fine [4]   24/22
25/14 64/21 65/14
finished [1]   11/23
finishing [1]   24/24
first [14]   9/4 9/17
16/22 19/20 19/22
20/3 31/9 31/18
31/19 33/14 39/5
41/18 42/15 50/14
fish [1]   34/13
fits [1]   16/7
flee [2]   23/10 54/9
flees [1]   45/19
fleshing [1]   66/17
flip [1]   27/17
floor [4]   1/19
38/14 66/14 66/15
flows [1]   29/12
fly [1]   42/13
focus [2]   8/17
16/17
focused [3]   5/23
6/19 51/10
folks [2]   22/12
43/9
follow [3]   18/21
30/5 51/18
following [3]   39/18

40/11 40/13
follows [5]   5/23
15/6 30/1 31/8 56/4
foot [1]   66/15
footnote [1]   63/9
For Defendant [1]
1/21
force [3]   54/8 54/9
54/9
forces [2]   21/13
68/7
forcible [1]   31/1
forcibly [2]   30/24
31/14
foregoing [1]   69/4
foreign [2]   37/9
59/24
foremost [1]   33/14
forgotten [1]   24/15
form [1]   11/9
formal [1]   57/21
formality [4]   26/14
26/15 27/4 56/5
formally [1]   64/9
forms [2]   13/4
19/13
formulation [1]
53/16
formulations [1]
53/17
forth [1]   5/2
forward [8]   11/19
15/10 22/15 24/2
36/3 37/17 53/22
53/25
found [1]   61/19
framing [1]   4/7
frankly [1]   47/7
fraud [2]   6/14 34/8
Friday [1]   65/6
front [12]   8/6
13/23 19/24 22/25
27/24 39/21 51/1
51/4 51/7 51/25
53/25 67/19
fronted [1]   26/2
full [1]   22/24
function [7]   13/17
13/18 14/3 14/4
14/5 18/13 27/6
functional [1]   11/6
functionally [1]
12/21
functioning [1]
16/25
functions [1]   16/20
further [6]   14/18
61/11 63/15 67/22
67/25 68/10

**G**

gain [1]   59/10
gave [3]   37/4 42/18
43/17
general [1]   28/23
generally [3]   5/14
5/14 7/14
generis [1]   6/24
gentlemen [2]   55/17
56/14

**G**

genuinely [1]   37/19
gets [4]   31/21
37/16 44/11 58/19
given [3]   27/3
48/21 66/24
gives [4]   32/21
32/22 42/2 43/16
giving [2]   41/18
44/13
glass [1]   20/13
goes [1]   37/13
good [3]   34/12
45/10 60/25
govern [1]   15/17
government [26]
1/13 3/5 4/3 16/23
17/1 17/3 20/1
24/22 25/9 26/20
30/10 30/23 33/18
34/2 39/3 48/5
48/13 49/1 51/14
52/20 65/9 65/13
66/13 66/14 66/16
68/11
Government's [3]
8/1 31/8 55/9
grand [2]   28/6 58/8
grants [1]   59/12
grasp [1]   56/18
grasps [1]   55/24
greater [1]   44/13
grievances [1]   20/1
groping [1]   11/4
group [2]   8/5 24/1
guess [17]   6/4 6/22
7/14 16/3 16/4
17/16 20/6 23/3
34/20 36/6 38/5
41/2 42/21 42/22
52/24 53/15 54/5
guidance [2]   39/4
49/4

**H**

Hall [2]   5/6 17/23
hand [4]   44/19
45/13 45/15 52/5
hands [2]   11/16
59/10
hang [2]   45/16
45/18
happen [4]   13/6
16/21 40/13 58/12
happened [6]   41/23
42/5 53/11 62/2
67/7 67/10
happening [3]   27/7
39/11 47/1
happens [3]   28/1
51/18 52/11
happy [5]   25/3
27/14 27/17 28/16
42/17
hard [9]   4/22 11/14
14/24 22/25 24/19
37/19 46/24 46/25
47/19
harsh [1]   36/9

head [1]   9/10
headaches [1]   48/14
heads [1]   62/12
hear [7]   5/19 8/23
9/3 24/25 34/19
55/7 55/8
heard [3]   25/1
33/21 62/19
hearing [38]   1/9
4/1 8/3 8/4 8/7
8/12 11/1 11/13
12/23 18/11 18/15
19/23 19/24 22/4
22/10 22/21 22/23
23/1 23/6 23/8
23/10 23/11 23/25
24/1 24/2 24/4 36/1
36/2 36/2 37/14
38/8 38/11 43/10
55/6 59/7 59/25
62/3 69/7
hearings [2]   58/17
67/8
heart [1]   19/20
heightened [1]
66/23
held [5]   28/4 28/12
58/16 58/16 61/5
help [5]   9/1 31/18
60/17 65/25 66/3
helpful [11]   4/6
21/22 27/19 41/12
55/7 55/7 55/8
61/14 65/22 66/7
68/12
helps [2]   21/4
64/11
here's [3]   12/5
56/23 59/21
hey [2]   12/5 43/18
high [1]   26/13
higher [1]   60/12
highlighting [2]
9/12 65/24
himself [1]   13/9
history [3]   20/23
32/7 32/9
hit [1]   53/2
hold [5]   6/14 9/13
56/22 57/4 58/9
Honor [49]   3/2 3/13
3/18 4/4 9/6 9/8
13/14 14/15 15/10
16/22 17/1 17/12
19/6 19/16 20/15
20/16 24/12 24/17
25/17 25/20 26/18
27/22 32/4 33/21
37/4 42/11 43/17
54/19 55/5 63/8
63/17 64/9 64/18
64/25 65/4 65/7
65/14 65/18 66/8
66/10 66/25 67/2
67/24 68/1 68/6
68/11
Honor's [3]   14/3
27/3 46/11
HONORABLE [1]   1/10

HOOK [3]   2/23 69/3
69/14
hope [1]   52/21
housekeeping [2]
64/8 66/9
Houses [2]   17/25
17/25
Houston [1]   2/6
hurt [1]   33/9
Huvelle [2]   27/20
28/4
hypothetical [9]
18/14 18/17 22/20
23/7 23/17 37/16
42/15 43/13 56/9
hypotheticals [8]
37/4 42/18 42/22
52/17 66/10 66/18
67/5 67/12

**I**

i.e [1]   32/10
idea [1]   34/10
identifying [1]
46/11
identity [1]   30/17
imagine [3]   4/22
45/2 55/16
immunity [1]   59/13
impeachment [11]
4/23 10/18 10/19
12/14 12/15 12/16
13/1 13/2 13/2 13/4
58/13
impede [3]   30/6
35/13 53/4
impedes [14]   5/22
20/9 31/12 31/21
34/25 36/2 46/5
50/12 50/13 50/22
51/15 53/16 54/7
66/4
impeding [13]   8/21
21/3 35/20 36/13
36/15 38/2 38/12
44/24 44/25 47/4
53/14 53/21 60/11
importance [1]
14/10
important [8]   9/1
19/10 20/2 43/24
52/4 55/15 56/18
66/20
importantly [1]
54/6
impose [1]   36/8
impossible [1]
28/11
incarcerated [1]
58/2
incarceration [1]
56/16
inclined [1]   64/13
include [5]   4/16
21/7 30/22 37/7
54/8
included [2]   10/16
61/24
including [2]   32/15
67/6

incorporate [1]
51/12
incredibly [1]
57/22
Indeed [1]   19/16
independently [1]
32/4
Indiana [1]   1/23
indicate [1]   66/23
indicated [1]   51/8
indicia [1]   21/22
indictment [2]   3/24
47/25
individuals [4]
37/23 57/9 62/4
62/10
indulgence [2]
64/19 67/2
influence [3]   30/6
30/7 53/4
influences [12]
5/22 20/8 31/12
31/20 34/25 50/12
50/13 50/21 51/15
53/15 54/7 66/4
influencing [6]
8/12 8/21 38/2
44/23 47/3 53/20
inform [1]   31/18
Informant [1]   20/22
information [2]
57/6 58/18
informative [1]
54/17
inheres [1]   46/12
initial [3]   4/6
9/17 26/2
initially [1]   23/20
inquiry [5]   58/16
58/24 59/1 59/11
59/17
ins [2]   42/23 67/7
inside [4]   31/15
37/14 37/23 42/4
instances [2]   47/8
58/15
instead [3]   41/7
45/5 49/2
instruct [1]   35/8
instructed [1]   68/3
instruction [5]
41/10 42/2 49/18
49/20 49/23
instructions [4]
36/25 41/20 48/2
48/15
instructs [1]   34/24
intended [1]   59/20
intending [4]   6/19
7/17 7/21 46/3
intent [12]   6/16
8/11 21/23 24/2
36/23 37/18 38/21
40/19 43/15 43/16
43/23 52/6
interest [3]   48/5
48/20 49/4
interested [4]   4/1
42/21 42/23 49/5
interfere [2]   30/6

**I**

interfere... [1]
56/11
interferes [2]
51/15 63/19
interfering [2]
36/14 36/15
interpret [6]   26/21
34/23 41/11 42/10
43/14 56/1
interpretation [7]
6/24 29/14 49/19
63/5 63/12 63/24
67/16
interpreted [6]   6/8
33/18 34/9 37/1
39/6 41/14
interpreting [5]
7/8 26/17 27/11
29/19 46/12
interpretive [1]
26/24
into [15]   11/15
16/5 17/22 23/9
24/1 33/23 37/8
39/10 40/2 42/19
45/7 45/17 46/25
48/13 50/13
introduced [1]   7/3
introductory [1]
23/19
investigated [1]
45/3
investigation [6]
14/18 14/20 30/20
43/20 60/20 61/17
investigations [1]
26/22
invite [2]   19/10
24/14
inviting [1]   16/23
involve [1]   36/13
involved [2]   48/21
67/4
involves [1]   29/17
issue [13]   5/7 5/8
10/23 29/10 47/24
48/4 49/15 49/25
51/9 51/16 52/7
52/10 63/15
issued [1]   10/22
issues [8]   4/9 8/23
20/6 48/1 48/1
48/15 55/9 66/18

**J**

JAHN [6]   1/22 3/7
3/10 25/15 64/12
67/25
jail [1]   36/5
JAMES [4]   1/13 1/18
3/5 3/6
January [15]   11/1
14/8 14/9 14/11
17/19 23/1 30/24
31/6 37/22 41/24
46/14 54/24 57/25
61/8 62/15
January 6th [13]

14/8 14/9 14/11
23/1 30/24 31/6
37/22 41/24 46/14
54/24 57/25 61/8
62/15
JEFF [3]   2/23 69/3
69/14
jeopardy [1]   48/14
job [3]   33/24 33/24
34/3
join [1]   68/6
joint [2]   27/8 47/2
JR [2]   2/2 2/3
judge [9]   1/10
27/20 28/4 36/4
45/18 45/18 45/19
46/18 58/7
judges [3]   36/8
48/9 51/5
judicial [28]   4/21
4/24 10/6 10/9
11/12 11/25 12/10
13/17 13/18 16/20
16/25 17/11 18/12
18/12 18/18 18/18
19/19 19/23 19/24
22/4 22/5 22/22
26/23 27/6 45/21
56/12 59/14 59/17
judicial-like [1]
18/18
juror [1]   46/18
jurors [3]   40/22
44/19 46/18
jury [17]   28/6 35/8
36/25 40/17 41/10
41/20 42/2 42/3
47/13 48/2 48/15
49/18 49/20 49/23
50/1 50/2 58/8
justice [24]   1/13
1/19 5/17 10/8 15/4
22/6 32/16 34/4
34/12 44/16 44/18
45/14 45/21 46/8
46/16 54/5 56/20
57/8 58/19 59/5
59/8 60/6 62/18
64/5

**K**

Kagan [2]   34/4
34/12
keeps [1]   6/22
KELLEY [2]   1/16 3/6
Ken [1]   62/1
key [1]   45/4
kind [22]   25/10
27/23 28/13 29/18
30/2 31/12 32/16
32/19 36/16 36/22
38/19 39/5 40/16
40/23 42/11 43/10
49/17 51/12 51/24
52/17 54/21 63/8
kindly [1]   19/6
kinds [2]   30/3 30/4
knowing [1]   39/22
knowledge [1]   41/3
Knowlton [11]   2/2

3/4 3/7 3/17 55/18
56/15 62/11 62/12
64/12 66/12 67/23
known [1]   6/21
knows [4]   19/16
37/21 62/12 66/21

**L**

lane [1]   52/6
language [21]   8/19
8/20 8/20 12/2
14/20 14/24 20/18
20/18 21/2 21/5
21/7 23/5 23/22
33/14 33/15 33/16
33/25 34/10 42/20
62/23 62/24
large [1]   42/7
largely [4]   33/7
37/1 42/19 47/17
last [3]   19/18 48/8
53/9
later [5]   25/1 25/7
48/22 49/5 51/21
law [20]   2/5 16/11
16/13 16/14 26/20
37/24 39/5 39/9
49/24 57/10 58/8
58/10 58/22 60/18
60/21 62/12 62/13
62/16 63/24 66/5
lawful [2]   45/25
46/1
laws [4]   59/4 59/5
63/18 63/20
lay [3]   15/9 62/1
63/25
lead [1]   9/5
leads [2]   5/18 8/14
least [11]   4/11
4/12 5/10 7/5 14/13
15/8 18/10 23/20
35/9 44/10 51/4
leave [4]   53/23
54/9 64/23 68/8
leaves [1]   50/11
leaving [1]   42/5
left [1]   62/10
legal [12]   15/14
15/16 15/21 16/7
16/9 16/11 16/19
49/13 50/22 63/24
63/25 64/2
legislating [1]
59/2
legislation [2]
22/14 60/1
legislative [9]
19/12 32/7 32/9
43/14 43/21 44/6
47/18 59/4 63/18
legislator [1]
43/18
legislators [1]
66/21
legislature [1]
63/18
legitimate [1]
47/12
lenity [2]   63/7

63/10
lens [1]   44/9
less [1]   53/5
letting [2]   9/10
54/1
liberty [3]   57/16
58/1 60/14
life [3]   57/15 58/1
60/13
light [9]   3/13 3/20
4/9 6/2 6/18 7/6
7/11 28/10 52/11
likely [2]   12/19
53/6
likened [1]   46/16
likens [1]   46/14
limit [2]   34/2
59/13
limitation [1]   63/2
limitations [1]
69/9
limited [4]   13/24
15/25 16/2 19/22
limiting [9]   7/15
7/23 25/23 31/22
33/23 35/11 38/4
42/14 63/12
limits [1]   46/24
line [6]   10/9 11/4
16/18 40/9 40/17
41/6
list [4]   29/16
29/20 29/23 34/11
list of [1]   29/16
listed [1]   42/11
litigated [1]   19/17
litigation [1]
51/21
little [8]   7/25
32/25 37/6 38/6
39/15 45/17 45/22
62/13
loathe [1]   38/19
located [1]   3/21
locked [1]   61/6
long [1]   24/23
look [18]   7/17 15/7
15/8 15/12 27/11
30/20 31/17 34/10
41/7 44/9 56/19
56/25 57/12 58/14
59/21 59/21 61/16
63/21
looked [4]   9/15
9/19 9/21 26/22
looking [6]   12/12
20/20 45/5 56/2
60/15 64/2
looks [4]   12/6 16/8
16/13 33/13
loophole [2]   57/11
61/23
loose [1]   6/13
lot [14]   6/10 11/12
11/12 14/18 21/4
21/10 21/20 25/24
27/25 39/4 45/20
49/8 49/11 66/10
lots [1]   55/19
lying [1]   61/13

**M**

MA [1]  2/4
mails [1]  25/4
majority [1]  14/5
makes [6]  8/10 13/8
38/14 46/4 56/9
58/23
making [2]  5/12
16/1
manner [1]  3/15
many [12]  18/4
20/19 20/20 25/25
30/11 37/22 46/12
47/8 47/21 51/16
55/11 57/21
margins [1]  47/19
marker [1]  10/8
material [1]  17/16
matter [12]  9/17
14/20 14/24 29/11
32/8 39/5 43/3 44/3
44/4 64/8 66/9 69/6
maximum [1]  31/24
may [34]  4/6 4/7
4/20 5/7 5/20 8/13
16/2 17/4 20/2 20/2
24/14 24/15 28/9
35/3 35/4 35/25
40/1 44/9 44/12
44/12 44/12 46/2
47/19 48/4 48/16
48/16 48/17 48/20
49/1 50/17 50/18
50/22 54/16 68/6
maybe [8]  18/22
31/25 35/25 36/3
38/8 39/11 41/3
44/21
MAYR [6]  2/5 2/5
3/8 24/14 24/16
55/4
Mazars [1]  58/23
mean [52]  10/1 10/2
10/11 11/2 13/6
15/16 16/23 19/3
26/6 26/15 28/14
29/15 34/1 34/6
34/11 34/13 34/21
35/7 35/9 35/10
35/13 35/25 36/16
36/21 36/23 36/23
39/20 40/11 40/12
40/21 41/2 41/22
42/1 42/13 42/17
43/15 44/23 46/19
49/7 49/20 51/7
51/10 51/13 51/19
52/18 52/22 54/2
58/23 62/12 65/24
65/25 67/9
meaning [7]  4/14
17/2 44/13 45/23
50/12 50/21 67/21
meaningful [1]  6/3
means [16]  5/23
10/4 16/25 21/21
22/1 23/22 35/15
38/6 39/20 40/4
41/1 48/23 50/7

52/5 66/5 67/15
meat [1]  44/22
meet [2]  37/10 53/7
meeting [3]  37/8
37/12 59/23
member [3]  17/25
35/16 35/17
members [7]  17/18
17/21 18/23 23/9
24/3 26/8 46/17
Memorial [1]  2/6
mens [1]  66/23
mentioned [6]  10/25
30/12 51/17 52/22
53/5 54/19
mentioning [1]  33/4
met [1]  23/13
middle [2]  38/7
38/11
might [11]  6/11
8/19 32/23 44/21
44/24 45/16 46/15
48/13 49/4 65/25
66/6
Mike [2]  45/16
45/16
mind [4]  4/20 5/16
8/16 34/24
minute [2]  23/5
33/25
minutes [1]  43/18
minutia [1]  19/9
misdemeanor [4]
38/23 38/24 40/8
40/23
misdemeanors [2]
43/1 60/3
mission [1]  59/17
missions [1]  59/18
misunderstanding [1]
23/17
moment [3]  23/4
33/22 51/7
money [1]  35/18
MONTGOMERY [8]  1/6
1/22 3/3 3/6 3/11
55/18 56/15 62/11
month [1]  64/22
months [2]  52/10
60/3
moorings [1]  6/14
more [20]  4/23 5/13
5/14 5/17 7/14
11/12 12/5 18/5
18/6 19/12 32/19
38/6 44/2 45/20
51/15 51/21 52/18
54/6 54/16 60/10
MOSS [1]  1/10
most [3]  21/22 29/2
42/22
motion [7]  1/9 3/24
9/4 47/14 47/25
64/11 64/15
motions [2]  48/10
48/18
motivated [3]  33/3
50/17 50/18
motivating [1]
31/25

moving [1]  40/7
Mr. [45]  3/11 3/16
3/17 4/2 7/24 9/4
10/12 17/8 24/14
24/16 24/20 25/4
25/9 25/15 25/18
26/3 30/15 44/10
44/11 47/23 52/3
52/14 55/4 55/18
55/18 56/3 56/4
56/15 56/15 61/2
62/11 62/11 62/12
63/22 64/7 64/12
65/2 65/8 65/15
66/1 66/12 67/3
67/22 67/23 68/10
Mr. Knowlton [8]
3/17 55/18 56/15
62/11 62/12 64/12
66/12 67/23
Mr. Mayr [3]  24/14
24/16 55/4
Mr. Montgomery [4]
3/11 55/18 56/15
62/11
Mr. Pearce [10]  4/2
7/24 25/15 47/23
52/14 56/4 65/2
65/8 66/1 68/10
Mr. Sullivan [19]
3/16 9/4 10/12 17/8
24/20 25/4 25/9
26/3 30/15 44/10
44/11 52/3 56/3
61/2 63/22 64/7
65/15 67/3 67/22
Mr. Sullivan's [1]
25/18
Ms. [4]  3/10 25/15
64/12 67/25
Ms. Jahn [4]  3/10
25/15 64/12 67/25
much [8]  19/12
32/14 40/15 40/20
60/10 60/10 60/10
65/8
multiple [1]  58/15
must [3]  5/16 20/18
20/19
mute [2]  9/9 65/4
mutilate [2]  28/2
30/3
mutilation [1]  5/24
myself [2]  25/9
39/19

**N**

namely [1]  64/5
narrow [2]  5/8 5/9
nature [7]  4/19
12/11 13/19 18/6
33/7 44/14 44/18
necessarily [1]
50/2
necessary [1]  4/7
need [7]  26/10 35/8
38/5 39/19 44/2
48/19 54/11
needs [6]  6/1 6/5
6/18 25/1 26/25

32/7
nestling [1]  29/18
next [2]  34/14
35/18
Ninth [5]  9/21 15/7
16/8 21/9 26/16
nominee [1]  22/15
non [1]  23/15
none [1]  62/9
nonetheless [1]
15/25
nontrivial [1]
51/20
nor [1]  66/14
normally [1]  24/19
north [7]  35/1
35/24 36/21 37/21
40/1 40/11 41/16
noscitur [2]  6/21
27/17
NOTE [1]  69/7
noted [2]  26/18
35/1
notes [1]  24/20
notice [7]  20/3
40/5 41/7 45/25
47/16 55/19 55/23
notion [1]  4/18
number [2]  32/13
48/21
numerous [1]  62/2
NW [5]  1/14 1/19
1/23 2/8 2/24

**O**

o'clock [1]  17/19
object [6]  5/25
29/21 29/23 29/24
30/8 34/13
objection [2]  65/2
65/4
objections [5]  5/5
5/5 11/11 16/6
17/23
objects [2]  6/15
17/25
obstruct [11]  12/16
17/8 30/7 36/23
37/18 38/21 40/19
43/15 43/23 45/12
53/4
obstructing [11]
7/21 8/21 32/11
36/14 38/3 44/23
47/3 53/20 60/6
60/7 60/11
obstruction [14]
5/17 7/19 33/1
38/24 40/23 44/16
44/18 45/14 45/20
46/8 46/16 56/19
57/14 62/7
obstructive [13]
6/16 29/7 30/14
31/2 31/13 36/14
36/17 44/14 47/7
56/24 58/5 58/5
63/3
obstructs [15]  5/22
20/8 31/12 31/20

**O**

obstructs... [11]
50/12 50/13 50/21
53/15 54/7 59/23
60/1 63/2 64/4
64/10 66/4
obtain [3]   58/19
59/7 59/11
obtained [3]   57/6
58/17 62/3
obvious [2]   35/10
41/18
obviously [10]
10/20 22/24 32/2
42/2 47/4 48/7 49/2
49/14 51/7 66/24
occur [2]   4/25 48/3
occurred [2]   57/22
69/7
odd [1]   32/25
off [3]   18/8 30/19
55/3
offenses [1]   60/4
office [3]   1/16
1/22 42/6
officer [13]   11/11
13/3 13/4 13/7
17/20 18/4 26/7
30/19 39/10 39/23
39/23 44/20 66/17
officer's [1]   39/11
officers [2]   27/5
45/21
official [72]
often [1]   54/3
omnibus [1]   32/14
one [36]   5/8 6/2
6/4 6/6 6/17 10/20
11/5 12/8 13/24
14/19 15/9 15/12
20/6 20/20 22/5
26/25 32/23 37/5
37/5 42/7 43/21
44/8 44/21 44/24
47/4 49/25 50/16
51/4 51/4 53/9
57/12 58/21 60/24
61/7 62/22 62/24
one's [1]   41/3
ones [4]   16/2 26/2
42/22 42/24
ongoing [1]   3/20
only [8]   5/3 8/19
13/24 29/11 39/17
47/1 49/9 67/19
opinion [1]   6/10
opinions [1]   36/21
opportunities [1]
51/24
opportunity [2]
55/10 64/14
opposed [2]   15/15
40/23
oral [3]   17/8 64/11
64/15
order [4]   18/25
35/7 38/9 51/9
ordered [3]   17/12
19/2 19/4

orderly [2]   52/9
52/13
orders [1]   18/12
others [2]   26/17
51/17
otherwise [20]   5/22
6/1 7/4 7/9 20/8
21/3 29/14 29/17
29/19 29/22 29/25
31/11 32/10 32/18
50/13 50/21 51/23
62/24 63/2 64/10
ought [1]   43/20
out [34]   8/3 9/1
9/24 10/2 22/12
26/16 26/16 26/21
28/10 28/24 29/3
30/13 30/18 32/18
34/24 35/6 37/5
37/13 38/15 39/19
40/17 42/24 44/19
44/20 45/23 52/6
56/8 60/18 61/19
61/19 66/12 66/17
67/5 67/14
outline [1]   50/14
outside [1]   28/5
over [4]   27/17
38/20 42/12 59/14
own [2]   7/16 68/4
Oxford [1]   16/9
Oxley [6]   6/13 6/19
20/23 21/1 32/5
33/1

**P**

P-E-T-R-U-K [1]
28/24
P.C [1]   2/5
p.m [1]   68/14
page [1]   16/10
pages [1]   45/7
pandemic [3]   3/14
3/20 69/8
parading [2]   40/6
54/4
parallels [1]   18/18
Pardon [1]   9/8
part [13]   5/15 6/12
7/10 29/20 29/23
31/9 33/3 34/15
42/10 43/12 43/24
46/23 66/25
partially [1]   44/10
particular [8]
22/15 27/14 31/4
34/3 49/15 50/5
62/8 62/9
particularly [3]
31/22 38/8 66/19
parties [8]   5/19
12/1 12/4 17/12
19/6 48/4 51/24
65/23
parts [1]   32/18
party [2]   12/4
16/11
pass [2]   46/3 60/1
passage [1]   22/14
passed [2]   57/10

60/5
passing [1]   24/20
past [1]   39/13
pastors [1]   19/18
PATRICK [3]   1/6 3/3
3/6
PEARCE [13]   1/13
3/5 4/2 7/24 25/15
25/19 47/23 52/14
56/4 65/2 65/8 66/1
68/10
Pence [2]   45/16
45/16
pending [2]   48/10
57/19
Pennsylvania [1]
1/14
people [14]   8/5
41/6 41/8 42/23
42/25 45/25 54/9
54/9 54/9 60/10
61/4 61/8 61/25
67/8
perfect [1]   58/20
perfectly [2]   43/24
47/12
perhaps [9]   6/24
7/4 11/13 15/17
15/19 35/8 45/10
48/12 49/3
period [1]   58/10
permission [1]
24/13
permitted [1]   38/16
perpetrator [1]
57/18
person [15]   14/22
36/5 37/18 38/14
38/25 40/5 40/18
56/22 58/2 59/23
59/25 60/9 61/2
62/15 63/12
person's [3]   42/3
57/15 60/13
persuaded [2]   4/12
23/20
pertains [1]   32/17
PETERSON [2]   1/18
3/6
Petruk [3]   28/23
29/1 30/12
Phillips [2]   30/13
30/18
phrase [9]   5/22
22/6 22/7 31/16
31/17 53/15 54/6
54/7 66/4
physical [1]   17/13
pick [2]   14/21
15/14
piece [2]   42/16
53/7
pile [1]   45/6
place [7]   8/8 14/12
15/19 17/17 18/12
39/10 48/19
placed [1]   55/23
plain [6]   14/20
14/24 17/2 26/4
32/8 33/14

plainly [1]   27/8
Plaintiff [1]   1/4
planned [2]   26/1
play [2]   33/23
66/20
PLEASE [1]   69/7
PLLC [1]   2/8
plurality [5]   6/10
6/12 6/20 31/25
34/15
plus [1]   40/19
Poindexter [9]   35/1
35/24 36/20 40/1
40/11 41/16 43/13
43/16 58/4
point [25]   4/11
4/15 5/10 5/13 5/21
15/23 16/14 20/4
24/12 26/15 38/18
38/20 38/25 39/2
40/3 40/7 51/1 51/2
51/3 52/2 53/12
60/25 64/7 66/12
67/1
points [2]   24/24
25/6
police [4]   30/19
38/15 39/23 39/23
policy [2]   33/20
34/21
poor [1]   45/8
position [5]   8/1
38/1 42/7 42/9 55/8
post [3]   29/5 37/2
39/14
potential [1]   51/8
potentially [5]
51/10 51/11 53/3
53/6 67/20
power [2]   58/24
58/24 59/1
powers [2]   58/16
58/25
precedent [2]   39/18
39/19
precise [4]   5/1
36/11 38/20 49/17
precisely [2]   29/16
50/6
predicate [1]   20/16
prefaced [1]   54/21
prefer [2]   25/3
25/12
preferable [1]
43/22
premise [1]   10/14
presence [2]   17/13
18/20
presentation [1]
25/18
presented [2]   28/6
63/22
preside [1]   5/3
President [5]   5/3
13/7 13/9 13/12
15/24 46/17
President's [2]
13/17 14/4
presiding [10]
11/11 13/3 13/3

**P**

presiding... [7]
13/7 17/20 18/3
26/7 27/5 39/11
44/20
press [1]  20/10
pressing [3]  20/7
20/9 64/22
pretty [4]  11/14
11/18 14/24 47/8
prevailed [1]  34/16
prevent [1]  54/9
preventing [3]  24/2
53/22 53/24
previously [1]
53/11
prices [1]  61/18
principal [1]  14/4
principle [5]  7/15
7/23 31/22 35/12
38/4
principles [6]  15/3
25/23 33/23 39/6
42/14 52/19
prison [2]  56/17
60/9
privileges [1]
19/20
probably [8]  37/12
37/13 37/21 39/1
45/11 50/9 52/17
53/7
probe [1]  23/23
problem [5]  40/2
40/9 46/11 46/11
57/24
problems [1]  48/14
procedurally [2]
11/7 12/21
proceed [2]  3/22
64/7
proceeding [108]
proceeding's [1]
15/19
proceedings [16]
4/13 4/14 4/20 4/21
10/10 10/11 19/19
26/23 48/18 56/6
56/7 56/8 57/19
60/11 68/14 69/5
process [5]  5/1 5/4
15/18 17/5 51/3
produced [2]  12/1
12/4
production [1]  11/3
prohibit [3]  59/23
59/25 64/3
prompt [1]  64/22
pronged [1]  17/5
proper [2]  3/22
48/16
property [2]  57/3
57/16
propositions [1]
50/10
prosecute [2]  37/20
62/4
prosecuted [6]  31/5
33/18 43/1 54/3

prosecuting [1]
49/9
prosecution [9]
53/19 54/18 57/8
58/20 59/8 59/12
59/19 60/19 61/11
prosecutions [2]
30/11 61/12
prosecutorial [4]
43/3 44/3 49/8
58/25
protest [3]  19/13
19/16 62/19
protesting [1]
61/21
protests [1]  19/19
provide [1]  55/10
provides [2]  5/4
45/24
provision [15]  7/3
7/20 8/16 21/1
21/19 26/18 27/12
27/25 28/4 28/14
29/10 34/15 48/23
48/25 53/20
provisions [3]  7/1
7/3 32/5
public [2]  1/22
40/9
punishable [1]  60/3
punishment [1]
60/12
punishments [1]
59/22
purely [1]  49/13
purpose [8]  35/15
41/2 44/25 45/10
45/10 45/11 46/4
67/12
purposes [11]  5/6
12/13 12/23 16/6
23/7 37/15 41/5
44/25 52/4 59/1
66/17
pursuant [3]  16/1
24/9 58/16
pursuing [1]  43/21
pushing [1]  31/14
put [11]  15/10 23/4
23/5 23/14 27/15
40/4 44/22 45/6
46/7 51/13 60/12
puts [1]  41/6
putting [2]  21/25
45/5

**Q**

qua [1]  23/15
qualify [1]  26/23
qualitatively [2]
13/18 54/24
quantitatively [1]
54/24
quasi [7]  12/10
13/18 16/25 22/4
22/5 27/6 27/6
quasi-adjudicative [1]
27/6
quasi-judicial [6]

12/10 13/18 16/25
22/4 22/5 27/6
quibble [1]  19/9
quite [3]  5/9 12/11
13/22
quoted [1]  32/4

**R**

raise [4]  4/10
47/25 55/22 63/4
raised [8]  20/6
25/12 27/18 52/7
55/10 55/21 56/3
60/16
raising [4]  34/21
52/1 67/3 67/12
Ramos [1]  26/16
RANDOLPH [1]  1/10
rather [6]  13/12
15/11 48/6 48/22
49/4 51/21
rea [1]  66/23
reach [3]  7/21 43/4
43/5
reaction [1]  4/15
reactions [1]  4/6
read [6]  17/3 20/18
20/19 29/19 62/13
67/18
reading [4]  26/4
32/12 41/18 67/17
ready [1]  22/13
real [2]  5/21 48/14
realize [2]  54/2
64/21
really [19]  5/19
7/21 8/24 36/20
37/10 39/17 39/20
41/7 41/9 42/22
43/3 43/19 43/20
44/16 46/1 55/22
62/20 63/3 63/4
reason [1]  49/3
reasonable [1]  41/6
reasonably [1]
13/25
reasoned [1]  15/13
reasons [4]  27/3
31/10 34/17 63/22
rebuttal [1]  25/11
recently [1]  29/2
recognize [2]  43/24
55/16
recommend [1]  22/13
recommending [1]
22/14
record [7]  5/25
21/3 22/25 26/9
29/23 55/3 67/2
records [1]  30/5
redress [1]  20/1
redundant [1]  33/8
refer [2]  41/12
59/6
referenced [1]
29/13
referred [6]  17/24
32/16 57/8 58/19
59/11 59/19
refers [2]  8/21

32/19
reflects [1]  49/24
regards [1]  62/22
registers [1]  18/11
rejected [1]  28/19
related [4]  60/20
62/17 62/17 64/5
relevant [1]  47/5
relief [1]  9/13
rely [1]  25/17
relying [1]  34/15
remainder [1]  23/22
remarks [1]  23/19
remember [4]  29/16
34/8 40/1 61/1
remotely [2]  69/5
69/9
render [1]  8/15
repeat [1]  34/18
repeatedly [2]  7/18
38/9
reply [5]  26/11
63/9 65/16 65/17
65/19
reported [2]  66/6
69/5
reporter [4]  2/23
2/23 55/3 69/3
reporting [1]  69/9
reports [1]  26/12
representative [1]
37/9
representing [1]
62/14
request [1]  64/9
required [2]  5/2
27/7
requirement [1]  5/2
requires [1]  18/20
requiring [1]  8/4
resemble [1]  28/3
residual [7]  7/8
28/14 28/22 29/6
32/14 32/20 51/17
resist [1]  46/13
resolution [4]  48/6
48/7 48/22 49/12
resolvable [1]
51/11
resolve [2]  48/15
63/11
resolving [6]  5/6
50/6 50/8 50/12
51/19 51/20
resources [1]  49/8
respect [15]  3/17
7/7 10/13 10/25
15/18 18/11 19/23
20/8 22/15 47/22
48/18 50/10 66/12
66/19 66/23
respectfully [2]
19/5 40/15
respects [2]  4/21
18/4
respond [1]  65/11
responding [1]
24/23
response [5]  8/17
8/18 57/3 65/9

**R**

response... [1] 65/13
responses [1]   55/9
responsible [1] 57/9
rest [1]   32/23
result [10]   22/16 23/9 24/3 44/11 45/19 57/1 57/5 57/25 60/8 60/8
resulted [2]   61/11 61/12
results [1]   12/3
returning [1]   5/5
returns [2]   11/9 11/10
reus [3]   36/13 38/2 47/7
revisit [1]   52/10
right [34]   17/9 26/5 26/13 26/18 27/24 28/14 29/24 30/4 30/7 33/11 33/24 34/11 36/15 37/6 37/12 40/11 40/12 40/14 40/18 40/24 42/1 42/13 43/14 43/25 46/10 47/25 49/14 49/16 56/12 57/1 57/4 59/17 60/1 64/6
rights [2]   17/12 19/22
Ring [1]   27/21
risk [1]   29/17
road [3]   4/9 52/10 52/12
role [9]   13/13 13/20 13/22 15/23 15/24 34/7 34/22 34/22 66/20
RONALD [3]   2/2 2/3 3/7
room [4]   22/16 22/17 23/9 38/15
rule [9]   8/5 14/6 15/20 17/6 47/13 49/25 51/11 63/7 63/9
rules [12]   11/24 13/4 15/17 15/18 15/19 16/1 16/2 16/5 17/24 18/2 19/15 19/18
run [4]   37/3 42/17 48/13 52/16
running [2]   45/15 45/17

**S**

same [16]   3/16 6/9 6/23 7/7 7/10 13/6 20/16 21/16 28/10 28/21 28/24 34/10 34/15 51/12 61/7 68/5
sane [1]   36/4
Sarbanes [6]   6/13

6/19 20/23 21/1 32/5 33/1
Sarbanes-Oxley [6] 6/13 6/19 20/23 21/1 32/5 33/1
saw [3]   31/6 46/14 54/23
saying [8]   7/17 24/20 33/8 34/20 45/15 45/17 51/23 67/8
Scalia [2]   15/4 32/16
scenario [1]   58/20
scenarios [2]   56/9 57/12
schedule [3]   19/3 64/9 68/5
scheduled [1]   8/8
school [1]   62/12
scope [6]   25/23 28/6 31/2 31/7 44/4 64/10
scratching [1] 62/11
screen [2]   55/18 56/14
search [1]   45/9
second [6]   7/3 16/3 16/4 17/6 19/1 50/14
seconds [1]   64/19
section [7]   3/25 6/8 6/13 22/1 32/4 46/8 47/20
seeking [1]   56/22
seem [2]   15/22 50/15
seems [3]   11/17 23/15 52/2
sees [1]   48/17
selected [1]   33/17
Senate [2]   66/14 66/15
send [1]   25/4
sense [4]   4/17 11/23 34/14 38/16
sentence [7]   5/23 5/23 7/2 7/10 31/18 31/19 31/24
sentences [1]   36/8
separate [4]   16/5 17/22 29/25 36/18
separately [1]   18/1
separates [1]   23/16
September [2]   65/6 65/19
September 24th [1] 65/19
September 3rd [1] 65/6
series [1]   30/1
serious [1]   60/10
seriousness [1] 56/5
serve [1]   29/6
session [2]   27/8 47/2
set [7]   5/2 16/1 19/3 32/18 34/14

48/19 66/15
setting [1]   11/25
Seventh [5]   28/18 28/20 36/25 41/11 41/20
share [1]   10/5
sharing [1]   10/8
short [1]   4/22
shouting [2]   36/2 38/11
shouts [3]   8/3 37/11 37/16
show [2]   18/24 19/6
significance [2] 6/16 14/11
significant [3] 14/11 22/22 39/7
similar [9]   4/21 6/5 9/23 11/6 22/22 47/8 48/10 53/17 54/7
similarly [3]   16/12 29/21 32/18
simplest [1]   63/21
simply [11]   13/13 14/12 20/17 27/23 28/13 32/19 35/15 38/21 43/2 51/17 59/1
sine [1]   23/15
single [3]   7/2 57/12 60/18
sit [4]   8/6 42/23 44/17 67/7
sits [6]   29/20 29/25 32/2 32/3 38/14 41/13
sitting [3]   26/8 32/20 39/11
situation [2]   58/15 63/10
six [1]   60/3
Sixth [1]   53/12
size [1]   6/15
slashes [1]   8/9
slashing [1]   52/22
sociis [2]   6/21 27/18
solemn [1]   57/20
somebody [12]   8/2 8/4 8/9 8/10 11/14 12/16 17/8 35/16 36/1 37/8 37/13 38/7
someone [20]   19/13 23/6 30/19 38/20 47/11 50/17 53/19 53/21 56/11 56/21 57/17 58/7 58/9 60/6 60/7 60/20 60/25 61/7 63/19 63/20
someone's [2]   57/16 58/1
somewhat [2]   9/23 46/15
somewhere [1]   45/7
sooner [2]   48/22 49/4
sorry [6]   11/22

17/13 18/7 28/7 54/12 65/3
sort [43]   7/14 12/1 15/9 15/10 17/2 18/17 19/8 19/21 20/10 22/21 22/24 24/13 24/22 24/23 25/11 25/22 26/2 26/24 27/15 27/16 28/13 30/14 31/9 34/17 35/11 35/24 36/11 37/4 38/21 39/13 39/16 40/3 42/15 45/13 46/16 50/6 51/21 52/19 53/2 59/18 60/19 62/11 66/3
sorts [4]   13/10 14/7 48/18 67/15
Southern [1]   29/3
space [1]   19/13
speak [2]   16/19 64/12
speaks [1]   59/25
specify [2]   5/3 17/24
speculate [1]   28/12
spend [4]   25/24 35/17 49/8 60/9
spending [1]   43/19
split [1]   16/24
squarely [2]   9/21 21/14
squares [1]   60/17
staffer [1]   45/8
stake [3]   57/16 57/16 60/14
standard [1]   40/18
standing [6]   36/12 39/21 42/23 43/12 53/25 67/8
stands [6]   7/16 8/2 36/1 38/7 38/10 59/25
start [4]   9/9 9/11 25/21 66/21
starts [2]   36/1 38/10
statements [2]   28/5 61/11
states [15]   1/1 1/3 1/10 3/3 6/8 7/8 11/10 13/14 16/3 27/21 28/19 28/20 28/23 53/18 59/1
statute [46]   5/1 5/13 6/10 7/19 12/17 13/21 17/18 17/19 17/24 18/14 21/5 22/19 24/6 29/13 31/5 31/23 33/1 33/2 33/10 33/14 34/18 34/23 36/4 36/7 40/5 41/5 44/5 44/13 45/24 46/3 46/6 49/9 52/5 57/2 59/21 62/20 62/23 63/5 63/13 63/14 63/20 64/3 67/15 67/17 67/19

**S**

statute... [1]  67/21
statutes [15]  20/21 38/22 38/24 42/25 46/12 46/24 47/21 49/1 54/2 54/20 56/19 59/22 59/24 60/2 63/19
statutory [4]  20/18 20/18 23/22 47/15
step [2]  16/11 52/6
steps [2]  8/6 19/17
still [6]  16/4 16/5 27/12 35/6 43/5 50/10
stop [1]  44/5
storm [3]  22/16 23/6 23/8
stormed [2]  24/1 66/13
storming [7]  22/17 30/24 31/1 35/5 35/5 53/13 61/20
straight [1]  11/18
street [5]  1/17 1/19 2/3 2/8 14/22
strike [1]  11/13
strong [3]  54/22 63/23 63/23
stronger [1]  52/25
struck [1]  66/16
structural [2]  34/17 34/17
structure [3]  5/13 7/1 29/12
struggle [1]  26/10
struggling [5]  8/25 45/22 46/23 50/24 55/13
stuck [1]  63/10
sub [1]  55/9
subject [1]  69/8
submit [3]  28/16 62/24 68/1
submitted [1]  40/21
subpoena [1]  14/6
subpoenaed [4]  22/11 61/3 61/3 61/8
subpoenaing [2]  58/17 58/18
subpoenas [4]  10/22 10/23 12/18 17/10
subsequently [1]  62/4
substance [1]  15/20
substantial [2]  11/5 29/17
substantially [2]  10/5 12/20
substantive [1]  18/22
successful [1]  53/19
sufficient [1]  27/12
suggest [5]  11/2 19/5 56/2 66/22
67/10
suggesting [1]  35/5
Suite [4]  1/14 1/23 2/6 2/8
SULLIVAN [23]  2/2 2/3 3/8 3/16 9/4 10/12 13/15 17/8 24/20 25/4 25/9 26/3 30/15 44/10 44/11 52/3 56/3 61/2 63/22 64/7 65/15 67/3 67/22
Sullivan's [1]  25/18
summons [2]  18/21 18/21
super [1]  64/22
superfluous [1]  8/15
supplemental [1]  68/2
suppose [4]  42/7 43/22 44/8 51/20
supposed [1]  19/8
Supreme [11]  6/8 7/8 19/17 29/15 32/15 34/9 37/2 39/18 41/13 42/12 48/12
sure [10]  11/12 11/17 18/4 21/4 27/20 34/12 44/11 52/8 52/12 67/16
surrounding [1]  15/12
suspenders [1]  33/9
suspicion [1]  21/18
sussing [1]  37/5
sweep [1]  7/17
sweeping [1]  32/25

**T**

table [1]  51/13
talismanic [1]  12/22
talk [3]  27/17 59/16 62/16
talked [2]  27/22 61/2
talking [8]  10/4 18/14 18/16 19/11 21/2 27/1 31/23 47/18
talks [2]  26/19 30/3
tampering [4]  20/21 21/2 32/10 66/2
tangible [4]  29/21 29/22 29/24 34/13
teachings [1]  36/20
technical [1]  15/11
technological [1]  69/9
teed [3]  49/15 51/4 51/6
telling [1]  23/14
tend [2]  10/23 30/14
tends [1]  66/22
Tenth [2]  30/13
30/18
term [10]  7/4 15/7 15/15 15/16 29/22 34/9 35/14 39/3 50/3 50/4
terms [19]  6/6 11/2 17/13 27/4 29/18 33/22 34/7 34/12 34/15 34/24 34/25 35/2 36/16 39/20 41/14 47/15 51/19 53/2 65/23
testify [3]  22/11 62/1 62/2
testimony [1]  61/10
Texas [1]  29/3
texts [1]  25/4
textual [1]  26/4
textualism [3]  15/3 15/4 17/4 17/5
textualist [1]  15/5
Thanks [2]  55/5 67/2
that your [1]  14/14
therefore [3]  46/18 60/12 69/8
thin [1]  11/2
thinking [5]  7/25 39/8 46/13 48/3 52/4
third [6]  9/21 16/12 16/12 21/9 50/11 56/2
Third circuit [1]  21/9
THOMAS [2]  2/5 3/8
though [8]  14/3 17/7 21/17 25/14 40/25 49/21 54/17 58/21
thought [1]  38/7
thoughts [2]  49/6 51/25
thread [5]  9/14 9/22 9/25 57/13 58/2
threat [1]  53/23
threatening [1]  39/24
threats [1]  45/21
three [4]  9/20 14/14 16/24 52/10
throughout [3]  30/23 53/17 66/11
throwing [1]  66/22
thrown [2]  56/8 67/5
tied [1]  59/10
times [2]  13/22 13/22
tipping [2]  30/19 30/19
tips [1]  38/20
tires [2]  8/9 52/22
title [12]  5/15 6/8 8/16 20/21 20/25 21/1 21/17 21/19 21/21 32/24 53/17 54/18
titles [1]  21/22
today [12]  3/11 3/23 3/23 4/1 4/3 18/5 19/3 19/4 21/2 60/16 65/5 68/10
today's [2]  17/8 18/11
together [1]  29/18
ton [2]  35/17 57/23
top [4]  32/2 32/20 41/13 45/6
total [1]  20/19
totally [1]  46/19
touch [1]  47/23
towards [1]  30/15
tracks [1]  21/5
traditional [2]  11/25 46/16
traditionally [2]  5/17 44/17
transcript [2]  1/9 69/4
trappings [4]  4/19 4/23 15/17 27/4
treated [1]  38/13
treating [1]  32/13
trespass [1]  40/6
trespasser [1]  38/13
trespassing [2]  38/16 54/4
trial [6]  12/14 12/15 12/16 12/18 13/2 53/22
trials [1]  13/4
tried [2]  10/9 11/16
tries [1]  46/1
trouble [1]  65/3
troubles [1]  39/15
true [2]  13/16 69/4
truly [1]  60/16
trust [2]  39/16 42/12
try [4]  9/9 36/10 45/23 48/21
trying [12]  9/1 10/1 11/19 23/4 23/23 23/24 26/21 34/23 36/6 44/5 45/11 52/12
turn [4]  20/5 25/15 55/25 61/15
turnaround [2]  64/23 65/17
tweaked [1]  42/15
two [13]  6/2 7/1 7/2 7/16 15/8 16/21 18/11 32/5 50/14 52/10 55/17 56/14 64/19
TX [1]  2/6
type [10]  14/13 29/8 31/4 35/22 42/13 43/5 46/14 47/3 51/16 59/20
types [7]  10/10 27/4 30/14 39/12 44/15 54/23 66/2
typically [3]  42/25 43/10 44/15

**U**

U.S [4]   1/13 1/16 1/19 2/24
U.S.C [3]   3/25 38/22 38/23
ultimately [9]   5/7 40/15 40/21 42/1 44/11 47/14 49/21 50/1 60/8
unanswered [1] 50/11
under [24]   3/25 10/11 11/18 13/19 14/9 15/2 27/8 31/5 36/25 37/13 43/12 44/5 44/6 53/1 53/20 54/3 54/18 54/18 54/20 54/25 56/25 57/15 60/19 61/13
undercover [1] 30/17
understands [1] 39/3
understood [1] 44/17
undoes [1]   49/11
UNITED [12]   1/1 1/3 1/10 3/3 6/7 7/7 27/21 28/18 28/20 28/23 53/18 58/25
unlawful [5]   8/11 40/6 41/4 46/4 54/4
unless [4]   17/25 23/17 35/18 40/8
unmoored [1]   31/19
unpersuaded [1] 5/10
unprecedented [1] 31/7
up [36]   8/2 14/21 15/14 18/25 19/6 24/20 24/21 25/1 31/15 35/16 36/1 36/8 36/12 37/6 37/16 38/7 38/10 39/21 42/23 43/11 43/18 49/15 51/4 51/6 55/12 56/16 59/25 60/23 60/25 61/6 62/22 63/1 63/8 64/23 67/8 68/5
upheld [1]   30/11
upon [1]   5/9
upset [2]   8/5 61/23
urging [1]   17/1
usage [2]   15/15 15/16
use [7]   10/6 10/7 12/3 12/24 22/6 49/2 66/18
used [9]   29/22 30/10 34/1 34/2 54/13 54/19 54/20 59/14 62/4
useful [2]   37/5 52/21
uses [1]   41/11

using [2]   52/20 62/23
usually [1]   45/14

**V**

vague [1]   41/17
vagueness [4]   40/2 40/16 55/20 63/6
valid [1]   43/24
vein [1]   6/6
verbs [6]   30/1 30/2 30/5 36/16 36/22 38/3
versus [2]   40/6 47/10
via [1]   64/20
Vice [8]   5/3 13/7 13/9 13/12 13/17 14/3 15/23 46/17
victim [3]   20/22 56/21 57/17
victims [2]   56/17 57/5
video [4]   1/9 3/4 3/5 3/11
videoconference [1] 3/23
view [9]   7/22 21/24 24/5 30/23 36/23 46/19 46/25 49/9 49/10
viewed [2]   5/15 29/12
views [2]   3/12 20/10
violate [9]   22/19 23/11 24/6 35/19 36/4 36/7 36/18 62/7 62/20
violated [2]   18/25 37/24
violating [1]   40/5
violation [4]   18/22 46/21 63/13 63/14
violence [1]   31/7
virtually [1]   8/15
vocabulary [1] 16/14
voice [1]   62/19
void [1]   63/6
Volpendesto [2] 28/21 30/12
vote [4]   4/13 16/4 31/1 42/5
votes [2]   11/16 27/9

**W**

WAGNER [3]   2/7 2/8 3/7
wait [2]   33/25 48/14
waiting [1]   48/6
waived [1]   17/13
walk [1]   40/2
walking [1]   42/4
warned [1]   38/13
Washington [7]   1/5 1/15 1/17 1/20 1/24 2/9 2/25

water [1]   20/14
way [37]   4/19 8/3 9/24 17/16 21/16 25/13 28/10 30/9 30/10 30/11 31/18 31/21 32/12 33/18 34/3 40/4 41/6 41/13 41/19 41/20 41/21 43/15 44/8 44/13 44/21 45/24 45/24 46/5 46/13 46/19 46/20 47/25 54/19 54/22 56/2 56/10 63/21
weeks [2]   65/11 65/11
welcome [5]   25/5 25/6 55/10 64/14 68/4
weren't [2]   12/17 61/21
what's [8]   5/2 10/23 18/18 19/11 44/8 45/25 45/25 63/13
Where's [1]   45/17
whereas [3]   7/1 19/19 53/4
whisper [1]   24/13
whole [9]   14/2 14/3 15/24 20/19 21/20 27/25 37/22 39/4 67/5
whose [1]   38/20
wicked [1]   41/21
willful [1]   38/21
willfulness [1] 41/3
within [11]   4/14 11/17 12/17 16/7 19/18 28/6 31/2 38/3 62/5 62/6 65/11
without [2]   22/24 33/4
witness [2]   20/22 66/2
witnesses [11] 10/21 12/15 12/18 13/5 14/7 17/10 22/10 58/18 61/2 61/9 62/2
wonder [4]   7/5 28/9 32/23 48/13
word [3]   6/21 33/4 48/8
words [8]   9/19 10/6 12/4 35/7 35/9 35/10 35/12 45/23
work [10]   21/10 32/23 35/14 36/12 36/19 36/22 38/4 38/22 44/2 49/11
working [1]   25/10
worried [1]   42/12
worry [1]   39/24
worse [1]   39/20
writ [1]   42/7
writing [1]   39/12
written [1]   20/24

wrong [1]   20/20
wrongdoing [1]   33/2
wrongful [2]   42/6 57/22
wrongfulness [13] 36/24 37/20 39/2 39/8 39/13 40/19 40/20 40/22 40/25 41/12 41/20 44/1 56/6
wrote [2]   32/6 34/23

**Y**

Yates [19]   6/7 6/20 7/5 7/6 28/8 28/9 28/10 28/12 28/18 28/25 29/1 29/6 29/10 29/15 29/21 31/25 34/5 34/11 58/3
year [3]   19/18 31/23 60/3
years [5]   36/5 42/12 48/7 56/17 60/9
yelling [1]   39/21
yells [2]   37/11 37/16
yield [1]   25/8