UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 21-cr-00032 (DLF) |
| v. | : | |
| GUY WESLEY REFFITT, | : | |
| Defendant. | : | |

### GOVERNMENT'S BILL OF PARTICULARS AND SUPPLEMENTAL FILING ON 18 U.S.C. § 1512(c)(2)

Following a hearing on November 19, 2021, the Court ordered the government to address two issues. Minute Order (Nov. 19, 2021). First, it ordered the government to provide a bill of particulars that "sets forth the means" by which the defendant, Guy Reffitt, violated 18 U.S.C. § 1512(c)(2). *Id.* The evidence introduced at trial will show that the defendant violated Section 1512(c)(2) in three ways: he engaged in conduct with the corrupt intent to (1) stop the Congress's Certification of the Electoral College vote ("Certification proceeding") from timely occurring, (2) impede lawmakers from participating in the Certification proceeding, and (3) prevent lawmakers from considering ballots, lists, certificates, and other documents at the Certification proceeding.

Second, the Court directed the government to identify "a list of provisions" in Chapter 73 in Title 18—the Obstruction of Justice Chapter—that "do not fall within" the scope of Section 1512(c)(2), and to "provide a brief explanation" of how other obstruction statutes reach conduct that Section 1512(c)(2) does not. Minute Order. Although Section 1512(c)(2)'s design as a gap-filling obstruction prohibition inherently causes it to overlap with other prohibitions, multiple obstruction provisions within Chapter 73 reach conduct that Section 1512(c)(2) does not. For example, Section 1512(c)(2) does not reach any obstructive conduct untethered to an "official

1

proceeding," whereas other provisions encompass conduct that obstructs congressional or law enforcement investigations. *See* 18 U.S.C. §§ 1505, 1519. Section 1512(c)(2) similarly does not apply where someone uses or threatens physical force to prevent someone from communicating with law enforcement. That conduct—in which the defendant is also alleged to have engaged—is covered by (and, in this case, charged under) Section 1512(a)(2)(C).

I.  **The defendant violated Section 1512(c)(2) in multiple ways.**

The government intends to prove beyond a reasonable doubt that the defendant violated Section 1512(c)(2) in the following three non-mutually exclusive ways. In each circumstance, the defendant intended to bring about the result through his own actions, or by aiding and abetting the actions of others, or both. In each circumstance, the defendant's attempt, even if unsuccessful, violates the statute.

*First*, the defendant intended to, and did, corruptly obstruct or impede the Certification proceeding. In other words, he intended, though his individual actions and by encouraging others, to prevent the Certification proceeding from occurring at the time prescribed by law. The defendant's conduct thus violated Section 1512(c)(2) by thwarting the commencement or operation of the underlying proceeding on that basis alone. *Cf. United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (police officer tipped off suspects about issuance of arrest warrants before "outstanding warrants could be executed, thereby potentially interfering with an ongoing grand jury proceeding"); *United States v. Ahrensfield*, 698 F.3d 1310, 1324-26 (10th Cir. 2012) (law enforcement officer disclosed existence of undercover investigation to target); *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (defendant disclosed identity of an undercover officer, thus preventing him from making controlled purchases from methamphetamine dealers). As the Ninth Circuit stated in a case arising under the "residual omnibus clause of section 1503,"

"it is not the witness but the 'administration of justice' that stands in need of protection." *United States v. Lester*, 749 F.2d 1288, 1295 (9th Cir. 1984). Here, it is the "official proceeding" itself that needs protection.

*Second*, the defendant intended to corruptly obstruct or impede legislators from attending and participating in the Certification proceeding. In particular, evidence at trial will show that the defendant specifically targeted at least two lawmakers—the Speaker of the House, Nancy Pelosi, and then-Senate Majority Leader, Mitch McConnell—whom he sought to physically remove or displace from the Capitol building. More generally, the defendant's actions—individually and in concert with others—aimed to prevent lawmakers from fulfilling their constitutional responsibilities by participating in the Certification proceeding.

*Third*, the defendant intended to corruptly obstruct or impede the lawmakers' consideration of constitutionally and statutorily required documents. As described in the government's supplemental brief, the Certification proceeding "operates through a deliberate and legally prescribed assessment of ballots, lists, certificates, and, potentially, written objections," and the defendant sought to stop lawmakers from reviewing and considering these statutorily and constitutionally mandated documents. ECF 56, at 34-35. Though courts consistently have concluded that Section 1512(c)(2) is a "prohibition on obstructive behavior that extends beyond merely tampering with tangible items," *United States v. De Bruhl-Daniels*, 491 F. Supp. 3d 237, 251 (S.D. Tex. 2020), the defendant's conduct here would also violate an interpretation of Section 1512(c)(2) that "require[s] some nexus to tangible evidence," *United States v. Singleton*, No. 06-CR-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (unpublished), or some "conduct in relation to a tangible object," *States v. Hutcherson*, No. 05-CR-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (unpublished). *See United States v. Ring*, 628 F. Supp. 2d 195, 225 n.18 (D.D.C.

2009) (disagreeing with the interpretation of Section 1512(c)(2) in *Singleton* and *Hutcherson* but finding that the alleged conduct at issue in that case involved "some nexus to documents").

**II.     While it is a catchall obstruction prohibition, Section 1512(c)(2) does not render the rest of Chapter 73 superfluous.**

Section 1512(c)(2) is a catchall prohibition on obstructive conduct designed to backstop other prohibitions on obstructive conduct by precluding conduct that is similar in kind but occurs in a form that preexisting statutes do not expressly anticipate. As such, Section 1512(c)(2) inherently covers some, but by no means all, of the conduct prohibited by other obstruction statutes in Chapter 73. That unavoidable feature of such a backstop prohibition is neither surprising nor a reason to give Section 1512(c)(2) an artificially limited construction. Section 1512(c)(2) also contains its own limitations that both cabin the extent of the overlap and ensure that it does not unduly extend Chapter 73's reach.

1. Section 1512(c)(2) prohibits all forms of corrupt conduct that intentionally obstruct, influence, or impede an official proceeding. *See* ECF 56, at 7-14. Section 1512(c)(2)'s plain language, *see Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018) (noting that "obstruct" and "impede" are "broad" verbs), and its structure make plain that the provision encompasses misconduct that threatens an official proceeding "beyond [the] simple document destruction" proscribed in 18 U.S.C. § 1512(c)(1), *see United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013). Section 1512(c)(2) criminalizes the same *result* prohibited by Section 1512(c)(1)—obstruction of an official proceeding—when accomplished by other *means, i.e.*, by conduct other than destruction of a document, record, or other object. *Cf. United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir. 1978) (explaining that the "omnibus" clause in 18 U.S.C. § 1503 "prohibits acts that are similar in result rather than manner, to the conduct described in the first part of the statute"). In short, Section 1512(c)(2) "operates as a catch-all to cover otherwise obstructive

4

behavior that might not constitute a more specific" obstruction offense involving documents or records. *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014)); *De Bruhl-Daniels*, 491 F. Supp. 3d at 251 (Section 1512(c)(2) is "a potent, independent, and unequivocal catch-all provision that reaches all manner of obstructive conduct related to an official proceeding"); *cf. United States v. Aguilar*, 515 U.S. 593, 598 (1995) (describing similar "[o]mnibus" clause in 18 U.S.C. § 1503 as a catchall that is "far more general in scope than the earlier clauses of the statute").

Though Section 1512(c)(2) applies to any conduct that "obstructs, influences, or impedes," a felony violation occurs only where the defendant acts "corruptly" and directs his conduct at a specific official proceeding. *See* ECF 56, at 18-23. Those requirements—to prove a stringent *mens rea* and a nexus to an official proceeding—limit Section 1512(c)(2)'s reach. The *mens rea* requirement means that a defendant does not violate Section 1512(c)(2) unless he acts wrongfully and with intent to impede an official proceeding.[1] *See United States v. Delgado*, 984 F.3d 435, 452 (5th Cir. 2021); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct") (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing") (internal quotation marks omitted); *United States v. Mann*, 701 F.3d 274, 307 (8th Cir. 2012) (same). And the nexus requirement means that a defendant does not violate Section 1512(c)(2) unless he acts "in a manner that is likely to obstruct justice," thereby

---

[1] Included as Section III, *infra*, is the government's proposed instruction defining the term "corruptly" as used in Section 1512(c)(2). The government will separately submit the full proposed instructions for Section 1512(c)(2) after conferring with defense counsel.

"exclud[ing] defendants who have an evil purpose but use means that would only unnaturally and improbably be successful." *Aguilar*, 515 U.S. at 601-02 (internal quotation marks omitted); *cf. United States v. Bronstein*, 849 F.3d 1101, 1105 (D.C. Cir. 2017) (defendants who submitted to a security screening and entered a government building where they made brief speeches and sung in a "spectacle" that "lasted approximately two to four minutes" prosecuted for "'mak[ing] a harangue or oration'" in the Supreme Court in violation of 40 U.S.C. § 6134, but not for violating Section 1512(c)(2)).[2]

2. While the catchall design of Section 1512(c)(2) inevitably causes it to overlap with some other provisions in Chapter 73, Section 1512(c)(2)'s limitations ensure that it does not render those other provisions superfluous. As a threshold matter, many provisions of Chapter 73 criminalize conduct entirely outside the scope of Section 1512(c)(2). And even where it overlaps with other prohibitions, it does not render them superfluous. Indeed, as this very case illustrates, Section 1512(c)(2) does not swallow other provisions of Section 1512 itself.

a. Section 1512(c)(2)'s requirement that a defendant engage in obstructive conduct directed at an "official proceeding" places numerous Chapter 73 provisions outside its scope. The first two provisions in Chapter 73, for example, which prohibit "[a]ssault on a process server," 18 U.S.C. § 1501, and "[r]esistance to [an] extradition agent," 18 U.S.C. § 1502, require no nexus to an official proceeding. *See, e.g.*, *United States v. Carpenter*, No. 09-CR-00271, 2012 WL 292480, at *3-*4 (W.D. La. Jan. 31, 2012), *aff'd*, 500 F. App'x 331 (5th Cir. 2012) (defendant, a local

---

[2] Cases such as *Bronstein* illustrate that an individual briefly interrupting a court hearing or legislative session or merely singing while in a proscribed area cannot credibly be described as having corruptly obstructed, impeded, or influenced an official proceeding. By contrast, an individual who, in concert with many others and in some instances threatening or using violence and force, participates in overwhelming law enforcement officers in an effort to prevent lawmakers from fulfilling their constitutionally obligated responsibilities engages in a separate and distinct category of conduct that falls within the scope of Section 1512(c)(2).

police chief, convicted under Section 1501 for interfering with execution of arrest warrants by U.S. Marshals); *United States v. Winkelman*, 101 F.3d 703, 1996 WL 665379, at *1-*2 (6th Cir. 1996) (defendant convicted under Section 1502 for false statements related to an airport drug interdiction). The same is true for the "specialized provisions" at the end of Chapter 73 that "prohibit[] obstructive acts in specific contexts." *Yates v. United States*, 574 U.S. 528, 540 (2015) (plurality opinion) (discussing 18 U.S.C. § 1516 (audits of recipients of federal funds); 18 U.S.C. § 1517 (federal examinations of financial institutions); 18 U.S.C. § 1518 (criminal investigations of federal health care offenses)). None of these provisions would fall within the government's interpretation of Section 1512(c)(2).[3]

Similarly, while another Chapter 73 provision, 18 U.S.C. § 1519, reaches the knowing destruction of records, documents, or tangible objects "with the intent to impede, obstruct, or influence" a federal law-enforcement investigation, Section 1512(c)(2)'s nexus-to-an-official-proceeding requirement effectively places obstruction of law enforcement investigations outside its scope. *See United States v. Ermoian*, 752 F.3d 1165, 1171 (9th Cir. 2013) ("[A]n 'official proceeding' does not include a criminal investigation."); *see also United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"), *cert. denied*, 140 S. Ct. 1106 (2020); *United States v. Ramos*, 537 F.3d 439, 463 (5th Cir. 2008) (internal investigation conducted by Customs and Border Patrol not an "official proceeding"); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) (investigation conducted by Bureau of Alcohol, Tobacco, and Firearms not an "official proceeding").

---

[3] The same reasoning applies to 18 U.S.C. § 1506 (theft of records or process), 18 U.S.C. § 1507 (picketing or parading in or near federal courthouse), and 18 U.S.C. § 1510(a) (obstruction of criminal proceedings).

Section 1512(c)(2) similarly does not overlap with the obstruction provisions in Chapter 73 that prohibit retaliatory conduct, which falls outside the plain text of Section 1512(c)(2). For example, a defendant violates 18 U.S.C. § 1503 by "injur[ing] a grand or petit juror "on account of any verdict or indictment assented to by him." And 18 U.S.C. § 1513 more generally criminalizes "[r]etaliating against a witness, victim, or an informant," including in connection with an official proceeding. *See* 18 U.S.C. § 1513.[4] Section 1512(c)(2) requires proof that a defendant acted with the specific intent to prospectively obstruct a specific official proceeding, but neither its text nor any case law interpreting it would support applying Section 1512(c)(2) to reach back in time to cover a defendant's conduct retaliating against a juror, judge, or lawmaker for taking a certain action in an official proceeding.

      b.      Even where it does overlap with other prohibitions, Section 1512(c)(2) does not render them superfluous. Section 1503, for example, covers various forms of obstruction that interfere with the "due administration of justice," and thus encompass obstructive conduct outside the context of an official proceeding. Similarly, Section 1505 prohibits the corrupt obstruction of "the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House, or any joint committee of the Congress." 18 U.S.C. § 1505. Such an inquiry or investigation is not necessarily an "official proceeding" whose obstruction would be prohibited by Section 1512(c)(2). For instance, if a congressional chief of staff directed his or her employees to falsely certify that they did not have

---

[4] For example, Section 1513(a)(1) applies to "[w]hoever kills or attempts to kill another person with intent to retaliate against any person for-- (A) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or (B) providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings."

8

any responsive documents in response to a request for information issued by investigators from the House Ethics Committee investigating the potential misuse of funds to pay campaign expenses, the chief of staff has likely violated Section 1505. *See United States v. Bowser*, 964 F.3d 26, 30 (D.C. Cir. 2020), *cert. denied*, 141 S. Ct. 1390 (2021).[5]  But an investigation undertaken by the House Ethics Committee would not appear to qualify as an "official proceeding" for purposes of Section 1512(c)(2),[6] thus placing the chief of staff's obstructive conduct outside the ambit of that provision.

c. Section 1512(c)(2) also does not swallow the other provisions of Section 1512 itself. For example, Sections 1512(a) and 1512(b) criminalize killing, using or threatening physical force, or using intimidation, threats, or corrupt persuasion with the intent to "prevent" or "hinder, delay, or prevent" the communication of certain information to law enforcement. *See* 18 U.S.C. §§ 1512(a)(1)(C), 1512(a)(2)(C), 1512(b)(3).  Because those provisions are not connected to an official proceeding, they are not subsumed with Section 1512(c)(2)—as this case illustrates.  The defendant is charged in Count Five with using "physical force and the threat of physical force" against certain family members to prevent them from communicating information related to the possible commission of a federal crimes to law enforcement.  ECF 34.  That charge has been brought under Section 1512(a)(2)(C), not Section 1512(c)(2), which does not reach that conduct.

---

[5] In *Bowser*, the D.C. Circuit affirmed the defendant's acquittal on the ground that the entity conducting the investigation, the Office of Congressional Ethics, did not qualify as an agent of the House for purposes of Section 1505.  964 F.3d at 31-32.  The example in the text refers to the House Ethics Committee, which falls within the scope of Section 1505.

[6] The only "official proceeding" in Section 1515(a)(1) that might potentially apply is a "proceeding before a Federal Government agency which is authorized by law."  18 U.S.C. § 1515(a)(1)(C). But the House Ethics Committee "would not be naturally described by any of the terms enumerated in the definition of 'agency' in 18 U.S.C. § 6," *United States v. Oakar*, 111 F.3d 146, 154 (D.C. Cir. 1997), and thus could potentially fall outside of Section 1512(c)(2).

9

Similarly, although Section 1512(c)(2) would cover much of the conduct also covered by Sections 1512(b)(1) and (2)—which apply where a defendant "knowingly uses intimidation, threatens, or corruptly persuades another person" intending either to (1) "influence, delay, or prevent" another's testimony at an official proceeding, or (2) "cause or induce" a person to take certain actions with respect to an official proceeding—it does not render them superfluous. The knowing threats and intimidation that those provisions prohibit may sometimes be corrupt, and thus fall within Section 1512(c)(2). But they need not be. A defendant might, in particular, knowingly threaten or intimidate someone into avoiding full participation in a proceeding for reasons unrelated to the outcome of the proceeding. A defendant who, for example, knowingly intimidates someone into disregarding a subpoena for an object (say, a gun) because he wishes to use the object himself (say, because he needs it for a drug deal that day), has violated Section 1512(b)(2). But because the effect on the proceeding itself is only a tangential result of his conduct, rather than its design, he has not acted "corruptly" within the meaning of Section 1512(c)(2).

Nor does Section 1512(c)(2) render the prohibitions on intentional harassment in Section 1512(d) superfluous. For one thing, Sections 1512(d)(2)-(4) fall outside Section 1512(c)(2)'s ambit because they proscribe conduct unrelated to an official proceeding. Section 1512(d)(1), which prohibits "intentionally harass[ing] another person and thereby hinder[ing] any person from attending or testifying in an official proceeding," 18 U.S.C. § 1512(d)(1), can reach conduct also criminalized by Section 1512(c)(2). But Section 1512(c)(2) requires the government to prove that the defendant acted wrongfully with the intent to obstruct a particular official proceeding, whereas Section 1512(d)(1) imposes liability where a defendant simply harasses one person with the result—intended or not ("thereby")—that some other person refrain from attending or testifying at

10

an official proceeding. In that respect, Section 1512(d)(1) is akin to a lesser-included offense of Section 1512(c)(2). *See United States v. Chaggar*, 197 F. App'x 704, 707 (9th Cir. 2006) (unpublished) (Section 1512(d)(1) is a lesser-included offense of Section 1512(b)).

3. The substantial overlap between the scope of Section 1512(c)(2) and the scope of other obstruction prohibitions in Chapter 73 is not a reason to give its plain text an artificially limited construction. *See Shaw v. United States*, 137 S. Ct. 462, 469 (2016). Under any circumstances, the presence of even "substantial" overlap in criminal statutes is not "uncommon." *See Loughrin v. United States,* 573 U.S. 351, 358 n.4 (2014); *Hubbard v. United States,* 514 U.S. 695, 714, n.14 (1995) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct".); *Aguilar*, 515 U.S. at 616 (Scalia, J., dissenting) ("The fact that there is now some overlap between § 1503 and § 1512 is no more intolerable than the fact that there is some overlap between the omnibus clause of § 1503 and the other provisions of § 1503 itself."). That overlap is all the more unremarkable where, as here, Congress has enacted a catchall provision like Section 1512(c)(2),[7] to fill gaps and capture "known unknowns." *Republic of Iraq*

---

[7] Indeed, the language Congress used in Section 1512(c)(2)—prohibiting "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] any official proceeding" or attempting to do so—parallels a provision that Congress considered years earlier in a bill designed to strengthen protections against obstruction of justice. While the earlier provision is not a direct antecedent of Section 1512(c)(2), Congress's understanding of the broad scope of the earlier provision is instructive. Recognizing that "the proper administration of justice may be impeded or thwarted" by a "variety of corrupt methods . . . limited only by the imagination of the criminal inclined," S. Rep. No. 532, 97th Cong., 2d Sess. 17-18 (1982), Congress considered a bill that would have amended Section 1512 by making it a crime, *inter alia*, when a person "corruptly . . . influences, obstructs, or impedes" certain official proceedings. *Id.* at 17-19 (quoting S. 2420). The Senate Committee explained that because "preventing an obstruction or miscarriage of justice cannot fully be carried out by a simple enumeration of the commonly prosecuted obstruction offenses[,]" "[t]here must also be protection against the rare type of conduct that is the product of the inventive criminal mind." *Id.* at 18. The report thus indicates a congressional awareness that language resembling Section 1512(c)(2) broadly covers a wide variety of obstructive conduct that may also be covered by other provisions. *Cf. Catrino v. United States*, 176 F.2d 884, 887 (9th Cir. 1949) ("The obstruction of justice statute is an outgrowth of Congressional recognition of the variety of

11

*v. Beaty*, 556 U.S. 848, 860 (2009); *see id.* (noting that "the whole value of a generally phrased residual clause . . . is that it serves as a catchall" to ensure that the full range of conduct Congress sought to regulate comes within the statute, including "matters not specifically contemplated" by more specific provisions). It would have been impossible for Congress to write such a backstop provision in a way that captured conduct similar in kind to existing prohibitions, but not specifically anticipated by them, without a considerable amount of overlap. Treating the existence of such overlap as a reason for limiting the backstop provision's scope would thus defeat, not effectuate, its design.

III. **Draft Jury Instruction on "corruptly" for Section 1512(c)(2)**

<u>**OBSTRUCTION OF JUSTICE OF AN OFFICIAL PROCEEDING – DEFINITION OF CORRUPTLY**</u>

From: Seventh Circuit Pattern Criminal Jury Instructions; *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013); *United States v. North,* 910 F.2d 843, 883 (D.C. Cir. 1990), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990); *United States v. Cervantes*, No. 16-10508, 2021 WL 2666684, at *6 (9th Cir. June 29, 2021).

A person acts "corruptly" if he acts knowingly, with intent to obstruct or impede an official proceeding, and with consciousness of wrongdoing. "Consciousness of wrongdoing" means that the person understands or is aware that what he is doing is wrong, immoral, depraved, or evil.

Not all attempts to obstruct or impede an official proceeding involve acting corruptly. For example, a political activist might call a representative in Congress and threaten to oppose her reelection and peacefully protest the representative in public spaces unless the representative votes in a congressional proceeding against taking action that the activist believes to be a waste of

---

corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined.").

12

taxpayer money. The activist is acting with the intent to obstruct or impede the proceeding but is not necessarily doing so corruptly.[8] By contrast, a political activist who obstructs or impedes a congressional proceeding by engaging in conduct such as offering illegal bribes, engaging in violence, committing fraud, or other independently unlawful conduct, is acting corruptly.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Jeffrey Nestler
Jeffrey S. Nestler
Assistant United States Attorney
D.C. Bar No. 978296
Risa Berkower
Assistant United States Attorney
NY Bar No. 4536538
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Phone: 202-252-7277
Email: Jeffrey.Nestler@usdoj.gov

*/s/ James I. Pearce*
James I. Pearce
Capitol Breach Appellate Coordinator
NC Bar No. 44691
555 4th Street, N.W.
Washington, D.C. 20530
Phone: 202-532-4991
Email: James.Pearce@usdoj.gov

---

[8] This example is derived from *United States v. North*, 910 F.2d 843, 883 (D.C. Cir. 1990) *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990).