IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Case No. 21-CR-00046-RDM |
| PATRICK MONTGOMERY and BRADY KNOWLTON, | § § § § | |
| *Defendants* | § | |

**DEFENDANTS' REPLY TO GOVERNMENT'S FILINGS RELATED TO DEFENDANTS' MOTION TO DISMISS
COUNT TEN OF SECOND SUPERSEDING INDICTMENT**

TO THE HONORABLE RANDOLPH D. MOSS, UNITED STATES DISTRICT JUDGE FOR THE DISTRICT OF COLUMBIA:

PATRICK MONTGOMERY and BRADY KNOWLTON, the Defendants in the above styled and numbered cause, by and through their respective, undersigned counsel, submit the following reply to the Government's recent filings related to their Motion to Dismiss Count Ten of the Second Superseding Indictment. More specifically, this response is made relative to the following filings:

- Government's Bill of Particulars and Supplemental Filing on 18 U.S.C. § 1512(c)(2) in *United States v. Guy Wesley Reffitt*, Case No. 21-cr-00032-DLF (filed in this case under Doc. No. 81)

- United States' Reply to the Defendants' Responses to the United States' Supplemental Brief on 18 U.S.C. § 1512(c)(2) in *United States v. Ethan Nordean, et al*, Case No. 21-CR-175-TJK (filed in the case under Doc. No. 82)

Before responding to these individual filings, however, the Defendants are obligated to raise a critical concern.

The Government has filed multiple briefs over multiple cases over multiple

1

months trying to explain how certain conduct allegedly engaged in on January 6 violates Section 1512(c)(2). They have gone to great lengths, raising various arguments, and citing to multiple authorities (which, as discussed *infra*, are usually mostly inapplicable to the interpretation of this statute) as their argument and theory evolves over time. This begs one simple question.

How is an ordinary person of normal intelligence supposed to anticipate the sort of mental gymnastics that the Government has embarked upon to place them on notice of what conduct violates Section 1512(c)(2)? *See Johnson v. United States*, 576 U.S. 591, 595–96, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015) (noting a statute is unconstitutionally vague under the due process clause if "it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."). The Government is asking this Court to treat them as beyond Darwinesque and anticipate the evolution of the interpretation of a statute buried in Chapter 73 related to obstruction of justice into a broad prohibition against any obstructive conduct against any proceeding. This is beyond throwing fish back in the ocean. *See Yates v. United States*, 574 U.S. 528, 135 S. Ct. 1074, 191 L. Ed. 2d 64 (2015). It is the Government wanting to prosecute the mechanic who builds a trap door into the side of the boat so the captain can toss out the undersized fish to keep from getting caught by the wildlife agent. The Government cannot and should not be allowed to keep trying repeatedly to fit a square peg into a round hole. Each of these filings, like the many others it has filed in this and other cases, attempt to do exactly that.

**The *Reffitt* Filing**

The Government's filing in *United States v. Reffitt* boggles the imagination and instinctively raises multiple concerns about the position the Government is now taking.

First, and foremost, this Court should take heed of the particulars of the Government's proof in that case and how they intend to prove that Mr. Reffitt violated Section 1512(c)(2). The Government points first to Mr. Reffitt's "individual actions and by encouraging others, to prevent the Certification proceeding from occurring at the time prescribed by law." Brief at 2. They posit, "The defendant's conduct thus violated Section 1512(c)(2) by thwarting the commencement or operation of the underlying proceeding on that basis alone." *Id.* But to support that position, they do not cite to any authority that holds the same. Instead, they give a compare citation to two cases: *United States v. Martinez*, 862 F.3d 223 (2d Cir. 2017) and *United States v. Phillips*, 583 F.3d 1261 (10th Cir. 2009). The flaw in using the compare citation to both of those cases is that both — unlike the proceeding at issue in this case — involved an *investigation into whether some conduct violated the law*, the very core of what is meant by the "administration of justice." *See United States v. Richardson*, 676 F.3d 491, 502–503 (5th Cir. 2012) ("[O]bstructing the due administration of justice means interfering with the procedure of a judicial hearing or trial."); *United States v. Brenson*, 104 F.3d 1267, 1279–80 (11th Cir. 1997) ("due administration of justice" means "judicial procedure" and "the performance of acts required by law in

the discharge of duties such as appearing as a witness and giving thoughtful testimony when subpoenaed"). The Government recognizes this distinction in their very next sentence when they quote the Ninth Circuit stating "it is not the witness but the 'administration of justice' that stands in need of protection.'" Brief at 2–3. The Government continues, "Here, it is the 'official proceeding' itself that needs protection."

So is the Government saying that if some proceeding "needs protection" from some interference or attempts to keep it from occurring, that is an "official proceeding" as defined by Section 1515 and applied in Section 1512(c)(2)? Is any attempt to interfere with that proceeding sufficient to establish a violation of Section 1512(c)(2)? That certainly cannot be the standard.

What about a naturalization ceremony? Although a solemn and important occasion for many who are becoming United States citizens, if one were to corruptly interfere with or attempt to keep an objectionable individual from participating in the proceeding before a district court to administer the oath of renunciation and allegiance, does that amount to a violation of Section 1512(c)(2)? Section 1512 certainly cannot be interpreted to reach that far.

The Government was correct in quoting the Ninth Circuit as discussed *supra* because, as the Ninth Circuit recognized, statutes within Title 73 are not just about protection of witnesses. *See United States v. Lester*, 749 F.2d 1288, 1295 (9th Cir. 1984). There must be some nexus to the administration of justice. *Id.* And, since nothing about the electoral certification proceedings related to the administration of justice, the Government's position here fails.

The Government continues by laying out the second way they intend to prove Mr. Reffitt violated Section 1512(c)(2), stating that "evidence at trial will show that the defendant specifically targeted at least two lawmakers—the Speaker of the House, Nancy Pelosi, and then-Senate Majority Leader, Mitch McConnell—whom he sought to physically remove or displace from the Capitol building." Brief at 3. First, no such allegation has been made here against Mr. Montgomery or Mr. Knowlton — nor could there be or will there ever be — as there is no evidence to suggest they targeted specific lawmakers. Second, and more importantly, is the specific targeting of a lawmaker *really* the standard for what amounts to a Section 1512(c)(2) violation? If so, how does the Government justify their decision in the case involving Dawn Bancroft where Bancroft filmed a "selfie style video of herself" stating, "We broke into the capitol, we got inside, we did our part, *we were looking for Nancy to shoot her in the frickin' brain*, but we didn't find her." *See United States v. Dawn Bancroft*, 21-CR-271, ECF No. 33 at 4 (emphasis added). Bancroft was only charged by information for multiple misdemeanors but was never charged with violating Section 1512(c)(2). *See United States v. Dawn Bancroft*, 21-CR-271, ECF No. 18. The inconsistency cannot be ignored.

The Government concludes their list of particulars for Mr. Reffitt by stating that he violated Section 1512(c)(2) by intending "to corruptly obstruct or impede the lawmakers' consideration of constitutionally and statutorily required documents," presumably referring to the electoral certificates. Brief at 3. This is like, to use the earlier example, trying to prosecute the mechanic who builds a trap door into the side

5

of Mr. Yates' boat for impeding, obstructing, or influencing the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States in violation of 18 U.S.C. § 1519. As the Defendants explained in their Joint Supplemental Brief in support of their Motion to Dismiss, the electoral certificates are not "evidence" under the plain meaning of that term or, more importantly, the type of "evidence" used in the administration of justice that several of the statutes within Title 73 aim to protect. *See* Joint Supplemental Brief at 24, ECF No. 60.

All that the Government's list of particulars setting forth how they intend to prove a violation of Section 1512(c)(2) in Mr. Reffitt's case proves is that the Government is still way off course in trying to prosecute individuals like Mr. Reffitt, Mr. Montgomery, and Mr. Knowlton using a statute that is wholly inapplicable. The quixotic nature of their task becomes even more evident in the remainder of their filing.

In the second section of their filing, the Government makes an eye-popping argument as to why Section 1512(c)(2) does not render the rest of Chapter 73 superfluous.

The Government opens by conceding the inherent nature of their interpretation of Section 1512(c)(2) as covering "some, but by no means all, of the conduct prohibited by other obstruction statutes in Chapter 73." Brief at 4. But then they resort to non sequitur and state, "That unavoidable feature of such a backstop prohibition is neither surprising nor a reason to give Section 1512(c)(2) an artificially limited construction." *Id.* How does that logic even work? Just because Chapter 73 may cover

some other conduct that Section 1512(c)(2) does not, that statute should just be allowed to roam free without any restrictions, applied in any context the Government so chooses to apply it?

As stated in previous briefing, Defendants do not dispute the Government's position that Section 1512(c)(2) "encompasses misconduct that threatens an official proceeding 'beyond [the] simple document destruction." *Id.* Nor do they dispute the Government's position that the statute "criminalizes the same *result* prohibited by Section 1512(c)(1) . . . when accomplished by other *means*." *Id.* (emphasis in original). Where the Government goes completely off-base is when they surmise, "In short, Section 1512(c)(2) 'operates as a *catch-all* to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense involving documents or records." *Id* at 5 (emphasis added). To support this position, the Government cites to three cases: *United States v. Petruk*, 781 F.3d 438 (8th Cir. 2015); *United States v. De Bruhl-Daniels*, 491 F. Supp. 3d 237 (S.D. Tex. 2020); and, *United States v. Aguilar*, 515 U.S. 593 (1995). Brief at 5. The Government, however, takes the courts' use of the term "catch-all" in each of those cases entirely out of context. In each of those cases, the obstructive conduct in those official proceedings related to an *investigation*, in one form or the other, *into whether certain conduct violated the law*. *See Petruk*, 781 F.3d at 447 (involving false statements in a court proceeding); *De Bruhl-Daniels*, 491 F. Supp. 3d at 251 (involving a NCIS agent improperly informing individual he was a target of an investigation and lying to FBI investigators about her actions);

7

*Aguilar*, 515 U.S. at 598 (involving a federal judge lying to investigators about disclosing a wiretap). Stated more simply, they all involved some obstruction of justice. So while Section 1512(c)(2) might arguably be considered a "catch-all" for conduct that obstructs *justice*, these authorities do not support the contention that 1512(c)(2) catches any and all kinds of obstructive conduct of any and all kinds of proceedings in the lay sense of the term. The truth of the matter is that no such authority exists.[1]

The Government gets it right in the end, noting, "a defendant does not violate Section 1512(c)(2) unless he acts 'in a manner that is likely to obstruct justice. . . .'" Brief at 5. But as there is no allegation that the Defendants here obstructed justice, there is no legal basis for the charge in Count Ten of the Second Superseding Indictment alleging a violation of Section 1512(c)(2).

As an aside to that point by the Government, in addition to citing to the Supreme Court's decision in *Aguilar* to support their argument, the Government also surprisingly makes a compare cite to *United States v. Bronstein*, 849 F.3d 1101 (D.C. Cir. 2017) and adds a footnote with a new, interesting argument. *See* Brief at 5.

---

[1] The additional cases cited by the Government in their Brief on page 5, like those discussed *supra*, likewise all involve cases where there is some obstruction of justice, that is, some allegation of obstructive conduct that interfered with or impeded the flow of evidence be used to establish whether some conduct violated the law or not. *See United States v. Delgado*, 984 F.3d 435, 452 (5th Cir. 2021) (involving a federal judge, after learning he was target of investigation, contacting an associate about changing a bribe payment to make it look like a campaign contribution); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (alleged that defendant obstructed justice by trying to remove property subject to forfeiture proceeding; conviction overturned due to lack of evidence to show defendant's knowledge of the forfeiture proceeding); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (obstructed civil forfeiture proceeding by attempting to backdate a stock sale agreement; forfeiture based on illegal conduct); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (where the corrupt obstruction involved defendant's plan and attempt to obtain a forged receipt to show the legitimate purchase of stolen vehicles); *United States v. Mann*, 701 F.3d 274, 307 (8th Cir. 2012) (where the corrupt obstruction involved defendant instructing his wife to remove evidence from an office desk).

In their parenthetical, the Government states of *Bronstein* that the case stands for the principle that "defendants who submitted to a security screening and entered a government building where they made brief speeches and sung in a 'spectacle' that 'lasted approximately two to four minutes' prosecuted for 'mak[ing] a harangue or oration' in the Supreme Court in violation of 40 U.S.C. § 6134, but not for violating Section 1512(c)(2)). Then, in a footnote, they state

> Cases such as *Bronstein* illustrate that an individual briefly interrupting a court hearing or legislative session or merely singing while in a proscribed area cannot credibly be described as having corruptly obstructed, impeded, or influenced an official proceeding. By contrast, an individual who, in concert with many others and in some instances threatening or using violence and force, participates in overwhelming law enforcement officers in an effort to prevent lawmakers from fulfilling their constitutionally obligated responsibilities engages in a separate and distinct category of conduct that falls within the scope of Section 1512(c)(2).

*Id.* Upon reading this, one can only scratch their head in wonder.

*Bronstein* does not stand for the principle that the Government purportedly wants it to stand for. *Bronstein* involved defendants intentionally disrupting a Supreme Court oral argument to voice their opposition to *Citizens United*. *Bronstein*, 849 F.3d at 1104–05. Right off the bat, the case is inapplicable as it involved the obstruction of an actual judicial proceeding, not some proceeding before Congress. *See id.* More notably, the defendants there were only charged with violating 18 U.S.C. 1507 and 40 U.S.C. 6134; they were never charged with violating Section 1512(c)(2) and hence, the case gives no comment on whether such conduct does or does not violate that statute. *Id.* at 1105.

The demonstration in *Bronstein*, however, *was* a pre-planned event by demonstrators with the express intention of disrupting, impeding, and obstructing the proceedings. *Id.* at 1104–05. They, in fact, acted in concert with one another, entering the Supreme Court, standing up and shouting one at a time to disrupt the proceedings and then, once one defendant was removed, another would stand up and continue to disrupt the proceeding. *Id.* This went on seriatim until a handful of them were arrested and removed from the Court. *Id.* Under the Government's theory and logic applied here, the Government should be arguing that their conduct *did* violate Section 1512(c)(2).

The footnote is where the real fault in the Government's argument lies and demonstrates how hopelessly vague their interpretation of Section 1512(c)(2) really is. If Mr. Montgomery and Mr. Knowlton only *sang* their objections to the certification proceedings, would they not be subject to prosecution for violating Section 1512(c)(2)? How does one decipher when something can or "cannot credibly be described as corruptly" obstructing, impeding, or influencing an official proceeding? Brief at 5, fn.1. Is the standard for violating the statute when an individual who "in concert with many others . . . participates in overwhelming law enforcement. . . "? *Id.* Because if that is the standard, the Government has a real problem where the evidence shows Mr. Montgomery and Mr. Knowlton walked through an open Capitol door entrance with multiple Capitol police officers standing by and making no efforts to stop them from entering. What about other defendants charged with violating Section 1512 who

did not "overwhelm law enforcement"? Is the Government now saying that "overwhelming law enforcement" is the obstructive act? If so, is mere presence in the building with the intent to obstruct not a violation of Section 1512? If they are not conceding that, at what point does the obstructive act begin? When does one "overwhelm" law enforcement? What does "in concert with many others" mean? The list of questions is endless, but the audacity of the Government's argument is evident here.

The Government then embarks on a litany of references to other statutes within Title 73 to stake their claim that their broad interpretation of Section 1512(c)(2) does not render many of those statutes superfluous. Brief at 6–9. But their recitation of these multiple statutes ignores the position that they are taking in this case regarding the application of Section 1512(c)(2).

To elucidate, they cite to Sections 1501, 1502, 1503, 1516, 1517, 1518, and 1519 (and by footnote to Sections 1505, 1507, and 1510) to say that, because none of those statutes *require* that the obstructive conduct be directed at an "official proceeding," these statutes fall "outside the scope" of Section 1512(c)(2). *Id*. Stating that is stating the obvious and is beyond contention. What the Government fails to state or recognize, however, is that its argument advocating a broad *interpretation* of Section 1512(c)(2) does, as the former Attorney General put it, "subsume virtually all other obstruction provisions in Title 18. . . . It is not too much of an exaggeration to say that, if Section 1512(c)(2) can be read as broadly as being proposed, then virtually all Federal obstruction law could be reduced to this single clause." Barr Memo at 5. For instance, even though Section 1501 does indeed not require a nexus to an "official

11

proceeding," under the Government's interpretation of Section 1512(c)(2), it could argue that an assault on a process server is a corrupt obstruction, interference, or impediment of an official proceeding if that process server is attempting to serve, for instance, a grand jury subpoena. Or "[r]esistance to [an] extradition agent," *see* 18 U.S.C. § 1502, could also, under the Government's interpretation, be considered corrupt obstruction, interference, or impediment of an official proceeding if that agent is trying to extradite a defendant to face criminal charges in an official proceeding.

Surprisingly — despite the Government's efforts to get this Court to embrace the lay, rather than the legal interpretation of the term "official proceeding" — the Government cites to *Ermoian* and other related cases that Defendants rely upon to support its position that certain activities, namely law enforcement investigations, fall outside the scope of Section 1512(c)(2). Brief at 7. Once again, the Government makes its point . . . for the Defendants! Mr. Montgomery and Mr. Knowlton wholeheartedly agree that, when given a limited interpretation such as the one embraced by the courts in *Ermoian*, *Sutherland*, *Ramos*, and *Dunn*, cited to in the Government's brief, the remainder of Title 73 is *not* rendered superfluous. This is the interpretation that this Court should — as the Government apparently does at this point in its brief — embrace.

Where the Government, once again, proves the audacity of its argument — and makes what is probably the most shocking of them all — is in the following section discussing Sections 1503 and 1505. Brief at 8. Here, not only do they point out that neither of those sections require proof of conduct obstructing an "official proceeding,"

12

they actually take the position that "*an inquiry or investigation is not necessarily an 'official proceeding' whose obstruction would be prohibited by Section 1512(c)(2).*" Id. (emphasis added). Never mind that this entirely disregards both the plain language, legislative history, and historical application of the statute as discussed extensively by Defendants in their supplemental brief (at 10–18). Is it *really* the Government's position that when Congress is acting in "the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House, or any joint committee of the Congress," that is *not* an "official proceeding" that can be obstructed under Section 1512(c)(2) but somehow the ministerial act involving the combined legislative bodies meeting to certify the electoral college vote *is*? Consistent with its say-one-thing-but-disregard-another argument, it uses the case, *United States v. Bowser*, 964 F.3d 26 (D.C. Cir. 2020), cert. denied, 141 S. Ct. 1390 (2021), to exemplify its point, namely, that "an investigation undertaken by the House Ethics Committee would not appear to qualify as an 'official proceeding' for purposes of Section 1512(c)(2), thus placing the chief of staff's obstructive conduct outside the ambit of that provision. Brief at 9. Never mind that all the court held in that case was that the defendant could not be prosecuted under Section *1505*; nothing was said about the application or interpretation of Section 1512(c)(2). *Bowser*, 964 F.3d at 31–32. Does the Government not recognize that, under its interpretation of Section 1512(c)(2) that they are espousing in this case and others, a House Ethics Committee chief of staff could most certainly be prosecuted for their obstructive conduct in violation of Section 1512(c)(2)?

13

They obviously do not as they continue and conclude their argument. *See* Brief at 9–12. They finally turn inward toward Section 1512 itself and argue that Section (c)(2) is distinguishable from other provisions within the statute, such as sections (a) and (b). *Id*. Rather than set out in detail here the flaws with this portion of the Government's filing, the Defendants would direct this Court to the responsive filing by Defendant Ethan Nordean in his case, responding to the Government's Reply Brief on the Meaning of the Term "Corruptly" in the Context of Obstruction of Congress. *See United States v. Ethan Nordean, et al*, Case No. 21-cr-175-TJK, ECF No. 238, at 16–18 (attached hereto as an exhibit). In his response, Mr. Nordean recognizes similar problems in the Government's filing there that the Defendants have identified here.

In sum, the Government's attempts to demonstrate that its broad interpretation and application of Section 1512(c)(2) is proper and does not render the rest of Chapter 73 superfluous in the *Reffitt* filing are wholly lacking. Taking from the response by Mr. Nordean, in the past six years, the Supreme Court has twice rejected the Government's overbroad interpretations of "catchall" or "residual" clauses in obstruction of justice statutes. *Marinello v. United States*, 138 S. Ct. 1101, 1109–10, 200 L. Ed. 2d 356 (2018); *Yates*, 574 U.S. at 549. In both cases, the Court rejected the government's argument that redundancy in other obstruction statutes created by its overbroad catchall interpretation was "mere overlap." *Marinello*, 138 S. Ct. at 1107–08 (While "[s]ome overlap in criminal provisions is, of course, inevitable," the Court

14

had not seen "overlap and redundancy to the degree that would result from the Government's broad reading of § 7212"); *Yates*, 574 U.S. at 551 ("where *noscitur a sociis* and *ejusdem generis* apply, "known unknowns" should be similar to known knowns, i.e., here, records and documents. This is especially true because reading "tangible object" too broadly could render "record" and " document" superfluous."). The Government's interpretation and application of Section 1512(c)(2) in these cases is far broader than its interpretations in *Marinello* and *Yates*. This Court should likewise reject such interpretation and application.

**The *Nordean* Filing**

For the sake of brevity, rather than, like with the *Reffitt* filing, go point by point to demonstrate the flaws with the Government's filing in *United States v. Nordean*, the Defendants would move this Court for leave to submit the entire response filed by Mr. Nordean in response to the Government's filing submitted both there and here and adopt the arguments stated therein. *See United States v. Ethan Nordean, et al*, Case No. 21-cr-175-TJK, ECF No. 238. Defendants maintain that Mr. Nordean sufficiently sets forth the problems with the Government's interpretation of "corruptly" as applied to Section 1512(c)(2) and respectfully request this Court to reject the Government's position in this case and find that the statute is unconstitutionally vague or otherwise inapplicable to the charged conduct.

Based on the foregoing and all previous motions, objections, responses, replies, and other related matters or argument filed or made related thereto, Defendants respectfully request this Court grant their motion to dismiss Count Ten of the Second

15

Superseding Indictment against them.

Date: <u>December 10, 2021</u>  Respectfully Submitted,

RONALD SULLIVAN LAW, PLLC

by: <u>/s/ Ronald S. Sullivan Jr.</u>
RONALD S. SULLIVAN JR.
D.C.D.C. Bar ID 451518
rsullivan@ronaldsullivanlaw.com

1300 I Street NW
Suite 400 E
Washington, DC 2005
Telephone: (202) 935-4347
Fax: (617) 496-2277

MAYR LAW, P.C.

by: <u>/s/ T. Brent Mayr</u>
T. BRENT MAYR
Texas State Bar Number 24037052
D.C.D.C. Bar ID TX0206
bmayr@mayr-law.com

5300 Memorial Dr., Suite 750
Houston, TX 77007
Telephone: 713-808-9613
Fax: 713-808-9613

WAGNER PLLC

by: <u>/s/ Camille Wagner</u>
CAMILLE WAGNER
DC Bar No. 1695930
law@myattorneywagner.com

1629 K Street NW, Suite 300
Washington, DC 20006
(202) 630-8812

ATTORNEYS FOR THE DEFENDANT,
BRADY KNOWLTON

16

       A.J. KRAMER
       FEDERAL PUBLIC DEFENDER

       by: /s/ Dani Jahn
       DANI JAHN
       Assistant Federal Public Defender

       625 Indiana Avenue, N.W., Ste 550
       Washington, D.C. 20004
       (202) 208-750

       ATTORNEY FOR THE DEFENDANT,
       PATRICK MONTGOMERY

## CERTIFICATE OF SERVICE

 I certify that a true and correct copy of this motion was sent to Counsel for the Government, Elizabeth Kelley, James Peterson, and James Pearce, on December 10, 2021, via CM/ECF and email.

       /s/ T. Brent Mayr
       T. BRENT MAYR