UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :    CASE NO. 21-cr-46 (RDM) |
| v. | : |
| | : |
| PATRICK MONTGOMERY | : |
| BRADY KNOWLTON, and | : |
| GARY WILSON | : |
| | : |
| Defendants. | : |

**UNITED STATES' MOTION IN LIMINE TO PRECLUDE
FIRST AMENDMENT DEFENSE, EVIDENCE, OR ARGUMENT**

The government respectfully requests that the Court issue an order precluding Defendants Brady Knowlton, Patrick Montgomery, and Gary Wilson from eliciting evidence or arguing to the jury or fact finder that their statements and actions were protected by the First Amendment.[1] None of the offenses with which the defendants are charged punish speech, as crimes such as threats or solicitation do. The crimes with which the defendants are charged punish the corrupt obstruction, influence, or impediment of an official proceeding (substantive violation of 18 U.S.C. § 1512(c)(2)); or actions taken during the riot in restricted and prohibited areas. That being said, the government concedes that defendants can argue that they were present for purposes of protest, to the extent that a protest argument may bear on the defendants' state of mind. Rather, the defendants cannot claim that the Frist Amendment protects their

---

[1] The government is aware of, and produced in discovery, a Rumble video upload dated March 25, 2022 titled "Tipping Point – Gabe Kaminsky – The Story of Brady Knowlton." *See* https://rumble.com/vyg6yy-tipping-point-gabe-kaminsky-the-story-of-brady-knowlton.html, last accessed on August 17, 2022. Based upon information and belief, and the statements disclosed in the Rumble video, defendant's counsel contacted Gabe Kaminsky to make the report.

conduct, acts, and words.

# INTRODUCTION

The defendants' conduct occurred while they were unlawfully within a restricted perimeter. The defendants collectively, and individually, confronted and assaulted police officers at the Lower West Plaza.



**Figure 1** – *Knowlton and Montgomery confronting officers at LWP*



**Figure 2** – *BWC – ND - Confrontation at Lower West Plaza*

Thereafter, defendants helped create a barrier to police before breaching the Capitol through the Upper West Terrace door.



https://archive.org/download/RXGNGvjfsGY3aan8e/goodlionfilms_IMG_5476_1_.mpeg4
**Figure 3** – *Pushing Dolly and UWT Door*

Thereafter, defendants were in the immediate proximity of other rioters who assaulted U.S. Capitol Police Officers before they breached the Senate Gallery.


**Figure 4** – CCTV - *Defendants Moments before Assault and Breach of Senate Chamber*

After exiting the Capitol, Defendant Knowlton climbed upon a government vehicle at the East Plaza.


https://www.aaronanfinson.com/#6
**Figure 5** – Montgomery filming *Knowlton on government vehicle*

All of this conduct took place within a restricted perimeter.



**Figure 6** – *Restricted Perimeter*



**Figure 7** – *Map with defendants' key locations circled in red*

On March 25, 2022, the One American News Network uploaded an article titled "Tipping Point – Gabe Kaminsky – The Story of Brady Knowlton" on the platform Rumble . See https://rumble.com/vyg6yy-tipping-point-gabe-kaminsky-the-story-of-brady-knowlton.html, last accessed, August 17, 2022. In that article, the speaker claims that "Knowlton, along with his team of high-profile attorneys, hopes to convince the Court that he shouldn't be judged by the crimes of others. His famous attorney Alan Dershowitz told the Daily Wire:



*See also*, Gabe Kaminsky, *He's Facing 20 Years For January 6 Charges. His Lawyers Say He Just Went To Protest*, The Daily Wire, https://www.dailywire.com/news/hes-facing-over-20-years-for-january-6-charges-his-lawyers-say-he-just-went-to-protest, last accessed August 17, 2022.

**ARGUMENT**

"No matter Defendants political motivations or any political message they wished to express, this alleged conduct is simply not protected by the First Amendment. Defendants are not, as they argue, charged with anything like burning flags, wearing black armbands, or participating in mere sit-ins or protests." *United States v. Nordean*, No. 21-175 (TJK) (D.D.C., Dec. 28, 2021), ECF No. 263, pg. 29.

"When the barricades fell, so did First Amendment protection." Ken Paulson https://mtsu.edu/first-amendment/post/1228/when-the-barricades-fell-so-did-first-amendment-protection

If the government establishes the elements of any of the offenses with which the defendants are charged, the First Amendment provides them no defense, even if evidence of the defendants' crimes are intertwined with political discussion and/or rhetoric. *See United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("[A]lthough the conspiracy was closely related to, and indeed proved by, many of the defendants' conversations about political and religious matters, the conviction was based on an agreement to cooperate in the commission a crime, not simply to talk about it"); *see also United States v. Hassan*, 742 F.3d 104, 127-28 (4th Cir. 2014) (citing Amawi). Accordingly, any line of cross-examination or argument that the defendants may wish to make regarding the First Amendment is irrelevant under Fed. R. Evid. 401 because it lacks a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and because they are not entitled to a First Amendment defense as a matter of law. To the extent there is any relevance to any of the defendants' First Amendment claims, the Court should exclude any questioning and argument along those lines under Fed. R. Evid. 403. Any attempt to shift the jury's attention to questions about whether the defendants' statements were protected by the First Amendment, rather than the charged offenses risks confusing the issues, wasting time, and unfairly prejudicing the jury.

There is no First Amendment right to protest in a restricted area. The government can—and did on January 6—restrict an area that is a for legitimate government ends. This Court has affirmed that the government may close a public forum in similar circumstances. *See Mahoney v. U.S. Marshals Service*, 454 F. Supp. 2d 21, 32-33 (D.D.C. 2006) (U.S. Marshals Service did not violate First Amendment by restricting access to sidewalk in front of St. Matthew's Cathedral for Red Mass, even though sidewalk was a traditional public forum).    At least three courts in this

8

district, when faced with First Amendment challenges to regulation of activity in the Capitol Buildings, have concluded that they are nonpublic forums. *See Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000); *United States v. Nassif*, No. 21-cr-421 (JDB), 2022 U.S. Dist. LEXIS 164181, 2022 WL 4130841, at *2 (D.D.C. Sept. 12, 2022); *United States v. Munchel*, No. 1:21-CR-118 (RCL), 2023 U.S. Dist. LEXIS 671, 2023 WL 2992689 (D.D.C. Apr. 18, 2023). *See also United States v. Bender*, No.: 21-CR-508 (BAH), Minute Entry Nov. 22, 2022 ("As the government notes, defendants fail to point to a single example of prosecutions under the Section 5104(e)(2)(G) for First Amendment-protected speech").

Other courts unsurprisingly have similarly upheld temporary closures of traditional public fora for safety reasons. *See Mahoney*, 454 F. Supp. 2d at 21; *Menotti v. City of Seattle*, 409 F.3d 1113, 1129-30 (9th Cir. 2005) (finding that an emergency order closing a core area of downtown Seattle to protests during World Trade Organization conference was constitutional in part because its purpose was to maintain and restore civic order); *Marcavage v. City of New York*, 489 F.3d 98, 105 (2d Cir. 2012) ("[T]here can be no doubting the substantial government interest in the maintenance of security at political conventions"); *Citizens for Peace in Space v. City of Colorado Springs*, 477 F.3d 1212, 1222 (10th Cir. 2007) ("In this case, there can be no doubt that the City's interest in providing security to a gathering of defense officials is of the highest order"); *Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004) (upholding a street-closure plan around the Democratic National Convention that made it nearly impossible for groups wishing to demonstrate to do so within sight and sound of the delegates).

On January 6, 2021, the United States Capitol Police and the United States Secret Service coordinated to establish a restricted perimeter around the Capitol building that encompassed a

portion of the Capitol grounds. No member of the public, including the Defendants, had a First Amendment right to engage in protest or speech within that restricted area. The Court should enter an order precluding the Defendant from eliciting testimony to the contrary and precluding defense counsel from arguing to the contrary or stating during voir dire, questioning, or opening or closing statements that Defendants were engaged in protected speech or pursuing their "right" to protest at any point when they were on U.S. Capitol grounds.

The Capitol building is "a nonpublic forum where the government may limit First Amendment activities so long as the restrictions 'are reasonable in light of the purpose of the forum and are viewpoint neutral.'" *United States v. Nassif*, No. 21-421 (JDB, Sept. 12, 2022), 2022 U.S. Dist. LEXIS 164181, 2022 WL 4130841, at *4 (*quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985)). Like an office building, "the inside of the Capitol is not open to meetings by the public at large," and its most important spaces, including the Senate and House galleries, floors, and committee hearing rooms, are designed to facilitate "the orderly and formal presentation of testimony in the form of debate and discussion by elected officials and authorized witnesses." *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000). The purpose of the forum is to "permit[] 'Congress peaceably to carry out its lawmaking responsibilities' and allow 'citizens to bring their concerns to their legislators.'" *Nassif*, 2022 U.S. Dist. LEXIS 164181, 2022 WL 4130841, at *5 (*quoting Bynum*, 93 F. Supp. 2d at 55). In light of that purpose, the proscription in § 5104(e)(2)(G) is reasonable, as it prevents actions "that Congress reasonably could have concluded would disrupt its legislative process." *Id*. Finally, the statute is viewpoint neutral: it "contains nothing limiting its application to a particular viewpoint." *Id*. Given that the statute permissibly targets conduct in a nonpublic

forum, it does not restrict a substantial amount of protected speech and is not unconstitutionally overbroad. *United States v. Sheppard*, 2022 U.S. Dist. LEXIS 232610 (DDC)

### 1.     Other Courts have rejected First Amendment Defense Claims

Other Courts in this District have rejected First Amendment Defense claims in cases stemming from the events of January 6, 2012.    *See United States v. Sheppard*, No. 21-203 (JDB, Jan. 6, 2023) ECF No. 66, *United States v. Alberts*, Case No. 21-cr-026 (CRC), *United States v. Nordean*, No. 21-CR-175 (TJK), *United States v. Carpenter*, No. 21-cr-305 (JEB).

In *United States v. Sheppard*, No. 21-203 (JDB), the government filed a motion in limine to preclude the defendant from suggesting that his speech or conduct was protected by the First Amendment.   ECF No. 60.   In response, the defendant argued that, "while Mr. Sheppard may not necessarily argue his statements were protected by the First Amendment, he may argue that he did not have criminal intent to obstruct the official proceeding because his intent was to speak in accordance with his First Amendment rights . . ." ECF No. 61, pg. 4.   In granting the government's motion, the Court ruled:

> The Court will also grant the government's second request. But Sheppard is not necessarily barred from mentioning the First Amendment at all. The only restriction the Court will impose at this time is that he cannot argue that the First Amendment is a defense to any of the charges against him. He appears to concede that line of argument would be impermissible. *See* Sheppard Resp. at 4 (noting that he "may not necessarily argue his statements were protected by the First Amendment"). The other ways Sheppard suggests the First Amendment might be relevant, *see id*. at 4–5, appear to be outside the scope of the government's motion and the Court will not rule on evidence's admissibility for those purposes here.

*Sheppard*, No. 21-203 (JDB), ECF No. 66, pg. 10.    The defense thereafter did not propose a First Amendment Jury Instruction.   *See Sheppard*, No. 21-203 (JDB), ECF No. 69, Defense Proposed Jury Instructions. The First Amendment was barely discussed, or argued, during trial, as when

11

defense counsel asked the defendant on direct examination "When you – at this point, did you think you were breaking the law or doing anything wrong?" and the defendant answered "No, ma'am. I thought that my activities were protected under the First Amendment." Transcript of trial, *United States v. Sheppard*, No. 21-203 (JDB) January 25, 2023, pg. 86.[2]  The Court's ruling in *Sheppard* therefore prevented significant discussion of the First Amendment.

Similarly, a First Amendment instruction was denied in *United States v. Alberts*, Case No. 21-cr-026 (CRC).   There, the defendant filed a proposed First Amendment jury instruction as follows:

> **Proposed Instruction No. __**
> **First Amendment Rights**
>
> Every person has the right to petition his or her government, and express ideas and bring their concerns to their legislators. Citizens also have the right to peaceably assemble with others to petition their government. And under the First Amendment, a person has a constitutional right to make violent or antigovernment statements and threats and may call upon others to act violently, except in rare circumstances where the speaker knows such violent threats have an immediate likelihood of getting others to immediately carry out such violence and reasonably knows that others have the ability and are likely to carry out such threats.
>
> These First Amendment rights apply to every count in the indictment. You may notuse the defendant's protected speech, petitioning, advocacy or expression as support for the government's allegations. If you find that the defendant's conduct was First Amendment protected speech, expression, or advocacy, you must find the defendant not guilty.
>
> The United States Capitol is one of America's largest public buildings. It is the headquarters of the Legislative Branch of government, where the American people have broad rights to petition, advocate, protest, and meet with members of Congress

---

[2]  On cross examination, the government asked the defendant "You have gone to this rally and you have exercised your First Amendment rights, but you don't just leave then, right?" Transcript of trial, *United States v. Sheppard*, No. 21-203 (JDB) January 25, 2023, pg. 156. The government also asked a Capitol Police Officer "And fair to say that another mission of the Capitol Police is also to promote First Amendment activity as long as it comports with your security procedures and protocols?" *Id*. at pg. 54.

and staff in order to promote or prevent the advancement of legislation or other congressional acts.

*United States v. Alberts*, Case No. 21-cr-026 (CRC), ECF No. 130. In response to the filed proposed instructions, the Court held:

> THE COURT: All right. And, Mr. Roots, you did file proposed First Amendment and Second Amendment instructions. The Court will not give those.
>
> With respect to the First Amendment, the defendant is not being charged with a speech. He's being charged with specific conduct. None of the statutes that he has been charged under have been held to violate First Amendment; and, moreover, the government can place reasonable time, place, and manner restrictions on First Amendment activity.

Transcript of trial, *United States v. Alberts*, Case No. 21-cr-026 (CRC), Apr. 18, 2023, pg. 1116-7.

In *United States v. Nordean*, No. 21-CR-175 (TJK), the government filed a motion in limine to preclude the defendant from suggesting that his speech or conduct was protected by the First Amendment. ECF No. 494, pg. 26. In discussing the motion in a pre-trial conference, the Court stated:

> Again, obviously, I think both parties sort of acknowledged that there isn't, for example, a First Amendment defense to running up into the Capitol past all the -- past all the barriers, and I don't think the defendants are purporting to offer that as a defense to that conduct.

Transcript of pre-trial conference, *United States v. Nordean*, No. 21-CR-175 (TJK), Nov. 18, 2022, pg. 48. In rejecting the defendants' prior motion to dismiss the indictment, the Court ruled:

> No matter Defendants political motivations or any political message they wished to express, this alleged conduct is simply not protected by the First Amendment. Defendants are not, as they argue, charged with anything like burning flags, wearing black armbands, or participating in mere sit-ins or protests.

*United States v. Nordean*, No. 21-175 (TJK) (D.D.C., Dec. 28, 2021), ECF No. 263, pg. 29.

In *United States v. Carpenter,* CR. NO. 21-cr-305 (JEB), the government filed a motion in limine to "preclude the defendant from arguing to the jury that her conduct was protected by the First Amendment." ECF No. 94.  In addressing the government's motion, the Court stated:

> THE COURT: I mean, we can talk about this more before closing. So far, I inferred that Ms. Gelernt was arguing that, not as a defense, but as an explanation for why she didn't have the intent to obstruct, but she had the intent to go speak and protest. And I think that's legit. It's not a legal defense, but it's legitimate to say this is what her intent was or wasn't. So I don't think that that's -- at this point, and we will talk about it before closing, but at this point I don't think she has argued anything improper.

Transcript of trial, *United States v. Carpenter,* CR. NO. 21-cr-305 (JEB), Mar. 7, 2023, pg. 5. No First Amendment defense instruction was given.  *See* ECF No. 97.

### 2. Courts in Other Jurisdictions Have Rejected First Amendment Defenses

In *United States v. Kelly*, No. 2:18-cr-22, 2019 U.S. Dist. LEXIS 177628 *; 2019 WL 5106374 (S.D. GA, Oct. 11, 2019), a priest was charged with trespassing and destruction of property on a miliary installation and sought to raise a First Amendment defense.  The defendant filed a notice stating seeking a jury instruction "that the First Amendment protects the rights of defendants to practice their religion, to hold signs, and to act in ways that highlight their sincerely held beliefs that nuclear weapons are illegal and immoral." *Id*, at *22.  In precluding the defendant from making a First Amendment defense, the Court held:

> To the extent Defendants seek to present a First Amendment defense based on freedom of speech, Defendants are prohibited from doing so, but for different reasons. The "government's power to restrict political demonstrations or other First Amendment activity on government property depends upon the type of forum involved."  . . .
>
> \*            \*            \*
>
> Like the regulation at issue in *Corrigan*, any regulation the base commander imposed at Kings Bay, designed to prevent entrance to unauthorized persons, is

reasonable, as "nothing can be allowed to interfere with strict security measures[]"at the base, which could lead to the endangering of safety of personnel and unauthorized persons, security on the base, and have an impact on the base's operation. Doc. 227-1 at 5, 6; Doc. 316 at 227-28. Accordingly, Defendants should not be permitted to present the First Amendment as a defense against the charges of trespass under § 1382.

*Kelly*, No. 2:18-cr-22, 2019 U.S. Dist. LEXIS 177628 * 22-25; 2019 WL 5106374

As is clear from the case law from cases stemming from January 6, 2021 and elsewhere, because the conduct the defendants are charged with is lawfully be prohibited under the First Amendment, there is no relevant basis to raise that Constitutional provision as a defense.

WHEREFORE, the government respectfully requests that this Court prohibit the defendants from offering evidence or argument suggesting that their statements and actions were protected by the First Amendment, including jury instruction.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By:   */s/ James D. Peterson*
JAMES D. PETERSON
Bar No. VA 35373
United States Department of Justice
1331 F Street N.W. 6th Floor
Washington, D.C. 20530
Desk: (202) 353-0796
James.d.peterson@usdoj.gov

 */s/     Kelly E. Moran*
Kelly E. Moran
Assistant United States Attorney

15

United States Attorney's Office
601 D Street NW
Washington, DC 20503
202-740-4690
Email: kelly.moran@usdoj.gov

　*/s/ Karen E. Rochlin*
Karen E. Rochlin
DOJ-USAO
99 Northeast 4th Street
Miami, FL 33132
305-961-9234
Email: karen.rochlin@usdoj.gov

16