UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-46-RDM |
| v. | : | |
| | : | |
| PATRICK MONTGOMERY, | : | |
| BRADY KNOWLTON, and | : | |
| GARY WILSON | : | |
| | : | |
| Defendants. | : | |

UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS

The United States of America respectfully submits this opposition to defendant Patrick Montgomery's motion to dismiss all counts of the indictment. ECF No. 154. Defendant advances several main arguments and grounds for dismissal. First, he argues that "the First Amendment protects Montgomery's political expression and advocacy as alleged on January 6." *Id*. at 1. Second, he argues that the Capitol is not a restricted area. *Id*. at 4. Third, the defendant argues that he and his co-defendants were not put on notice that the Capitol was restricted on January 6, 2021, and that the First Amendment is a defense to trespass; he argues that to find otherwise would have a "chilling effect on Fundamental First Amendment Protections." *Id*. at 10. Finally, the defendant further argues that he and other rioters were "invited" by United States Capitol Police into the Capitol. *Id.* at 16. Each of the defendant's proffered grounds for dismissal lacks merit and this Court should deny the defendant's motion.

## BACKGROUND REGARDING JANUARY 6, 2021

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the Capitol Building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential

Election. With the Joint Session underway and with Vice President Michael Richard Pence presiding, a large crowd gathered outside the U.S. Capitol. "The mob [ . . . ] scaled walls, smashed through barricades, and shattered windows to gain access to the interior of the Capitol," with the first rioters entering shortly after 2:00 p.m. *Trump v. Thompson*, 20 F.4th 10, 10 (D.C. Cir. 2021).

Shortly thereafter, at approximately 2:20 p.m., members of the House and Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. The siege of the Capitol lasted for several hours and represented a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.7 million dollars in damage and losses. The siege of the U.S. Capitol on January 6, 2021, was "the most significant assault on the Capitol since the War of 1812." *Trump*, 20 F.4th at 18-19.

## FACTUAL BACKGROUND SPECIFIC TO THE INSTANT CASE

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

On January 6, 2021, at approximately 2:00 p.m., defendants Patrick Montgomery, Brady Knowlton, and Gary Wilson were outside the Capitol building on the west side. Knowlton confronted MPD officers who were making their way through the crowd and yelled at them saying,

"You took an oath! You took an oath!" and "Are you our brothers?" At approximately 2:02 p.m., Montgomery came at Officer Hodges from his side, grabbed Officers Hodges' baton, and tried to pull it away from him. Officer Hodges immediately started to fight back and the two of them went to the ground, at which time Montgomery kicked Officer Hodges in the chest.

About thirty minutes later, at 2:35 p.m., the defendants entered the Capitol through the Upper West Terrace door. After first going into the Rotunda for about two minutes, at around 2:40 pm., the defendants entered the Gallery Stairs and walked to the third floor. About one minute later, they entered the Senate Gallery hallway where they joined a group of rioters. Several rioters assaulted a USCP officer who was trying to prevent them from entering the Senate Gallery.

As a result of the assault, the USCP officers fled the hallway, and the defendants entered the Senate Gallery at about 2:44 p.m. The defendants exited the Senate Gallery at about 2:48 p.m. Approximately two minutes later, they entered a second floor hallway, where they confronted MPD officers, who prevented them—and other rioters— from walking further down the hallway. During this confrontation, Knowlton stated in substance to the officers: "All you gotta do is step aside. You're not getting in trouble. Stand down. For the love of your country." and "This is happening. Our vote doesn't matter, so we came here for change." Wilson stated in substance to the officers: "We came all the way from our jobs to do your job and the freaking senators' job."

At about 2:54 p.m., Wilson, Montgomery, and Knowlton left the building.

## LEGAL STANDARD

In the First Amendment context, "[f]acial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 450 (2008). "To succeed in a typical facial attack, [a defendant] would have to establish that no set of circumstances exists under which [a statute] would be valid [ . . . ] or that the statute lacks any plainly legitimate sweep." *United*

*States v. Stevens*, 559 U.S. 460, 472 (2010) (cleaned up). The Supreme Court recognizes a second type of facial challenge when dealing with First Amendment issues, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 473 (cleaned up). The Supreme Court has recognized that to rule a statute as facially unconstitutional is "strong medicine" that it has employed "with hesitation, and then only as a last resort." *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (cleaned up). In a so-called "as-applied" challenge, the defendant would necessarily show that even if there are no constitutional issues with the statute as-written, it could still "be applied in such a manner as to stifle free expression." *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 323 (2002).

When assessing restrictions that the government seeks to place on the use of its own property, the Supreme Court has been consistent in holding that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981)." First, one must establish if the government property in question is a public forum—one that "has traditionally been available for public expression"; or a designated public forum—one that the government "has opened for expressive activity by part or all of the public." *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992). Restrictions on both public and limited public forums are scrutinized using strict scrutiny. *Id*. By contrast, a nonpublic forum is "a space that a space that is not by tradition or designation a forum for public communication." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). For nonpublic forums, restrictions must simply be "reasonable" and "not an effort to suppress expression." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). Examples of nonpublic forums include airport terminals, *Int'l Soc'y for*

*Krishna Consciousness*, 505 U.S. at 683; polling places on election day, *Minn. Voters All.*, 138 S. Ct. at 1886; and—notably for this analysis—the inside of the United States Capitol. *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000) (Friedman, J.).

## ARGUMENT

Defendant asserts that he should have unfettered access to the United States Capitol. He claims, without citation to any kind of authority, "Every court prior to January 6 has recognized that the Capitol is the Peoples' House, and a forum for political advocacy, petitioning, speech, assembly, and expression." ECF No. 154 at 1.

On January 6, 2021, the area around the Capitol had been lawfully closed and the defendant had no First Amendment right to breach that restricted perimeter.  The Court should deny the defendant's motion, and should further preclude the Defendant from eliciting evidence, arguing, or asking questions that suggest that there was a First Amendment right to protest inside the restricted area around the Capitol on January 6.

At trial, the government will show that the Capitol Grounds were restricted that day.  There is no First Amendment right to protest in a restricted area. The government can—and on January 6, 2021, did—restrict an area that is a traditional public forum for legitimate government ends. This Court has affirmed that the government may close a public forum in similar circumstances. *See Mahoney v. U.S. Marshals Service*, 454 F. Supp 2d 21, 32-33 (D.D.C 2006) (U.S. Marshals Service did not violate First Amendment by restricting access to sidewalk in front of St. Matthew's Cathedral for Red Mass, even though sidewalk was a traditional public forum).

Other courts have similarly upheld temporary closures of traditional public fora for safety reasons. *See Mahoney*, 454 F. Supp. 2d at 21; *Menotti v. City of Seattle*, 409 F.2d 1113, 1129-1130 (9th Cir. 2005) (finding that an emergency order to close a core area of downtown Seattle to protests during World Trade Organization conference was constitutional in part because its

purpose was to maintain and restore civic order); *Marcavage v. City of New York*, 489 F.3d 98, 105 (2d Cir. 2012) ("[T]here can be no doubting the substantial government interest in the maintenance of security at political conventions."); *Citizens for Peace in Space v. City of Colorado Springs*, 477 F.2d 1212, 1222 (10th Cir. 2007) ("In this case, there can be no doubt that the City's interest in providing security to a gathering of defense officials is of the highest order'); *Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004) (upholding a street closure plan around the Democratic National Convention that made it nearly impossible for groups wishing to demonstrate to do so within sight and sound of delegates).

On January 6, 2021, the United States Capitol Police and the United States Secret Service coordinated to establish a restricted perimeter around the Capitol building that encompassed a portion of the Capitol grounds. That restricted perimeter was for a legitimate government purpose. No member of the public, including the defendant, had a First Amendment right to engage in protest or speech within that restricted area.[1] The Court should therefore deny the defendant's instant motion and enter an order precluding the Defendant from arguing to the contrary or stating during *voir dire*, questioning, or opening or closing statements that Defendants were engaged in protected speech or pursuing their "right" to protest at any point when they were on U.S. Capitol grounds.

**Montgomery's Prosecution Does Not Violate the First Amendment**

Montgomery argues that the statutes charged are overbroad because, according to him, they somehow seek to punish expression protected under the First Amendment.

---

[1] The defendant cites to six permitted protests on the Capitol grounds that took place on January 6, 2021 as evidence of his own permission to enter the Capitol building (ECF No. 154 at 16); these permitted protests did not take place inside the Capitol building, nor were they inside the Capitol's restricted perimeter.

When assessing restrictions that the government seeks to place on the use of its own property, the Supreme Court has been consistent in holding that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981). First, one must establish if the government property in question is a public forum—one that "has traditionally been available for public expression"; or a designated public forum—one that the government "has opened for expressive activity by part or all of the public." *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992). Restrictions on both public and limited public forums are scrutinized using strict scrutiny. *Id.* By contrast, a nonpublic forum is "a space that is not by tradition or designation a forum for public communication." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). For nonpublic forums, restrictions must simply be "reasonable" and "not an effort to suppress expression." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). Examples of nonpublic forums include airport terminals, *Int'l Soc'y for Krishna Consciousness*, 505 U.S. at 683; polling places on election day, *Minn. Voters All.*, 138 S. Ct. at 1886; and—notably for this analysis—the inside of the U.S. Capitol. *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000) (Friedman, J.); see also *United States v. Munchel*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 67141, at *20 (D.D.C. 2023); *Nassif*, --- F. Sup. 3d ---, 2022 U.S. Dist. LEXIS 164181, at *4; *United States v. Rhine*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 12308, at *43-44 (D.D.C. 2023); *United States v. Gray,* --- F. Supp. 3d --, 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27 (D.D.C. 2023).[2]

---

[2] Even if this Court were to engage in a fact dependent First Amendment analysis of defendant's conduct on January 6, the statutes under which defendant is charged are constitutional, as further detailed below.

Defendant advances the blanket assertion that any violation of 5104(e)(2)(G) charged in the Superseding Information constitutes an impermissible restriction on speech in a public place. ECF No. 154, at 24. Defendant cites caselaw but does little to frame the legal issue or advance his claims thereupon. He does not identify whether the challenge is facial or as applied. He does not make a claim as to whether the statute as written is content based or content neutral. He does not identify whether the U.S. Capitol is a public forum, a designated/limited public forum, or a nonpublic forum. He does not ask this Court to apply either strict scrutiny or the reasonableness standard. Defendant simply asserts that his conduct on January 6th is protected by the First Amendment. No precedent supports this broad claim.

In effect, although he fails to properly articulate his claim, the defendant appears to object that the statutes charged are overbroad because, according to him, they somehow seek to punish expression protected under the First Amendment. Indeed, the same motion defendant has filed in this case has been filed in other January 6 cases where courts have treated the motion as one that makes a challenge based on the alleged overbreadth of the charges. In each case, the motion defendant has filed here has been denied. *See Gray,* 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27; *Baez*, 2023 U.S. Dist. LEXIS 98766, at *9-26. Other courts in this district have also rejected overbreadth challenges to the offenses alleged in the Superseding Indictment, *see Rhine*, 2023 U.S. Dist. LEXIS 12308, at *29-49 (D.D.C. January 2023), and to a different statute with a broader prohibition on "any act to obstruct, impede or interfere" with law enforcement in the performance of official duties. 18 U.S.C. § 231(a)(3); *see, e.g., McHugh*, 583 F. Supp. 3d at 28-29; *Nordean*, 579 F. Supp. 3d, at 58.

Defendant does not characterize what, if any role, he played on January 6, but one can infer from his arguments that he contends that he was a "demonstrator[]" or a "protestor[],"

and that he believes his prosecution "conflicts with settled First Amendment law."  ECF No. 154, at 10. If the Court were to even reach that question, his claim fails.

**Defendant's Offense Conduct Did Not Involve Constitutionally Protected Expression**

Defendant's alleged offense conduct is not protected by the First Amendment. To prove a violation of 18 U.S.C. § 1752(a)(2), the government must show that the defendant acted "with intent to impede or disrupt the orderly conduct of Government business or official functions." Similarly, to prove a violation of 40 U.S.C. § 5104(e)(2)(D), the government must show that the defendant acted with "the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress." As Judge Kelly has previously observed, conduct done with the "inten[t] to obstruct Congress's performance of its constitutional duties … is simply not protected by the First Amendment." *Nordean*, 579 F. Supp. 3d, at  41 (D.D.C. 2021); *see also Baez*, 2023 U.S. Dist. LEXIS 98766, at *9-22 (denying motion to dismiss and upholding 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(G) under facial First Amendment challenges); *Gray,* 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27 (denying motion to dismiss and holding Section 5104(e)(2)(G) is not unconstitutionally overbroad); *United States v. Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000) ("Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message."); *see generally United States v. Giampietro*, 475 F. Supp. 3d 779, 792 (M.D. Tenn. 2020) (rejecting First Amendment  challenge to 18 U.S.C. § 1519; the statute "regulates conduct, not speech, and the conduct it regulates – destruction of documents with the intent to obstruct a federal investigation – is not expressive") (cleaned up); *Gregory v. City of Chicago*, 394 U.S. 111, 118, (1969) (Black, J., concurring) ("Plainly, however, no mandate in our Constitution leaves States and governmental units powerless to pass laws to protect the public from the kind of boisterous

and threatening conduct that disturbs the tranquility of spots … for public and other buildings that require peace and quiet to carry out their functions, such as courts, libraries, schools, and hospitals.")

With respect to 18 U.S.C. § 1752(a)(1), Judge Cooper concluded in *Caputo* that the act of entering White House property might carry an expressive component. *See* 201 F. Supp. 3d at 71. So too here, defendant's act of unlawfully entering the Capitol's restricted area could be "communicative in nature." *Id.* But even accepting that "th[is] charged conduct had some expressive aspect, it lost whatever First Amendment protection it may have had" when the crowd turned violent. *Nordean*, 579 F. Supp. 3d, at 41 (D.D.C. 2021); *see also Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment."); *United States v. Bingert*, 605 F. Supp. 3d 111, 130-131(D.D.C. May 25, 2022) (rejecting First Amendment challenge to Section 1752(a)(1) charge on this basis).

Defendant's more targeted attack on 40 U.S.C. § 5104(e)(2)(G), which prohibits knowing and willful demonstrating, parading, and picketing in a Capitol building, also fails. More than 20 years ago, Judge Friedman recognized that "the expression of ideas inside the Capitol may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their concerns to their legislators. There are rules that members of Congress must follow, as well as rules for their constituents." *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 55 (D.D.C. 2000). Defendant offers no compelling reason to deviate from that sensible conclusion. A First Amendment challenge involves three steps. First, the speech or conduct at issue must be protected under the First Amendment. *Cornelius v. NAACP Legal Defense and Education Fund, Inc.*, 473 U.S. 788, 797 (1985). If so, the analysis then turns to the forum

analysis described above. The third step "assess[es] whether the justification for exclusion from the relevant forum satisfies the requisite standard." *Cornelius*, 473 U.S. at 797.

As described above, defendant's claim founders at the first step because he fails to establish beyond cursory arguments that his case involves speech or conduct protected by the First Amendment. On the one hand, to the extent defendant seeks to argue that Section 5104(e)(2)(G) contravenes the First Amendment, he must do so after trial. *See United States v. Kokinda*, 497 U.S. 720, 724-25 (1990). In *Kokinda*, two defendants were prosecuted for violating a United States Postal Service regulation that prohibited soliciting contributions outside of a post office. *Id.* at 723. As Montgomery does here, they advanced a First Amendment claim, namely, that the regulation was an impermissible restriction in a public forum—the sidewalk outside the post office. *Id.* at 724. But they pressed that claim *after trial* in which the presentation of evidence established precisely the defendants' conduct, where it took place, and relevant facts about the sidewalk outside the post office. *Id.* at 724-25. Because, by contrast, defendant's First Amendment challenge is premature, this Court should "go no further." *Cornelius*, 473 U.S. at 797.

Even if the Court were to consider facts outside of the Superseding Indictment, which the Court should not, defendant is wrong in his assertion that he should have unfettered access to the U.S. Capitol. The defendant emphasizes the public nature of the Capitol as justification for his participation in the riot on January 6, 2021. ECF No. 154 at 1. In doing so, defendant appears to rely heavily not on binding caselaw but on facts outside the Superseding Indictment concerning the architecture of the Capitol building. *Id.* Defendant insists that, for purposes of the charges facing the defendant, there is a distinction between being closed and being secured, positing that: "If the central Virginia earthquake of 2011 that damaged the spires of the National Cathedral had required the closure of the U.S. Capitol building, entering would not be a violation of 18 U.S.C.

1752. There might be some other law that restricts entry into a building closed due to structural damage or uncertainty. But 18 U.S.C. 1752 would not be the right statute." ECF No. 154 at 15.  In any event, defendant's apparent First Amendment claim—that the Capitol building should be considered a public forum—lacks merit.  Defendant cites no precedent in which a building comparable in form or function to the U.S. Capitol has been found to be a public forum. As discussed above, a nonpublic forum is one to which the government does not "grant general access." *Id*. at 803. Defendant's characterization of his unfettered right to enter the Capitol building does not undermine the government's "legitimate interest in ensuring that the activities of Congress proceed without disruption." *Bynum*, 93 F. Supp. 2d at 56. Moreover, the Court in *Bynam* court explicitly concluded that 40 U.S.C. § 5104(e)(2)(G), is viewpoint neutral and a reasonable regulation of a nonpublic forum (i.e., the Capitol). Congress, in 40 U.S.C. § 5104(e)(2)(G) reasonably took aim at conduct that disrupts its orderly business, *Bynum*, 93 F. Supp. 2d at 58, and did so in a viewpoint neutral manner. At least two other courts in this district have concurred with the court's analysis in Bynum. *See United States v. Nassif*, 21-CR-421 (JDB), ECF No. 42, at 3-11 (Bates, J.) (denying defendant's motion to dismiss 40 U.S.C. § 5104(e)(2)(G) count on First Amendment grounds); *United States v. Seitz*, 21-CR-279 (DLF), ECF No. 51 (Friedrich, J.) (same).

The same analysis applies to 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. § 5104(e)(2)(D). First, 18 U.S.C. § 1752(a) prohibits certain conduct inside a restricted area— restricted given the presence of a United States Secret Service protectee—without lawful authority. For reasons like those discussed above and in *Bynum*, the government is within its rights to maintain restricted areas as nonpublic fora. Moreover, neither Section 1752(a)(1) nor Section 1752(a)(2) target speech: the former is a trespass prohibition, while the latter covers disorderly and

disruptive conduct. Similarly, Section 5104(e)(2)(D) as charged here covers only disorderly and disruptive conduct in the nonpublic Capitol building.

Defendant's citation to *Adderley v. Florida*, 385 U.S. 39 (1966), is inapposite. In *Adderley*, the Supreme Court did remark that protesting at a state capitol is different in character from protesting at a jail because "[t]raditionally, state capitol grounds are open to the public." *Id.* at 41. The context in which the Court made this observation, though, is of great import. In asserting that "traditionally capitols grounds are open to the public," the Court was extrapolating upon its decision in *Edwards v. South Carolina*, 372 U.S. 229 (1963). In that case, the Court struck down a statute that was "so broad and all-embracing as to jeopardize speech, press, assembly, and petition[.]" *Adderley*, 385 U.S. at 42 (*citing Edwards*, 372 U.S. at 237). It was this same doctrine of overbreadth, the *Adderley* Court noted, that rendered Louisiana's breach-of-the-peace statute unconstitutional. *Id.* (*citing Cox v. Louisiana*, 379 U.S. 536, 551-552 (1965)). The Court's statement about capitols being traditional public fora was not, as the Defendant asserts, a holding that any regulation that limits First Amendment activities on any capitol ground ever is unconstitutional. It was, instead, a truism that supported the holding from *Edwards* that a statute or regulation that was so overbroad and all-embracing such that it prohibited, in effect, any First Amendment activity on capitol grounds at any time is unconstitutional. *Adderley*, 385 U.S. at 42.

Because the charged conduct here does not implicate protected First Amendment expression, defendant's challenge fails at the outset.

### In the Alternative, Defendant's Prosecution Under the Charged Statutes Comports with the First Amendment.

Even assuming *arguendo* that some aspect of defendant's conduct constitutes expressive First Amendment activity, the government's decision to prosecute him under the charged statutes

passes muster under *O'Brien*. *See, e.g., Johnson*, 491 U.S., at 403 (1989), *citing O'Brien*, 391 U.S., at 377 (1968).

First, the violations of law charged here are "within the constitutional power of the government." *O'Brien*, 391 U.S. at 377. Defendant does not (and cannot) contest the government's right to prohibit trespassing, disorderly conduct, or physical obstructions on its property. The defendant's motion requests dismissal of the indictment, but does not discuss the defendant's top charge – 18 U.S.C. 111(a)(1), Assaulting, Resisting, or Impeding Certain Officers. By defendant's own admission, "in general, violence is not First-Amendment protected." ECF No. 154 at 8. Accordingly, defendant's motion must fail.

Second, "when speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376 (cleaned up). As Judge Kelly has noted, "[t]he Government has a weighty interest in protecting Congress's ability to function without 'corrupt' interference." *Nordean*, 579 F. Supp. 3d, at 42 (D.D.C. 2021); *see also Caputo*, 201 F. Supp. 3d, at 72 (noting "the Government's profound interest in protecting the White House complex, the President, and the functionality of the executive branch"). That interest reached its apex on January 6 when "Congress was convened in Joint Session to undertake one of its most solemn and constitutional duties." *Nordean*, 579 F. Supp. 3d, at 42 (D.D.C. 2021).

Third, that interest is "unrelated to the suppression of free expression." *O'Brien*, 391 U.S., at 377. None of crimes that the defendant is charged with turn on the content of his potentially expressive actions. Rather, the charged statutes ensure the protection and normal functioning of the Congress. *See Rhine*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 12308, at *18-50 (D.D.C.

January 2023); *Baez*, 2023 U.S. Dist. LEXIS 98766, at *9-22, *Gray*, 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27.

Fourth, applying the charged statutes to defendant's conduct imposes no more than an "incidental limitation[] on First Amendment freedoms." *O'Brien*, 391 U.S., at 376. As explained above, the statutes charged in the Superseding Indictment predominately (if not exclusively) regulate unprotected activities. And the statutes "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "Quite obviously, there were many avenues for [defendant] to express [his] opinions about the 2020 presidential election, or [his] views about how Congress should perform its constitutional duties on January 6." *Nordean*, 579 F. Supp. 3d, at 43 (D.D.C. 2021).

**An Argument that United States Capitol Police Allowed Protest Activities Within the Restricted Area on January 6, 2021, is Not Proper in a Motion to Dismiss.**

Last, defendants argue that: "The Government would invite us to envision that 'lawful authority' to enter a restricted area under 18 U.S.C. 1752 requires some type of authority that not even the then-President of the United States could grant. Without 'lawful authority' is not clarified. Any person responsible for supervising real estate has the power to invite or allow a person to enter that real estate. Therefore, if a "sworn" (commissioned) U.S. Capitol Police officer confirms to these Defendants that they may enter the building – whether others like that decision or not – then the Defendants entered the U.S. Capitol building with '*lawful authority to do so.*' Any person allowed into the U.S. Capitol building by a U.S. Capitol police officer has committed no crime." ECF No. 154 at 14-15. While the government takes issue with the defendants' representations, as an initial matter, this is not a proper argument for a motion to dismiss, as it does not contend any error or flaw in the Indictment. Instead, the defendants are making a fact-specific argument that cannot be decided short of a trial. *See Pope*, 613 F.3d at

1259 ("If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial."). Defendants' motion to dismiss should be denied on this basis alone. Additionally, the evidence in this case will clearly prove that the defendants had numerous indications that U.S. Capitol Grounds, including the areas through which the defendants traveled, were restricted that day, including but not limited to: "area closed" signs, barricades, and extensive police presence (including police in riot gear) on U.S. Capitol Grounds. The defendants themselves participated in the fight against the police. Thus, the evidence will show that the defendants were not protesters permitted to be on U.S. Capitol Grounds that day but were instead rioters who came prepared for a fight and were well aware that they were entering restricted space.

## CONCLUSION

For these reasons, the government respectfully requests that the Court deny the Defendant's motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By:     */s/ Kelly E. Moran*
KELLY E. MORAN
Assistant United States Attorney
NY Bar No. 5776471
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-740-4690
kelly.moran@usdoj.gov

*/s/ Carolina Nevin*
CAROLINA NEVIN

16

Assistant United States Attorney
NY Bar No. 5226121
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-803-1612
carolina.nevin@usdoj.gov