IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>            Complainant<br><br>        -v-<br><br>**PATRICK MONTGOMERY,**<br><br>            Defendant.<br><br>**Consolidated with BRADY KNOWLTON and GARY WILSON**<br><br>            Defendants | Criminal Case No. 1:21-cr-46 (RDM)<br><br>Assigned to the Honorable<br>Randolph D. Moss, District Court Judge |

# DEFENDANT PATRICK MONTGOMERY'S REPLY IN SUPPORT OF HIS MOTION FOR DISMISSAL OF ALL COUNTS OF THE CASE UNDER THE FIRST AMENDMENT

Defendant PATRICK MONTGOMERY ("Montgomery"), by and through undersigned counsel, hereby respectfully submits his REPLY to the Opposition of the Government filed at ECF Dkt. #162 to Defendant Montgomery's Motion To Dismiss On First Amendment Grounds filed at ECF Dkt # 154.

## I.     INTRODUCTION IN REPLY

It appears to Defendant's legal defense team that this Reply in this particular case might best be presented economically in a point / counter-point format rather than a narrative. A Reply should help draw to the Court's attention any issue or information that has been misunderstood or is in contention.

## II.  BACKGROUND REGARDING JANUARY 6, 2021, and FACTUAL BACKGROUND SPECIFIC TO THE INSTANT CASE

The Government as always recites an account of events on January 6, 2021, which assumes in advance the facts which must be proven by admissible evidence and which conflict with established facts.  But worse, the Government rejects U.S. law and the U.S.

For example, the Government chooses to highlight its view that:

> "The mob [ . . . ] scaled walls, smashed through barricades, and shattered windows to gain access to the interior of the Capitol," with the first rioters entering shortly after 2:00 p.m. *Trump v. Thompson*, 20 F.4th 10, 10 (D.C. Cir. 2021).

This flawed view is irrelevant to the conduct of individual Defendants, each of whom are entitled under the U.S. Constitution to a presumption of innocence – individually – unless proven individually guilty by admissible evidence of their own individual conduct and individual guilt beyond a reasonable doubt.  Reasonable doubt applies to each Defendant individually, not to a mob.  We become more and more concerned with every court filing that the current Department of Justice believes that "guilt beyond a reasonable doubt" applies only to the entire event of January 6, 2021, as a whole, embracing as many as 10,000 visitors to Capitol Hill, not to individual Defendants.

While the United States of America is not the only nation that has a Constitution, or had a Constitution with regard to dozens of nations that ceased to exist in the last century, collectivist criminal liability finds no home in U.S. law or constitutional due process.

Sadly, the judicial role is overlooked in the Government's hyperbole such as "the most significant assault on the Capitol since the War of 1812."  We do not convict people based on poetry or exaggeration.  The latter is of course not meaningful – compare the May through June 2020 riots, arson, street battles, and assault on the White House in which apparently (reporting is presented in different formats) more police officers were injured at the White House than on January 6, 2021.

With gleeful enemies and horrified allies watching around the world, the Commander in Chief of the U.S. military deployed around the world was under siege and whisked by the Secret Service to a bunker, far more severe damage to the U.S. Government and the President. But each element of a charged crime must be proven by admissible evidence, not overshadowed by rhetoric.

The Government recites that --

> "While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building."

But of course we do not and cannot prosecute crowds. Just as corporations do not act apart from their human officers, crowds do not do anything of their own. Only people do things. Crowds are simply not relevant here. Crowds are just people standing in the general vicinity of each other.

But the Government as always recites that said crowd *(emphases added):*

> "… forced **entry into the Capitol building**. **<u>As a result</u>**, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials."

Therefore, in some mechanism that remains entirely mysterious (Secret Service "Site Agent" E.G. testified in *United States v. David* Lesperance, et al., that even the sound of breaking glass did not trigger any action by the Vice President's Secret Service detail other than tasking E.G. with going back and retracing fall-back evacuation routes purely as a precaution) and without evidentiary support, it was only "**entry into the Capitol building**" which "**<u>as a result</u>**," caused the Joint Session of Congress on January 6, 2021, to recess at 2:20 PM (actually the testimony of then Parliamentarian Wickham on October 19, 2022, in *United States v. Stewart Rhodes* fixes the time at no later than 2:13 PM when the Speaker of the House was the first to be pulled from the House Chamber floor).

But the Government simultaneously claims on Page 2 of the Opposition that these

Defendants here at bar "were **_outside_** the Capitol building on the west side" at approximately 2:00 PM.  And the Opposition then claims that "About thirty minutes later, at **_2:35 p.m.,_** the defendants entered the Capitol through the Upper West Terrace door."

Thus, the Government concedes that the Defendants by their "**_entry into the Capitol building_**" at 2:35 PM could not in this universe of natural law, "**_as a result_**,"cause the 2:13 PM recess of the Joint Session of Congress.  (Obviously, the recess unfolded over a period of time, but began probably much earlier than 2:13 PM, because a decision-making process would be necessary leading up to the removal of the Speaker by her security team at 2:13 PM.  Speaker Nancy Pelosi handed the gavel to Rep. McGovern who then proceeded with the recess.)

The Government then concedes on Page 3 that "At about 2:54 p.m., Wilson, Montgomery, and Knowlton left the building."  Yet this story we are asked to believe is that **_for a solid 19 minutes_** these Defendants wandered (that is, obviously displaying no plan or sense of direction) yet did so with the intent (we are asked to believe) to forcibly prevent the transfer of presidential power (which actually occurs on January 20 in any event). These must be mighty tourists indeed to topple the U.S. Government in only 19 minutes plainly with no evident plan, wandering aimlessly.

So we are subjected in every case in every pleading to the suggestion that people who "planned" somehow to spend various tiny periods of time like 19 minutes intended thereby to obstruct the proceedings of Congress.

### III.   FIRST AMENDMENT IS IMPLICATED, BUT MISUNDERSTOOD BY THE OPPOSITION

Turning to the core of the issues, the Opposition asserts in legal standards, page 4:

> When assessing restrictions that the government seeks to place on the use of its own property, the Supreme Court has been consistent in holding that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the

4

> government." *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981)."

But the Government misunderstands the Defendant's motion. Defendant's argument is that the Government *has* in fact already made those decisions about "the use of its own property." The U.S. Capitol and the park around it known as the Capitol Grounds have been dedicated from its completion as a national meeting place between "We the People" and their elected representatives.

It is not that the Defendant seeks to make that decision for the Government, but stands on the decision already made by the U.S. Government as a beneficiary of it.

Public viewing galleries were literally and physically built in to the U.S. Capitol building as a function and loud declaration that the purpose of the Capitol is for the public to be able to view, observe, monitor, and talk to their Representatives and Senators.

To a deeper and deeper extent as one considers it, the citizen's right to be present in the U.S. Capitol is very much like the public's right to sit quietly and peacefully in the back of the courtroom and watch judicial hearings and trials in progress.

Even today, in a darker time, there is no physical separation between the balconies for public viewing of the House and Senate and the Chamber floors below. Speaking only physically, not in terms of wisdom or propriety, there is no physical barrier to a citizen tossing a note down to his Senator from the balconies. Counsel would never recommend that, yet the architecture of the building tells a different story than the U.S. Attorney's Office sells us on here now. But the Opposition argues that:

> First, one must establish if the government property in question is a public forum—one that "has traditionally been available for public expression"; or a designated public forum—one that the government "has opened for expressive activity by part or all of the public." *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992).

And that is exactly what the Defendant has done in his motion, in full agreement with that project.

The Opposition goes on to assert that strict scrutiny applies, which would require that a regulation is strictly necessary, and the narrowest possible means, of achieving a compelling state interest.  As Justice David Souter famously wrote in his dissenting opinion in *Alameda Books v. City of Los Angeles*, 535 U.S. 425, (2002), "Strict scrutiny leaves few survivors."

Does the regulation asserted by the Government survive strict scrutiny?   Well, the same Department of Justice has not prosecuted – with statutes of limitation not yet exhausted – anti-Brett Kavanugh rioters who physically took over and occupied the Hart Senate Office Building and – admittedly not in the Government's imagination – conspired to prevent a nominee for the U.S. Supreme Court from being confirmed.

How does this regulation survive strict scrutiny, as applied, when Left-wing rioters attack the White House and – with open, public admissions of their conspiracy – obstruct the U.S. Senate Judiciary Committee in its official business of giving advice and consent on the confirmation of a U.S. Supreme Court Justice and violently taking over the Hart Senate Office Building?

It would appear that the compelling state interest was not quite so compelling after all.

Can the regulation survive being narrowly tailored, and the most limited of approaches, to a compelling state interest?  Apparently not, if the entire regulation can be ignored and trampled underfoot whenever the courts, the media, and/or the permanent government within the bureaucracies like what the rioters have to say.

The compelling state interest must not be all that compelling if prosecutors simply look the other way depending on the political viewpoint of the – sometimes openly admitted – rioters

and insurrectionists.





The U.S. Department of Justice still as of this filing has about 1 month and 4 days remaining to indict the anti-Kavanaugh rioters of September 18, 2018, under 18 U.S.C. 1512(c)(2) and still have one year and 9 months left to indict the rioters who assaulted the White

House and the head of the United States' worldwide military and foreign policy interests. But everyone knows they won't.

More compelling, a visitor from out of town watching this on television since the 1999 Battle in Seattle and the 2014 riots starting in Ferguson would be led to believe that the Government surely will treat all political demonstrators they same. Surely we could count on the U.S. Government treating demonstrators on the right and the left the same.

Here, however, depending on the First Amendment protected political believes and opinions expressed, the Government are either released on a $50 fine (bail, then the case is dropped) or prosecuted with a felony of up to 20 years.

A $50 fine versus 20 years depending upon the political viewpoint expressed.

## IV.   OPPOSITION'S ARGUMENT

The Government in its Argument on Page 5 claims that:

"Defendant asserts that he should have unfettered access to the United States Capitol."

This is incorrect, the Defendant points out that the U.S. Congress and the U.S. Courts have decided that he has unfettered access to non-sensitive areas of the United States Capitol, to the extent that portions have traditionally been made part of the civic life and public discourse of this nation.

In short, the Government in the hands of its current custodians regrets the decisions that the U.S. Government has already made over the nation's 247 years, and no longer follows the philosophical underpinnings of a government for the people, by the people and of the people.

Therefore, the Defendant holds to and stands upon the decisions that the Government has already made and disagrees with the attempts of the current occupants to walk away from the Government's own decisions long-established.

But then we arrive at the core of the Defendant's motion in the Government's page 5 again:

> **On January 6, 2021, the area around the Capitol had been lawfully closed and the defendant had no First Amendment right to breach that restricted perimeter.**

This however is exactly the question, by which the Defendant challenges the statutes and their application as unconstitutional under the First Amendment.

Was the area around the Capitol lawfully closed? The Defendant argued in his motion that it was not. That is, it might have been the thought that without the involvement of the Secret Service, some unidentified person wished to close some unidentified, undefined, area changing in size and shape throughout the day.

But was it "lawfully closed?" The Defendant argued it was not.

Defendant is charged with violating 18 U.S.C. 1752.

One cannot be convicted under 18 U.S.C. 1752 of entering a building that is closed for repairs, or closed for a private function or any such matter. Only a "restricted" building or grounds in relation to a Secret Service protectee can form the basis of a violation of 18 U.S.C. 1752. If someone broke in to the Capitol in the middle of the night, this would surely be a violation of some law. But it would not be a violation of 18 U.S.C. 1752.

Courts handling questions of January 6 Defendants have been asked to address whether a Secret Service protectee restricted area (building or grounds) can be declared by someone other than the Secret Service. The courts that have decided this matter have chosen to allow the restriction to be imposed by someone other than the Secret Service, but have thereby created a far more disturbing problem. Indeed, the rule of statutory construction arguing against absurdities comes into play. For the analysis leaning only on the text of saying that the Secret Service restricted area does not need to be declared by the Secret Service, thereby offers no limitation whatsoever. That textual analysis would allow the owner of a food truck nearby the

9

Capitol, a visitor, a janitor, or a journalist to declare a Secret Service restricted area. (Indeed would they even need to be nearby?) The analysis has been that there is nothing in the text of the statute saying who must declare the restricted area. But that opens the door far too wide. If the statute does not limit the declaration to the Secret Service, can anyone at all declare a restricted area? One would argue that can't be what Congress intended when passing 18 U.S.C. 1752, regardless of any preference for textual analysis.

### V.  OPPOSITION ARGUES *REDUCTIO AD INFINITUM* TO MAKE THE DEFENDANT'S MOTION ONE OF ABSOLUTISM

The Opposition presents the Defendant's motion as absolutist, when it is not. The Defendant's motion argued that:

> **The First Amendment as a Defense to trespass.**
>
> In general, violence is not First-Amendment protected. But trespassing sometimes is. For example, in *People v. Millhollen*, 5 Misc. 3d 810, 786 N.Y.S.2d 703, 194 Ed. Law Rep. 395 (N.Y. City Ct. 2004) a court held that a university student who climbed a tree on a university campus, and remained there after being ordered by a police officer and a university official to descend, was not guilty of trespass, absent evidence that the student's presence in the tree was incompatible with the university's normal activities).
>
> The government contends that there is no First Amendment protection for the thousands of people present on Capitol Grounds on January 6. None. But given the binding case law holding that the Capitol grounds is a public free-speech forum, the government's claims that the grounds were totally restricted on Jan. 6 must withstand strict scrutiny analysis. And the evidence in this case illustrates the presence of flags, banners, megaphones, and group persuasive chants—all of which are archetypes of protected petitioning and advocacy rather than assaultive militancy.
>
> A policy, law, barrier, or forum restriction that regulates protected speech must meet First Amendment muster, whether or not it also

regulates conduct. *See ACLU of Ill. v. Alvarez*, 679 F.3d 583, 602 (7th Cir. 2012) ("When the expressive element of an expressive activity triggers the application of a general law, First Amendment interests are in play."); *Bartnicki v. Vopper*, 200 F.3d 109, 121 (3d Cir. 1999) (rejecting the argument "that a statute that governs both pure speech and conduct merits less First Amendment scrutiny than one that regulates speech alone."). The inquiry "is not whether trespassing is protected conduct," but whether the law contains other restrictions on conduct that also "qualif[y] as protected speech." *Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219, 1228 (10th Cir. 2021) (quoting *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1194–96 (10th Cir. 2017) (*W. Watersheds Project I*)).

This conclusion is consistent with Supreme Court precedent which has emphasized that First Amendment analysis applies when speech is implicated by a law even if the law "generally functions as a regulation of conduct." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27–28 (2010) (emphasis in original). Thus, the erection of barriers on Capitol grounds regulates protected speech and accordingly implicates the First Amendment. Exempting the Jan. 6 demonstration from any First Amendment review could result in the criminalization of core free speech, such as criticism of a politician. *See Animal Legal Def. Fund v. Herbert*, 263 F. Supp. 3d 1193, 1209 (D. Utah 2017) (observing "[i]f a person's First Amendment rights were extinguished the moment she stepped foot on [a given property], the State could, for example, criminalize any criticism of the Governor, or any discussion about the opposition party, or any talk of politics whatsoever, if done on [a given] property.").

## VI.   CONCLUSION

The Court should order the relief requested and dismiss the Counts of the Indictment because they are not focused on the conduct of the Defendants standing alone but are intimately inter-dependent upon the expressions of the opinions and political viewpoints of these Defendants and others.

August 14, 2023                                    **RESPECTFULLY SUBMITTED,**
                                                                John M. Pierce, Esq.
                                                                *Counsel for Defendant*

                                                                 /s/ John Pierce

                                                                JOHN PIERCE LAW
                                                                21550 Oxnard Street 3rd Floor, PMB #172

>Woodland Hills, CA 91367
>jpierce@johnpiercelaw.com
>(213) 400-0725

### CERTIFICATE OF SERVICE

I hereby certify that on this date my law firm is filing the foregoing with the Court by its ECF record-keeping and filing system, which automatically provides a copy to:

>MATTHEW M. GRAVES
>UNITED STATES ATTORNEY
>
>CAROLINA NEVIN, Esq.
>Assistant United States Attorney
>detailed to the U.S. Attorney's
>Office for the District of Columbia
>601 D Street, N.W.
>Washington, D.C. 20530
>202-803-1612
>carolina.nevin@usdoj.gov
>
>KELLY ELIZABETH MORAN, Esq.
>Assistant United States Attorney
>detailed to the U.S. Attorney's
>Office for the District of Columbia
>601 D Street, N.W.
>Washington, D.C. 20530
>202-740-4690
>kelly.moran@usdoj.gov

>*/s/ John Pierce*
>John M. Pierce