**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Complainant** | |
| **-v-** | Criminal  Case No. 1:21-cr-46 (RDM) |
| **PATRICK MONTGOMERY,** | |
| **Defendant.** | Assigned to the Honorable |
| | Randolph D. Moss, District Court Judge |
| **Consolidated with BRADY KNOWLTON and GARY WILSON** | |
| **Defendants** | |

**DEFENDANT PATRICK MONTGOMERY'S MOTION IN LIMINE UNDER**
**FEDERAL RULES OF EVIDENCE RULE 106 TO EXCLUDE**
**FRAGMENTS OR INCOMPLETE PORTIONS DOCUMENTS**

Defendant PATRICK MONTGOMERY ("Montgomery"), by and through undersigned counsel, hereby respectfully moves the Court to enter an order in *limine* to exclude from the proceedings at trial testimony, derivative evidence, references to or argument using unrepresentative or misleading fragments of video recordings, audio recordings, text messages, conservations, communications, or other documents or records.

## I.   INTRODUCTION AND OVERVIEW

Defendant Montgomery moves the Court to order in limine to exclude fragments of incomplete conversations, video recordings, message chains or chats, etc.  Under the Doctrine of Completeness, Montgomery demands that the entire conversation or recording be produced in

evidence or all relevant portions under Federal Rules of Evidence Rule 106.

All January 6 related prosecutions of which counsel is aware have leaned heavily and in effect turned on incomplete fragments and misleading portions of documents, conversations, communications, recordings, etc., even to the point of producing to the jury only fragments of individual sentences.  This creates a misleading and false impression to the jury.

## II.  GOVERNING LAW

**A.  Federal Rules of Evidence Rule 106.**
**Remainder of or Related Writings or Recorded Statements**,
provides:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time.

According to the Legal Information Institute of Cornell Law School's legal encyclopedia "WEX", [1]

> …. This additional evidence is called explanatory evidence, and its purpose is to qualify, explain or put in context the original piece of introduced evidence.

The explanatory writing does not have to be part of same writing or recording. Additionally, even otherwise inadmissible evidence, such as hearsay, can be admissible under this rule if it is necessary to correct any confusion or wrongful impression created by the admission of the original evidence.

Note that Rule 106 does not seem to invest any discretion or authority to decide anything

---

[1] https://www.law.cornell.edu/wex/doctrine_of_completeness#:~:text=Doctrine%20of%20Completeness.%20Under%20Rule%20106%20of%20the,with%20the%20writing%20or%20recorded%20statement%20originally%20introduced.

in the trial judge. Nor does the FRE relegate the complete document or video to the back of the bus, as a second class matter raised only in the defense's case in defense after the jury has already prematurely made up its mind.

Note also that the burden must be on the proponent of the incomplete evidence.  It has been remarked in this District that if the Defendant wishes to supply the rest of the conversation or recording, he or she can do that in the defense case.  That is unworkable, unacceptable, and not the law.  That would leave the Defendant to guess what document the Government pulled its fragment from. When the Defendant attempts to supply "the rest of the story" – the remainder of the document as the rule puts it – the prosecution would merely argue "No, that's not the document we were referring to."  Rule 106 can only be effective and effected if the proponent of the incomplete document or recording identifies which document or recording it is advancing and then produces the remainder portion(s) upon request.

On the other hand, Rule 106 does require the objecting defendant to point the Court and the prosecution in the direction of what else should be included.  The Rule does not leave the prosecution or the Court in the dark to guess about what might need to be included.  But once the Defendant has invoked Rule 106 and demanded that other parts of the document or video be also shown to the jury, there is no decision or discretion left.  It shall be done.  And it shall be done contemporaneously, not relegating the rest of the document or video to later in the trial.  No part of the document or video is admissible unless all of it that is necessary to show the true, entire, accurate picture is shown to the jury as well.

**B. Federal Rules of Evidence Rule 403:  Prejudicial or Confusing to Jury**
**Federal Rules of Evidence, Rule 403**, provides:

> The court may exclude relevant evidence if its probative value is
> substantially outweighed by a danger of one or more of the following:
> unfair prejudice, confusing the issues, misleading the jury, undue

delay, wasting time, or needlessly presenting cumulative evidence.

NOTES OF ADVISORY COMMITTEE ON PROPOSED RULES [2]

The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance. These circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. Slough, Relevancy Unraveled, 5 Kan. L. Rev. 1, 12–15 (1956); Trautman, Logical or Legal Relevancy—A Conflict in Theory, 5 Van. L. Rev. 385, 392 (1952); McCormick §152, pp. 319–321. The rules which follow in this Article are concrete applications evolved for particular situations. However, they reflect the policies underlying the present rule, which is designed as a guide for the handling of situations for which no specific rules have been formulated.

Exclusion for risk of unfair prejudice, confusion of issues, misleading the jury, or waste of time, all find ample support in the authorities. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

## C.  The Rules of Professional Conduct of the D.C. Bar require that: Rule 3.3: Candor to Tribunal

(a) A lawyer shall not knowingly:

(1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer, unless correction would require disclosure of information that is prohibited by Rule 1.6;

* * *

(4) Offer evidence that the lawyer knows to be false, except as provided in paragraph (b). A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

* * *

(d) A lawyer who receives information clearly establishing that a fraud has been perpetrated upon the tribunal shall promptly take reasonable remedial

---

[2]  Legal Information Institute, Cornell Law School, https://www.law.cornell.edu/rules/fre/rule_403

measures, including disclosure to the tribunal to the extent disclosure is
permitted by Rule 1.6(d).

## D. Rule 4.1: Truthfulness in Statements to Others

In the course of representing a client, a lawyer shall not knowingly:

(a) Make a false statement of material fact or law to a third person;
or

(b) Fail to disclose a material fact to a third person when disclosure
is necessary to avoid assisting a criminal or fraudulent act by a
client, unless disclosure is prohibited by Rule 1.6.

### Comment
#### Misrepresentation

[1] A lawyer is required to be truthful when dealing with others on a
client's behalf, but generally has no affirmative duty to inform an
opposing party of relevant facts. A misrepresentation can occur if the
lawyer incorporates or affirms a statement of another person that the
lawyer knows is false. Misrepresentations can also occur by partially
true but misleading statements or omissions that are the equivalent of
affirmative false statements. For dishonest conduct that does not
amount to a false statement or for misrepresentations by a lawyer
other than in the course of representing a client, *see* Rule 8.4. The term
"third person" as used in paragraphs (a) and (b) refers to any person or
entity other than the lawyer's client.

* * *

## III.   ARGUMENT:   MOTION TO EXCLUDE FRAGMENTS OF INCOMPLETE CONVERSATIONS

Under the "Doctrine of Completeness," the Court is asked to order that the prosecution

may not introduce testimony about, refer to, or argue from incomplete fragments of

conservations, recordings, or documents taken out of context.  That is, the prosecution must

produce the entire conversation or document or refrain from referring to a portion of it.

Human beings use language in the real world in complex and highly nuanced ways.[3]
People say A to say not A, for example "I spent the weekend on Mars"[4] to mock the absurdity of
the idea.  People may say "I conquered France" after a whirl-wind, month-long vacation as a
tourist throughout France.[5]  People use words and phrases in figurative or metaphorical ways
more often than in literally true ways.  For example, news of a comet swinging near the Earth
could prompt the reply "Well, we're all going to die now, I'm going to go off my diet."  By no
means does that mean that anyone is actually going to die because a comet passes within 4
million miles of the Earth.  Nor is such manner of speech a reliable indicator of the speaker's
state of mind, other than being a smart aleck.  People speak in hyperbole and embellishment,
often aimed at irony or humor, if only wry or gallows humor.[6]  A person may say "If I don't get
some coffee soon, I'm going to shoot someone." Under no circumstances is that a plan to
actually shoot someone.[7]  Others might not think it is funny at all.  But that is a joke, not a

---

[3]       Antonio Reyes, Paolo Rosso, Davide Buscalde, "**From humor recognition to irony
detection: The figurative language of social media**," Data & Knowledge Engineering, Volume
74, April 2012, Pages 1-12, accessible at:
https://www.sciencedirect.com/science/article/pii/S0169023X12000237?via%3Dihub
[4]       The Court will likely appreciate that the Defendant cannot use examples from
anticipating what the Government here might claim he said, including being said to have opened
the door.  Therefore, it is better to use examples that do not risk raising issues the prosecutors
might not raise and examples that do not prejudice the Defendant's defense.
[5]       "Literary Techniques: Irony," Matrix Blog: English 11-12, accessible at:
https://www.matrix.edu.au/literary-techniques-irony/

[6]       Asst. Prof. Dr. Qassim Abbas Dhayef Al- Tufaili and Fatima Rehman Mkheef Al- Jobori,
M.A. Student, Department of English, College of Education for Human Sciences, University of
Babylon (Abstract), "**A Pragmatic Study of Exaggeration in British and American Novels**,"
Journal of Education and Practice, Vol.7, No.33, 2016, accessible at:
https://files.eric.ed.gov/fulltext/EJ1122644.pdf
[7]       Tuhin Chakrabarty, Arkady Saakyan, Debanjan Ghosh, Smaranda Muresan, "**FLUTE:
Figurative Language Understanding through Textual Explanations**," Department of
Computer Science, Columbia University, Educational Testing Service, Proceedings of the 2022
Conference on Empirical Methods in Natural Language Processing, pages 7139 - 7159
December 7-11, 2022   https://aclanthology.org/2022.emnlp-main.481.pdf

conspiracy to commit murder.  Nor does it provide any insight into state of mind or intent.

In the trial of some Oath Keepers in *United States v. Stewart Rhodes, et al.*, Montgomery Caldwell's social media video post was introduced into evidence in which he said that "We took the Capitol." Of course, everyone admits that Caldwell never entered the U.S. Capitol building. So it is manifestly untrue that Caldwell "took the Capitol" which he never entered.  Why would someone say something on social media that is manifestly untrue?  Adrenaline.  Excitement. Hyperbole or exaggeration.  Click bait.  Or maybe a short-hand reference that "we" does not mean Montgomery Caldwell, but is a reference to all of the demonstrators present that day.

So how do humans navigate these highly-nuanced uses of language?  How can we come close to understanding what the speaker actually meant?  Context.  The entire conversation is used by humans to decipher language.  **<u>A human must hear the entire exchange from the beginning to parse and comprehend the meaning.</u>**  A person might earlier in the conversation say something that colors the later comments:  "You sound awfully cranky.  Have you had your coffee yet?"  "No, need a cup."  Later:  "If you don't get some coffee soon, are you going to shoot someone?"  "Yes."[8]  Clearly it is not actually true that the person plans to shoot anyone.[9]  It is a hyperbolic, flippant, irrelevant ironic attempt at humor.  But this is not an admission that the coffee-drinker is actually going to shoot anyone. Note of course that not every attempt at humor is successful.  Jokes that aren't actually funny are still attempted jokes, not to be taken seriously.

---

[8]    Jack Dolan, How Second Language English Learners Interpret Sarcasm in English: A Survey, Brigham Young University, accessible at:
https://schwa.byu.edu/files/2016/01/Dolan_Sarcasm.pdf
[9]    Bushra Nima Rashid, "**A Critical Pragmatic Study of Sarcasms in American and British Interviews**," <u>Journal of Strategic Research in Social Science</u>, Year: 2022, Volume: 8, Issue: 1, 55-72.

Some jokes are in poor taste. [10] For some people, it is the poor taste that they think is funny.  Yet no doubt some over-zealous prosecutor would try to claim that the coffee drinker was planning to shoot someone, and introduce this out-of-context fragment into evidence before the jury.

If we hear a mother yell "**I'm going to kill that boy!**" we know for sure she is _not_ going to kill anyone.  Her son may wish he were dead after the tongue-lashing he is about to receive, but we know that "I'm going to kill that boy" **_DOES NOT_** mean "I'm going to kill that boy." Yet we observe a trend like prosecutors claiming that the mother was planning to kill her son.

If a friend cries out to a friend who forgot to bring the keg of beer to a Superbowl party: **_"You're killing me!"_** [11]  we know that nobody is being killed and the statement is an over-the-top exclamation of frustration, not evidence of a crime.  If this were overheard or recorded and used in a criminal trial, common sense and human experience would exclude this as evidence that the party organizer was actually being killed by the forgetful helper.  Some would call out a S.W.A.T. team to surround the house on the idea the owner is in the process of being killed.

To present only fragments of a conversation is to essentially fabricate false evidence that is not real.  It is presenting statements that were never made as if they were.

Comments that there will be a civil war or that the Defendants will suffer attacks in which the January 6 Defendants are or will be the victims, not the aggressors, are clear as day when read in full context.  If the entire conversation is read as a whole, people are talking about expectations of being attacked by private street gangs or persecuted by the Government

---

[10]     "WRY humor," Collins Dictionary (ADJECTIVE [usually ADJECTIVE noun], A wry remark or piece of writing refers to a bad situation or a change in a situation in an amusing way.), accessible at: https://www.collinsdictionary.com/us/dictionary/english/wry-humour

[11]     _See, as to figures of speech,_ Abbey L. Ventrone, Using Figurative Language in American English: Challenges and Successes of Adult English Learners, Masters Theses Graduate Research and Creative Practice, Grand Valley State University, August 9, 2017, accessible at: https://scholarworks.gvsu.edu/cgi/viewcontent.cgi?article=1851&context=theses

## IV.  CONCLUSION

Montgomery respectfully requests that the Court enter an order in limine that the prosecution may not introduce testimony or evidence of, refer to, argue from, or make claims of Montgomery or other co-Defendants making statements or communications which are only incomplete fragments of a complete conversation or communication or which are the prosecution's interpretation of the actual, verbatim, unabridged, unedited conversation or communication.

August 18, 2023                         **RESPECTFULLY SUBMITED,**
                                        John M. Pierce, Esq.
                                        *Counsel for Defendant*


                                        _____/s/ John Pierce_____

                                        JOHN PIERCE LAW
                                        21550 Oxnard Street 3rd Floor, PMB #172
                                        Woodland Hills, CA 91367
                                        jpierce@johnpiercelaw.com
                                        (213) 400-0725

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date my law firm is filing the foregoing with the Court by its ECF record-keeping and filing system, which automatically provides a copy to:

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

CAROLINA NEVIN, Esq.
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
202-803-1612
carolina.nevin@usdoj.gov

KELLY ELIZABETH MORAN, Esq.
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
202-740-4690

kelly.moran@usdoj.gov

_____/s/ John Pierce_____
John M. Pierce