UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 21-cr-46-RDM |
| | : | |
| PATRICK MONTGOMERY, | : | |
| BRADY KNOWLTON, and | : | |
| GARY WILSON, | : | |
| | : | |
| Defendants. | | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE VIDEO OR PHOTOGRAPHIC EVIDENCE NOT RELEVANT TO DEFENDANTS [ECF 173]**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the Defendants' Motion in Limine to preclude evidence of the events of January 6, 2021, "not relevant to the Defendants." ECF 173 at 1. The material the defendants seek to exclude is relevant to the charged conduct and fairly describes the riot, rioters, and their conduct; therefore, the Court should deny the motion.

**BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

On January 6, 2021, at approximately 2:00 p.m., defendants Patrick Montgomery, Brady Knowlton, and Gary Wilson were outside the Capitol building on the west side. Knowlton

confronted MPD officers who were making their way through the crowd and yelled at them saying, "You took an oath! You took an oath!" and "Are you our brothers? At approximately 2:02 p.m., Montgomery came at Officer Hodges from his side, grabbed Officers Hodges' baton, and tried to pull it away from him. Officer Hodges immediately started to fight back and the two of them went to the ground, at which time Montgomery kicked Officer Hodges in the chest.

About thirty minutes later, at 2:35 p.m., the defendants entered the Capitol through the Upper West Terrace door. After first going into the Rotunda for about two minutes, at around 2:40 pm., the defendants entered the Gallery Stairs and walked to the third floor. About one minute later, they entered the Senate Gallery hallway where they joined a group of rioters. Several rioters assaulted a USCP officer who was trying to prevent them from entering the Senate Gallery.

As a result of the assault, the USCP officers fled the hallway, and the defendants entered the Senate Gallery at about 2:44 p.m. Knowlton and Wilson stole emergency hoods from the Senate Gallery. The defendants exited the Senate Gallery at about 2:48 p.m. Approximately two minutes later, they entered a second floor hallway, where they confronted MPD officers, who prevented them—and other rioters— from walking further down the hallway. During this confrontation, Knowlton stated in substance to the officers: "All you gotta do is step aside. You're not getting in trouble. Stand down. For the love of your country." and "This is happening. Our vote doesn't matter, so we came here for change." Wilson stated in substance to the officers: "We came all the way from our jobs to do your job and the freaking senators' job."

At about 2:54 p.m., Wilson, Montgomery, and Knowlton left the building.

Based on their actions on January 6, 2021, Knowlton, Montgomery, and Wilson are charged with obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2), along with five misdemeanor charges. Montgomery is also charged with

assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1), civil disorder in violation of 18 U.S.C. § 231(a)(3), and two additional misdemeanor charges. Additionally, Knowlton and Wilson are charged with theft offenses for stealing emergency hoods from the Senate Gallery.

## **ARGUMENT**

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, No. 18-cr-198, 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022).

The defendants argue that the Court should exclude video or photographic in which the defendants to do not appear, and of any locations in the Capitol in which the defendants were not present. ECF 173 at 4. The defendants' argument ignores the nature of these crimes as a collective action. It was the mob's collective action that disrupted Congress, and each defendant's knowledge of the collective riot bears on his *mens rea* for each of the charged offenses.

The government does not anticipate focusing its evidentiary presentation on areas of the Capitol in which the defendants did not go. However, to show the overall riot, its effects, the context of the defendants' actions, and why the certification of the Electoral College vote was suspended, the government will need present evidence to show the actions of other rioters in other areas of the Capitol building and grounds. None of the rioters was authorized to enter the Capitol. Law enforcement officer witnesses will explain that, in expelling rioters, they could not distinguish between those rioters who were overtly violent and those who were not; everyone had to leave. This is because law enforcement could not predict who would act violently; any member of the

crowd might be a threat to them. Indeed, throughout the day, individual officers found their attention divided by the need to monitor the whole crowd, rather than focusing on a specific individual. But for the defendants' actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Mazzocco*, No. 21-cr-54, Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). While a jury will judge each defendant based on his own actions, the context of his actions will necessarily be placed before them—that context was a riot.

The actions of other rioters at multiple areas of the Capitol could be relevant to elements of the crimes with which the defendants are charged. First, to prove Count Two, Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), the government must establish that Montgomery committed or attempted to commit an act that obstructed, impeded, or interfered with law enforcement in the performance of their duties during a civil disorder, and the civil disorder obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. Evidence of actions of other rioters at all locations of the Capitol building and grounds is relevant to prove that a civil disorder was occurring and that it interfered with a federally protected function.

Additionally, to prove Count Ten, Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2, against all three defendants, the government must establish that there was an "official proceeding" and the fact that it was disrupted. The official proceeding was the certification of the Electoral College vote, and, as with Count Two, proving this charge requires presenting evidence involving the actions of other rioters at all locations of

the Capitol building and grounds. Moreover, Count Ten includes the alternative theory of aiding and abetting, pursuant to 18 U.S.C. § 2. Therefore, the conduct of other rioters is relevant.

Furthermore, the government's use of any potential summary witnesses or evidence to this effect would permissibly "help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses throughout the trial." *See United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983). Any such aspects of the government's case would need to be "accurate and nonprejudicial[,]" *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014), and require "a sufficient foundation[,]" *United States v. Mitchell*, 816 F.3d 865, 877 (D.C. Cir. 2016). The government should not be precluded from presenting this information.

Even if this Court found the actions of other rioters were prejudicial, a limiting instruction would be the appropriate remedy. The D.C. Circuit has consistently upheld the use of limiting instructions as a way of minimizing the residual risk of prejudice. *See, e.g.*, *United States v. Douglas,* 482 F.3d 591, 601 (D.C. Cir. 2007) (emphasizing the significance of the district court's instructions to jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis).

Because evidence of the actions of other rioters are relevant and not unfairly prejudicial and any prejudice can be addressed through an appropriate limiting instruction, its admission is appropriate.

For the reasons stated above, the defendants' motion should be denied.

Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

By:    */s/ Carolina Nevin*
CAROLINA NEVIN
Assistant United States Attorney
NY Bar No. 5226121
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-803-1612
carolina.nevin@usdoj.gov

*/s/ Kelly Elizabeth Moran*
KELLY ELIZABETH MORAN
Assistant United States Attorney
NY Bar No. 5776471
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-740-4690
kelly.moran@usdoj.gov