```
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,
                                            Criminal Action
 4              Plaintiff,                  No. 1: 21-46

 5         vs.                              Washington, DC
                                            March 18, 2024
 6   PATRICK MONTGOMERY - 1,
     BRADY KNOWLTON - 2,                    10:04 a.m.
 7   GARY WILSON - 3,

 8              Defendants.
     _____/
 9

10                   TRANSCRIPT OF BENCH TRIAL
            BEFORE THE HONORABLE RANDOLPH D. MOSS
11                UNITED STATES DISTRICT JUDGE

12

     APPEARANCES:
13

     For the Plaintiff:     CAROLINA NEVIN
14                          MICHAEL ROMANO
                            UNITED STATES ATTORNEY'S OFFICE
15                          Criminal Section
                            601 D Street NW
16                          Washington, DC 20001

17

     For Defendant Montgomery:  ROGER ROOTS
18                              10 Dorrance Street
                                Suite 700 #649
19                              Providence, RI 02903

20

21              APPEARANCES CONTINUED ON NEXT PAGE

22

     Court Reporter:        SHERRY LINDSAY
23                          Official Court Reporter
                            U.S. District & Bankruptcy Courts
24                          333 Constitution Avenue, NW
                            Room 6710
25                          Washington, DC 20001
```

```
 1                          APPEARANCES

 2

 3    For Defendant Knowlton: RONALD S. SULLIVAN , JR.
                              RONALD SULLIVAN LAW PLLC
                              1300 I Street NW
 4                            Suite 400 E
                              Washington, DC 20005
 5

 6    For Defendant Wilson:   DAVID BARRY BENOWITZ
                              RAMMY GEORGE BARBARI
 7                            PRICE BENOWITZ LLP
                              409 Seventh Street, NW
 8                            Suite 200
                              Washington, DC 20004
 9

10

11

12
      Court Reporter:         SHERRY LINDSAY
13                            Official Court Reporter
                              U.S. District & Bankruptcy Courts
14                            333 Constitution Avenue, NW
                              Room 6710
15                            Washington, DC 20001

16

17

18

19

20

21

22

23

24

25
```

1                       TABLE OF CONTENTS

2                          MISCELLANY

3    Closing argument by Ms. Nevin              36

4    Closing argument by Mr. Mayer              43

5    Closing argument by Mr. Barbari            87

6    Closing argument by Mr. Roots              95

7    Rebuttal closing argument by Ms. Nevin     118

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2           THE COURTROOM DEPUTY:  Criminal case 21-46, United
 3   States of America versus Patrick Montgomery, Brady Knowlton and
 4   Gary Wilson.
 5           Will counsel please approach the podium and state
 6   their name for the record, starting with government counsel.
 7           MS. NEVIN:  Good morning, Your Honor.  Carolina Nevin
 8   for the United States.  Your Honor, my cocounsel has fallen
 9   ill, so I have Deputy Chief Michael Romano at counsel table
10   with me.  As well as paralegal Josephine Roberts and Special
11   Agent Jeffrey Weeks.
12           THE COURT:  Okay.  Thank you.
13           MR. MAYR:  Good morning, Your Honor.  Brent Mayr and
14   Ronald Sullivan for Mr. Brady Knowlton.
15           THE COURT:  Okay.  Good afternoon to you -- or good
16   morning.
17           MR. BARBARI:  Good morning, Your Honor.  Rammy
18   Barbari and David Benowitz on behalf of Mr. Gary Wilson.
19           THE COURT:  All right.  Good morning to you.
20           MR. PIERCE:  Good morning, Your Honor.  John Pierce
21   and Roger Roots on behalf of Patrick Montgomery.  We also have
22   at the table paralegal Emily Lambert.
23           THE COURT:  All right.  Good morning to you.
24           All right.  So we are here for a bench trial.  And
25   before we begin, let me confirm with each of the defendants
```

1    that is how they want to proceed.  They have a right to a trial

2    by jury if they prefer.  And I know I have written waivers from

3    each of them.  And before I sign those waivers, let me go

4    through with each of them and confirm that it is their personal

5    decision to waive the right to trial by jury.

6              Let my start -- Mr. Montgomery, is that your personal

7    decision?

8              DEFENDANT MONTGOMERY:  Yes, Your Honor.

9              THE COURT:  Have you had plenty of time to consult

10   with your lawyer about that?

11             DEFENDANT MONTGOMERY:  I have.

12             THE COURT:  But you understand it is your decision?

13             DEFENDANT MONTGOMERY:  Yes, sir.

14             THE COURT:  Okay.  I will sign that one then.

15             All right.  And then, let's see, why don't I go to

16   Mr. Wilson.

17             Mr. Wilson, do you understand that it is your

18   personal decision about whether you want to exercise your

19   personal right to trial by jury or to waive that right?

20             DEFENDANT WILSON:  Yes.

21             THE COURT:  Have you had time to consult with your

22   lawyer about that?

23             DEFENDANT WILSON:  Yes.

24             THE COURT:  What is your decision?

25             What is your decision?

```
 1                    DEFENDANT WILSON:  Oh, to waive the jury.

 2                    THE COURT:  Okay.  All right.  I will sign that one

 3        as well.

 4                    And then finally, Mr. Knowlton, do you understand

 5        that you have a personal right to decide whether you want to

 6        proceed by jury trial or to waive that right and have a bench

 7        trial?

 8                    DEFENDANT KNOWLTON:  I do.

 9                    THE COURT:  Have you had time to consult with your

10        lawyers about that?

11                    DEFENDANT KNOWLTON:  I have.

12                    THE COURT:  Okay.  What is your decision.

13                    DEFENDANT KNOWLTON:  To waive the jury trial.

14                    THE COURT:  Let me confirm that the government

15        consents as well to each.

16                    MS. NEVIN:  We do, Your Honor.

17                    THE COURT:  Okay.  All right.  So I will sign those

18        and give those to the deputy clerk.

19                    THE COURTROOM DEPUTY:  Thank you, Judge.

20                    THE COURT:  I then have some motions that are still

21        pending in front of me.  Most of the motions, I believe, have

22        been mooted, either because of the narrowing of the charges

23        that are actually going to trial or because we are proceeding

24        by bench trial.  But there still are a handful of motions that

25        are pending at this point.  I believe -- well, first of all, I
```

1    know that each of the defendants is reserving their rights with

2    respect to 1512(c).  And that is fine.  The defendants have

3    moved to dismiss Counts 3, 5 and 6 of the indictment.  Count 3

4    alleges that in violation of 18 U.S.C. 1752(a)(4),

5    Mr. Montgomery did knowingly engage in any act of physical

6    violence against any person or property in a restricted

7    building or grounds; that is, any posted, cordoned off and

8    otherwise restricted area within the United States Capitol and

9    its grounds where the vice president was and would be or would

10   be temporarily visiting.

11          Count 5 alleges that in violation of 18 U.S.C.

12   1752(a)(1), the Defendants Montgomery, Knowlton and Wilson did

13   unlawfully and knowingly enter and remain in the restricted

14   building.  Let me see if that is one of the ones that is still

15   pending.

16          I think if I am correct, I think the only 1752(a)(1)

17   or 1752(a) count at all is the one against Mr. Knowlton; is

18   that right?

19          MS. NEVIN:  That is correct, Judge.

20          THE COURT:  Okay.  So then let me just limit what I

21   am doing here with respect to Mr. Knowlton.  And Count 5 does

22   allege that Mr. Knowlton violated 18 section 1752(a)(1),

23   because he did unlawfully enter and remain in a restricted

24   building or grounds; that is, any posted, cordoned off and

25   otherwise restricted area within the United States Capitol and

1    its grounds where the vice president was and would be

2    temporarily visiting without lawful authority to do so.  The

3    motion which only applies at this point with respect to

4    Mr. Knowlton makes four arguments.  First, that this count

5    fails to state an offense because only the United States Secret

6    Service has the authority to restrict an area for purposes of

7    1752.

8              Second, he argues that the government's

9    interpretation of 1752 is unconstitutionally vague.

10              Third, he argues that under the rule of lenity that

11    any ambiguity in 1752 should be resolved in his favor.  And

12    finally, he argues that the Government's interpretation of 1752

13    would operate as an ex post facto law.  The first argument is

14    that the Secret Service did not restrict the area in question.

15    And that it was only the Secret Service that had the authority

16    to do so for purposes of 1752.  And I am not persuaded by that

17    argument.  I join many of my colleagues who have concluded that

18    the text of section 1752 plainly does not require that the

19    Secret Service be the entity to restrict or cordon off a

20    particular area.  That was Judge Boasberg's holding in

21    *Mostofsky*.  Judge Kollar-Kotelly reached the same result in the

22    *Grider* case, Judge McFadden did so in *Griffin*, Judge Bates in

23    *McHugh,* Judge Kelly in *Nordean*; Judge Contreras in the *Andries*;

24    Judge Friedman in *Puma*; and Judge Lamberth in *Bingert*.  And I

25    agree with them that the plain language of the statute is not

1    complicated or ambiguous as relevant here.

2            Section 1752 provides that it is unlawful for anyone

3    knowingly to enter or remain in any restricted building or

4    grounds without unlawful authority to do so, knowingly and with

5    intent to impede or restrict -- let's see.  Let me just stop it

6    there because that is the only one that is relevant for present

7    purposes.  As relevant here at section 1752(c) that defines a

8    restricted building or grounds -- it defines a restricted

9    building or grounds to mean any posted, cordoned off or

10   otherwise restricted area.  And then, as relevant here, of a

11   building or grounds where the vice president or other person

12   protected by the Secret Service is or will be temporarily

13   visiting.  And the plain language of the statute does not

14   support the contention that the Secret Service alone sets the

15   restrictions.  The only reference to the Secret Service in the

16   statute is in defining the protectees, not the area that is

17   closed.  Section 1752 says nothing about who must be doing the

18   restricting.  And that is from the Griffin decision at 549 F.

19   Supp. 3d at 55.  Congress chose to delineate the inner

20   boundaries of this statute, not by who does the restricting,

21   but to who is being protected.  And Congress' failure to

22   specify how an area becomes restricted just means that the

23   statute does not require any particular method for restricting

24   a building or grounds.  And that is from Judge Friedman's

25   decision in *Puma* quoting the *McHugh* case.  Defendant's reliance

1    on the Fourth Circuit's decision in the *Bursey* case is

2    unavailing.  In *Bursey* the Fourth Circuit concluded that there

3    was ample evidence that *Bursey* understood the area to have been

4    restricted by the Secret Service and thus a federally

5    restricted zone.  But the conclusion that the Secret Service

6    was the one -- the entity that was engaged in the restriction

7    there doesn't mean that that is a necessary condition, as Judge

8    McFadden explained in the *Griffin* decision.  The Fourth Circuit

9    had no reason to analyze the issue, because all of the parties

10   agreed that the Secret Service secured the hangar.  There is no

11   holding binding or persuasive on that question.  And that is

12   quoting from Judge McFadden's decision in Griffin.

13          And the defendants' reliance on the Office of Legal

14   Counsel's opinion is also unpersuasive.  While the Office of

15   Legal Counsel's opinion that the defendant referenced discussed

16   the Secret Service's authority to close streets pursuant to

17   section 1752, the opinion does not discuss whether other

18   federal law enforcement entities are prohibited from

19   designating restricted areas under section 1752.  I don't think

20   this would be an issue in any event.  And although I was a

21   deputy at the Office of Legal Counsel at the time that opinion

22   was issued, I was not the signatory of that opinion.  But I

23   also don't think that would be an issue in any event because it

24   deals with a different matter.

25          Second, adopting the government's interpretation of

1    the statute does not make the statute void for vagueness.  In

2    evaluating void for vagueness claims, the Court begins from the

3    presumption that a statute is not automatically invalidated as

4    vague simply because there is difficulty in determining how it

5    might apply in certain marginal cases.  A law is

6    unconstitutionally vague when it fails to give ordinary people

7    fair notice of the conduct it punishes or is so standardless

8    that it invites arbitrary enforcement.  That is quoting *Johnson*

9    *versus the United States* from the Supreme Court.  Whereas in

10   the case with section 1752 there is no statutory language

11   susceptible to multiple meanings and the statute is not void

12   for vagueness.

13          Defendants argue that there would be no notice, much

14   less fair notice of the conduct prescribed in this case,

15   because it is an ordinary person's reasonable conclusion that

16   the government agency that may restrict a person from entering

17   an area in which there is a Secret Service protectee is the

18   Secret Service.  And that argument I think just repackages the

19   statutory amount that I have already rejected nor do I think

20   there is any reason to think that is the collusion that the

21   ordinary person would reach in any event from the statutory

22   text.

23          The defendants also argue that the indictment does

24   not allege there were postings or other notifications that

25   alerted the defendants to the restrictions.  As the government

1    points out, the indictment alleges that the defendants were in

2    a restricted building or grounds and that is sufficient to

3    bring the defendants under the purview of the provision at

4    least with respect to the indictment.

5          To the extent that Mr. Knowlton is arguing that those

6    facts are unsupported in some respect, that is a question of

7    fact for trial.  But it doesn't go to the vagueness of the

8    question.  I am unpersuaded with respect to the rule of lenity

9    because I think the language is not ambiguous and therefore the

10   rule of lenity has no application.  And then I am also

11   unpersuaded by the ex post facto law, argument.  Judicial

12   interpretations of a criminal statute may not apply

13   retroactively if the interpretation is unexpected and

14   indefensible by reference to the law which has been expressed

15   to the conduct at issue.  And that is just not the case here,

16   so I am unpersuaded by that argument.  Then I think there was

17   a -- so that motion is denied as to Mr. Knowlton and is moot as

18   to the others.

19         There was a motion to dismiss on First Amendment

20   grounds in which Mr. Montgomery and Mr. Wilson moved to dismiss

21   Counts 3, 5, 6 and 8 on First Amendment grounds.  And those are

22   for violations of 1752 as well as 40 U.S.C. section

23   5104(e)(2)(G) which I don't believe is at issue as to either of

24   those two defendants.  So I will deny that motion as moot

25   unless I am mistaken about that, in which case you can let me

1    know that either of them are still subject to potential

2    liability under either of those provisions.

3              And then there is the motion that Mr. Montgomery

4    makes to dismiss due to mishandling obstruction and spoliation

5    due to the destruction of evidence by the US House of

6    Representatives Select Committee to investigate the January 6

7    attacks on the Capitol.  And, quite frankly, that motion is

8    bewildering, given the fact that it is an entirely different

9    branch of government that allegedly didn't maintain the

10   records.  Mr. Montgomery cites to the Fox News article -- a Fox

11   News article from August 8, 2023 alleging that the House Select

12   Committee that investigated the Capitol riot on January 6,

13   2021, failed to adequately preserve documents, data and

14   videotaped depositions, including communications it had with

15   the Biden White House that are still missing.  And he asserts

16   that the possibility that witnesses interviewed by the Select

17   Committee would completely debunk all of prosecution's

18   accusations is extremely high.

19             In particular, he speculates that there are likely to

20   be exculpatory reports from the government's confidential

21   sources within the witness videos.  And separately he alleges

22   that several months after Donald Trump left office and Joe

23   Biden was sworn in as president, the Secret Service destroyed

24   text messages and other communications from the events on

25   January 6.

1          Mr. Montgomery seems inconsistent at times about what

2    he is actually alleging happened with respect to the

3    subcommittee's records.  He first claims that the subcommittee

4    was going to share the evidence with the Department of Justice.

5    And he quotes the Select Committee Chairperson Bennie Thompson

6    discussing a general agreement on a template for evidence

7    sharing.  But he later suggests that the government cannot

8    provide defendants' counsel with past statements made by the

9    government witness when the Select Committee has destroyed the

10   transcripts.  And he also claims that the committee deprived

11   not only the defendants, but the prosecutors of the information

12   in most cases.  And at another point he explicitly admits that

13   he is not certain if the records have been forever deleted,

14   misplaced, disorganized or otherwise unavailable.  And he

15   asserts it makes little difference because he still would not

16   have the benefit of these records and that that somehow

17   violates Brady, the Jencks Act, and Giglio.

18          In the Court's view it does matter whether the

19   records at issue are possessed by the executive branch or a

20   congressional committee.  As the defense itself correctly

21   emphasizes, Congress is the legislative branch of our Federal

22   Government and it is not the executive branch.  In my view, the

23   defense is incorrect in its unsupported assertion that any part

24   of the government, presumably any branch that was involved in

25   the underlying events or participated in the investigation of

1     them or which the agency or the prosecution had a reason to

2     suspect might have relevant information subject to the

3     obligations for disclosure.  Judge Kelly addressed this issue

4     in a footnote in his *Nordean* opinion where he wrote, "Of

5     course, whatever materials the government obtains from the

6     committee must be disclosed to defendants consistent with the

7     government's general discovery obligations under *Brady*.  But

8     the government need not and indeed it cannot produce

9     information or materials in the possession of Congress, not in

10    the possession of the Department of Justice or another

11    executive agency."  And I agree entirely with that.

12          And, in fact, due to the speech or debate clause

13    immunity, I tend to doubt that the executive branch would have

14    any authority to compel Congress to turn over those records.

15          The government also doesn't have an obligation under

16    Rule 16, which governs criminal discovery.  As this Court

17    observed in the *United States versus Libby,* it is settled that

18    the government generally need not produce documents that are in

19    the possession, custody or control of a separate branch of

20    government, such as Congress.  And so to the extent that

21    Mr. Montgomery is claiming that the Select Committee has

22    records that the Department of Justice or another executive

23    branch agency never had, his argument fails.

24          To the extent that he is claiming there were records

25    that were, in fact, possessed by relevant executive branch

1    agencies that might have been destroyed, his argument simply

2    lacks sufficient factual basis.  First, his destruction claim

3    as to the Select Committee's materials is based on a statement

4    by Barry Loudermilk, Chairman of the Subcommittee on Oversight

5    for the Committee on House Administration.  And Chairman

6    Loudermilk told the press that boxes his team received from the

7    select committee were completely unorganized and didn't have

8    any deposition videos.  As the government notes in its

9    opposition, Chairman Loudermilk's report on the Select

10   Committee identifies a failure to provide indices, some

11   provision transcripts rather than videos and a reported lack of

12   additional investigations.  And that is not evidence of

13   destruction of any records, as Chief Judge Boasberg noted when

14   rejecting virtually the identical argument in the *United States*

15   *versus Zink*.  This is too thin a read to support defendant's

16   conclusion that the committee lost or destroyed any evidence.

17   And it is particularly true where neither the article nor

18   anything else in the motion shows that Congress even had, lost

19   or destroyed evidence that pertained to defendants in this

20   particular case.

21          Second, Mr. Montgomery's claim as to the Secret

22   Service starts and ends with his allegation that there were

23   erased text messages from January 5th and 6th.  The motion

24   offers no reason, not even speculation, as to how or why those

25   statements would be in any way -- would be in any way part of

1    Mr. Montgomery's prosecution, particularly given the indictment

2    does not allege that Mr. Montgomery in any way interacted with

3    the Secret Service that day.

4            And even if this were not enough reason to question

5    the argument that Mr. Montgomery is pressing; even if there

6    were some evidence, and there is not, giving rise to a

7    plausible factual basis to suggest that there could have been

8    lost or destroyed evidence, that is not enough to show the

9    government violated its obligations under the due process

10   clause, Rule 16 or Brady.  Mr. Montgomery must show either the

11   missing evidence is material and exculpatory or that the

12   government acted in bad faith when it failed to preserve such

13   evidence.  And he provides no evidence of bad faith.  Rather,

14   he gestures at reasons that the allegedly destroyed evidence

15   would be material and exculpatory in his view.  He claims that

16   the Senate committee records might contain interviews.  And he

17   says that -- even thousands of interviews that were never

18   publicly shared.  He argues that fact of the interview may have

19   no information about him personally that would itself be

20   exculpatory.  That is sort of a remarkable proposition given

21   the number of people who were present that day.  He asserts

22   this is particularly true given that the government's

23   confidential human sources were tasked with monitoring many

24   planning to come to January 6, 2021, yet none of them reported

25   back to their handlers any conspiracy or plan to obstruct the

1    official proceedings of the joint session of Congress.  And

2    Mr. Montgomery also alleges that the Capitol Police records may

3    show that pipe bombs were discovered near the RNC and if the

4    decision to recess the proceedings focused on the pipe bombs,

5    then Mr. Montgomery is innocent of obstructing the joint

6    session of Congress under section 1512(c)(2).

7            Notably Mr. Montgomery does not speculate about what

8    the Secret Service's messages might say or otherwise suggest

9    any reason that the messages would be relevant to his defense,

10   much less exculpatory.  Even assuming his allegations would be

11   enough to show the evidence would have been potentially useful

12   and he hasn't shown that, including as impeachment evidence

13   under Giglio.  Mr. Montgomery does not show the information

14   would be material.  And as the Supreme Court explained in the

15   *United States versus Bagley,* a constitutional error occurs only

16   if the evidence is material in the sense that its suppression

17   undermines confidence in the outcome of the trial.  And that

18   means there is a reasonable probability, meaning a probability

19   sufficient to undermine confidence in the outcome that had the

20   evidence been disclosed to the defense, the results of the

21   proceedings would have been different.  And Mr. Montgomery does

22   not meet that standard.

23           If he wants to argue to me in considering the case

24   that I should draw inferences relating to the lack of evidence,

25   he is welcome to do so and I am happy to consider those

1    arguments.  The allegations also don't prove a violation of the

2    Jencks Act.  And while the nature of Mr. Montgomery's Jencks

3    Act claim is not entirely clear to me, he asserts it in

4    relation to the prior statements by witnesses.  And from

5    context, I can only assume that he is referring to witnesses

6    before the Select Committee.  And such a claim misunderstands

7    the Jencks Act.  The Jencks Act pertains to any criminal

8    prosecution brought by the United States.  And with regard to

9    such a proceeding, the Act states after a witness called by the

10   United States has testified on direct examination, the Court

11   shall, on the motion of the defendant or the United States, to

12   produce any statements of the witness in possession of the

13   United States, which relates to the subject matter as to which

14   the witness has testified.  If the entire contents of any such

15   statement relate to the subject matter of the testimony of the

16   witness, the Court shall order it be delivered directly to the

17   defendant for his examination and use.  Those simply don't

18   apply here.  The witnesses who spoke to the Select Committee

19   were not witnesses called by the United States to testify on

20   direct examination in this case.  And if there is a witness who

21   is offered here, who testified before the Senate Select

22   Committee, you can bring that to my attention, but I am not

23   aware of that circumstance.

24           And then finally in a footnote, Mr. Montgomery

25   asserts that the Select Committee was the trial of the

1    January 6 defendants leaving the District Court nothing but the

2    sentencing results, resulting from the feverish lynch mob that

3    the community created.  That may be metaphor, but to extent it

4    is not, I will simply remind the defense of its own words:

5    Congress, if it has not been forgotten among the public, is the

6    legislative branch of the federal government.  Congress could

7    not and did not provide a criminal prosecution under the terms

8    of the Jencks Act or any other rule.  And, quite frankly, I

9    only have the vaguest knowledge of what happened in those

10   hearings anyway.  And I am certainly capable of not letting

11   what happened in those hearings have any affect on my

12   consideration of the case.  So that motion is denied as well.

13          There is the motion to suppress, which I think -- as

14   by Mr. Wilson which I think is moot at this point; is that

15   correct?

16          MR. BARBARI:  Yes, Your Honor.

17          THE COURT:  So I will deny that as moot.

18          And then there is the motion to change venue.  Is

19   anyone still pushing that, raising that in a motion to change

20   venue?

21          MR. MAYR:  Your Honor, on behalf of Mr. Knowlton, we

22   have previously indicated in emails with your case manager that

23   we did.  However, at this time, we are withdrawing that motion

24   and not asking for a ruling, at least as to our client.  I

25   think Mr. Roots is going to speak on behalf of Mr. Montgomery.

1           THE COURT:  Okay.  Thank you.

2           MR. ROOTS:  Yeah, we would like our ruling on that

3  because Mr. Montgomery has -- I just last night he filed a -- I

4  guess a declaration about his reason for doing this as opposed

5  to a jury trial.  And his reason, he said in his sworn

6  declaration, is because the jury pool in DC is so fundamentally

7  unfair to January 6 cases, so fundamentally biased, he provided

8  a lot of survey -- you know, survey evidence of this.

9           DC does not provide a fair jury pool for these

10  January 6 cases.  The opinions of the residents of DC are

11  measurably different from the opinions of the residents of

12  almost every other place in the United States.

13           Many -- and myself and Mr. Pierce, we have done eight

14  jury trials.  And many prospective jurors come into these

15  courtrooms and literally say they are victims -- they literally

16  say they are victims of these January 6 defendants.  So here we

17  have a jury pool many of whose members say they are victims of

18  these defendants.  And there are hundreds of these cases where

19  there simply is not the availability of a fair trial.  And

20  Mr. Montgomery filed his declaration stating that it was his

21  reason essentially for doing this bench trial, because he has

22  carefully watched and monitored the reports of other cases.  He

23  has looked at this evidence.  He has looked at the surveys.

24  And he does not feel that he has the availability here in the

25  District of Columbia of a fair trial.  And so we would like a

1    ruling on that for appellate purposes, because, I think, that

2    his right to fair trial has been denied here with his

3    declaration.

4              THE COURT:  So the issue I have -- well, I have a

5    number of issues with this.  But I guess the principle issue I

6    have with this is I haven't ruled on his motion and never ruled

7    on his motion for a change of venue.  And I said that I would

8    study the issue further.  And then it was then last night he

9    then submitted something expressing further concerns and

10   submitting additional evidence with respect to that motion that

11   I never ruled on.  He has now made the decision that he wants a

12   bench trial instead.  And I think that to the extent that his

13   concern with respect to the change of venue motion, I think he

14   had to at least press that motion to conclusion, which he never

15   did, before making the decision that he wanted to proceed with

16   a bench trial.  And so it seems to me it is moot at this pont,

17   because I never ruled on that motion.  He then said he wanted

18   to have a bench trial.  And has opted to have a bench trial and

19   now is saying I want a ruling on a motion, which is moot at

20   this point, which I never ruled on.

21             MR. ROOTS:  Respectfully, Your Honor, if you were to

22   rule in favor of the motion for change of venue, I believe we

23   would then make a motion to recant or to -- you know, to go

24   with a jury in another fair jury pool jurisdiction.

25             THE COURT:  All right.  Well, I just think you are

1    coming too late with that.  That is the argument you should

2    have made to me.  You should have said, Judge, we need a

3    decision from you on this to make a decision about whether to

4    proceed with the bench trial.  Without the benefit of my

5    decision on it, you decided you wanted to proceed on the bench

6    trial.  So I am going to deny the motion as moot at this point.

7            All right.  Then there were a number of motions in

8    limine all of which I think are moot at this point.  But I will

9    just run through them and if there is any of these that are not

10   moot at this point, please let me know.  132, government motion

11   in limine to preclude entrapment evidence; 134,

12   Mr. Montgomery's motion to exclude prior convictions; number

13   136, the government's motion in limine to preclude First

14   Amendment defense; 166, defendants' motion in limine to

15   preclude unseen signage; number 167, defendants' motion in

16   limine to preclude rain drop theory; number 170, government's

17   motion in limine re CX of Secret Service; 171, government's

18   motion in limine re evidence of camera locations; 173,

19   defendants' motion in limine to exclude irrelevant video or

20   photos; number 174, Mr. Montgomery's motion in limine to

21   exclude fragments; number 175, defendants' motion in limine to

22   exclude FBI agent testimony; number 176, Mr. Wilson's motion in

23   limine to exclude media items; number 177, redacted motion in

24   limine by Mr. Wilson to exclude attorney-client communications

25   and references; number 179, Mr. Wilson's motion in limine to

1    exclude certain terms and variations; number 180, Mr. Wilson's

2    motion in limine to exclude statements by others; and number

3    181, Mr. Wilson's to exclude distorted or edited video.

4              Is any of that something you still need a ruling from

5    the Court on?

6              MS. NEVIN:  Your Honor, it is our position that as to

7    the motions that the government filed that we agree that they

8    are moot.

9              THE COURT:  Okay.  Why don't I run through each of

10   the defendants then?  Mr. Mayr.

11             Mr. Roots, you are welcome to go first, if you would

12   like.

13             MR. ROOTS:  Yes.  Speaking for Mr. Montgomery, we

14   would like rulings on each of those.

15             THE COURT:  I will tell you what I will let you do.

16   You can raise them as they come in.  I am going to deny them

17   now all as premature.  If there is evidence that is coming in

18   that you think shouldn't come in, since I am the trier of fact,

19   I don't think there is a risk of any prejudice, because you are

20   showing me the evidence anyway to rule on it.  So raise it at

21   that point in time.  So I will deny them now, but without

22   prejudice to you reasserting them as the evidence comes in.  I

23   think it is silly for me to go through and spend the next three

24   hours giving you rulings on motions where I suspect 80 percent

25   of this, there is never going to be any evidence.

1          MS. NEVIN:  Your Honor, if I could briefly respond to

2     that.  We are about to engage in a stipulated trial where we

3     have agreed on all the facts and the evidence.  So based on

4     that, I don't see a universe where the defense should be

5     objecting to evidence coming in.

6          THE COURT:  Well, let me amend what I said from

7     80 percent to 99 percent.

8          All right.  Mr. Mayr.

9          MR. MAYR:  Your Honor, I am going on the record as

10    saying we agree with the government on this, it is moot.  And

11    we have agreed to the evidence in this case, so there is no

12    evidentiary objections that you should expect from us.

13         THE COURT:  Thank you.

14         Mr. Benowitz.

15         MR. BARBARI:  Yes, Your Honor.  Rammy Barbari on

16    behalf of Mr. Wilson.  We agree with Mr. Mayr's representations

17    and we agree that they are denied as moot.

18         THE COURT:  So I will deny all of the motions as moot

19    with the exception of those raised by Mr. Montgomery.  And as

20    to those, I will deny them as premature and you reserve your

21    right to raise them as the evidence comes in.

22         I will caution you, though is that you want to make

23    sure you are not violating the terms of the agreement with the

24    government with respect to the stipulated trial by objecting to

25    evidence that you have agreed should come in.

1            MR. ROOTS:  Yes, Your Honor.

2            THE COURT:  Is there anything else that I need to

3    address pretrial?

4            Anyone else?

5            All right.  So how would you like to proceed here

6    today then?  I have read through the materials you have

7    submitted.  And I am happy to proceed however you think

8    appropriate.

9            MS. NEVIN:  Your Honor, based on a stipulated trial

10   that I have conducted before Your Honor in the past, I think

11   that the best procedure would be for the Court to ask each

12   defendant, have they read through the statement of the

13   stipulated facts, that type of colloquy.

14           And then we have agreed to argument on the 1512

15   count.

16           THE COURT:  Are there going to be any witnesses at

17   all?

18           MS. NEVIN:  Not from the government, Your Honor.

19           THE COURT:  Okay.

20           MS. NEVIN:  Your Honor, as we make our arguments, I

21   will be referring to some of the exhibits.  I wasn't planning

22   on playing the exhibits.  But if Your Honor would prefer, we

23   can do that.  We defer to you.

24           THE COURT:  That actually might be helpful, because I

25   have been busy enough.  And to the extent I have seen these

1    before, they are probably not very top of memory for me, so

2    showing me anything you would like me to look at would be

3    helpful.

4              MS. NEVIN:  Understood.

5              THE COURT:  Anything you would like me to have in my

6    head when I make a decision would be helpful to show me.

7              MS. NEVIN:  Okay.  Perfect.  Thank you.

8              THE COURT:  Does defense agree that is a sensible way

9    to proceed?

10             MR. MAYR:  That is how we anticipated it proceeding,

11   Your Honor.  So the only thing -- I figure that we would do

12   this in an actual trial format.  I don't think that there is

13   going to be opening arguments, but the government will offer

14   the exhibits.  We will note that they are all stipulated.  The

15   government will rest.  The only thing we will ask for is just a

16   moment before we decide whether we are going to -- whether any

17   of the defendants are going to put on a case or any evidence.

18             THE COURT:  That is fine.

19             So why don't we -- Mr. Mayr, since you are at the

20   podium, why don't we start with Mr. Knowlton then.  You can

21   come on up to the podium.

22             All right.  And let's go ahead and put Mr. Knowlton

23   under oath for purposes of this, just in the same way I would

24   for purposes of a plea, for example.

25             MR. MAYR:  Absolutely.

1          THE COURTROOM DEPUTY:  Yes, Your Honor.

2                DEFENDANT KNOWLTON, sworn.

3          DEFENDANT KNOWLTON:  I do.

4          THE COURT:  Mr. Knowlton, have you carefully read

5    through the statement of facts of stipulated trial?

6          DEFENDANT KNOWLTON:  I have.

7          THE COURT:  Is that your signature on the

8    second-to-last page?  I will hold it up for you.

9          DEFENDANT KNOWLTON:  That is my signature.

10          THE COURT:  Did you read the document carefully

11    before you signed it?

12          DEFENDANT KNOWLTON:  Yes, I did.

13          THE COURT:  Do you understand that by signing that

14    document, you are indicating that you fully understand the

15    proffer and that you accept it without reservation, that you

16    are doing so voluntarily, of your own free will and that no

17    threats have been made against you in any way to influence your

18    decision to sign the statement of stipulated trial -- of facts?

19          DEFENDANT KNOWLTON:  Your Honor, I understand my

20    decision to sign.

21          THE COURT:  Are you fully satisfied with the

22    assistance of your lawyer?

23          DEFENDANT KNOWLTON:  I am.

24          THE COURT:  Have you had enough time to consult with

25    your lawyer before deciding whether to sign that document or

1    not?

2              DEFENDANT KNOWLTON:  That is correct, yeah.

3              MR. MAYR:  The only additional thing, I don't

4    remember if this is in the stipulation or not, just for the

5    record, our client is also giving up his Sixth Amendment right

6    to confront and cross-examine any live witnesses in this

7    hearing.

8              THE COURT:  I appreciate you putting that on the

9    record.  Thank you.

10             MR. MAYR:  All right.  That is it.

11             THE COURT:  Anything else the government thinks I

12   should inquire about?

13             MS. NEVIN:  No, Your Honor.

14             THE COURT:  Okay.  All right.  So then why don't we

15   next go to Mr. Montgomery.

16             THE COURTROOM DEPUTY:  Good morning, Mr. Montgomery.

17   Would you please raise your right hand?

18                   DEFENDANT MONTGOMERY, sworn

19             DEFENDANT MONTGOMERY:  I do.

20             THE COURTROOM DEPUTY:  Thank you.

21             THE COURT:  Mr. Montgomery, I am holding up for you

22   what is the third-to-last page of the statement of facts for

23   stipulated trial.  Is that your signature?

24             DEFENDANT MONTGOMERY:  It is, Your Honor.

25             THE COURT:  Did you carefully read that document

```
1    before you signed it?

2              DEFENDANT MONTGOMERY:  I did.

3              THE COURT:  Did you understand that by signing that

4    document you are indicating that you have read the statement of

5    facts -- of facts for stipulated trial, that you have discussed

6    that proffer with your attorney, that you fully understand the

7    proffer and that you accept it without reservation and that you

8    do that voluntarily, of your own free will and that no threats

9    have been made to you, nor are you under the influence of

10   anything that can impede your ability to understand what you

11   are doing by signing the proffer?

12             DEFENDANT MONTGOMERY:  I do, Your Honor.

13             THE COURT:  Do you understand that you are also

14   giving up your Sixth Amendment right to confront witnesses

15   against you?

16             DEFENDANT MONTGOMERY:  Yes, I do.

17             THE COURT:  Did you have sufficient time to confer

18   with your lawyers before you signed the statement of facts for

19   stipulated trial?

20             DEFENDANT MONTGOMERY:  I did.

21             THE COURT:  Do you feel you understand everything in

22   that document?

23             DEFENDANT MONTGOMERY:  Yes, sir.

24             THE COURT:  Is everything in the document true?

25             DEFENDANT MONTGOMERY:  Yes.
```

```
1              THE COURT:  All right.  Thank you.

2              All right.  And now, Mr. Wilson.

3                   DEFENDANT WILSON, sworn.

4         DEFENDANT WILSON:  Yes.

5         THE COURTROOM DEPUTY:  Thank you.

6              THE COURT:  All right.  And, Mr. Wilson, is that your

7    signature on the final page of statement of facts for

8    stipulated trial?

9         DEFENDANT WILSON:  Yes, it is.

10             THE COURT:  Did you read that document carefully

11   before signing it?

12        DEFENDANT WILSON:  Yes, I did.

13             THE COURT:  Do you understand that by signing the

14   document, you are indicating that you have read the foregoing

15   statement of facts for stipulated trial, you have discussed the

16   proffer fully with your attorney, that you fully understand the

17   proffer, that you accept it without reservation and you do that

18   voluntarily of your own free will, that no threats have been

19   made against you nor were you under the influence of anything

20   that could impede your ability to understand the proffer fully?

21        DEFENDANT WILSON:  Yes, I do.

22             THE COURT:  Do you also understand you are giving up

23   your Sixth Amendment right to confront any witnesses against

24   you?

25        DEFENDANT WILSON:  Yes, I do.
```

1          THE COURT:  And are you fully satisfied with the

2    assistance of your lawyers in this case?

3          DEFENDANT WILSON:  Yes, I do.

4          THE COURT:  Did you have sufficient time with them to

5    decide whether you should sign the statement of facts for

6    stipulated trial?

7          DEFENDANT WILSON:  Yes, I have.

8          THE COURT:  Is everything in that document true?

9          Is the document true?

10         DEFENDANT WILSON:  Yes.

11         THE COURT:  All right.  Anything else anyone thinks I

12   should ask?

13         MR. BARBARI:  No, Your Honor.

14         MR. BENOWITZ:  No, Your Honor.

15         THE COURT:  One thing I didn't ask I think,

16   Mr. Knowlton, but I should probably go back to, just to confirm

17   that he wasn't under the influence of anything that could

18   influence his decision to make an -- he is making an informed

19   decision when he signed the document?  I want to make sure you

20   weren't under the influence of anything when --

21         DEFENDANT KNOWLTON:  I was not under the influence of

22   anything.  I am fully informed of the decision, Your Honor.

23         THE COURT:  All right.  In that case, I will accept

24   the statement of facts for stipulated trial as my findings of

25   fact for purposes of today's proceedings.

```
1              And the government may make whatever presentation it
2     thinks appropriate at this point.
3              MS. NEVIN:  Your Honor, at this time, we are offering
4     Exhibits 1 to 16 into evidence.
5              THE COURT:  Okay.  Any objection?
6              MR. MAYR:  No objection on behalf of Mr. Knowlton.
7              MR. BENOWITZ:  Your Honor, on behalf of Mr. Wilson,
8     we do not object.  These are the exhibits we stipulated to with
9     respect to their authenticity.
10             THE COURT:  With respect to Mr. Montgomery?
11             MR. PIERCE:  No objection, Your Honor.
12             THE COURT:  So Exhibits 1 through 16 are admitted.
13             MS. NEVIN:  Your Honor, based on the colloquies that
14    Your Honor just had with the defendants and the admission of
15    the exhibits, the government rests.
16             THE COURT:  Okay.  All right.  So would the defense
17    like an opportunity now to take a break just to confer amongst
18    yourselves to see whether you want to put on any evidence?
19             MR. MAYR:  If the Court would permit that -- if the
20    Court would permit that.
21             THE COURT:  Tell me how much time you would like.
22             MR. MAYR:  I think 15 minutes should suffice for all
23    of us.  Is that okay?
24             MR. ROOTS:  A little longer.
25             THE COURT:  You just tell me, whatever you want.
```

1    MR. MAYR:  30 minutes out of an abundance of caution.

2    THE COURT:  So I will come back in 30 minutes.

3    (Recess taken at 10:50 a.m.)

4    THE COURT:  All right.  So the government has rested

5    at this point.

6    MS. NEVIN:  Yes, Your Honor, the government rests.

7    THE COURT:  Okay.  So, Mr. Mayr, is there going to be

8    a defense case on behalf of Mr. Knowlton?

9    MR. MAYR:  On behalf of Mr. Knowlton, the defense

10   rests.

11   THE COURT:  Before you do that, if I could ask

12   Mr. Knowlton to have a microphone close to him.

13   Mr. Knowlton, I want to make sure that you understand

14   that you have a constitutional right to testify or not to

15   testify and that is your decision.  And I want to make sure you

16   understand that.

17   DEFENDANT KNOWLTON:  I understand that.  That is my

18   decision.

19   THE COURT:  Okay.  Have you had time to consult with

20   your lawyer about that decision?

21   DEFENDANT KNOWLTON:  Yes.  They are good lawyers.

22   THE COURT:  Okay.  Thank you.

23   All right.  And then, Mr. Pierce, is Mr. Montgomery

24   going to be putting on a case?

25   MR. PIERCE:  No, Your Honor.  The defense is going to

```
1    rest, if you want to do the same colloquy.
2              THE COURT:  Yes.  Why don't I have the same colloquy
3    with Mr. Montgomery.  I want to make sure you understand that
4    you have a constitutional right to testify or to not testify.
5    And that it is your decision and not your lawyer's decision?
6              DEFENDANT MONTGOMERY:  Yes, I understand.
7              THE COURT:  What is your decision?
8              DEFENDANT MONTGOMERY:  To not testify, Your Honor.
9              THE COURT:  Have you had enough time to consult with
10   your lawyer?
11             DEFENDANT MONTGOMERY:  I have.
12             THE COURT:  All right.  And then is it Barbari who is
13   having the lead here?
14             MR. BARBARI:  Barbari, yes, Your Honor.
15             THE COURT:  Mr. Barbari, what about Mr. Wilson?
16             MR. BARBARI:  Yes, Your Honor.  Mr. Wilson has been
17   advised of that and the defense rests.
18             THE COURT:  Mr. Wilson, I want to ask you personally
19   whether you understand you have the right to testify or not
20   testify and it is your right alone and your decision alone?
21             DEFENDANT WILSON:  I understand my decision and I
22   decide not to testify.
23             THE COURT:  Have you had enough time to consult with
24   your lawyers about that?
25             DEFENDANT WILSON:  Yes, I have, Your Honor.
```

1    THE COURT:  So that concludes the presentation of the

2    evidence then in the case.  Do you want to proceed to argument

3    at this point now?

4           All right.  Ms. Nevin.

5                          CLOSING ARGUMENT

6           MS. NEVIN:  Your Honor, the government has proven

7    every element of the charged conduct beyond a reasonable doubt.

8    I am going to focus on the 1512, because that has been the

9    subject of pretrial litigation.  And I plan on highlighting for

10   the Court some of the evidence that supports a conviction for

11   each defendant.  But as to Counts 1, 5 and 11, which is the

12   assault as to Mr. Montgomery, the 1752 as to Mr. Knowlton and

13   the theft as to Mr. Wilson, the defendants have agreed that the

14   stipulated facts allow the Court to find their guilt beyond a

15   reasonable doubt.  And we urge the Court to do so.

16          THE COURT:  Can I ask -- I had one question about

17   that.

18          MS. NEVIN:  Yes.

19          THE COURT:  That was with respect to the theft claim

20   against Mr. Wilson.

21          MS. NEVIN:  Yes, Judge.

22          THE COURT:  My understanding of the facts are that

23   Mr. Wilson picked up the bag containing the protective gear in

24   it, took it out of the Senate gallery, but never actually took

25   it out of the building and left it on top of a piece of

1    furniture somewhere else in the building.

2         MS. NEVIN:  That is correct, Judge.  But we can show

3    you in the video that he did that clearly after he saw that

4    police officers had come towards him and the other rioters.

5    And, regardless, the intent to retain it was there.

6         THE COURT:  So is that then an attempt claim?  Is

7    there an attempt liability under 641?

8         MS. NEVIN:  I don't think that would need to get to

9    attempt, Your Honor, because he had the intent to deprive the

10   United States of this property.  And he clearly -- he took it

11   from the gallery into a hallway on the second floor.

12        THE COURT:  I may want to come back to that at some

13   point in time, because I understand that he has stipulated to

14   this and that is sufficient, but I want to make sure for my own

15   sake that I am satisfied.  And I guess I would want to know

16   whether there is attempt liability under 641 or, you know,

17   exactly what the theory would be, if it is the equivalent of

18   someone in the drugstore, I suppose, puts the pack of gum in

19   their pocket without paying for it.  And as they come to the

20   door, they see the security guard sitting there and they throw

21   it back on the counter, something along those lines.

22        MS. NEVIN:  I would argue that is a completed theft.

23   Because there was the intent to deprive and there was action of

24   the deprivation and they took --

25        THE COURT:  But they never did deprive them of it;

```
1    right?  There is maybe an intent to deprive.  Don't you
2    actually have to deprive the government of the property and if
3    the property was never removed --
4            MS. NEVIN:  It was certainly removed from the place
5    that it was supposed to be.
6            THE COURT:  Right.  All right.  For present purposes,
7    we can put an asterisk next to that, because I want to come
8    back to that and make sure that I am satisfied that the facts
9    actually constitute a crime.
10           MS. NEVIN:  Understood.
11           Your Honor, turning to Count 10, which is the
12   obstruction of an official proceeding 1512(c)(2) we have proven
13   all of the elements beyond a reasonable doubt.  The stipulated
14   facts and the inferences that the Court can and should draw
15   then show that the defendants acted corruptly and with a
16   consciousness of wrongdoing while they were on Capitol grounds
17   and inside the Capitol building.
18           At the Stop the Steal rally at the Ellipse, the
19   defendants heard President Trump say that they were "Going to
20   cheer on our brave senators and congressmen and women and were
21   probably not going to be cheering so much for some of them."
22   that is in paragraph 29, which tees up and manages expectations
23   for a potentially combative situation at the Capitol.
24           The defendants were inside the restricted perimeter
25   at approximately 2:00 p.m. while on the west lawn.  At that
```

1    point, MPD officers were trying to get through the crowd and

2    into the building.

3            Your Honor, we are now going to play Exhibit 1.1,

4    which is our demonstrative of Exhibit 1 starting at time stamp

5    14:01:05.

6            (Video played.)

7            MS. NEVIN:  Your Honor, here we see Defendant

8    Knowlton circled in red.  And later you will see Defendant

9    Montgomery in green and Defendant Wilson in yellow.

10           We are stopping at 14:03:15.  Your Honor, in this

11   exhibit, which is Officer Hodges' body cam we hear Mr. Knowlton

12   yell at Officer Hodges accusingly, "Are you our brothers?  Are

13   you our brothers?"  And Officer Hodges, trying to focus on the

14   task at hand yells at the crowd of rioters, "Make way, make

15   way."  And almost immediately after that, Mr. Montgomery

16   grabbed Officer Hodges' baton and tried to wrestle it away from

17   him.  Mr. Montgomery fell to the ground and kicked Officer

18   Hodges squarely in the chest causing the officer to fall

19   backwards into the ground.

20           And Mr. Knowlton and Mr. Wilson stood by right there

21   as this happened.  And Mr. Montgomery retreated back to them

22   once he was able to get back up.  Your Honor, this is the first

23   clear indication of their corrupt intent, their unlawful means

24   and their unlawful purpose.  It is clear the police are on

25   their way to do their job.  Mr. Montgomery is willing to

1    physically fight them to prevent that.  And Mr. Knowlton and

2    Mr. Wilson are willing to watch it happen and excuse the

3    conduct as necessary for their cause.  And they will not be

4    deterred to stop the certification.

5            At this point, a law-abiding person would have

6    thought to himself, it is time to get out of here.

7            Ms. Roberts, can we take the exhibit down, please?

8            They then climbed up the upper west terrace stairs

9    with the mob and entered the Capitol through the upper west

10   terrace door.  They entered through a door marked emergency

11   exit only and while blaring alarms were going off.  Again, they

12   are ignoring a blatant sign they are not supposed to be where

13   they are.  Everyone knows that an alarm means to get out.

14           At approximately 2:40 p.m., the defendants were

15   walking town the hallway on the third floor of the Senate

16   gallery at which point Mr. Knowlton stated, "We have a right to

17   choose our electors.  We are not going to have communist China

18   choose them for us.  We are not going to have the democratic

19   party chose them for us."  And Mr. Montgomery and Mr. Wilson

20   were a few feet away from Mr. Knowlton when he made the

21   statement.  This is in paragraph 41.  And this statement shows

22   that the defendants knew exactly what was happening at the

23   Capitol on January 6.  And that they were there to stop the

24   certification of the 2020 presidential election results.

25           Moments later, the defendants are outside the Senate

1    gallery where they stood as other rioters assaulted Capitol

2    Police officers who were trying to lock the doors to the Senate

3    gallery.

4              Your Honor, we are going to play Exhibit 16.1 which

5    again is a demonstrative at time stamp 5:14.

6              (Video played.)

7              MS. NEVIN:  Your Honor, they are watching assaults on

8    law enforcement, but still press on.  Instead of saying to

9    themselves, these police officers were clearly trying to

10   prevent us from getting in here, so maybe we shouldn't go in

11   there, they streamed into the Senate gallery with a stream of

12   rioters.  While inside the gallery, Mr. Wilson joined a group

13   of rioters shouting, "Treason, treason" towards the Senate

14   floor and we'll show that to you in Exhibit 6.

15             While Mr. Wilson was joining in that chant,

16   Mr. Knowlton and Mr. Montgomery were standing right there in

17   this mass of rioters.  The Court should infer based on this in

18   conjunction with their willingness to engage in and excuse

19   violence to get where they were, that the defendants believed

20   that treason had just been happening on the Senate floor.

21             When the defendants left the gallery, they

22   immediately went downstairs to the second floor where they

23   ended up in a confrontation with Officer Morgan in front of

24   Senator Schumer's office.  The evidence supports the inference

25   that they left the gallery and went downstairs looking for an

1    entrance to the Senate floor.  They went straight there.

2              THE COURT:  How long were they in the gallery?

3              MS. NEVIN:  One moment, Your Honor.

4              Your Honor, I believe about 2 minutes.

5              THE COURT:  Okay.  Thank you.

6              MS. NEVIN:  After they left the gallery, they went

7    straight downstairs.  Officer Morgan was steps away from the

8    Senate floor.  And there were signs that said Senate, as well

9    as increased police presence in the area.  That is in paragraph

10   49B.

11             The defendants knew exactly where they were.  This

12   confrontation with Officer Morgan is captured in Exhibit 10,

13   which we'll play for the Court now.  Your Honor, this is the

14   exhibit that contains a transcript, which is contained in

15   appendix A of the stipulated facts document.

16             (Video played.)

17             MS. NEVIN:  Your Honor, Mr. Knowlton tells Officer

18   Morgan, "All you have to do is step aside.  Stand down."

19   Mr. Montgomery is saying, "You got to stop doing your job

20   sometimes and start being Americans."

21             Mr. Wilson says, "We came all of the way from our job

22   to do your job, the freaking senators' job."

23             Your Honor, anyone who says these words is not

24   confused about whether he is allowed to be there.  He is

25   someone who is telling the police to stand down and not do

1    their jobs, to allow him and his friends to continue in their

2    goal to Stop the Steal.  They are in effect asking Officer

3    Morgan the same question that they were asking Officer Hodges,

4    are you our brother?  If so, step aside.  Your Honor can and

5    should infer from all of the defendants' words and actions that

6    they wanted to occupy the Senate floor to prevent Congress from

7    being able to reconvene to certify the results of the election.

8          Your Honor, I'd submit this confrontation alone is

9    enough to convict the defendants of 1512.  But you don't have

10   to rely just on this, because you have everything that led up

11   to it that informs their corrupt intent and their consciousness

12   of wrongdoing.  And for these reasons, Your Honor, we ask the

13   Court to find the defendants guilty of 1512.

14         THE COURT:  All right.  Thank you.  Who wants to go

15   first for the defense?

16         MR. MAYR:  Your Honor, if the Court would permit, I'd

17   like to speak.

18         THE COURT:  You may, of course.

19                    CLOSING ARGUMENT

20         MR. MAYR:  If I may have just a moment, Your Honor,

21   while I get everything set up.

22         THE COURT:  Sure.

23         THE COURTROOM DEPUTY:  Do you want this published?

24         MR. MAYR:  Please this one right here.

25         May it please the Court, we want to start by thanking

```
1     the court for all of its careful consideration of our arguments
2     related to the 1512 counts.  This is, obviously, a very
3     difficult and a very unusual situation that all of us as
4     experienced practitioners find ourselves in.  And even though
5     we still have challenges to be raised, we appreciate the
6     Court's careful consideration of this issue.  It is -- although
7     there are a lot of things that are difficult about this
8     argument and this presentation we are going to make, but I
9     think it is important that we start by recognizing something
10    that you stated in your memorandum opinion and order denying
11    our motions that really, I think, speaks volumes in this
12    proceeding here today.  At page 49 of your slip opinion, you
13    noted what the elements are in order to establish a violation
14    of 1512, pointing out that the government has to prove beyond a
15    reasonable doubt that the natural and probable effect of the
16    defendants' actions were to obstruct the official proceeding,
17    that he knew that his actions were likely to obstruct that
18    proceeding and that he acted with the wrongful or improper
19    purpose of delaying or stopping the official proceeding.
20           But it is what you said next that really stood out to
21    all of us in this particular case.  You noted that that is a
22    heavy burden.  And it is up to a grand jury and the government
23    to decide whether they have enough evidence to present to the
24    jury.  Your Honor, while our client acknowledges and accepts
25    responsibility for his actions on January 6, we do not believe
```

1    that the evidence that we have stipulated to and agreed not to

2    contest meets that heavy burden.  We are going to argue, both

3    on a Rule 29 basis but as well that the evidence is not -- not

4    only is the evidence not legally sufficient, but clearly there

5    is not enough beyond a reasonable doubt to prove whether or not

6    there has been corrupt obstruction of an official proceeding.

7            It is difficult to acknowledge whether the conduct

8    amounts to corrupt obstruction when there is no bright line.

9    But what I would like to do is give the Court a little bit

10   different timeline and go through some of the evidence and

11   compare and contrast it to some of the other cases where courts

12   have considered the legal sufficiency of the evidence.  What I

13   would like to start with is, let's see -- all right.  There we

14   go.  First I'd like to just go through a bit more of a timeline

15   to put things in perspective based on some of the evidence that

16   the government has gone over.

17           So first -- all right.  Here we go.  All right.  Here

18   is the timeline.  So the first video that you saw in the

19   Government Exhibit, I believe it was one showing the video from

20   Officer Hodges.  Essentially what it reflects is that all of

21   this takes place at 2:01 p.m. that afternoon.  At 2:29, the

22   proceedings move into recess.  And it is at 2:35 p.m. -- you

23   notice that I have stated there, the peaceful entry through the

24   upper west terrace doors.  I am going to pop out of my

25   PowerPoint presentation.  And I'd like to go to and publish

1   what is stipulated Exhibit 11, which is going to be closed

2   caption -- my laptop is working here, but it is having

3   difficulties communicating through this.

4            THE COURTROOM DEPUTY:  Do you have your laptop on

5   duplicate?

6            MR. MAYR:  Yes, I do.  It was just showing but right

7   now it is -- like you see the screen is flashing.  I am going

8   to close this out for now.

9            THE COURTROOM DEPUTY:  Let me unswitch it and go

10  back.

11           MR. MAYR:  Sure.  It just popped up, hopefully this

12  will work.

13           This is, for the record, Stipulated Exhibit number

14  11.  And what this is depicting is the upper west terrace door

15  where the defendants entered into the Capitol.  As you can see

16  here by the time stamp up at the top, this is at 2:20 p.m.  If

17  we move up to the 2:33 point, you are going to see Capitol

18  Police officers opening these inner doors and allowing

19  individuals to leave as depicted -- pause this for a moment.

20  The Stipulated Exhibit number 3 is another view of those doors.

21  So right about that 2:33 mark, you see those individuals

22  exiting through that door.

23           This allows, as you can see, individuals to enter.

24  Now, I am going to let this play for the next minute.  I want

25  the Court to see exactly what is taking place at this entryway.

1          It is at this point you see Mr. Knowlton and

2   Mr. Montgomery and Mr. Wilson.  Now, stopping there and going

3   back to Stipulated Exhibit number 11, here is the opposite view

4   of Mr. Knowlton, Mr. Montgomery and Mr. Wilson walking in.

5   Zooming up on this portion, you can see right here from the

6   other side of the glass there is -- a hand is being placed.  I

7   will back it up just a few frames and let it go from there.

8          Standing right there is, obviously, a Capitol Police

9   officer.  Now, we are not trying to maintain that entry was

10  clearly allowed at this point, but we are showing this to the

11  Court for a very important reason.  This is a very stark

12  contrast to other scenes that were captured on that day where

13  individuals were pushing through, breaking doors, breaking

14  glasses, pushing police officers over.

15         There is no indication in this video or in the

16  stipulated evidence that Mr. Montgomery, Mr. Wilson,

17  Mr. Knowlton were told at this point, do not enter, go back,

18  turn around, anything else like that.  They are allowed --

19         THE COURT:  Can you go back and play that again?

20  Because it was unclear to me whether the shadow that you were

21  showing me was the reflection of the officer on the other side

22  pushing on it or if it actually -- you see a third person or a

23  fourth person who is reaching for the door.  It is not clear to

24  me whether it is the shadow of that person's hand on the same

25  side of the door with the defendants just casting a shadow

1   there.

2           MR. MAYR:  I will replay the portion and I will show

3   another exhibit that will hopefully clear that up for the

4   Court.

5           THE COURT:  Okay.

6           MR. MAYR:  So going back to that particular moment.

7           THE COURT:  Thank you.

8           MR. MAYR:  That is in real time.  Now, I will pause

9   that.  And I can come back and play that, but before I do that

10  let me show the Court Stipulated Exhibit number 12.  This is a

11  screenshot from another individual who had just passed through

12  those doors and then turned around to capture the moment when

13  Mr. Knowlton, Mr. Wilson and Mr. Montgomery were entering.  And

14  you can see this officer and where his hand is placed.  You can

15  also see that these other officers are merely just standing

16  here.  And, again, there is no evidence that these officers --

17  that any force or violence was used against them or that there

18  were any commands that were given by them.

19          And, again, this is not to say that their entry was

20  permitted.  Again, we have stipulated that he was entering the

21  area.  But, again, the issue here is whether there is some

22  corrupt obstruction.  And I think it is relevant for the Court

23  to consider the interactions that Mr. Knowlton and Mr. Wilson

24  and Mr. Montgomery are having with officers as they are moving

25  through the building.

1          The Court saw what takes place when they move from

2     there up to the Senate gallery.  Going back to the timeline, I

3     know the government had said 2 minutes.  But we will represent

4     that it actually was 5 minutes.  But in that 5-minute period of

5     time, nothing is taking place.  There is no -- there is nothing

6     occurring within the Senate floor to obstruct.  And it is also

7     important to note that they are going into the gallery as

8     opposed to the floor.  I think we have seen other cases like

9     the *Brock* case, where the defendant in that case Larry Brock

10    went on to the Senate floor.  I think there is a distinction

11    between someone going into the gallery versus someone going

12    into the floor.

13          THE COURT:  I took it that the government's argument

14    is that they were trying to get to the floor and they were just

15    turned back by the police.

16          MR. MAYR:  We don't think the -- there is no of

17    evidence they made any attempts to enter the Senate floor.

18    There is none.  What happens is -- I will clear this out.

19          THE COURT:  I don't mean to jump ahead in your

20    presentation.

21          MR. MAYR:  No.  What I want -- I want the Court to

22    have a very clear understanding of everything that is taking

23    place.  I mean, we have a peaceful entry at 2:35, at 2:42, 7

24    minutes later, that is when they have made their way up to and

25    entered the Senate gallery.  It is 5 minutes later that they

1    exit the Senate gallery.  After that, they move down to the

2    second floor to the Ohio clock corridor.  That is what is

3    depicted here in Stipulated Exhibit number 7.  This is outside

4    of the Senate floor.  And the video doesn't show any attempts

5    whatsoever for them to make any entry on to the Senate floor.

6    This is just the Ohio clock corridor hallway outside of the

7    Senate.

8             THE COURT:  Where are the doors to the Senate floor

9    in that photo?

10            MR. MAYR:  I believe that they are up right up over

11    in this area.

12            THE COURT:  Okay.

13            MR. MAYR:  You can see this is Mr. Knowlton right

14   here.  This just leads to the stairway up where they are coming

15   down from the third floor.  From here, they walk to the end of

16   this corridor down here.  And if we go to Exhibit 13, this is

17   what is happening at the end of that corridor.  Now, just to

18   put this in context for the Court, this is the moment right

19   before those videos that the government showed with the body

20   cam.  The body cam that you previously saw are from these

21   officers that are depicted here.  This is just the surveillance

22   video to show what is happening in those moments before.

23            As the video reflects here at the 1 minute and 20

24   second mark, individuals are allowed to pass the officers.  We

25   then see an officer grab one of them and bring them back.  And

1    that is when Mr. Knowlton and Mr. Wilson and Mr. Montgomery

2    approach.  And as the video reflected, they don't fight or push

3    their way through or direct any derogatory comments at the

4    police officers.  They try to convince the officers to let them

5    through, just like they had let the other individual through

6    when it was clear the officers were not going to let them

7    through, just like was depicted.  I think you saw this, but I

8    think it is important that we see it again.  I will use

9    stipulated Exhibit 8.

10         (Video played.)

11              MR. MAYR:  I would like to then show the Court --

12              THE COURT:  Can you remind me of what was on the

13    other side of the officers so -- had the defendants been

14    allowed to pass, where would they have been?

15              MR. MAYR:  Up the stairs, going back to Exhibit

16    number 13, you saw the individual with the horns and the flags

17    go up a flight of stairs.

18              THE COURT:  Yes.

19              MR. MAYR:  That would have taken him back up to the

20    gallery area of the Senate gallery area.

21              THE COURT:  And then the stairs go up to the gallery.

22    What is the remainder of the hallway there?

23              MR. MAYR:  Moving ahead -- moving ahead -- and,

24    again, this is not in the evidence, but I think we could

25    stipulate that moving ahead that there is exit ways.  But the

1    Senate chamber, the Senate floor would have been over here to

2    the right.  So these stairs would have gone basically the

3    opposite direction.  So if the Senate chamber is over here to

4    the right, these stairs would have gone in the opposite

5    direction upstairs to the third floor.

6                THE COURT:  Where was the entrance to the Senate

7    chamber?  Was it behind those officers' backs there or was it

8    somewhere else?

9                MR. MAYR:  My understanding is that there were -- may

10   I have a moment?

11               THE COURT:  Yes.

12               MR. MAYR:  If I may have a moment?  Can I stop the

13   publish for a moment and I will pull up to -- so I can answer

14   that question.

15               THE COURT:  I appreciate it.

16               (Pause.)

17               MR. MAYR:  If we can go ahead and publish.

18               Your Honor, we are going to agree to admit this as

19   Government Exhibit-- or I mean the Stipulated Exhibit number

20   17.  This is a map of the second floor.

21               MS. NEVIN:  No objection, Your Honor.

22               THE COURT:  Okay.  Exhibit 17 is after the close of

23   evidence admitted, but it -- I think we can treat this as a

24   demonstrative to help me understand what is going on.

25               MR. MAYR:  Thank you.  As you can see they have

1    come --

2            The Ohio clock corridor would have been this area

3    right here.  This is the stairwell, so you can see there

4    appears to be an entrance here, here, here and here.

5            THE COURT:  Okay.

6            MR. MAYR:  So I hope that clears it up for the Court.

7    But essentially the Ohio clock corridor -- that is what we saw

8    when they are walking down the hallway.  We see them turn the

9    corner.  This is where they encounter the officers, but this is

10   the stairwell that would have taken them back upstairs to the

11   third floor into the gallery area.

12           THE COURT:  Now, could put your little cursor where

13   they were, where they encountered the officers?

14           MR. MAYR:  That would have taken place right here.

15           THE COURT:  Where did they turn to leave after that?

16           MR. MAYR:  They turn back and they come back through

17   the Ohio clock corridor.

18           THE COURT:  Okay.  Thank you.

19           MR. MAYR:  It should also be noted, you know, that

20   there are exits -- I said at the end of the hallway, I believe

21   that there was an exit that would have taken them to the Senate

22   salon.  But to there it would have taken them to the lower east

23   door, which would have been a route of egress as well.

24           Going back to the evidence.  So when they make --

25   proceed back at some point shortly thereafter, I am now going

1    to publish Stipulated Exhibit 14.

2              So there you can clearly see Mr. Knowlton, but you

3    will see glimpses of Mr. Montgomery.  I am going to go back to

4    the beginning.  This is at 2:52.  And then shortly --

5              THE COURT:  Who is it, in your view, who says

6    everyone wants to get out?

7              MR. MAYR:  The officers -- the officer asks -- we are

8    in agreement that you can hear the officer asking, everyone

9    wants to get out?  And we believe that Mr. Knowlton says, yes,

10   we want to get out.  And he tells them where to go and that is

11   when they proceed coming back to stipulated Exhibit number 17.

12   They exit through the Senate carriage door.  Exhibit 15 depicts

13   what takes place at that exit.  Again, this is now at 2:53 p.m.

14             That right there is Mr. Montgomery.  This was another

15   unknown individual.  But this right here is Mr. Wilson.  And

16   there is Mr. Knowlton, right there.  And as they exit, they

17   don't fight with the police officers.  They don't yell at the

18   police officers.  You see Mr. Knowlton give the first officer a

19   little elbow bump.  And then a little chest bump to that

20   officer.  And then outside here, you see him place his hand on

21   each one of the officers and then just walks off.

22             All of this in a span of 18 minutes.

23             I don't need to publish for right now.  So we can

24   turn that off.

25             I would like to start and back up -- having seen the

1    evidence, I wanted the Court to really understand the grasp of

2    just how not horrible their actions were in their entry and

3    their exit.  Again, there is no forced entry.  There is no

4    violence.  There is no threats.  They are not disregarding

5    anything.  But I would like for a moment to back up and talk

6    about their actions prior to this particular moment in time at

7    2:35 p.m. on January 6.

8         What is not in the stipulations and the stipulated

9    evidence -- and I don't anticipate there being any clear

10   evidence of this, at least to Mr. Knowlton, is there is no

11   indication of his intent to engage in violence, insurrection or

12   use of force on social media or anywhere else.

13        I'd like to at this moment direct the Court's

14   attention to some of the other cases that have considered the

15   sufficiency of the evidence to establish corrupt obstruction.

16   Right?  We start with the first start with the *Fischer* case

17   which, of course, didn't consider the legal sufficiency but

18   looked at the allegations.  And but I think it is worth noting

19   that in the *Fischer* case before January 6, the defendant there,

20   Mr. Fischer, had sent text messages to acquaintances stating if

21   Trump don't get in, we better get to war.  Take democratic

22   Congress to gallows.  Can't vote if they can't breathe.  I

23   might need you to post my bail.  It might get violent.

24        Or compare the facts in the *Robertson* case which came

25   down last year from the D.C. Circuit where Robertson posted

1    messages like, I won't be disenfranchised.  I will follow the

2    path our founders gave us, re-dress of grievances, already

3    done.  Civil disobedience here now and then opened, armed

4    rebellion.  And consider the *Brock opinion* that just came down

5    a couple of months ago from D.C. Circuit.  In that particular

6    case Larry Brock had warned that absent intervention by the

7    Supreme Court or Congress to overturn the election, there would

8    be revolution, rebellion, insurrection, civil war, blood.

9    There is none of that in this case, Your Honor.  There is not a

10   single shred of evidence to show that prior to January 6 that

11   Mr. Knowlton came here to Washington, DC with the corrupt

12   intent of wanting to obstruct the certification proceedings.

13        There is no indication he had any intent or had

14   knowledge of a plan to engage in acts to unlawfully obstruct

15   the certification proceedings again.  When we compare and

16   contrast the *Brock* case --

17        MS. NEVIN:  Your Honor, we would object.  We object

18   to this type of Rule 29 sufficiency argument.  And it is our

19   position that paragraph 52 of our agreement in the stip facts

20   precludes this type of argument.

21        Your Honor, I am in the middle of the paragraph,

22   Montgomery, Knowlton and Wilson each agrees that the Court may

23   find the government has met its burden of establishing all of

24   the elements of 18 U.S.C. 15(c)(2), and may find the defendant

25   guilty on Count 10.  Obviously, an argument regarding -- this

1    type of argument regarding sufficiency, doesn't preclude him

2    from arguing that like the evidence that is before the Court

3    doesn't establish the elements.  But introducing the idea that

4    additional evidence would have proven it, it is our position

5    that is not appropriate in this proceeding.

6            THE COURT:  I am not sure I see the distinction,

7    maybe you can clarify that for me.  Let me just hear from the

8    government.

9            MR. ROMANO:  Your Honor, if I might --

10           THE COURT:  Yes.

11           MR. ROMANO:  I think the distinction is, if we were

12   at trial and we had rested and there was a Rule 29 motion

13   alleging that no reasonable fact finder could find that the

14   government had met its burden beyond a reasonable doubt, we

15   view the agreement where the defense acknowledges that under

16   the current state of the law --

17           THE COURT:  Right.

18           MR. ROMANO:  -- the facts that we have introduced, if

19   accepted by the Court would allow a fact finder to make such a

20   conclusion beyond a reasonable doubt, basically forecloses a

21   Rule 29 type argument.

22           THE COURT:  But doesn't foreclose me from reaching

23   the conclusion as the fact finder that the government hasn't

24   carried its burden?

25           MR. ROMANO:  Correct.  So we don't take issue with

1    the defense arguing about what the Court should find.  We do

2    take issue with the argument that the facts are not sufficient

3    under a Rule 29-type argument, which is what we just heard

4    counsel making.  We do take issue with that particular part of

5    his argument.

6                    THE COURT:  You can take a moment.

7                    MR. MAYR:  If I may respond, Your Honor.

8                    THE COURT:  Please.

9                    MR. MAYR:  Again, I don't think there is a

10   distinction here because all we are -- I am arguing what is not

11   present.  If there was some evidence to show this, then it

12   could have been presented in the stipulated format.  I am

13   talking about what you have before you right now.  And my

14   position is that this is not sufficient -- because there is no

15   indication that he intended to do something before, that that

16   is something for you to consider in determining whether the

17   government has proven it beyond a reasonable doubt.

18                   THE COURT:  Yeah.  I mean, I certainly think I can

19   consider the absence of evidence in considering whether the

20   government has carried its burden.  I think the only question I

21   would want some clarification on though is whether you agree or

22   disagree with the government's assertion that the stipulation

23   precludes the defense from arguing insufficiency of the

24   evidence in a Rule 29 sense.

25                   MR. MAYR:  Our position is that because we -- I mean,

1    this is a -- there is a Rule 29, but there is also whether it

2    has been proven beyond a reasonable doubt.  It -- there is

3    really not distinction between them both.  Both of them are

4    measurements by which the Court looks at the evidence and

5    determines whether, one, it is legally sufficient; and then,

6    two, whether it is proven beyond a reasonable doubt.  We don't

7    see a distinction being made in the agreement.  And so that is

8    why we believe that I can present and argue it in the way that

9    I am arguing it.

10        THE COURT:  I think before we go further with this,

11    it would be helpful to clarify -- and this may be more of an

12    issue for appellate purposes, than it is for my determinations.

13    Because I will apply the beyond a reasonable doubt standard as

14    the fact finder and make the decisions that I think are

15    appropriate based on the evidence that is in front of me.

16        The government is fair -- and we ought to make sure

17    there is a meeting of the minds before we go any further here

18    just that I -- I am not saying that I would do this.  But if I

19    were to conclude beyond a reasonable doubt that the evidence

20    was sufficient as to one or more of the defendants, does this

21    language mean the defense has given up the right to go to the

22    Court of Appeals and say that decision should be set aside

23    because no rational trier of fact could have reached that

24    conclusion?  Because I think that does seem to be contrary to

25    what the language says.

1          MR. ROMANO:  I think the language clearly does say

2    that, Your Honor.  And, candidly, if we anticipated that there

3    would be sufficiency challenges to stipulated trials, we would

4    not be entering into agreements like these.  These are meant to

5    reduce the facts that we would otherwise present at a lengthier

6    trial with witnesses and quite a bit more evidence to a format

7    that allows the Court to make a finding in the same day.  If we

8    anticipated challenges like this, we wouldn't be going forward

9    and proceeding like this.

10          MR. MAYR:  I guess the simpler way to do this is to

11    say that a lot of this argument, I think, goes more towards the

12    government not meeting their burden.  If we leave it at that --

13          THE COURT:  For my purposes though, I still think

14    there is the question of -- and as I said, I don't quite -- I

15    am being quite candid when I say I don't know what my decision

16    will be, because I think this is a close and difficult case.

17    But if I were to conclude that I think that the government has

18    carried its burden on 1512(c) beyond a reasonable doubt, other

19    than putting aside the legal issues, I just want to make sure

20    the parties are clear that there is an understanding that the

21    agreement seems to me to preclude the defense from filing an

22    appeal saying that my decision should be set aside because no

23    reasonable trier of fact could have reached that conclusion

24    beyond a reasonable doubt.

25          MR. ROMANO:  That is our understanding.

1          THE COURT:  That is what the language seems to me to

2   say as well.

3          I am not saying that it is not helpful to me to

4   understand the facts in other cases for putting this all into

5   context.

6          MR. ROMANO:  Certainly.  And we don't take issue with

7   that for the application of the beyond a reasonable doubt

8   standard.

9          MR. MAYR:  At the end of the day, this is about the

10  facts and whether it meets the proof beyond a reasonable doubt

11  and we are going to leave it at that for right now.

12         THE COURT:  I don't think you can leave it at that

13  for right now, because unless I am misunderstanding what you

14  mean by that.

15         MR. MAYR:  If the Court finds -- if the Court finds

16  that the government has proven it beyond a reasonable doubt,

17  that would necessarily also finding that the evidence was

18  legally sufficient.

19         THE COURT:  Correct.

20         MR. MAYR:  So the only reason I think to make a Rule

21  29 challenge is because, again, well --

22         If I may have a moment.

23         THE COURT:  Yeah, you may.

24         MR. MAYR:  May I have a moment to confer with the

25  government?

```
1                THE COURT:  Yes.

2                (Pause.)

3                THE COURT:  Mr. Sullivan.

4                MR. SULLIVAN:  Your Honor, I hope you don't mind.

5                THE COURT:  That is fine.

6                MR. SULLIVAN:  I think we have come to an agreement.

7    Given the pendency before the Supreme Court of Fischer, we are

8    going to argue that pursuant to a Rule 29-like argument, that

9    we do not think that the facts of this case are sufficient to

10   support corrupt intent in the way that we define corrupt

11   intent.  And we think that our definition of corrupt intent

12   pursuant to our motion is different than Your Honor's.  And we

13   hope that the Supreme Court adopts our view of corruptly.  We

14   are not going to argue under the current law and under the

15   current standard, we are not going to make a sufficiency

16   argument.

17               THE COURT:  Okay.

18               MR. SULLIVAN:  And the remainder of the argument will

19   be a reasonable doubt argument.  And I hope that the government

20   agrees with that and I hope that is okay with the Court.

21               THE COURT:  That is fine with me.  The only thing I'd

22   say by way of clarification is I don't think I have announced a

23   standard of how I understand the word corruptly to apply.  And

24   I think in my opinion in this case, I noted that there were

25   multiple standards and that they serve the purposes of, I
```

1    think, excluding the types of hypotheticals that might cause

2    people concern, so long as by what you are saying you

3    understand the word corruptly in like an entirely different

4    universe.  That is fine.  And, frankly, I haven't read the

5    briefs in the Supreme Court, so I don't know exactly what

6    everyone is arguing there.  So, for example, if your position

7    is that the word corruptly means -- well, you tell me --

8    something other than with a bad motive, a motive with a

9    knowledge of violating the law with the desire to provide a

10   benefit on oneself or someone else to which they are not

11   entitled, all of the traditional definitions that the D.C.

12   Circuit has discussed not just in *Fischer* in the multiple

13   opinions, but what was it Robertson was the subsequent case

14   where they talked about --

15             MR. SULLIVAN:  Correct.

16             THE COURT:  If it is outside that universe, I think

17   we are all on the same page.  If it is within that universe, I

18   haven't decided which of those I think is the right one.

19             MR. SULLIVAN:  Absolutely.  So I think it is going to

20   be outside of the -- I believe this will be outside of that

21   universe.  We think it is going to be more consistent with what

22   we wrote in our briefs.  What I meant by the Court disagreeing

23   is that you rejected our motion, so --

24             THE COURT:  Yeah.

25             MR. SULLIVAN:  So we are going to limit to that, so

1    this is going to be to preserve it essentially for whenever

2    *Fischer* comes down.

3            THE COURT:  Fair enough.  And I suppose one

4    definition that may be the one that you have in mind is the

5    word corruptly requires the destruction of evidence or

6    something like the destruction of evidence.

7            MR. SULLIVAN:  Well, we are not going to -- we are

8    not going to limit it to something like the destruction of

9    evidence.  Let me just say that.  We -- I don't think Your

10   Honor disagrees with the following:  That corruptly has to mean

11   something, that it is not surplusage.

12           THE COURT:  I agree with that.

13           MR. SULLIVAN:  That is there for a reason and that we

14   have to figure out a way to distinguish it from some other

15   culpable behavior that is not corrupt.  And we don't think the

16   D.C. Circuit has hit the mark.  So we just want to preserve on

17   where the D.C. Circuit has not fallen.  But I don't want

18   to articulate a precise definition of corruptly and somehow

19   limit my argument to that.

20           THE COURT:  So long as your excluding the array of

21   potential definitions that Judge Pan articulated not just in

22   *Fischer* --

23           MR. SULLIVAN:  That is fair.

24           THE COURT:  -- was it *Robertson*?  Do I have the name

25   of that other case correctly?

1          MR. SULLIVAN:  Yes, *Robertson*.

2          THE COURT:  Mr. Romano, do you agree with that?

3          MR. ROMANO:  I do.  Just to put it a slightly

4     different way which I think captures our position.  Given the

5     current state of the law, I believe the parties agree that the

6     facts stipulated to would allow a reasonable fact finder to

7     convict on 1512, even though they will argue to the Court that

8     the Court should not convict beyond a reasonable doubt.  If the

9     state of the law changes, then sufficiency is potentially up

10    for grabs.

11         THE COURT: All right.  That makes sense to me.  And

12    procedurally -- and this may be putting the cart way ahead of

13    the horse on this.  But if the Supreme Court doesn't go all as

14    far as the defense would go and, for example, recognizes that

15    there could be some obligations of 1512 to proceedings like

16    including the certification of the election results, but

17    concludes that just hypothetically there is another definition

18    of corruptly that no one has discussed thus far and doesn't

19    fall within the universe of the examples the D.C. Circuit has

20    identified, what do you anticipate happening if that happens?

21    Would we come back?  And would I then give you an opportunity

22    to be heard again and then issue a new decision based on the

23    stipulated evidence or does that mean the whole case gets --

24    the decision gets thrown out and then you go back to the

25    question at that point in time about whether you want to

1   actually have a trial in front of a jury on those issues or

2   whether you want to have different facts that are stipulated

3   to?

4           MR. SULLIVAN:  No.  That is the right question.  My

5   guess is the Supreme Court would remand for a decision in light

6   of whatever this new standard is.

7           THE COURT:  Yeah.  But it wouldn't remand this case

8   because this Court won't be before them.  It won't even be --

9   again, this is way ahead of the game, because I don't know what

10  I am going to do here.  If I am going to issue a decision

11  convicting the defendants, by the time we get to sentencing and

12  you actually have an appealable judgment in the case, it is

13  likely that you actually would have a decision from the Supreme

14  Court.  And so it is probably not going to even be a remand

15  from the D.C. Circuit if that happened.  It would be talking to

16  me about what the next step should be.  And maybe the answer is

17  we should talk about that if and when it happens.

18          MR. SULLIVAN:  I think that is right.  Or after my

19  cocounsel's brilliant argument, the Court could just find not

20  guilty and then we are done.

21          THE COURT:  I am not foreclosing that.  As I said, I

22  do think this is a close question.  So I am not foreclosing

23  that.

24          MR. SULLIVAN:  So just to be clear, the analysis of

25  *Fischer*, *Robertson*, *Brock*, et cetera, all of those are

1    sufficiency cases, he is arguing this to just go toward whether

2    Your Honor finds that proof beyond a reasonable doubt.  And

3    that is fair game and that is an aid.

4            THE COURT:  I appreciate that.  And that is helpful

5    to me so I am glad to have that argument.

6            MR. SULLIVAN:  Thank you, Your Honor.

7            THE COURT:  Do you want to break for lunch now?  It

8    is up to you.  I don't know how much more time you have.

9            MR. MAYR:  That is -- I would be -- now that we kind

10   of cleared -- settled some things, I think I could

11   structure this and make it go a little bit smoother.  So a

12   break, I think, would be appropriate, Your Honor.

13           THE COURT:  Why don't we come back then at 1:30, or

14   1:45, whatever you would like.

15           Why don't we come back at 1:45.  I will see you then.

16           (Recess taken at 12:35 p.m.)

17           THE COURT:  All right.  Mr. Mayr, you may continue.

18           MR. MAYR:  Thank you.  So just as a little bit of a

19   road map, Your Honor, I am going to continue to point out the

20   facts I think are relevant to the Court's consideration of the

21   corrupt obstruction element.  And then Mr. Sullivan is going to

22   come up and tie it all together as to why we believe that the

23   government has not met that heavy burden.

24           THE COURT:  Okay.

25           MR. MAYR:  Before we broke, I had pointed out to the

1    lack of evidence of any sort of planning prior to coming to

2    Washington, DC.  I'd like to now turn to kind of go through

3    what the evidence shows or does not show in the moments leading

4    up.  So in terms of -- the Court has before it evidence that

5    they entered or were -- they entered or went to the west

6    Capitol lawn around 2:01 in the afternoon.  What there is not

7    any evidence of is Mr. Knowlton or any of the other defendants

8    destroying or moving any barriers to enter into that area.

9    There is also no -- on Mr. Knowlton's part, there is no threat

10   of force or any threats of violence being made against anyone,

11   including police officers.  Again, the government pointed out

12   in one of those videos how Mr. Knowlton said, "Are you our

13   brothers?"  But never does he convey any sort of threat of

14   violence or force against those officers.

15            And, again, Mr. Knowlton did not use any force or

16   violence against any officers at any point during this

17   encounter.  I think that is notable, because when you look at

18   cases like *Fischer* and *Robertson,* there there was evidence of

19   force being used against officers.  So I think that is also

20   relevant.

21            As far as the entry into the Capitol building, again

22   as we have pointed out, again there was no destruction or

23   damage to any Capitol building property, any doors, any

24   windows, any entryway.  You saw the facts and circumstances

25   surrounding the entrance.  And, again, alarms were going off.

1   And there was definitely some questions about whether they

2   should have been allowed, but at the same time, there were also

3   questions and doubts about whether they were allowed to be

4   there.  Because, again, officers were standing there pushing

5   the door open, allowing individuals to come through.  I think

6   it is important to note that there is no evidence on

7   Mr. Knowlton's part in any disregard of a clear, verbal command

8   to leave or not enter.  It is once --

9           THE COURT:  What about the Senate gallery where the

10  officer is in the midst of locking the door -- trying to lock

11  the door to the Senate gallery.  And Mr. Knowlton is standing

12  there where the officer is physically threatened and flees in

13  response to a physical threat.  And then everyone pushes

14  through the door that the officer was trying to lock?

15          MR. MAYR:  We will concede, Your Honor, that the

16  possibility of entry and not being allowed into and

17  restriction -- access to that part of the Capitol is an issue.

18  Now, if you watch that video, you will notice that those were

19  non-uniformed security personnel.  So there was -- again, was

20  it a clear, unequivocal -- was there clear, unequivocal

21  evidence that absolutely these were armed security officers

22  directing them?  No.

23          THE COURT:  Presumably anyone locking the door is

24  somebody who has some security responsibility.

25          MR. MAYR:  Again, we have to recognize that.  And in

1    full fairness, I mean, at that point, that is when -- I mean,

2    Mr. Knowlton has acknowledged that he recognizes that there

3    were restricted areas.  And, again, we are not contesting the

4    1752 count, particularly for that reason.  At that particular

5    moment, when he sees that happen, that is when the questions

6    began to arise.  When he enters the Senate gallery and he sees

7    that is the -- the chambers are empty, but he sees that people

8    are jumping down onto the floor, that is when he realizes, just

9    as reflected in paragraph 46 -- I mean, paragraph 46, we

10   stipulated that they witnessed another individual jump down to

11   the Senate gallery and they exited at that point.  I mean, at

12   that point, it was clear that permission had not been granted

13   to allow them in there.  And that is why we are not -- we are

14   not contesting the 1752.  But, again, as to the corrupt -- as

15   to whether that amounts to a corrupt intent to obstruct the

16   proceedings, at that particular moment, again is questionable.

17   You know, just going into the gallery -- again, Mr. Sullivan

18   will kind of explain that more, but I think it is worth noting.

19            THE COURT:  Can I ask a question again as well?  You

20   mentioned no force in any way involving the police.

21            MR. MAYR:  Right.

22            THE COURT:  And I want to go back and look at the

23   video again.  Because it was unclear to me in the hallway

24   downstairs where Mr. Knowlton is confronting the police officer

25   whether he is -- I would have to look more carefully to see

1    whether he is jabbing his finger into the police officer's

2    chest or whether he is just pointing at the police officer as

3    he is gesturing.

4         MR. MAYR:  I can pull that up.  There is nothing to

5    indicate he was intending to assault or make any sort of

6    offensive contact with the officers.  He is pointing at them,

7    but all of the -- any of the contact I think is more consistent

8    with what you see on his exit.  You know, it is about fist

9    bumping and letting the officers knows that he respects them.

10   And I think that indicates that.  But I will be more than glad

11   to pull it up and show it.

12        THE COURT:  I can also look at that later.  That is

13   fine.

14        MR. MAYR:  I am confident the Court isn't going to

15   see any effort by Mr. Knowlton to try to engage in any

16   offensive contact with these officers at any point throughout

17   the Capitol.

18        THE COURT:  Okay.

19        MR. MAYR:  And I think that is important.  Because,

20   you know, again it is at that particular moment -- it is at

21   that particular moment when officers have made it clear they

22   are not going to allow any further protest or any further

23   movement past them -- and remember, again, what I had shown you

24   is those officers had initially let one person by, not to enter

25   the Senate floor, but to go up the stairs to the gallery.  But

1    once the officers made it clear you cannot pass, Mr. Knowlton

2    complied with that.  He tried to convince them to let them get

3    past.  But that is just letting them -- asking to let me by, I

4    don't know how that meets that heavy burden of establishing

5    corrupt obstruction.  What happens afterwards is it is every

6    attempt to leave and exit the facility.  You saw the video of

7    where he was part of a group asking and seeking direction on

8    how to leave.  He followed those instructions, went immediately

9    to the Senate carriage door where you see him leaving in a

10    peaceful and, quite frankly, friendly manner.

11          As far as after that day, I guess it is also worth

12    noting there is no evidence before this Court of some of the

13    things that you are seeing in other cases involving corrupt

14    behavior supportive of obstruction.  There is no boasting or

15    bragging about his actions or conduct like there was in the

16    Robertson case and like in the *Fischer* case and cases where

17    people are going on Facebook saying, I proudly engaged in

18    violence, I proudly stopped this.  There is nothing like that,

19    because, again, that wasn't part of the mindset here.

20          There is also no obstructive efforts to conceal any

21    evidence, as we have seen in other cases.  Other than invoking

22    his right to remain silent and obtain counsel to deal with the

23    criminal allegations that were being made against him.  So I

24    think all of those facts -- the absence of those things in

25    conjunction with what is here don't meet the burden.  I am now

1    going to yield to my cocounsel to sort of tie it all together
2    as to why it doesn't meet the burden.
3            THE COURT:  All right.  Thank you.
4            Mr. Sullivan.
5            MR. SULLIVAN:  Thank you, Your Honor.  And thank you
6    for letting both of us speak.  So, essentially, what I want to
7    do here is argue why the facts before you do not amount to
8    proof beyond a reasonable doubt for -- that are sufficient to
9    convict Mr. Knowlton in this case.  Essentially what you have
10   seen are pictures.  And you have heard Mr. Mayr describe three
11   distinct time periods that cover when Mr. Knowlton was at the
12   Capitol.  The first was before he went in.  The second was
13   while he was there.  And the third, he was leaving.  So as Your
14   Honor knows, whenever we are looking for intent, what we have
15   to figure out is what is in somebody's head?  You can't do that
16   directly, so we do it inferentially and look at conduct and
17   draw inferences from conduct.
18           And I submit that we can draw inferences consistent
19   with innocence -- as many inferences consistent with innocence
20   as we can draw consistent with guilt.  And if we are in that
21   space, by definition, that is not guilty, if you can draw these
22   inferences consistent with innocence.
23           So outside the Capitol, the government points
24   specifically to some words that Mr. Knowlton uses.  These words
25   are fully protected First Amendment speech, as the Court knows.

1    Police officers sometimes are subject to very rough speech.
2    This wasn't even rough speech.  Are you my brothers?  To
3    suggest that the necessary inference from, Are you my brothers?
4    is that we intend to obstruct proceedings in the Capitol seems
5    to be a far stretch.  This was in the context of the incident
6    that the codefendant had with the police.  There was nothing in
7    those statements outside that are consistent with, I want to go
8    in and illegally obstruct congress.  Right.  First Amendment
9    expression, expression about displeasure about what was going
10   on, that is all fine.  That is all protected.  But as a basis
11   for an inference that makes proof beyond a reasonable doubt is
12   not there.  Once he enters -- and this is what we think is the
13   strongest evidence when he enters, so you see in the bottom
14   left-hand corner of your screen where the arrow is pointing,
15   where you have the officer physically holding the door open for
16   folks.  And when Your Honor goes back -- and Mr. Knowlton
17   specifically -- when Your Honor goes back and looks at the
18   film, the officer even uses his -- uses his foot, Your Honor,
19   to hold the door open for people who are coming.  The other
20   officers are standing on the side.  Everything reasonably
21   indicates to people entering, that it is okay to enter.
22           But we don't have that burden.  We don't have to
23   prove that he had permission to enter.  We only have to show
24   that there is not proof beyond a reasonable doubt that he did
25   not have the intent to go obstruct Congress.

1          I think it is quite reasonable for a fact finder to

2   conclude that it was okay to come in there.

3          Now, what might show --

4          THE COURT:  I think what you are missing there

5   though -- and it comes from taking snippets in the whole

6   picture.  But even before he entered the door, the outside

7   door, and even though that outside door was ajar, he went

8   through mayhem to get there.  And it is -- I think it has to be

9   seen in that context.  And it is not that he just on a sunny

10  Sunday afternoon, only person on the Capitol grounds were the

11  three of them and they wandered up there and the door was open

12  and they thought, oh, we want to go on a tour, let's wander in.

13  They went through a riot to get there.

14         MR. SULLIVAN:  Now, much of that is a fair statement.

15  So I am not sure of the evidence of mayhem in this record, on

16  this record on the stipulated facts.  But there was a massive

17  demonstration, yes.

18         THE COURT:  We have some evidence of it in the facts

19  in that Mr. Montgomery was wrestling with a police officer on

20  the ground and there was shouting at the police officers, so it

21  wasn't just a peaceful, mundane circumstance in which the door

22  was open and someone wandered through the door.  There was a

23  lot of police activity and presence on the grounds.

24         MR. SULLIVAN:  Absolutely.  But, importantly,

25  Mr. Knowlton was not participatory in the interaction with the

1    police.  And at that point, they weren't even attempting to

2    enter any building.  They were outside and they were

3    protesting.  Yes, protesting is -- the nature of protesting is

4    going to be loud and vociferous, et cetera.  But that is a

5    context.  You are correct, Your Honor.  That is a context in

6    which the whole event occurred.  And I don't want to wrench

7    anything out of context.  However, it is also important to note

8    that we have to take reasonable signals from law enforcement

9    about whether -- where you are supposed to be and where you are

10   not supposed to be, particularly if you are using the entrance

11   into that door as evidence, as the government is inviting you

12   to do, that you are intending to disrupt Congress.

13            It is equally plausible that he was following people

14   into that door, that police were letting them in.  In fact,

15   Your Honor, I have been a pretty good test taker all of my

16   life.  The one test I missed on my driver's license was a test

17   when I was 16 -- is a question --

18            THE COURT:  You remember it to this day?

19            MR. SULLIVAN:  It still bothers me.

20            THE COURT:  That must have really hurt.

21            MR. SULLIVAN:  It still bothers me that I missed it

22   because I wanted a perfect thing.  It was, if the light is red

23   and the police are waving you through, what do you do?  And I

24   chose an answer, because the light was red, I was like, slow

25   down and proceed with caution or something like that.  And the

1    answer was you go through because the police officers are

2    waving you through.

3           Now, by way of analogy here the government says,

4    well, sirens were going off.  Yes.  But also you had police

5    waving the door.  You had these police on the side standing

6    there.  No one seems -- and this is not wrenched out of

7    context, like it is mayhem at that door and that they are

8    afraid or just the evidence doesn't support that.  They seem to

9    be letting people in there.  So to the degree that we are

10   drawing inferences, there are alternative inferences is the

11   point I want to make.  Because I don't want to take on more of

12   a burden than I want to have.  There are alternative inferences

13   supported by the evidence by which the Court can say that I

14   think something happens, something might have happened, there

15   may be evidence of this intent, there may be clear and

16   convincing evidence of this intent.  But what there is not is

17   evidence of proof beyond a reasonable doubt, because there are

18   these other plausible explanations for what happened.

19          And we certainly think that this is powerful evidence

20   of what is going on in his mind.  And when you couple what you

21   see with the police letting them in is that even when he had

22   the confrontations with the officers -- and I am using

23   confrontations not as a physical sense, but the -- but the

24   words, right, inside -- and just to be sure -- I don't want

25   anything to get lost in lawyer speak, no offensive conduct.  He

1    did not touch the officer, didn't touch him, no contact at all.

2          So he is talking to him, he is saying, you know, let

3    us go through.  What Your Honor will notice is that they let

4    other people go through and they went up the steps, not into

5    any Senate gallery.  There is a demonstrative there.  Went up

6    the steps.  And he was saying, let us go too, right.  Now, but

7    what is significant is once he said -- once the officer said,

8    no, we are not going to do this, Mr. Knowlton followed the

9    commands.

10         It strikes me that the sine qua non of corrupt intent

11   to disrupt the Congress has to do with not following the

12   commands.  You want to -- by definition, you want to disrupt.

13   So police say don't go here, you go there.  That is disruptive.

14   Mr. Knowlton did the exact opposite.  When the -- and, yes, he

15   had a -- he implored them.  He gave some hortatory remarks

16   urging them to go, but when they said, no, he left.

17         Then what Your Honor can conclude, can infer, is that

18   they started looking for a way out.  So what you heard, you

19   asked a question about it on the film is that officer said, are

20   all of you looking for an exit?  Right.  Now, I submit that the

21   Court can reasonably infer that question didn't come out of

22   whole cloth.  You see people walking, are all of you looking

23   for an exit?  So somebody said that, where is an exit?  And the

24   officer responded, well, are all of you looking for an exit or

25   just you, Mr. Knowlton?  I mean, that is the context it was in.

1   And when they told him where the exit was, where did they go?
2   To the exit.  If his intent was to go in there and disrupt the
3   Congress, they would have done the -- you know, they would have
4   done the whole fake thing, they would have said oh, yes,
5   Officer, we'll go to the exit, but instead they'll go somewhere
6   else.
7           That simply did not happen.
8           They went to the exit.  They were looking for the
9   exit.  They went to the exit and they did as the officers were
10  instructing.
11          Now, Your Honor has the demonstrative.  We may have
12  admitted it.  I forget.  But the Senate -- the map of the
13  senate.  I mean, when you look at the -- when you look at the
14  tape, if he wanted to go to the Senate gallery, he could have
15  gone into the Senate gallery.  So they walked down the hall --
16  the Senate floor.  They could have gone in there.  If you look
17  at the cursor, they walked past it, as -- thank you.  They
18  walked past the Senate floor in order to go talk to those
19  officers when they went out.  He didn't stop at the entrance.
20  He didn't slow down at the entrance.  He didn't look and gaze
21  over to the entrance.  He went straight for the officers.  Why
22  did he go straight for the officers?  He went straight for the
23  officers because he was looking how to get out of there.  He
24  was looking for how to leave.  So he passed the doors to the
25  Senate floor.  He encountered the officers.  The officers told

1    them how to get out and he went out.

2                THE COURT:  Where did he exit?

3                MR. SULLIVAN:  He exited --

4                Can you show --

5                It was the carriage door, right there.

6                THE COURT:  Okay.  Thank you.

7                MR. SULLIVAN:  That is where the officers told them

8    to go.  So there are multiple exits.  This is where the

9    officers told them to go.  Now, what we have here is a

10   situation where if the Court is going to draw an inference of

11   acting corruptly from behavior Mr. Knowlton did the exact

12   opposite of those things that you might expect someone to do

13   who is acting corruptly in this way.

14               So what might you expect?  You might expect -- let's

15   say, arguendo before Your Honor, there was evidence in this

16   case that someone with Mr. Knowlton took a chair and just

17   thrashed it through a window and then went into the Senate

18   space.  That would be corrupt.  That would -- that would be

19   enough evidence for Your Honor to say, well, there is proof

20   beyond a reasonable doubt that these folks were up to no good

21   or if arguendo before Your Honor or evidence of Mr. Knowlton

22   pushing police officers or squeezing them into doors or

23   something like that, that would be evidence of corruption.  It

24   simply is not here.

25               And at least not here to the degree for Your Honor to

1    find proof beyond a reasonable doubt, the highest standard in

2    our criminal justice system.  It is just here.  Let's say for

3    instance -- I'm sorry.

4              THE COURT:  I am just listening.

5              MR. SULLIVAN:  Let's say, for instance, you had a

6    case before Your Honor where police said, hey, you guys, go out

7    this exit.  And they say, you know what, officers, we are not

8    going anywhere.  We are not going anywhere until we talk to the

9    congressman.  We are not moving, you have to drag us out of

10   here.  Okay.  I wouldn't be making this argument.  You simply

11   don't have that.

12             And as Your Honor articulated the definition of

13   corruptly this morning, one of the elements was obtaining

14   personal benefit.  Not here.  Where is Mr. Knowlton's benefit?

15   What benefit did he -- did he get?  There is no evidence before

16   you of these things.  So -- and then the final bucket --

17             THE COURT:  I'm sorry.  On that one, if -- I think

18   with the language in the case law is obtaining personal benefit

19   or benefit for another.  I take it the theory for that was the

20   benefit that was sought was the benefit of electing the

21   candidate of Mr. Knowlton's choice, both benefiting that

22   candidate and Mr. Knowlton in that their candidate would be

23   chosen for office, despite the popular vote.

24             MR. SULLIVAN:  As I saw the record, there is no

25   evidence of who Mr. Knowlton's candidate was.  There is -- Your

```
1     Honor can --
2               THE COURT:  I mean, I can't remember -- wasn't it
3     Mr. Knowlton who said we are not going to let the Chinese or
4     the democrats choose who our electors are?  So I think that
5     gives some indication of who he was urging.
6               MR. SULLIVAN:  Or that he wanted transparency in the
7     electoral process.  There are all sorts of inference that Your
8     Honor can draw.  And, again, I don't want to take on too much
9     of a burden --
10              THE COURT:  Right.
11              MR. SULLIVAN:  To the extent there are inferences
12    consistent with innocence that the Court can draw from the
13    factual predicate then that means not guilty.  And the law for
14    centuries has been fairly clear on that point in the criminal
15    context.  I will let the Court find --
16              THE COURT:  I was looking for that quote that I had
17    in mind.
18              MR. SULLIVAN:  Paragraph 41, Your Honor.
19              THE COURT:  Thank you.
20              MR. SULLIVAN:  So the --
21              THE COURT:  So the quote is, "We have a right to
22    choose our electors.  We are not going to have communist China
23    choose them for us.  We are not going to have the Democratic
24    Party choose them for us."  So I -- that at least provides, I
25    think, some support for the government's view that he was there
```

1    because he wanted someone other than the Democratic Party

2    choosing who the electors were.

3              MR. SULLIVAN:  Okay.  I'll only respond no evidence

4    of who his candidate was and --

5              THE COURT:  I don't --

6              MR. SULLIVAN:  -- what he didn't want to have

7    happen --

8              THE COURT:  -- think it takes much of a leap to go

9    from, we are not going to have the Democratic Party choose them

10   for us.  There were two candidates, one was a democrat, one

11   wasn't.  That is not a big leap to figure out who the candidate

12   was that he was supporting.

13             MR. SULLIVAN:  Okay.  Fair enough.  Even if there is,

14   to use Your Honor's words, some evidence of any proposition --

15   and I don't want to sound like a broken record here, some

16   evidence is not equal to proof beyond a reasonable doubt.  In

17   support of a proposition.  A statement here, a statement there,

18   is not enough to -- for Your Honor as a fact finder to reach

19   this heavy burden of proof beyond a reasonable doubt for

20   corrupt intent.  And as we said, that word has meaning and

21   significance.  So there has to be some conduct that is not

22   corrupt.  Right?  That is -- that does not rise to the level of

23   culpability under that statute or else it wouldn't make sense

24   to have the word corrupt there.

25             And if Your Honor is looking for other alternative

1    explanations that go to Mr. Knowlton's intent, we can look at

2    the way he exited, the way he left the building.  Now, again,

3    imagine if someone had the sort of mens rea, culpable mens rea

4    who was leaving the police, they would leave the place mad,

5    angry, Your Honor, cursing up a blue storm.  You guys are this,

6    you guys are that, you are doing this, you are doing that, you

7    are not giving us a good election.  You would just -- the Court

8    could imagine something like that, some kind of behavior that

9    indicates that, wow, we didn't get to do what we intended to

10   do.

11           So if the government's theory is, we intended to

12   obstruct Congress and you followed the orders of the police and

13   you leave the premises, then you leave, you would still somehow

14   manifest that intent.  Instead, what you see is a clear

15   indication of what was in Mr. Knowlton's head at the time.  He

16   respected those officers.  He thought they were doing their

17   job.  He was giving voice and vocabulary to a protest that he

18   had.  But he didn't engage in any of the shenanigans that other

19   folks did.  As he left that building -- and you will see, he

20   gives people fist bumps or what I call, COVID elbow bumps, top

21   right-hand corner.  He gives the first officer, the -- you

22   know, the elbow bump, the attaboy, and then the bottom

23   right-hand corner -- this is when Mr. Knowlton is leaving.  And

24   he pats each officer on the shoulder.  Like, you know, like,

25   hey, thanks, guys, been a long day, thanks, guys and leaves

1    simply without incident.

2           If we are making inferences from behavior, Your

3    Honor, this is not the type of behavior that looks like corrupt

4    intent.  It looks like a guy who is like, you are doing your

5    job, you know, I followed this crowd into this door where

6    police officers opened, they walked in, they weren't in there

7    very long, didn't destroy any property, didn't disrespect the

8    physical place.  You know, I mean, I have heard stories of a

9    lot of disrespect there.  Didn't do that.  Instead, they walked

10   through and when they were told to leave, they left.  That is

11   inconsistent with an intent to corruptly interfere with the

12   Congress.

13          Final thing I will say, to the degree that Your Honor

14   credits some conduct that might be consistent with a culpable

15   mens rea, I would invite Your Honor and ask Your Honor and urge

16   Your Honor to consider the mountain of other factors that

17   militate against that sort of conclusion.  And on balance --

18   and on balance, I respectfully submit that there simply is not

19   enough there for Your Honor to find proof beyond a reasonable

20   doubt.  To the degree this is a close call, dating all of the

21   way back to Increase Mather, the fundamental norm here is that

22   close calls, go to the defense.

23          And they go to the defense for good reason that the

24   founders made it intentionally difficult to convict.  They

25   could have done it 103 different ways.  As Your Honor knows,

1    there was a time in this country where they would weigh your

2    feet down and put you in a well and, you know, if you drowned,

3    you were guilty, if you floated back up, you were innocent

4    because God wouldn't let an innocent person drown.  We have

5    moved so far away from that, for good reason.

6            THE COURT:  I'd hope so.

7            MR. SULLIVAN:  For good reason.  We need this

8    extraordinarily high standard in order to throw people in a

9    cage.  It is an extraordinarily high standard.  And if we are

10   kind of, well, this goes one way, but there is this and the

11   other way, then, with respect, Your Honor, that is by

12   definition, reasonable doubt.  May I have just two seconds

13   indulgence.

14           THE COURT:  Yeah, you may.  But just for clarity of

15   the record, I also just want to make clear that, obviously, I

16   am aware of the beyond a reasonable doubt standard.  When I

17   make a comment saying it is a close case, it is already taking

18   that into consideration.

19           MR. SULLIVAN:  Of course.  Yes.  I mean, I wasn't

20   trying to sort of bootstrap you into --

21           THE COURT:  Yes, you may consult.

22           MR. SULLIVAN:  Thank you, Your Honor.

23           THE COURT:  Okay.  Thank you.

24           All right.  Who is up next?

25           MR. BARBARI:  We are, Your Honor.

1          THE COURT:  Mr. Barbari.

2                    CLOSING ARGUMENT

3          MR. BARBARI:  Yes, Your Honor, if I could have just a

4    second.  Good afternoon, Your Honor.  Rammy Barbari on behalf

5    of Mr. Wilson.  And, Judge, we would like to adopt the legal

6    and factual arguments of our esteemed colleague, Mr. Mayr and

7    Mr. Sullivan as part of our argument on behalf of Mr. Wilson.

8    And I will not belabor every point, but I would like to focus

9    my argument specifically as to the conduct of Mr. Wilson why

10   they also do not fit -- the facts do not fit the law in this

11   case or rise to the level of beyond a reasonable doubt.

12         And I'd like to start by quoting Your Honor in the

13   memorandum opinion docket number 87 where you quote -- say, "It

14   is one thing to prove that someone knowingly paraded in a

15   Congressional building 40 U.S.C. 5104(e)(2)(F) or engaged in

16   disorderly or interruptive conduct, 5104(e)(2)(D), and quite

17   another thing to prove that someone corruptly obstructed an

18   official proceeding 18 U.S.C. 1512(c)(2)."

19         And Your Honor goes on to discuss that in order to

20   prove that beyond a reasonable doubt that the government must

21   show that the natural and probable affect of the defendant's

22   actions were to obstruct the official proceeding and that he

23   knew that his actions were likely to obstruct that proceeding

24   and that he acted with the wrongful or improper purpose of

25   delaying or stopping the official proceeding.

1          Your Honor does conclude that the certification

2     counted as an official proceeding.  But Your Honor does not

3     define corruptly, obviously understanding the current status of

4     the case law under *Fischer* and under *Robertson* that I will

5     respectfully address.

6          First, I'd like to discuss the facts that are before

7     Your Honor in evidence as it pertains to Mr. Wilson.  You do

8     have that he was on the grounds, that he was inside the

9     Capitol, that he entered through an open door, as shown through

10    the various exhibits, not through a broken window or other type

11    of way.  You also have that he was inside the Senate gallery

12    for a brief period of time, approximately 5 minutes.  You have

13    that he took the bag.  We are not here to discuss the 641

14    count.  I am happy to answer any questions Your Honor brought

15    up earlier, but I am going to focus my argument on the 1512.

16    And he entered the building at 2:35 approximately 15 minutes

17    after Congress had already evacuated.  That is on paragraph 7

18    of the stipulated facts that Congress evacuated at

19    approximately 2:20 p.m.  And that he exited the building at

20    2:53 p.m.  And he stayed inside for approximately 18 minutes.

21          You also have two statements that the government is

22    relying on and wants the Court to infer rise to the level of

23    beyond a reasonable doubt to prove corrupt intent.

24          He is inside the Senate gallery in the video.  He

25    does chant the word treason three times that you can hear in

1    the video.  And then there is the other statement when they are

2    closer to the Senate floor, talking to the officer outside

3    where Mr. Wilson says, "We came all of the way from our job to

4    do your job and the freaken senators' job."  Those are the only

5    two statements that the government wants you to convict on

6    beyond a reasonable doubt.  And we submit to you that neither

7    one of those rise to that level, under the current case law and

8    under the facts just as is.

9           And what I'd also like to now go through, Your Honor,

10   what is not before you.

11          THE COURT:  Just before you get to that --

12          MR. BARBARI:  Yes, Your Honor.

13          THE COURT:  I have to say, I am not sure where I was

14   in my thinking, but it was just -- at the very, very, final

15   stage of that interaction where it seemed me to that perhaps

16   the most damning piece of evidence against Mr. Wilson comes at

17   the very, very end there with the clause and the freaking

18   senators' job, which seems to convey that he thinks he is there

19   to do what the senators are there to do, which is to choose who

20   should be certified as the winner of the presidential election.

21          MR. BARBARI:  Your Honor, what I will say to that is

22   I think -- and Mr. Sullivan kind of explained it.  Again, I

23   don't want to put the burden too much on us, but that is one

24   interpretation that I think the Court can conclude.  But I

25   would also --

1          THE COURT:  Presumably he wasn't there to enact the

2     amendments to the HIPAA reform act of 2001 or whatever else it

3     might have been under consideration.

4          MR. BARBARI:  I understand, Your Honor.  But what I

5     would tell the Court is that it is simply one statement.  And I

6     understand that the Court can say that is the most damning

7     piece of evidence against Mr. Wilson.  But one statement alone,

8     we would submit, does not rise to the level of beyond a

9     reasonable doubt that is -- his intent was corrupt intent.  He

10    also says in the statement, we are here to do your job, talking

11    to the law enforcement officer.  And so it is really unclear

12    what he really meant by all of that.  I would submit that was

13    at the end of right before they left the building.  That was

14    after they were told which way to go and leave, that they were

15    not being allowed any further.  And he, in line with

16    Mr. Knowlton and the others, followed suit and followed

17    Mr. Knowlton through much of the video as you can see and is

18    really a follower to the group and with that crowd.  So I think

19    it was just a statement made at the end as he was ready to

20    leave.

21         I don't -- I'd submit, Your Honor, that does that

22    meet the level of corrupt intent that the government wants Your

23    Honor to conclude.

24         But I would like to also, if I may, focus on what is

25    not before, Your Honor.  There is no evidence before the Court

1    that Mr. Wilson engaged in any preplanning of insurrection or

2    overthrow or anything of that sort.  There is no evidence

3    before the Court that Mr. Wilson had any weapons on him that

4    day.  There is no evidence before the Court that he engaged in

5    any destruction of property or defacing of any property of any

6    type, which did take place that day.  Mr. Wilson was not --

7    there is no evidence that he was wearing any sort of combat

8    gear or protective gear ready to engage in battle with others.

9              And, in fact, on that note, they discussed that

10   Mr. Wilson saw that Mr. Knowlton was wearing a flak vest.  What

11   I would submit though, as part of the stipulation, Judge, on

12   paragraph 28, it is discussed that the group had discussed

13   protecting themselves against violence from counterprotesters.

14   And I would submit that any evidence of the flak vest for

15   Mr. Wilson seeing that Mr. Knowlton had been wearing a flak

16   vest goes to that stipulated fact, goes to their intent that

17   was what that was being worn for, not to prepare for battle to

18   try to, you know, obstruct the official proceeding in some way

19   or shape or form.

20             There is also no evidence before the Court that

21   Mr. Wilson engaged in any destruction of the physical barriers

22   or the barricades that existed outside of the Capitol before

23   they entered.  And there is certainly no evidence before the

24   Court that Mr. Wilson himself engaged in any sort of violence

25   or threatening conduct towards any law enforcement or official

1    personnel while inside.  The government made in their argument,

2    Your Honor, a point that -- and it pertains to Mr. Montgomery

3    engaging with the confrontation of the officer and the

4    body-worn camera that the government showed that Mr. Wilson was

5    nearby.  And that they want the Court to infer that because he

6    was nearby and -- that that some way shows that he excused the

7    assaultive conduct and that therefore rises to his own level of

8    corrupt intent.

9         Judge, we would respectfully submit that does not

10   hold water as an argument, that simply his presence in that

11   crowd, which had hundreds of people right in that moment, as

12   you can see in the body-worn camera, that Mr. Wilson simply

13   being there with the group that he came there with rises to the

14   level of that he excused any sort of potential assaultive

15   conduct by anyone.

16        And that is almost trying to but the burden on him

17   that he did not stop it in some way.  It seems like they are

18   trying to ask the Court to come to that conclusion that,

19   therefore, shows corrupt intent.  We respectfully disagree with

20   them and ask the Court to not find in that manner.

21        Judge, I would also like to touch base on the *Fischer*

22   opinion and the *Robertson* opinion and distinguish them as it

23   pertains to the facts for Mr. Wilson.  Without getting into all

24   of the various definitions of corruptly, I would like to focus

25   just simply on what the Court found and held, that assaultive

1    conduct by Mr. Wilson was enough for the sufficiency of the

2    evidence on that case to find that it was corrupt and that he

3    acted corruptly.  And what you don't have here before you, as

4    it pertains to Mr. Wilson is any evidence of assaultive

5    conduct.  As to the *Robertson* case, the Court discussed at

6    length the issue of the independent felonious conduct.  Because

7    Mr. Robertson was charged with four additional felonies of

8    carrying a deadly weapon while inside the Capitol and on

9    restricted building or grounds, et cetera.  Again, you have no

10   evidence before you to -- that shows that Mr. Wilson had any

11   independent felonious conduct.  In fact, the only felony he is

12   charged with is the 1512 felony.  The rest are the

13   misdemeanors.

14         And I'd submit that the misdemeanor unlawful conduct

15   does not rise to the level of beyond a reasonable doubt to

16   prove that he acted corruptly or with corrupt intent to

17   obstruct the official proceeding.

18         The Court's indulgence, Your Honor.

19         THE COURT:  Yes.  All right.

20         MR. BARBARI:  Yes, Your Honor.  Thank you.  So,

21   Judge, when you look at all -- just to sum up briefly, when you

22   look at all of the elements that are required for the

23   obstruction for the 1512, the attempted to or did obstruct or

24   impede the official proceeding, that he intended to obstruct

25   or -- that he attempted to or did obstruct and intended to do

1    the same, that he acted knowingly with awareness of the natural

2    and probable affect of his conduct would be to obstruct or

3    impede the official proceeding and that he acted corruptly.

4    There are four distinct elements that all have various

5    components to them.  And based on the facts that you have

6    before you, Your Honor, we submit that it is simply not enough.

7    As Mr. Sullivan went over, multiple times, Your Honor, we are

8    at the highest standard of beyond a reasonable doubt in our

9    criminal justice system.  You have Mr. Wilson in the building.

10   You have him with others.  You have him following the orders

11   and leaving when the officer told him which way to go as well.

12   And that is also right after he says the statement about the

13   senators' job.  It is not like he then says that and then goes

14   and tries to get in another way or tries to continue engaging

15   in other destructive or disruptive conduct whatsoever.  He does

16   not engage in any physical violence that day or threats of

17   violence.  It wasn't a threat that he made to that officer when

18   he said that word.  And, in fact, he left right after that,

19   Judge.  And I would say that is indicative and shows his intent

20   was not to obstruct the proceeding at that time.  And for all

21   of those reasons, Your Honor, we do ask that you find

22   Mr. Wilson not guilty of the 1512.

23              THE COURT:  All right.  Thank you.

24              All right.  Mr. Pierce.

25              MR. PIERCE:  Mr. Roots is going to --

1          THE COURT:  All right.  Mr. Roots.

2                     CLOSING ARGUMENT

3          MR. ROOTS:  I want to have Mr. Montgomery sit right

4     here so he can help me point out some little things in these

5     videos.

6          THE COURT:  That is fine.

7          MR. ROOTS:  Thank you, Your Honor.  And thank

8     everyone here.  Thank the US Attorney's Office, thank all of

9     the cocounsels and codefendants.

10          We will stand and join in all of the arguments and

11     points that have been made already with regard to the 1512

12     count.  I may revisit that also myself and make some additional

13     points, but what I really want to focus on is the allegation of

14     assaulting an officer 18 US Code 111(a) which Mr. Montgomery is

15     accused of.

16          MR. ROMANO:  Your Honor, I apologize for

17     interrupting, but I am troubled by where this is about to go.

18     And I'd like to turn the Court to the stipulated trial

19     documents.  With respect to all of the counts other than 1512,

20     in paragraph 53, it spans from page 22 on to page 23.  The

21     document says in that very final sentence, that without waiving

22     the defendants' objections to the Court's denials of a variety

23     of motions that the Court took up earlier.

24          THE REPORTER:  Is your microphone on?  Can you check

25     your microphone?

1          MR. ROMANO:  I'm sorry about that.  Yes.

2          The parties agree that if the Court finds the

3   existence of these facts beyond a reasonable doubt, this

4   evidence would establish each and every element of those other

5   charged offenses and enumerated in section 1.

6          That language is a bit different than the language in

7   paragraph 52.  And I understand from speaking with Ms. Nevin

8   and Ms. Moran that earlier in the week there had been some

9   discussion between them and defense counsel about plans to

10  argue against conviction on the other counts.

11         And I believe that Ms. Nevin and Ms. Moran

12  communicated in no uncertain terms, this agreement restricts

13  argument about the other counts.  And if defense counsel

14  intended to argue that the Court should acquit on other counts,

15  we need to have a trial.

16         THE COURT:  Okay.  Mr. Roots.

17         MR. ROOTS:  Let me respond to that.  That is not our

18  understanding.  So the plain wording is:  If the Court finds

19  the existence of these facts beyond a reasonable doubt.  Okay.

20  So we are stipulating to the facts, but not beyond a reasonable

21  doubt.  We are stipulating to the stipulated facts --

22         THE COURT:  Okay.  I can tell you now stipulated

23  facts, I hereby find beyond a reasonable doubt.  If both

24  parties have agreed that those are the facts, as I instruct a

25  jury, stipulated facts should be treated as undisputed

1    evidence.  And if the evidence is undisputed on those facts,

2    then I have no basis to not to conclude they are proven beyond

3    a reasonable doubt.  There is no other evidence before me.

4              MR. ROOTS:  If I could, I think there is a little bit

5    more nuance possibly.  We are talking about -- we concede and

6    stipulate that there is sufficient facts and we have agreed

7    to -- we stipulated to it.  There is sufficient facts that

8    would get beyond a Rule 29 motion, that would survive any kind

9    of a legal motion.

10             THE COURT:  This language is different than the

11   language on -- with respect to the 1512(c), which indicates

12   that based on those facts, the Court may find each of the

13   defendants guilty versus this language with respect to the

14   other counts.  The parties agree if the Court finds the

15   existence of these facts beyond a reasonable doubt this

16   evidence would establish each and every element of the offense.

17   It is changing a "may" to a "would."

18             MR. ROOTS:  But there is still the word "if."

19             THE COURT:  How do I not find the existence of the

20   facts that have been stipulated to by the parties?  You are

21   going to say some of the facts that are stipulated to are not

22   true?

23             MR. ROOTS:  They are -- let's put it this way.  They

24   are stipulated facts.  Go back to paragraph -- obviously,

25   Mr. Montgomery -- there are images of him with his hands on the

1    police officer's baton.

2          THE COURT:  Right.

3          MR. ROOTS:  By the way, the phone call that the

4    prosecutor just mentioned with us, I did not interpret the same

5    way.  Now, we --

6          THE COURT:  I'm sorry.  What did you say?

7          MR. ROOTS:  I did not interpret that phone call the

8    same way that was just mentioned.  They mentioned a phone call

9    with our team.  Basically we agree, we are not going to argue

10   self-defense.  We all agree on that.  But that was, you know,

11   not the -- they didn't say they were shutting or slamming the

12   door on any possible argument on the 111 charge.

13         THE COURT:  So what is the argument you want to make

14   on the 111 charge?

15         MR. ROOTS:  What I want to do is show Your Honor the

16   body-cam video to place the contact that Mr. Montgomery had

17   with the officer in context.  And I do submit that when Your

18   Honor understands that full context that he is not guilty of

19   that charge because it -- yes, it is enough for probable cause.

20   It is enough for sufficiency of the evidence, but it is not

21   proof beyond a reasonable doubt.

22         THE COURT:  I think I better step off the bench here

23   and let you have a conversation with the government and with

24   your client about this, because that doesn't seem to me to be

25   what the stipulation says.  And, quite frankly, I am not sure

1    why in the world the government would drop some of the charges

2    against Mr. Montgomery if, in fact, there wasn't such a

3    stipulation.  And the government is giving up some of the

4    charges that it has against him in exchange for the defense

5    agreeing to the facts and agreeing, as I read this, that if

6    those facts -- if I accept those facts, that it would establish

7    the necessary elements of the offense.  So I am happy to step

8    off, give you a chance to talk to the government about it and

9    to your client about this.

10              But it is, frankly, a little disappointing that we

11   would be here most of the way through a stipulated trial where

12   there doesn't seem to be at least a subjective meeting of the

13   minds on such a key fact.  I think there may be an objective

14   meeting of the minds just from my reading of the document.  But

15   I am a little bit at a loss of what to do under the

16   circumstances and whether this should just result in a mistrial

17   with respect to Mr. Montgomery and we should just proceed to

18   trial against him with respect to all of the charges or exactly

19   where this leads us.  But it is clear there is not a subjective

20   meeting of the minds in that you say you don't understand the

21   words to mean what the government understands them to mean.

22   They seem, to me, on reading them what the government says.

23   But I guess I ought to let you talk to your client and to the

24   government about that.  And then I can come back out and we can

25   figure out how to proceed.

1          MR. ROOTS:  We agreed, we would not argue

2    self-defense.  And that is not what I am arguing.

3          THE COURT:  That is not what it says here.  It says

4    if the Court finds the existence of these facts beyond a

5    reasonable doubt and they are stipulated to -- and therefore I

6    don't know how I don't find them beyond a reasonable doubt --

7    this evidence would establish each and every element of the

8    other charged offenses.  It would establish each and every

9    element, therefore it does seem to suggest that your client has

10   stipulated to guilt of the 111 charge.  But maybe I am mistaken

11   about that.  I am happy to hear more argument on that or

12   argument about how we should proceed with respect to that

13   issue.

14         MR. ROOTS:  Okay.  I guess we should probably have a

15   little break then we can have a discussion.  But I can make

16   arguments about the 1512.

17         THE COURT:  If you would like to do that first, I am

18   happy to have you do that first before you come back to this.

19         MR. ROOTS:  Okay.  I will do that.  By the way, I

20   believe the prosecution submits that the episode on the west

21   lawn is wrapped into the 1512; am I correct?

22         THE COURT:  I think that is correct, based on my

23   understanding of the case, so, yes.

24         MR. ROOTS:  And that is part of the allegation of

25   corruptness that Mr. Montgomery corruptly did things on the

1  west lawn with an officer, he had contact with an officer,

2  grabbed a baton.  So I think this argument that I am --

3           What I want to do is show the body cam and illustrate

4  to the Court the nuanced context of this situation.

5           THE COURT:  You are welcome to do that with respect

6  to the 1512(c).

7           MR. ROMANO:  Your Honor, I respectfully -- I think if

8  there is going to be an open question about whether --

9           THE COURT:  You need to be at a microphone.

10          MR. ROMANO:  I'm sorry.  Yes.  If there is going to

11 be an open question on whether this trial -- whether the

12 stipulated trial resolves the 111 count or not, I think it

13 might be a better use of our time to take a break now and

14 address that.  I think hearing arguments about a 1512 where

15 there might be a mistrial coming 30 minutes from now probably

16 is not the best use of the Court's time.

17          THE COURT:  That is fine.  Why don't I let you confer

18 among yourselves and I will come back out.  Why don't you let

19 the deputy clerk know when you are ready for me?

20          MR. ROMANO:  Yes, Your Honor.

21          THE COURTROOM DEPUTY:  All rise.

22          (Recess taken at 2:48 p.m.)

23          THE COURT:  All right.  Mr. Roots, where are we?

24          MR. ROOTS:  Okay.  We have had a brief discussion.

25 We are not going to argue innocence on the 111.  We are not

1    going to argue that.  But for purposes of the 1512 charge,

2    obstructing an official proceeding, I do want to make some

3    points with that body-cam video of the officer.

4            THE COURT:  That is fine.

5            MR. ROMANO:  We take no issue with that, Your Honor.

6            THE COURT:  All right.  So you may do so.

7            MR. ROOTS:  Thank you.  I will just introduce a

8    couple of points.  We want to show Exhibit 1, which I believe

9    is the --

10           MR. MAYR:  Ms. Walker, could you --

11           THE COURTROOM DEPUTY:  Okay.  Hold on.

12           (Video played.)

13           MR. ROOTS:  You can go ahead and stop it there.  Let

14    me just make a couple of --

15           Again, this -- we do -- obviously, we are stipulating

16    Mr. Montgomery made contact.  He had some contact with a baton

17    of an officer, a Metropolitan officer named Daniel Hodges.

18    What is interesting is that if you carefully review this

19    body-worn camera footage of Officer Hodges, there are a number

20    of, you could call it, anomalies here.  Officer Hodges, Daniel

21    Hodges, DH, in the count, we submit was behaving differently

22    than other officers.  And Mr. Montgomery, as you will see, was

23    actually the third person in this short segment to grab that

24    baton, not the first, not the second.  He was the third.  And I

25    think, Your Honor, if you review this, you will see that

1    Mr. Montgomery was in a crowded chaos situation.  This officer

2    was behaving differently than other officers that were there at

3    that time.  So if you can go ahead and play that.

4              (Video played.)

5              MR. ROOTS:  And we'll stop here.  Stopped at 47

6    seconds.  This is that officer's body-worn camera footage,

7    Daniel Hodges or DH.  You can see -- first of all, I will make

8    a couple of points.  These defendants, Mr. Montgomery, were not

9    invading the space of the officers.  This was sort of an

10   interesting thing where Metropolitan Police officers were

11   arriving on the scene.  And they were coming through the crowd.

12   This was not an example of the crowd going up to the officers.

13   This was, the crowd was here and had already gone up to a

14   position high on the grass or the lower part of the west

15   terrace area.  The crowd had already gotten there when suddenly

16   these Metropolitan Police officers arrive in a single file

17   line.

18             And it was a little bit surprising.  It was abrupt

19   and this evidence shows this.  This is sort of a surprise

20   moment for lot of these -- and there is a little bit of a

21   confrontational attitude amongst the crowd here.  And right

22   here at 47 seconds is before any of our defendants are in the

23   scene.

24             Go ahead and keep playing.

25             THE COURT:  I'm sorry.  Is that -- that is not.

1    Okay.  I was wondering -- none of the defendants are in the

2    scene right now; correct?

3             MR. ROOTS:  I don't believe they have arrived yet on

4    this video.

5             (Video played.)

6             MR. ROOTS:  Okay.  Here you see Codefendant Knowlton

7    right here on the scene in the middle of the camera here.  We

8    are at 1 minute and 19 seconds.  Mr. Montgomery is behind --

9    directly behind.  In fact, you can see his star spangled face

10   mask behind Mr. Knowlton there.

11            THE COURT:  Yes.

12            MR. ROOTS:  Again, this was a time -- and the

13   stipulated facts and the evidence show that there is nothing

14   that indicates these individuals were told they were in a --

15   they had no right to be there.  There had not been cops present

16   up until about this time.  So this crowd had not been amongst

17   cops until about this moment.  Cops entered their space.  They

18   didn't enter the police's, the cops' space.

19            The cops were not there to make any arrests.  They

20   were essentially barging through in a single line.  They were

21   in some cases forcing their way through the crowd.  And this

22   surprised the crowd and there was some -- a lot of commotion.

23            Okay.  Go ahead, keep playing.

24            So here we are at about 1 minute, 44.  You can see

25   the officer.  This is the body cam of DH.  The officer is

1    deploying his baton.  He is pushing and he is making contact --

2    forceful contact with many demonstrators.  And, again, there

3    had not really been a police presence in this specific area up

4    until this point.

5            Go ahead.

6            We can stop actually.  Go back.  If -- I want to

7    illustrate Mr. Montgomery in that scene a couple of seconds

8    ago.  Okay.

9            MS. NEVIN:  Your Honor, I apologize.  I am objecting

10   to the characterization that there were no officers on scene up

11   to that point.  Because we have in paragraph 4, a stipulated

12   fact that US Capitol Police were present and attempting to keep

13   the crowd away from the Capitol building.

14           THE COURT:  Okay.  I will, obviously, study the

15   stipulation.

16           MR. ROOTS:  Okay.  What I want to show is

17   Mr. Montgomery, if you look at his positioning of his body, he

18   really -- and we are right at 1 minute and 45 seconds, it is

19   very clear, that -- and you can see the other codefendant,

20   Mr. Wilson, is also -- these people, especially Mr. Montgomery,

21   is making way.  He is clearing a path here to let the cops go

22   through.  The cops had come up in a single file line.  You can

23   see very clearly, Mr. Montgomery is using his back against

24   other demonstrators to make way for an -- for this line of

25   officers to come through.

1          Go ahead.

2          I am just told this was the second baton grab.  There

3    were at least two demonstrators who grabbed that same officer's

4    baton before Mr. Montgomery.  And I invite the Court to really

5    review this carefully.  This officer is behaving differently

6    than other officers.  He is making a lot of contact with the

7    public.

8          If we could go back to the first grab.

9          Okay.  So we are going to show the first demonstrator

10   that grabbed that baton.  I believe it is this man here.  Yes,

11   so that is 11 seconds into this body-cam segment.  So here is

12   the first -- and this is a very short segment.  And

13   Mr. Montgomery again was the third person.  The first is at 11

14   seconds, you can see.  And the second is a few seconds later.

15   So in the space of just a few seconds, there are multiple

16   people reaching out to grab this baton.  And you have to ask

17   the reason, well, why?  And it is, as I indicated, this officer

18   is behaving differently than other officers with that baton.

19          Go ahead.  And there also came a time in this

20   sequence when this Officer Hodges is sort of left all alone in

21   an island of himself.  And the officers behind him had sort of

22   dropped back.  So he ended up being sort of surrounded in a sea

23   of demonstrators all by himself.  And it was at that point that

24   Mr. Montgomery made contact.  The officer we could -- you know,

25   I -- he either panicked or he had an abrupt moment of

1    aggression where he was trying to work his way back to the

2    other officers.

3              Okay.  I am told that this is about the time of the

4    second baton grab.  We are at 1 minute 49 --

5              Is that the -- could you back it up?

6              Right around there.

7              So briefly another demonstrator grabbed that same

8    baton.  That is about 1 minute and 50 seconds.  So keep

9    playing.  Here is where the officer, right around here at this

10   point about the 2-minute mark, the officer's body cam turns

11   around.  And the officer notices he is all alone.  The other

12   officers had not followed him.  He then sort of has a moment

13   of, you could call it, aggressive reflexes.

14             And go ahead and keep playing.

15             Now, here, obviously, our client, Mr. Montgomery,

16   does grab onto that baton.  We want Your Honor to look at this

17   and review it as much as you can.  Obviously, it is for a very,

18   very short period of time, no more than about 3 to 4 seconds.

19   Mr. Montgomery falls to the ground.  And by the way, he was not

20   the first actually.  There was another man that had been pushed

21   to the ground in front of that officer a few seconds back.  So

22   this was a very chaotic crowd setting.

23             Mr. Montgomery goes to the ground.  And he is holding

24   on to that baton.  But I would submit that in the full review,

25   Your Honor, when you look at this sequence, obviously,

1    Mr. Montgomery according to the 18 U.S. Code 111, he is making

2    contact.  He is holding on to that baton briefly.  I am sure

3    you're aware, it is a very broadly worded statute.  Assault,

4    comma, resist, comma, oppose, comma.  I am sure the government

5    would argue all of that is met here.  We, obviously, stipulated

6    to that.

7            But for the purposes of the obstruction of an

8    official proceeding with a corrupt intent, we really implore

9    Your Honor to evaluate this momentary sort of lapse of good

10   judgment on the part of Mr. Montgomery.

11           Go ahead and keep playing.

12           Mr. Montgomery does go to the ground and his foot

13   does kick up.  He was trying to extricate himself trying to get

14   away.

15           That is the sum essence of that episode.

16           So I would just say that this episode does show a

17   momentary -- you could call it a violent little episode of

18   violence, a little episode of physical force.  But it certainly

19   is not manifesting any corrupt intent to obstruct any official

20   proceeding.  There is nothing in there to indicate that

21   supports that allegation.

22           I'd also invite the Court to look --

23           THE COURT:  So let me ask you about this to the

24   extent it relates to the 1512(c), which is under the

25   stipulation, it is a misdemeanor, because Mr. Montgomery is not

1    charged with using a deadly weapon; right?

2              MR. ROOTS:  No.

3              THE COURT:  But in the video and for purposes of the

4    1512, could I consider the fact that he actually did grab on to

5    what was a dangerous weapon, which was the baton, which would

6    be a felony?

7              MR. ROOTS:  Obviously, the officer never lost control

8    of that baton.  The officer was, obviously, in total control.

9    There was -- I wouldn't say you could make any suggestion that

10   Mr. Montgomery was using it as a weapon in any way.  He was, if

11   anything, grabbing it.  It would be like grabbing on to any

12   weapon utilized by someone else to -- for self protection, so a

13   shield or anything else.  It wouldn't be a -- it certainly

14   would not rise to the level of use of a dangerous weapon in

15   any --

16             MS. NEVIN:  Your Honor, I apologize.  But when the

17   Court referred to the 111 as a misdemeanor --

18             THE COURT:  Yes.

19             MS. NEVIN:  On page 1, number 5, we do include the

20   element that the defendant made physical contact with Officer

21   DH or acted with the intent to commit another felony referring

22   to 1512, so this would be a felony charge.

23             THE COURT:  I see.

24             MR. ROOTS:  But the government does not argue this

25   was any kind of a weapon charge.

1          MS. NEVIN:  We do not argue that this was a weapon

2     charge.

3          THE COURT:  Give me one second to look at the

4     statute.

5          MS. NEVIN:  Yes.

6          THE COURT:  So it is -- what I -- what was confusing

7     me, I was looking at B.  And it is under the felony portion of

8     A, where A can be a felony or a misdemeanor.  I see now.  Thank

9     you.

10         MR. ROOTS:  And I'd invite the Court to go back to

11    paragraph 29, which goes back to the Trump speech way at the

12    beginning of the day on January 6.  You can impute, I think,

13    some of the intent of what was said at that speech at the

14    Ellipse to Mr. Montgomery, which shows really an innocent

15    intent regarding the events of the day that followed.  And at

16    least with regard to any corrupt -- any allegation of corrupt

17    intent.

18         So President Trump said things, such as -- in

19    paragraph 29, we fight like hell.  If you don't fight like

20    hell, you are not go to have a country anymore.  This is well

21    worn political hyperbole.  Many politicians make these kind of

22    remarks over the ages.  And after this we are going to walk

23    down and I will be there with you.  So here is the President of

24    the United States saying, we are going to walk down, I will be

25    there with you.  We are going to walk down -- anyone you want,

1    but I think right here -- I think he was talking about

2    Pennsylvania Avenue.  We are going to walk down to the Capitol.

3    And we are going to cheer on our brave senators and congressmen

4    and women.  And we are probably not going to be cheering so

5    much for some of them.

6           So this is a quintessential sort of political speech.

7    This is political -- an intent to engage in a political moment,

8    not to disrupt anything, not to obstruct anything, but to

9    engage in the politics of this great day, this historic day.

10          It really can't be said that there was a benefit to

11   Mr. Montgomery over this.  I was listening with great interest

12   about the remarks I guess of the codefendant that had said

13   something about the democratic -- we are not going to let the

14   Democratic Party do something or another.  And I submit that it

15   would be corrupt -- it would be corrupt if the statement had

16   been, the Democratic Party won, but we are going to try to

17   overturn.  But it is not corrupt if the title of the rally is

18   Stop the Steal.

19          In fact, the steal is what is corrupt.  Putting

20   ourselves in the shoes of Mr. Montgomery, it is the steal that

21   is corrupt.  If he is there to stop the steal, he is acting

22   innocently.  That is not corrupt intent.

23          Nowhere in this stipulated statement of facts is

24   there any allegation that Mr. Montgomery was acting in anything

25   other than good faith in the belief that he was on the right

1    side of the law and on the right side of constitutional history

2    and on the right side of propriety.  He believed, as many --

3    polls show millions of Americans, many believed the election

4    was stolen, that Trump was the proper winner.  It would be

5    corrupt if the name of the speech had been not stop the steal,

6    but stop the peaceful transfer of power.  That would be corrupt

7    intent.

8            All of the evidence before us shows an intent to

9    participate in a political moment, to participate in a

10   political demonstration.  In fact, Trump himself had said to

11   cheer on -- nothing about obstructing, to cheer on, go to the

12   Capitol, I will be there with you, to cheer on senators.

13           THE COURT:  I don't see any reference in any of the

14   dialogue or any of the film to anyone cheering anyone on.

15           MR. ROOTS:  I'm sorry?

16           THE COURT:  I don't hear any reference in the video

17   or see in the transcripts any reference to cheering anybody on.

18           MR. ROOTS:  I would have to think about that.

19           THE COURT:  Let's go Congress, let's go Congress.

20           MR. ROOTS:  I think there is a lot of political

21   speeches going on that day.  And there are a variety of

22   opinions that are being expressed.

23           THE COURT:  That, I agree with.

24           MR. ROOTS:  A point that I would make is that

25   somewhere in this segment and all of this evidence was a

1    codefendant who said something like treason or maybe joined in

2    a chant about treason, treason.  I submit, Your Honor, anyone

3    who believes in good faith that treason is happening is not

4    acting corruptly to try to stop it.

5              THE COURT:  Well, I don't know about that.  I mean,

6    maybe this is getting more into the weeds than we need to here.

7    But, you know, we have institutions for resolving disputes.

8    There was plenty of court litigation.  And someone may think

9    that the Pennsylvania Supreme Court got it wrong, someone may

10   think the US Supreme Court got it wrong.  But I guess I am not

11   at all sure that means, even if you in good faith thought the

12   United States Supreme Court should not have denied certiorari

13   and in good faith thinks the Pennsylvania Supreme Court makes

14   an error in its decision, that means it is okay to prevent or

15   interfere with or even delay the Congress in certifying the

16   election because you disagree with the court decision, for

17   example.

18             MR. ROOTS:  In all of the stipulated facts, I don't

19   believe there is a single statement or fact mentioned here

20   where there is an intent to, you know, stop the peaceful -- to

21   do anything of that nature.  There is nothing in the statement

22   of facts that suggests that Mr. Montgomery was doing anything

23   other than acting in good faith.

24             THE COURT:  My point is, just the simple one, I think

25   maybe you could be acting in good faith and still violate the

1    law in that you truly, honestly believed that the Pennsylvania

2    Supreme Court made a mistake in its decision.  And you truly

3    believe the Supreme Court made a mistake in not granting

4    certiorari.  And I am not saying that I think there is any

5    merit to that, but someone in good faith might hold that view.

6    But even that good faith view, wouldn't justify saying, I am

7    now going to take things into my own hands, because I think the

8    courts got it wrong.

9           MR. ROOTS:  Okay.  Well, let's recognize that the

10   specific intent required for this 1512 is a super specific

11   intent.  Corrupt intent, which is almost a very high burden,

12   the highest maybe possible, higher than any other type of

13   specific intent.  So it would require evidence that

14   Mr. Montgomery knew that, you know, the election wasn't stolen

15   and he was --

16          THE COURT:  That is my point though.  Even if he

17   believed -- you can use the word stolen in lots of different

18   ways, perhaps.  But I think the most plausible understanding of

19   it would be that you think that the dozens and dozens of Courts

20   that considered the issues just got it wrong.  But it seems to

21   me that even if my point is, even if you believe that, in our

22   system, we don't just then take matters into our own hands.

23   And I suspect that everyone in this room here, to the extent

24   that you are familiar with more than a handful of Supreme Court

25   cases thinks that some of them are wrong.

```
 1                MR. ROOTS:  Sure.
 2                THE COURT:  That doesn't mean though that we are
 3      allowed to take matters into our own hands and say, in good
 4      faith, I thought the decision was wrong.  And, therefore, I
 5      went in and I took over some government building or I did
 6      something, because I just thought the decision was wrong.  And
 7      in good faith I went down there and took over the Department of
 8      Health and Human Services, stormed the building, kept people
 9      from getting in their offices because I think the Supreme Court
10      was just completely wrong when they held there wasn't a
11      delegation problem with respect to a regulation that the
12      Department of Health and Human Services promulgated.
13                MR. ROOTS:  Yeah.  Here, it is very, very, very
14      unique.  There will never be a moment like this in history --
15                THE COURT:  One hopes so.
16                MR. ROOTS:  Where the President of the United States
17      himself is basically giving a speech saying, hey, I will be
18      down there with you guys, join me down there.  There is nothing
19      about corruptly obstructing, not a single word about that.  And
20      I submit that the evidence also doesn't corroborate.  Because
21      when these guys -- when Mr. Montgomery got into the Capitol, it
22      is very clear he didn't even know where he was.  These guys
23      walked past several hallways into the Senate chamber, at least
24      two doorways.  That has already been pointed out.  If they
25      wanted to go into the separate chamber, they could have.  They
```

1    walked past at least two doorways.

2           Mr. Montgomery didn't know where he was.  And at the

3    end of that moment inside the building, there was a discussion

4    of what -- an officer asks, what do you guys want?  We want to

5    get out.  They didn't know where they were.

6           And, again, the government should be held to a very

7    high burden.  They should have to show something about the

8    intent to block, the intent to stop.  Your Honor, a lot of

9    these guys were there to trigger further proceedings, not to

10   stop proceedings.  They wanted inquiries.  They wanted the

11   words of President Trump to cheer on a particular side.  And

12   there is nothing in here in another context, a Fifth Amendment

13   act of persuasion where they are not telling a policymaker.

14   They are there asking and urging policymakers.  So this is a

15   First Amendment fine line.  I recognize the Court has already

16   ruled with regard to the First Amendment.  But there is an

17   important distinction about a demonstration that goes to a

18   group of policymakers wanting them to -- trying to persuade

19   them to change their mind or voluntarily come to their own

20   agreement in accord with the demonstration.  And there is a big

21   difference between that and trying to threaten or force

22   policymakers.

23           I submit that nowhere in this statement of facts is

24   there evidence that these men -- Mr. Montgomery was there to

25   force policymakers.  Everything in this statement of facts is

1    about persuading, about joining a group persuade, to make your

2    voices heard, to cheer on senators and congressmen as Mr. Trump

3    said.

4             And finally at the end of this sequence, they clearly

5    didn't even know where they were.  And when an officer asked

6    them, what do you want to do?  They said, we want to get out.

7    And the officer directed them out.  They immediately complied

8    and went out.  So with that, I submit that the government has

9    not met its burden with regard to this very serious charge of

10   obstructing an official proceeding and that Mr. Montgomery is

11   not guilty of that crime.

12            THE COURT:  Okay.  Thank you.

13            Anything else from the defense?

14            MR. BARBARI:  Your Honor, if I may, I had one

15   additional point on behalf of Mr. Wilson, if I may.

16            THE COURT:  That is fine.

17            MR. BARBARI:  Thank you, Your Honor.  On the issue of

18   the statement, we came to do the senators' job, I just wanted

19   to actually add -- and this actually goes with -- right along

20   with what Mr. Roots just said, that members of that crowd

21   wanted inquiries, wanted investigations into the allegations of

22   voter fraud.  And the fact is that they were attending the Stop

23   the Steal rally.  So I do think that the Court can also infer

24   that when Mr. Wilson made that comment about doing the

25   senators' jobs, he could just as easily have been referring to

1    additional investigations or inquiries into the allegations
2    they were there to voice their concerns about.  And because
3    there exists an alternative explanation and the government asks
4    you to infer that that means that he was there to obstruct, we
5    have provided the Court with one possible additional
6    explanation of what that could mean.
7              And, therefore, in line with what Mr. Sullivan said,
8    Judge, when it is a close call and when there are alternative
9    explanations, we submit that does not rise to the level of
10   reasonable doubt.  And we wanted to add that point for
11   Mr. Wilson, Judge.
12             THE COURT:  I appreciate that.
13             Anything else from the defense?
14             MR. MAYR:  Nothing further, Your Honor.
15             THE COURT:  Mr. Piece.
16             MR. PIERCE:  Nothing, Your Honor.
17             THE COURT:  All right.  Any rebuttal for the
18   government?
19                    REBUTTAL CLOSING ARGUMENT
20             MS. NEVIN:  Your Honor, I want to start briefly with
21   the 641.  On the lunch break, I was able to find a Supreme
22   Court case.  It is *Carter versus United States* 540 U.S. 255
23   where in the dissent, Justice Ginsburg talks about the
24   asportation requirement, both at common law and under section
25   2113, which I believe is bank robbery.  She writes, "I note

1    moreover that the asportation requirement both at common law

2    and under section 2113 is an extremely modest one, even a

3    slight movement will do."  And the text of section 2113(a) and

4    (B) tracks the common law.

5           So, Your Honor -- and I'm sorry.  That is on page 287

6    of the opinion.

7           THE COURT:  Okay.  Thank you.

8           MS. NEVIN:  I want to show you just a portion of

9    Exhibit 7 that will just make it clear, in our minds, that the

10   reason that Mr. Wilson abandoned this property was in response

11   to seeing that there were police officers in the Ohio clock

12   corridor.  So we are going to go to Exhibit 7.  And we are

13   going to start at 49 seconds.  So that is time stamp 2:48:42.

14          Please keep playing.  Please stop it for one moment.

15          Your Honor, we are stopping at 2:48:52.  And you'll

16   see in this corner, that I have just circled, it is a group of

17   police officers.  If you could keep playing.

18          At which point, Mr. Wilson leaves the bag with the

19   stolen masks right there on that bureau.

20          THE COURT:  Okay.  Thank you.

21          MS. NEVIN:  I am trying to try to just address the

22   arguments of the defense chronologically based on the

23   defendants' movements.  I will start with what happened with

24   respect to -- with Officer Hodges on the west lawn and how that

25   is the beginning of where we see the defendants' corrupt

1    intent.

2            What we see here in that video in Exhibit 1 that we

3    just reviewed, this is not -- this is not a situation where,

4    from that video, there is some type of friendly interaction

5    between the police and the rioters.  I understand that

6    Mr. Roots is making the argument that Mr. Montgomery is using

7    his body to make way for the officers to go through.  I

8    personally don't see that.  But what we see here are the

9    rioters being extremely verbally and physically aggressive

10   towards a line of police officers who is clearly trying to get

11   to the building, to a line of police officers who are just

12   trying to do their jobs.

13           And whether there were other rioters who tried to

14   grab the baton from Mr. Montgomery just goes to show that

15   Mr. Montgomery and Mr. Knowlton and Mr. Wilson were part of

16   this group and did not back down from a group that was there to

17   obstruct the police from doing their jobs.

18           And that, in turn, they were trying to get to the

19   Capitol to obstruct the proceeding.  I think that the

20   description of Mr. Montgomery's assault on Officer Hodges as a

21   little episode of violence, really minimizes what is going on

22   there.  He kicked the officer so hard that the officer falls on

23   the ground.  And to then say that that is an act of

24   demonstration and an act of protest, that, you know, he was

25   there because he was advocating for some other type of

1    proceeding, that just does not flow from the actual conduct

2    that he engaged in.

3            Your Honor, I also want to spend some time just

4    talking about what Mr. Mayr described as a peaceful entry

5    through the upper west terrace door.

6            Your Honor, we have a section in the stipulated

7    facts, which is paragraph 38, where -- it is at the bottom of

8    page 15 on to page 16, that says, "If called to testify

9    Lieutenant DM would testify to the following:  On January 6,

10    Lieutenant DM was a sergeant at the USCP.  The upper west

11    terrace door was typically secured via magnetic locks and would

12    only open as part of an emergency egress for a fire.  If the

13    door was opened, a loud alarm would sound.

14            "At approximately 2:35 p.m., Lieutenant DM was

15    standing in the interior of the upper west terrace door near

16    the stairs leading up to the rotunda.  Lieutenant DM and his

17    fellow USCP officers were severely outnumbered by the

18    individuals entering through the upper west terrace door.  As a

19    result, he and his fellow officers could not safely deploy

20    non-lethal force to stop the individuals.  Lieutenant DM made

21    the calculated decision not to escalate the situation and

22    decided instead to take a defensive position for the safety of

23    his fellow officers and the individuals who entered."

24            Your Honor, I don't want to belabor this point

25    because I know that Your Honor asked counsel about, you know,

1    what is the context of all of these rioters entering through

2    this door?  And the context is how they got there and the

3    context is how huge this crowd is.  They got there by flighting

4    and yelling at officers.  They got there by going up this

5    staircase that was filled to the brim with rioters.  And then

6    they got there by going through this door that was -- with

7    alarms blaring.  And, Judge, you saw the video.  There is,

8    like, boxes in the hallway.  This is clearly not a visitor

9    entrance.  This is not the way that a normal person who has

10   gone through screening is entering the United States Capitol

11   building.

12          And so, yes, they entered without violence at that

13   moment, but how they got there absolutely matters.

14          THE COURT:  Which one was Officer DM?

15          MS. NEVIN:  Your Honor, let me show you in --

16          Give me one moment.

17          Ms. Roberts, can we pull up Exhibit 11?  Maybe go to

18   about where they enter at 2:35, so maybe just go -- yep.

19          If you'll play there.

20          Can you stop it right there?

21          Judge, he is that -- the bald guy with the mask here.

22          THE COURT:  He was the officer who was at the door?

23          MS. NEVIN:  That is correct.

24          THE COURT:  He was the one who was opening it to

25   allow people to leave; correct?

1          MS. NEVIN:  That is our argument, yes.

2          THE COURT:  I think everyone agrees he did open it to

3    allow people to leave.

4          MS. NEVIN:  Yes.

5          THE COURT:  The question is, what is your position

6    with respect to whether he opened it to allow anybody in?

7          MS. NEVIN:  Your Honor, my decision is what the

8    stipulated facts say, that there are hundreds of people coming

9    through this door.  And he and the few officers that he has

10   with him cannot physically do anything to prevent these people

11   from coming in.

12         Your Honor, give me one moment.  So moving on --

13   thank you, Ms. Roberts.

14         Moving on to what happened right outside the Senate

15   gallery and then inside the gallery.

16         There was argument that because the Senate floor was

17   empty, there was nothing there to obstruct.  And that because

18   they were in the gallery and not on the floor, this isn't

19   intent to obstruct the proceeding.  You know, when they are

20   there -- at least Mr. Wilson joined with other rioters are

21   shouting treason towards the Senate floor, which begs the

22   interpretation that they believed what had just been happening

23   on the Senate floor was treasonous.

24         And given the fact that they go immediately from the

25   Senate gallery, which, again, they knew they were not supposed

1    to be in, because they saw the US Capitol Police officers

2    trying to lock the door, they saw other rioters assaulting the

3    officers to prevent them from locking the door.  Nevertheless,

4    they went immediately down to the second floor right near an

5    entrance to the actual -- to the Senate floor.

6              Your Honor, as to this confrontation with Officer

7    Morgan, I want to draw your attention to paragraph 49, which is

8    on page 20.  But I actually want to go to page 21, which is 49G

9    through J.  And this is a section that begins "If called to

10   testify, Officer BM, would have testified that Officer BM

11   recalled that Montgomery, Knowlton and Wilson were more

12   aggressive than the other rioters he had encountered on that

13   day.  Knowlton said to Officer BM 'We are with you guys.'

14   Officer BM did not interpret Knowlton's statement as actual

15   sympathy with the police.  He believed that if Knowlton was

16   really with the police, then Knowlton should not have been

17   breaking the law.  Officer BM believed that Knowlton's

18   intention was to confront the senators inside the Senate

19   chamber.  Officer BM believed that when Montgomery said to him,

20   all you got to do is step out of the way, Montgomery meant that

21   he wanted the police to allow the rioters into the Senate

22   chamber to confront the senators.

23             "Officer BM believed that Montgomery, Knowlton and

24   Wilson eventually left the area once there was increased police

25   presence and" -- I'm sorry.  "Officer BM believed that

1    Montgomery, Knowlton and Wilson eventually left the area, once

2    there was increased police presence and because it was clear

3    that he was not going to let them into the Senate chamber."

4         Your Honor, I direct your attention to that just so

5    it is clear that the officer was not interpreting this very

6    aggressive verbal confrontation as, we are here, because we

7    want a different proceeding, we are here because we want a

8    remedy for something else.

9         He, the person who was there, interpreted it as, we

10   want to get onto the Senate floor.

11        THE COURT:  So I am not sure whether ultimately it

12   matters whether the desire was to get onto the Senate floor,

13   although I know the government has drawn that line in some

14   other cases.  But what do you say to the defense's argument

15   that the defendants walked past the entrance or one or two

16   entrances to the Senate floor, which they could have presumably

17   entered through and then turned to the right before they

18   encountered the officers.  And then when they were sent back,

19   they went back past the same entrances to the Senate floor.

20   And had they wanted to enter the Senate floor.  They could have

21   done so there.

22        MS. NEVIN:  I would say -- and this fact or nonfact

23   is not in evidence.  But we don't know whether those doors were

24   locked or not.  We simply don't know.  But what we do know is

25   that the area where Officer Morgan was, was identified as an

1    area adjacent to the Senate.

2            So it was clear to them where they were.  And it is

3    not just clear to them where they were circumstantially because

4    of the signs or pamphlets or whatever, it is clear where they

5    were based on what they were saying to Officer Morgan.

6            Your Honor I want to briefly address Mr. Barbari's

7    argument that because there are different interpretations to

8    Mr. Wilson's statement about we are here to do the senators'

9    jobs, that that means this isn't proven beyond a reasonable

10   doubt.  An alternative explanation is not plausible

11   explanation.  It is not a credible explanation.  And here, it

12   is certainly not an explanation that is supported by the

13   evidence.  The evidence shows that Mr. Wilson was in the Senate

14   gallery shouting, treason, then comes down two steps away from

15   the Senate floor and is talking to an officer who is supposed

16   to be protecting the Senate floor saying, We are here to do the

17   jobs of the senators.  So I don't think that is a plausible

18   interpretation that counsel has offered to the court.

19           I also want to address the fact that, you know, the

20   defense has argued that there came a point where their clients

21   had some type of epiphany that they weren't supposed to be in

22   this building and then immediately decided, okay, we need to

23   ask a cop how we can get out of here.  Your Honor, just because

24   at some point, they decided to leave this building does not

25   negate everything that had happened from 2:02 p.m. on the west

1    lawn until 2:53 when they exit the building.

2            Just because there came a moment where they decided,

3    oh, it seems like we are not going to be able to stop the

4    steal, it seems like we are not going to be able to get onto

5    the Senate floor, that does not negate prior corrupt intent.

6            And then there was a lot of argument about you don't

7    have social media, you don't have weapons, you don't have

8    concealment of evidence.  And Your Honor, that is true, we do

9    not have those in this record.  That does not change the fact

10    that based on this record and the inferences that Your Honor

11    can draw from them that there is enough evidence to convict the

12    defendants of 1512.

13            Thank you, Your Honor.

14            THE COURT:  All right.  Thank you.

15            Anything else that the defense would like to add?

16            MR. SULLIVAN:  Not on behalf of Mr. Knowlton, Your

17    Honor.

18            MR. BARBARI:  Not on behalf of Mr. Wilson, Your

19    Honor.

20            MR. PIERCE:  No, Your Honor, not on behalf of

21    Mr. Montgomery.

22            THE COURT:  Let me just talk about next steps then.

23    I'd like to spend some time to go through the video and

24    exhibits with some care.  I have seen most of it, but I want to

25    go back and look at it slowly and carefully.  I know folks have

1    traveled from out of town to be here.  So what I would propose

2    if it works for your schedules would be to come back sometime

3    on Wednesday.  And I can give you my decision on Wednesday,

4    after I have had a chance to really carefully review the

5    evidence.

6              Does that timing work for everybody?

7              MR. PIERCE:  Your Honor, I think as long as it is

8    okay with Mr. Montgomery, it is just you giving your decision,

9    I think we'll just have Mr. Roots here.  If that is okay,

10   because I am scheduled to fly back.

11             THE COURT:  That is up to you all.  I will leave

12   that -- as long as there is counsel for each defendant here,

13   that is okay with me.  But I will leave up to you all how you

14   want to deal with that.

15             MR. SULLIVAN:  That is fine by us, Your Honor.

16             MR. BARBARI:  That is fine.

17             THE COURT:  So let me ask the deputy clerk --

18             Ms. Nevin.

19             MS. NEVIN:  Your Honor, I have to be before Judge

20   Contreras from 2:00 to 4:00.

21             THE COURT:  So let's find a time other than that to

22   do this.

23             How about --

24             THE COURTROOM DEPUTY:  11:00?

25             THE COURT:  Will 11:00 a.m. work for everybody?

1              MR. BARBARI:  Yes, Your Honor.

2              THE COURT:  So let's come back at 11:00 on Wednesday.

3     That will give me a chance to carefully go through the

4     evidence.  I will see you then.

5              These were very helpful presentations.

6              Appreciate it.

7              (Proceedings concluded at 3:46 p.m.)

1                        C E R T I F I C A T E

2

3              I, SHERRY LINDSAY, Official Court Reporter, certify

4        that the foregoing constitutes a true and correct transcript of

5        the record of proceedings in the above-entitled matter.

6

7

8

9

10                        Dated this 19th day of April, 2024.

11

12                        _____
                          Sherry Lindsay, RPR
13                        Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

**DEFENDANT KNOWLTON: [13]** 6/8
6/11 6/13 28/3 28/6 28/9 28/12
28/19 28/23 29/2 32/21 34/17
34/21
**DEFENDANT MONTGOMERY: [14]** 5/8
5/11 5/13 29/19 29/24 30/2 30/12
30/16 30/20 30/23 30/25 35/6 35/8
35/11
**DEFENDANT WILSON: [13]** 5/20 5/23
6/1 31/4 31/9 31/12 31/21 31/25
32/3 32/7 32/10 35/21 35/25
**MR. BARBARI: [17]** 4/17 20/16
25/15 32/13 35/14 35/16 86/25
87/3 89/12 89/21 90/4 93/20
117/14 117/17 127/18 128/16 129/1
**MR. BENOWITZ: [2]** 32/14 33/7
**MR. MAYR: [56]** 4/13 20/21 25/9
27/10 27/25 29/3 29/10 33/6 33/19
33/22 34/1 34/9 43/16 43/20 43/24
46/6 46/11 48/2 48/6 48/8 49/16
49/21 50/10 50/13 51/11 51/15
51/19 51/23 52/9 52/12 52/17
52/25 53/6 53/14 53/16 53/19 54/7
58/7 58/9 58/25 60/10 61/9 61/15
61/20 61/24 67/9 67/18 67/25
69/15 69/25 70/21 71/4 71/14
71/19 102/10 118/14
**MR. PIERCE: [7]** 4/20 33/11 34/25
94/25 118/16 127/20 128/7
**MR. ROMANO: [14]** 57/9 57/11
57/18 57/25 60/1 60/25 61/6 65/3
95/16 96/1 101/7 101/10 101/20
102/5
**MR. ROOTS: [39]** 21/2 22/21 24/13
26/1 33/24 95/3 95/7 96/17 97/4
97/18 97/23 98/3 98/7 98/15 100/1
100/14 100/19 100/24 101/24 102/7
102/13 103/5 104/3 104/6 104/12
105/16 109/2 109/7 109/24 110/10
112/15 112/18 112/20 112/24
113/18 114/9 115/1 115/13 115/16
**MR. SULLIVAN: [35]** 62/4 62/6
62/18 63/15 63/19 63/25 64/7
64/13 64/23 65/1 66/4 66/18 66/24
67/6 73/5 75/14 75/24 76/19 76/21
80/3 80/7 81/5 81/24 82/6 82/11
82/18 82/20 83/3 83/6 83/13 86/7
86/19 86/22 127/16 128/15
**MS. NEVIN: [44]** 4/7 6/16 7/19
24/6 25/1 26/9 26/18 26/20 27/4
27/7 29/13 33/3 33/13 34/6 36/6
36/18 36/21 37/2 37/8 37/22 38/4
38/10 39/7 41/7 42/3 42/6 42/17
52/21 56/17 105/9 109/16 109/19
110/1 110/5 118/20 119/8 119/21
122/15 122/23 123/1 123/4 123/7
125/22 128/19
**THE COURT: [232]**
**THE COURTROOM DEPUTY: [12]** 4/2
6/19 28/1 29/16 29/20 31/5 43/23
46/4 46/9 101/21 102/11 128/24
**THE REPORTER: [1]** 95/24

**'**

**'We [1]** 124/13

**0**

**02903 [1]** 1/19

**1**

**1.1 [1]** 39/3
**10 [4]** 1/18 38/11 42/12 56/25
**103 [1]** 85/25
**10:04 [1]** 1/6
**10:50 [1]** 34/3
**11 [7]** 36/11 46/1 46/14 47/3
106/11 106/13 122/17
**111 [8]** 95/14 98/12 98/14 100/10
101/12 101/25 108/1 109/17
**118 [1]** 3/7

**11:00 [1]** 128/24
**11:00 on [1]** 128/25
**11:00 on [1]** 129/2
**12 [1]** 48/10
**12:35 [1]** 67/16
**13 [2]** 50/16 51/16
**1300 [1]** 2/3
**132 [1]** 23/10
**134 [1]** 23/11
**136 [1]** 23/13
**14 [1]** 54/1
**14:01:05 [1]** 39/5
**14:03:15 [1]** 39/10
**15 [5]** 33/22 54/12 56/24 88/16
121/8
**1512 [30]** 7/2 18/6 26/14 36/8
38/12 43/9 43/13 44/2 44/14 60/18
65/7 65/15 87/18 88/15 93/12
93/23 94/22 95/11 95/19 97/11
100/16 100/21 101/6 101/14 102/1
108/24 109/4 109/22 114/10 127/12
**16 [6]** 15/16 17/10 33/4 33/12
76/17 121/8
**16.1 [1]** 41/4
**166 [1]** 23/14
**167 [1]** 23/15
**17 [3]** 52/20 52/22 54/11
**170 [1]** 23/16
**171 [1]** 23/17
**173 [1]** 23/18
**174 [1]** 23/20
**175 [1]** 23/21
**1752 [21]** 7/4 7/12 7/16 7/17 7/22
8/7 8/9 8/11 8/12 8/16 8/18 9/2
9/7 9/17 10/17 10/19 11/10 12/22
36/12 70/4 70/14
**176 [1]** 23/22
**177 [1]** 23/23
**179 [1]** 23/25
**18 [10]** 1/5 7/4 7/11 7/22 54/22
56/24 87/18 88/20 95/14 108/1
**180 [1]** 24/1
**181 [1]** 24/3
**19 [1]** 104/8
**19th [1]** 130/10
**1:30 [1]** 67/13
**1:45 [2]** 67/14 67/15

**2**

**2-minute [1]** 107/10
**20 [2]** 50/23 124/8
**200 [1]** 2/4
**20001 [3]** 1/16 1/25 2/15
**20004 [1]** 2/8
**20005 [1]** 2/4
**2001 [1]** 90/2
**2020 [1]** 40/24
**2021 [2]** 13/13 17/24
**2023 [1]** 13/11
**2024 [2]** 1/5 130/10
**21 [1]** 124/8
**21-46 [2]** 1/4 4/2
**2113 [3]** 118/25 119/2 119/3
**22 [1]** 95/20
**23 [1]** 95/20
**255 [1]** 118/22
**28 [1]** 91/12
**287 [1]** 119/5
**29 [11]** 38/22 45/3 56/18 57/12
57/21 58/24 59/1 61/21 97/8
110/11 110/19
**29-like [1]** 62/8
**29-type [1]** 58/3
**2:00 [1]** 128/20
**2:00 p.m [1]** 38/25
**2:01 [1]** 68/6
**2:01 p.m [1]** 45/21
**2:02 p.m [1]** 126/25
**2:20 p.m [2]** 46/16 88/19
**2:29 [1]** 45/21
**2:33 [1]** 46/21
**2:33 point [1]** 46/17

**2:35 [3]** 49/23 88/16 122/18
**2:35 page [2]** 121/7 121/14
**2:40 p.m [1]** 40/14
**2:42 [1]** 49/23
**2:48 [1]** 101/22
**2:48:42 [1]** 119/13
**2:48:52 [1]** 119/15
**2:52 [1]** 54/4
**2:53 [1]** 127/1
**2:53 p.m [2]** 54/13 88/20

**3**

**30 [3]** 34/1 34/2 101/15
**333 [2]** 1/24 2/14
**36 [1]** 3/3
**38 [1]** 121/7
**3:46 [1]** 129/7
**3d [1]** 9/19

**4**

**40 [2]** 12/22 87/15
**400 [1]** 2/4
**409 [1]** 2/7
**41 [2]** 40/21 82/18
**43 [1]** 3/4
**44 [1]** 104/24
**45 [1]** 105/18
**46 [4]** 1/4 4/2 70/9 70/9
**47 [2]** 103/5 103/22
**49 [4]** 44/12 107/4 119/13 124/7
**49B [1]** 42/10
**49G [1]** 124/8
**4:00 [1]** 128/20

**5**

**5-minute [1]** 49/4
**50 [1]** 107/8
**5104 [3]** 12/23 87/15 87/16
**52 [2]** 56/19 96/7
**53 [1]** 95/20
**540 [1]** 118/22
**549 [1]** 9/18
**55 [1]** 9/19
**5:14 [1]** 41/5
**5th [1]** 16/23

**6**

**601 [1]** 1/15
**641 [4]** 37/7 37/16 88/13 118/21
**649 [1]** 1/18
**6710 [2]** 1/24 2/14
**6th [1]** 16/23

**7**

**700 [1]** 1/18

**8**

**80 percent [2]** 24/24 25/7
**87 [2]** 3/5 87/13

**9**

**95 [1]** 3/6
**99 percent [1]** 25/7

**A**

**a.m [3]** 1/6 34/3 128/25
**abandoned [1]** 119/10
**abiding [1]** 40/5
**ability [2]** 30/10 31/20
**able [5]** 39/22 43/7 118/21 127/3
127/4
**about [84]** 1/10 5/18 5/22 6/10
9/17 12/25 14/1 17/19 18/7 21/4
23/3 25/2 29/12 34/20 35/15 35/24
36/16 42/4 42/24 44/7 46/21 55/6
58/1 58/13 61/9 63/14 65/25 66/16
66/17 69/1 69/3 69/9 71/8 72/15
74/9 74/9 76/9 78/19 94/12 95/17
96/1 96/9 96/13 97/5 98/24 99/8
99/9 99/24 100/11 100/12 100/16
101/8 101/14 104/16 104/17 104/24

**about...[28]** 107/3 107/8 107/10 107/18 108/23 111/1 111/12 111/13 112/11 112/18 113/2 113/5 115/19 115/19 116/7 116/17 117/1 117/1 117/24 118/2 118/23 121/4 121/25 122/18 126/8 127/6 127/22 128/23
**above [1]** 130/5
**above-entitled [1]** 130/5
**abrupt [2]** 103/18 106/25
**absence [2]** 58/19 72/24
**absent [1]** 56/6
**absolutely [5]** 27/25 63/19 69/21 75/24 122/13
**abundance [1]** 34/1
**accept [5]** 28/15 30/7 31/17 32/23 99/6
**accepted [1]** 57/19
**accepts [1]** 44/24
**access [1]** 69/17
**accord [1]** 116/20
**according [1]** 108/1
**accusations [1]** 13/18
**accused [1]** 95/15
**accusingly [1]** 39/12
**acknowledge [1]** 45/7
**acknowledged [1]** 70/2
**acknowledges [2]** 44/24 57/15
**acquaintances [1]** 55/20
**acquit [1]** 96/14
**act [12]** 7/5 14/17 19/2 19/3 19/7 19/7 19/9 20/8 90/2 116/13 120/23 120/24
**acted [9]** 17/12 38/15 44/18 87/24 93/3 93/16 94/1 94/3 109/21
**acting [7]** 80/11 80/13 111/21 111/24 113/4 113/23 113/25
**action [2]** 1/3 37/23
**actions [9]** 43/5 44/16 44/17 44/25 55/2 55/6 72/15 87/22 87/23
**activity [1]** 75/23
**acts [1]** 56/14
**actual [4]** 27/12 121/1 124/5 124/14
**actually [18]** 6/23 14/2 26/24 36/24 38/2 38/9 47/22 49/4 66/1 66/12 66/13 102/23 105/6 107/20 109/4 117/19 117/19 124/8
**add [3]** 117/19 118/10 127/15
**additional [9]** 16/12 22/10 29/3 57/4 93/7 95/12 117/15 118/1 118/5
**address [6]** 26/3 88/5 101/14 119/21 126/6 126/19
**addressed [1]** 15/3
**adequately [1]** 13/13
**adjacent [1]** 126/1
**Administration [1]** 16/5
**admission [1]** 33/14
**admit [1]** 52/18
**admits [1]** 14/12
**admitted [3]** 33/12 52/23 79/12
**adopt [1]** 87/5
**adopting [1]** 10/25
**adopts [1]** 62/13
**advised [1]** 35/17
**advocating [1]** 120/25
**affect [3]** 20/11 87/21 94/2
**afraid [1]** 77/8
**after [16]** 13/22 19/9 37/3 39/15 42/6 50/1 52/22 53/15 66/18 72/11 88/17 90/14 94/12 94/18 110/22 128/4
**afternoon [5]** 4/15 45/21 68/6 75/10 87/4
**afterwards [1]** 72/5
**again [43]** 40/11 41/5 47/19 48/16 48/19 48/20 48/21 51/8 51/24 54/13 55/3 56/15 58/9 61/21 65/22 66/9 68/11 68/15 68/21 68/22 68/25 69/4 69/19 69/25 70/3 70/14 70/16 70/17 70/19 70/23 71/20 71/23 71/24 84/5 86/12 93/21 102/15 104/12 105/2 106/13 116/6 123/25
**against [22]** 7/6 7/17 28/17 30/15 31/19 31/23 36/20 48/17 68/10 68/14 68/16 68/19 72/23 85/17 89/16 90/7 91/13 96/10 99/2 99/4 99/18 105/23
**agencies [1]** 16/1
**agency [4]** 11/16 15/1 15/11 15/23
**agent [2]** 4/11 23/22
**ages [1]** 110/22
**aggression [1]** 107/1
**aggressive [4]** 107/13 120/9 124/12 125/6
**ago [2]** 56/5 105/8
**agree [17]** 8/25 15/11 24/7 25/10 25/16 25/17 27/8 52/18 58/21 64/12 65/2 65/5 96/2 97/14 98/9 98/10 112/23
**agreed [10]** 10/10 25/3 25/11 25/25 26/14 36/13 45/1 96/24 97/6 100/1
**agreeing [2]** 99/5 99/5
**agreement [10]** 14/6 25/23 54/8 56/19 57/15 59/7 60/21 62/6 96/12 100/10
**agreements [1]** 60/4
**agrees [3]** 56/22 62/20 123/2
**ahead [17]** 27/22 49/19 51/23 51/23 51/25 52/17 65/12 66/9 102/13 103/3 103/24 104/23 105/5 106/1 106/19 107/14 108/11
**aid [1]** 67/3
**ajar [1]** 75/7
**alarm [2]** 40/13 121/13
**alarms [3]** 40/11 68/25 122/7
**alerted [1]** 11/25
**all [106]** 4/19 4/23 4/24 5/15 6/2 6/17 6/25 7/17 10/9 13/17 22/25 23/7 23/8 24/17 25/3 25/8 25/18 26/5 26/17 27/14 27/22 29/10 29/14 31/1 31/2 31/6 32/11 32/23 33/16 33/22 34/4 34/23 35/12 36/4 38/6 38/13 42/18 42/21 43/5 43/14 44/1 44/3 44/21 45/13 45/17 45/17 45/20 54/22 56/23 58/10 61/4 63/11 63/17 65/11 65/13 66/25 67/17 67/22 71/7 72/24 73/1 73/3 74/10 74/10 76/15 78/1 78/20 78/22 78/24 82/7 85/20 86/24 89/3 90/12 92/23 93/19 93/21 93/22 94/4 94/20 94/23 94/24 95/1 95/8 95/10 95/19 98/10 99/18 101/21 101/23 102/6 103/7 106/20 106/23 107/11 108/5 112/8 112/25 113/11 113/18 118/17 122/1 124/20 127/14 128/11 128/13
**allegation [6]** 16/22 95/13 100/24 108/21 110/16 111/24
**allegations [6]** 18/10 19/1 55/18 72/23 117/21 118/1
**allege [3]** 7/22 11/24 17/2
**allegedly [2]** 13/9 17/14
**alleges [5]** 7/4 7/11 12/1 13/21 18/2
**alleging [3]** 13/11 14/2 57/13
**allow [10]** 36/14 43/1 57/19 65/6 70/13 71/22 122/25 123/3 123/6 124/21
**allowed [10]** 42/24 47/10 47/18 50/24 51/14 69/2 69/3 69/16 90/15 115/3
**allowing [2]** 46/18 69/5
**allows [2]** 46/23 60/7
**almost [4]** 21/12 39/15 92/16 114/11
**alone [7]** 9/14 35/20 35/20 43/8 90/7 106/20 107/11
**along [2]** 37/21 117/19
**already [9]** 11/19 56/2 86/17
**also [44]** 4/21 10/14 10/23 11/23 12/10 14/10 15/15 18/2 19/1 29/5 30/13 31/22 48/15 49/6 53/19 59/1 61/17 68/9 68/19 69/2 71/12 72/11 72/20 76/7 77/4 86/15 87/10 88/11 88/21 89/9 89/25 90/10 90/24 91/20 92/21 94/12 95/12 105/20 106/19 108/22 115/20 117/23 121/3 126/19
**also want [1]** 126/19
**alternative [6]** 77/10 77/12 83/25 118/3 118/8 126/10
**although [3]** 10/20 44/6 125/13
**am [71]** 7/16 7/21 8/16 12/8 12/10 12/16 12/25 18/25 19/22 20/10 23/6 24/16 24/18 25/9 26/7 28/23 29/21 32/22 36/8 37/15 38/8 45/24 46/7 46/24 53/25 54/3 56/21 57/6 58/10 58/12 59/9 59/18 60/15 61/3 61/13 66/10 66/16 66/21 66/22 67/5 67/19 71/14 72/25 75/15 77/22 81/4 86/16 88/14 88/15 89/13 95/17 98/25 99/7 99/15 100/2 100/10 100/11 100/17 100/21 101/2 105/9 106/2 107/3 108/2 108/4 113/10 114/4 114/6 119/21 125/11 128/10
**ambiguity [1]** 8/11
**ambiguous [2]** 9/1 12/9
**amend [1]** 25/6
**Amendment [11]** 12/19 12/21 23/14 29/5 30/14 31/23 73/25 74/8 116/12 116/15 116/16
**amendments [1]** 90/2
**AMERICA [2]** 1/3 4/3
**Americans [2]** 42/20 112/3
**among [2]** 20/5 101/18
**amongst [3]** 33/17 103/21 104/16
**amount [2]** 11/19 73/7
**amounts [2]** 45/8 70/15
**ample [1]** 10/3
**analogy [1]** 77/3
**analysis [1]** 66/24
**analyze [1]** 10/9
**Andries [1]** 8/23
**angry [1]** 84/5
**announced [1]** 62/22
**anomalies [1]** 102/20
**another [18]** 14/12 15/10 15/22 22/24 46/20 48/3 48/11 54/14 65/17 70/10 81/19 87/17 94/14 107/7 107/20 109/21 111/14 116/12 116/19
**answer [5]** 52/13 66/16 76/24 77/1 88/14
**anticipate [2]** 55/9 65/20
**anticipated [3]** 27/10 60/2 60/8
**any [115]** 7/5 7/6 7/7 7/24 8/11 9/3 9/9 9/23 10/20 10/23 11/20 11/21 14/23 14/24 15/14 16/8 16/13 16/16 16/25 16/25 17/2 17/25 18/9 19/7 19/12 19/14 20/8 20/11 23/9 24/4 24/19 24/25 26/16 27/16 27/17 28/17 29/6 31/23 33/5 33/18 48/17 48/18 49/17 50/4 50/5 51/3 55/9 56/13 59/17 68/1 68/7 68/7 68/8 68/10 68/13 68/15 68/16 68/16 68/23 68/23 68/23 68/24 69/7 70/20 71/5 71/7 71/15 71/15 71/16 71/22 71/22 71/22 72/20 76/2 78/5 83/14 84/18 85/7 88/14 90/15 91/1 91/3 91/5 91/5 91/5 91/7 91/14 91/21 91/24 92/14 93/4 93/10 94/16 97/8 98/12 103/22 104/19 108/19 108/19 109/9 109/10 109/11 109/15 109/25 110/16 110/16 111/24 112/13 112/13 112/14 112/16 112/17 114/4 114/12 118/17
**anybody [2]** 112/17 123/6
**anymore [1]** 110/20

**A**

**anyone [12]**   9/2 20/19 26/4 32/11
42/23 68/10 69/23 92/15 110/25
112/14 112/14 113/2
**anything [27]**   16/18 26/2 27/2
27/5 29/11 30/10 31/19 32/11
32/17 32/20 32/22 47/18 55/5 76/7
77/25 91/2 109/11 109/13 111/8
111/8 111/24 113/21 113/22 117/13
118/13 123/10 127/15
**anyway [2]**   20/10 24/20
**anywhere [1]**   55/12 81/8 81/8
**apologize [3]**   95/16 105/9 109/16
**appeal [1]**   60/22
**appealable [1]**   66/12
**Appeals [1]**   59/22
**APPEARANCES [3]**   1/12 1/21 2/1
**appears [1]**   53/4
**appellate [2]**   22/1 59/12
**appendix [1]**   42/15
**application [2]**   12/10 61/7
**applies [1]**   8/3
**apply [5]**   11/5 12/12 19/18 59/13
62/23
**appreciate [6]**   29/8 44/5 52/15
67/4 118/12 129/6
**approach [2]**   4/5 51/2
**appropriate [5]**   26/8 33/2 57/5
59/15 67/12
**approximately [7]**   38/25 40/14
88/12 88/16 88/19 88/20 121/14
**April [1]**   130/10
**arbitrary [1]**   11/8
**are [240]**
**area [24]**   7/8 7/25 8/6 8/14 8/20
9/10 9/16 9/22 10/3 11/17 42/9
48/21 50/11 51/20 51/20 53/2
53/11 68/8 103/15 105/3 124/24
125/1 125/25 126/1
**areas [2]**   10/19 70/3
**argue [19]**   11/13 11/23 18/23
37/22 45/2 59/8 62/8 62/14 65/7
73/7 96/10 96/14 98/9 100/1
101/25 102/1 108/5 109/24 110/1
**argued [1]**   126/20
**arguendo [2]**   80/15 80/21
**argues [4]**   8/8 8/10 8/12 17/18
**arguing [9]**   12/5 57/2 58/1 58/10
58/23 59/9 63/6 67/1 100/2
**argument [58]**   3/3 3/4 3/5 3/6 3/7
8/13 8/17 11/18 12/11 12/16 15/23
16/1 16/14 17/5 23/1 26/14 36/2
36/5 43/19 44/8 49/13 56/18 56/20
56/25 57/1 57/21 58/2 58/3 58/5
60/11 62/8 62/16 62/18 62/19
64/19 66/19 67/5 81/10 87/2 87/7
87/9 88/15 92/1 92/10 95/2 96/13
98/12 98/13 100/11 100/12 101/2
118/19 120/6 123/1 123/16 125/14
126/7 127/6
**arguments [10]**   8/4 19/1 26/20
27/13 44/1 87/6 95/10 100/16
101/14 119/22
**arise [1]**   70/6
**armed [2]**   56/3 69/21
**around [6]**   47/18 48/12 68/6 107/6
107/9 107/11
**array [1]**   64/20
**arrests [1]**   104/19
**arrive [1]**   103/16
**arrived [1]**   104/3
**arriving [1]**   103/11
**arrow [1]**   74/14
**article [3]**   13/10 13/11 16/17
**articulate [1]**   64/18
**articulated [2]**   64/21 81/12
**as [154]**
**aside [5]**   42/18 43/4 59/22 60/19
60/22
**ask [17]**   26/11 27/15 32/12 32/15
34/11 35/18 36/16 43/12 70/19

85/15 92/18 92/20 94/21 106/16
128/12
**asked [3]**   78/19 117/5 121/25
**asking [7]**   20/24 43/2 43/3 54/8
72/3 72/7 116/14
**asks [3]**   54/7 116/4 118/3
**asportation [2]**   118/24 119/1
**assault [4]**   36/12 71/5 108/3
120/20
**assaulted [1]**   41/1
**assaulting [2]**   95/14 124/2
**assaultive [4]**   92/7 92/14 92/25
93/4
**assaults [1]**   41/7
**assertion [2]**   14/23 58/22
**asserts [5]**   13/15 14/15 17/21
19/3 19/25
**assistance [2]**   28/22 32/2
**assume [1]**   19/5
**assuming [1]**   18/10
**asterisk [1]**   38/7
**attaboy [1]**   84/22
**attacks [1]**   13/7
**attempt [5]**   37/6 37/7 37/9 37/16
72/6
**attempted [2]**   93/23 93/25
**attempting [2]**   76/1 105/12
**attempts [2]**   49/17 50/4
**attending [1]**   117/22
**attention [4]**   19/22 55/14 124/7
125/4
**attitude [1]**   103/21
**attorney [3]**   23/24 30/6 31/16
**ATTORNEY'S [2]**   1/14 95/8
**attorney-client [1]**   23/24
**August [1]**   13/11
**authenticity [1]**   33/9
**authority [6]**   8/2 8/6 8/15 9/4
10/16 15/14
**automatically [1]**   11/3
**availability [2]**   21/19 21/24
**Avenue [1]**   1/24 2/14 111/2
**aware [3]**   19/23 86/16 108/3
**awareness [1]**   94/1
**away [7]**   39/16 40/20 42/7 86/5
105/13 108/14 126/14

**B**

**back [58]**   17/25 32/16 34/2 37/12
37/21 38/8 39/21 39/22 46/10 47/3
47/7 47/17 47/19 48/6 48/9 49/2
49/15 50/25 51/15 51/19 53/10
53/16 53/16 53/24 53/25 54/3
54/11 54/25 55/5 65/21 65/24
67/13 67/15 70/22 74/16 74/17
85/21 86/3 97/24 99/24 100/18
101/18 105/6 105/23 106/8 106/22
107/1 107/5 107/21 110/10 110/11
120/16 125/18 125/19 127/25 128/2
128/10 129/2
**backs [1]**   52/7
**backwards [1]**   39/19
**bad [3]**   17/12 17/13 63/8
**bag [3]**   36/23 88/13 119/18
**Bagley [1]**   18/15
**bail [1]**   55/23
**balance [2]**   85/17 85/18
**bald [1]**   122/21
**bank [1]**   118/25
**Bankruptcy [1]**   1/23 2/13
**BARBARI [9]**   2/6 3/5 4/18 25/15
35/12 35/14 35/15 87/1 87/4
**Barbari's [1]**   126/6
**barging [1]**   104/20
**barricades [1]**   91/22
**barriers [2]**   68/8 91/21
**BARRY [2]**   2/6 16/4
**base [1]**   92/21
**based [14]**   16/3 25/3 26/9 33/13
41/17 45/15 59/15 65/22 94/5
97/12 100/22 119/22 126/5 127/10
**basically [4]**   52/2 57/20 98/9

115/17
**basis [5]**   12/7 14/21 57/3 74/10
97/2
**Bates [1]**   8/22
**baton [19]**   39/16 98/1 101/2
102/16 102/24 105/1 106/2 106/4
106/10 106/16 106/18 107/4 107/8
107/16 107/24 108/2 109/5 109/8
120/14
**battle [2]**   91/8 91/17
**be [128]**   7/9 7/10 8/1 8/11 8/19
9/12 9/17 10/20 10/23 11/13 13/20
15/6 16/25 16/25 17/15 17/19 18/9
18/10 18/14 19/16 20/3 24/25 25/4
26/11 26/16 26/21 26/24 27/2 27/6
27/13 34/7 34/24 37/17 38/5 38/21
40/3 40/12 42/24 44/5 46/1 53/4
53/19 56/1 56/8 59/11 59/11 59/22
59/24 60/3 60/4 60/8 60/16 60/22
62/19 63/20 63/20 63/21 64/1 64/4
65/12 65/15 65/22 66/8 66/8 66/14
66/15 66/16 66/24 67/9 67/12 69/3
71/10 74/5 75/8 76/4 76/9 76/10
77/9 77/15 77/15 77/24 80/18
80/18 80/23 81/10 81/22 83/21
85/14 89/20 94/2 96/25 98/24
99/11 99/12 99/13 101/8 101/9
101/11 101/13 101/15 104/15 109/6
109/11 109/13 109/22 110/8 110/23
110/24 111/4 111/10 111/15 111/15
112/4 112/6 112/12 113/25 114/19
115/14 115/17 116/6 124/1 126/16
126/21 127/3 127/4 128/1 128/2
128/19
**because [75]**   6/22 6/23 7/23 8/5
9/6 10/9 10/23 11/4 11/15 12/9
14/15 21/3 21/6 21/21 22/1 22/17
24/19 26/24 36/8 37/9 37/13 37/23
38/7 43/10 47/20 58/10 58/14
58/25 59/13 59/23 59/24 60/16
60/22 61/13 61/21 66/8 66/9 68/17
69/4 70/23 71/19 72/19 76/22
76/24 77/1 77/11 77/17 79/23 83/1
86/4 92/5 93/6 98/19 98/24 105/11
108/25 113/16 114/7 115/6 115/9
115/20 118/2 120/25 121/25 123/16
123/17 124/1 125/2 125/6 125/7
126/3 126/7 126/23 127/2 128/10
**becomes [1]**   9/22
**been [46]**   6/22 10/3 12/14 14/13
16/1 17/7 18/11 18/20 18/21 20/5
22/2 26/25 28/17 30/9 31/18 35/16
36/8 41/20 45/6 51/13 51/14 52/1
53/2 53/23 58/12 59/2 69/2 70/12
76/15 82/14 84/25 90/3 91/15
95/11 96/8 97/20 104/15 104/16
105/3 107/20 111/16 112/5 115/24
117/25 123/22 124/16
**before [57]**   1/10 4/25 5/3 19/6
19/21 22/15 26/10 27/1 27/16
28/11 28/25 30/1 30/18 31/11
34/11 48/9 50/19 50/22 55/19 57/2
58/13 58/15 59/10 59/17 62/7 66/8
67/25 68/4 72/12 73/7 73/12 75/6
80/15 80/21 81/6 81/15 88/6 89/10
89/11 90/13 90/25 90/25 91/3 91/4
91/20 91/22 91/23 93/3 93/10 94/6
97/3 100/18 103/22 106/4 112/8
125/17 128/19
**began [1]**   70/6
**begin [1]**   4/25
**beginning [3]**   54/4 110/12 119/25
**begins [2]**   11/2 124/9
**begs [1]**   123/21
**behalf [15]**   4/18 4/21 20/21 20/25
25/16 33/6 33/7 34/8 34/9 87/4
87/7 117/15 127/16 127/18 127/20
**behaving [4]**   102/21 103/2 106/5
106/18
**behavior [6]**   64/15 72/14 80/11
84/8 85/2 85/3
**behind [5]**   52/7 104/8 104/9

**B**

behind... **[2]**   104/10 106/21
being **[17]**   9/21 42/20 43/7 47/6
55/9 59/7 60/15 68/10 68/19 69/16
72/23 90/15 91/17 92/13 106/22
112/22 120/9
belabor **[2]**   87/8 121/24
belief **[1]**   111/25
believe **[23]**   6/21 6/25 12/23
22/22 42/4 44/25 45/19 50/10
53/20 54/9 59/8 63/20 65/5 67/22
96/11 100/20 102/8 104/3 106/10
113/19 114/3 114/21 118/25
believed **[11]**   41/19 112/2 112/3
114/1 114/17 123/22 124/15 124/17
124/19 124/23 124/25
believes **[1]**   113/3
bench **[12]**   1/10 4/24 6/6 6/24
21/21 22/12 22/16 22/18 22/18
23/4 23/5 98/22
benefit **[11]**   14/16 23/4 63/10
81/14 81/14 81/15 81/18 81/19
81/20 81/20 111/10
benefiting **[1]**   81/21
Bennie **[1]**   14/5
BENOWITZ **[4]**   2/6 2/7 4/18 25/14
best **[2]**   26/11 101/16
better **[3]**   55/21 98/22 101/13
between **[5]**   49/11 59/3 96/9
116/21 120/5
bewildering **[1]**   13/8
beyond **[47]**   36/7 36/14 38/13
44/14 45/5 57/14 57/20 58/17 59/2
59/6 59/13 59/19 60/18 60/24 61/7
61/10 61/16 65/8 67/2 73/8 74/11
74/24 77/17 80/20 81/1 83/16
83/19 85/19 86/16 87/11 87/20
88/23 89/6 90/8 93/15 94/8 96/3
96/19 96/20 96/23 97/2 97/8 97/15
98/21 100/4 100/6 126/9
biased **[1]**   21/7
Biden **[2]**   13/15 13/23
big **[2]**   83/11 116/20
binding **[1]**   10/11
Bingert **[1]**   8/24
bit **[10]**   45/9 45/14 60/6 67/11
67/18 96/6 97/4 99/15 103/18
103/20
blaring **[2]**   40/11 122/7
blatant **[1]**   40/12
block **[1]**   116/8
blood **[1]**   56/8
blue **[1]**   84/5
BM **[8]**   124/10 124/10 124/13
124/14 124/17 124/19 124/23
124/25
Boasberg **[1]**   16/13
Boasberg's **[1]**   8/20
boasting **[1]**   72/14
body **[15]**   39/11 50/19 50/20 92/4
92/12 98/16 101/3 102/3 102/19
103/6 104/25 105/17 106/11 107/10
120/7
body-cam **[3]**   98/16 102/3 106/11
body-worn **[4]**   92/4 92/12 102/19
103/6
bombs **[2]**   18/3 18/4
bootstrap **[1]**   86/20
both **[8]**   45/2 59/3 59/3 73/6
81/21 96/23 118/24 119/1
bothers **[2]**   76/19 76/21
bottom **[3]**   74/13 84/22 121/7
boundaries **[1]**   9/20
boxes **[2]**   16/6 122/8
BRADY **[6]**   1/6 4/3 4/14 14/17 15/7
17/10
bragging **[1]**   72/15
branch **[10]**   13/9 14/19 14/21
14/22 14/24 15/13 15/19 15/23
15/25 20/6
brave **[1]**   38/20 111/3

break **[6]**   33/17 67/7 67/12 100/15
66/14
breaking **[3]**   47/13 47/13 124/17
breathe **[1]**   55/22
Brent **[1]**   4/13
brief **[2]**   88/12 101/24
briefly **[6]**   25/1 93/21 107/7
108/2 118/20 126/6
briefs **[2]**   63/5 63/22
bright **[1]**   66/19
brilliant **[1]**   66/19
brim **[1]**   122/5
bring **[3]**   12/3 19/22 50/25
broadly **[1]**   108/3
Brock **[6]**   49/9 49/9 56/4 56/6
56/16 66/25
broke **[1]**   67/25
broken **[2]**   83/15 88/10
brother **[1]**   43/4
brothers **[5]**   39/12 39/13 68/13
74/2 74/3
brought **[2]**   19/8 88/14
bucket **[1]**   81/16
building **[34]**   7/7 7/14 7/24 9/3
9/8 9/9 9/11 9/24 12/2 36/25 37/1
38/17 39/2 48/25 68/21 68/23 76/2
84/2 84/19 87/15 88/16 88/19
90/13 93/9 94/9 105/13 115/5
115/8 116/3 120/11 122/11 126/22
126/24 127/1
bump **[3]**   54/19 54/19 84/22
bumping **[1]**   71/9
bumps **[2]**   84/20 84/20
burden **[21]**   44/22 45/2 56/23
57/14 57/24 58/20 60/12 60/18
67/23 72/4 72/25 73/2 74/22 77/12
82/9 83/19 89/23 92/16 114/11
116/7 117/9
bureau **[1]**   119/19
Bursey **[3]**   10/1 10/2 10/3
busy **[1]**   26/25

**C**

cage **[1]**   86/9
calculated **[1]**   121/21
call **[9]**   84/20 85/20 98/3 98/7
98/8 102/20 107/13 108/17 118/8
called **[4]**   19/9 19/19 121/8 124/9
calls **[1]**   85/22
cam **[9]**   39/11 50/20 50/20 98/16
101/3 102/3 104/25 106/11 107/10
came **[10]**   42/21 55/24 56/4 56/11
89/3 92/13 106/19 117/18 126/20
127/2
camera **[6]**   23/18 92/4 92/12
102/19 103/6 104/7
can **[82]**   12/25 19/5 19/22 24/16
26/23 27/20 30/10 36/16 37/2 38/7
38/14 40/7 43/4 46/15 46/23 47/5
47/19 48/9 48/14 48/14 50/13
51/12 52/12 52/13 52/17 52/23
52/25 53/3 54/2 54/8 54/23 57/7
58/6 58/18 59/8 61/12 70/19 71/4
71/12 73/18 73/20 73/21 77/13
78/17 78/17 78/21 80/4 82/1 82/8
82/12 84/1 88/25 89/24 90/6 90/17
92/12 95/4 95/24 96/22 99/24
99/24 100/15 100/15 102/13 103/3
103/7 104/9 104/24 105/6 105/19
105/22 106/14 107/17 110/8 110/12
114/17 117/23 122/17 122/20
126/23 127/11 128/3
can't **[5]**   55/22 55/22 73/15 82/2
111/10
candid **[1]**   60/15
candidate **[6]**   81/21 81/22 81/22
81/25 83/4 83/11
candidates **[1]**   83/10
candidly **[1]**   60/2
cannot **[4]**   14/7 15/8 72/1 123/10
capable **[1]**   20/10
Capitol **[34]**   7/8 7/25 13/7 13/12

18/2 38/16 38/17 38/23 40/9 40/23
41/1 46/23 47/12 68/6 68/21
68/23 69/17 71/17 73/12 73/23
74/4 75/10 88/9 91/22 93/8 105/12
105/13 111/2 112/12 115/21 120/19
122/10 124/1
caption **[1]**   46/2
capture **[1]**   48/12
captured **[2]**   42/12 47/12
captures **[1]**   65/4
care **[1]**   127/24
careful **[2]**   44/1 44/6
carefully **[11]**   21/22 28/4 28/10
29/25 31/10 70/25 102/18 106/5
127/25 128/4 129/3
CAROLINA **[2]**   1/13 4/7
carriage **[3]**   54/12 72/9 80/5
carried **[3]**   57/24 58/20 60/18
carrying **[1]**   93/8
cart **[1]**   65/12
Carter **[1]**   118/22
case **[51]**   4/2 8/22 9/25 10/1
11/10 11/14 12/15 12/25 16/20
18/23 19/20 20/12 20/22 25/11
27/17 32/2 32/23 34/8 34/24 36/2
44/21 49/9 49/9 55/16 55/19 55/24
56/6 56/9 56/16 60/16 62/9 62/24
63/13 64/25 65/23 66/7 66/12
72/16 72/16 73/9 80/16 81/6 81/18
86/17 87/11 88/4 89/7 93/2 93/5
100/23 118/22
cases **[18]**   11/5 14/12 21/7 21/10
21/18 21/22 45/11 49/8 55/14 61/4
67/1 68/18 72/13 72/16 72/21
104/21 114/25 125/14
casting **[1]**   47/25
cause **[3]**   40/3 63/1 98/19
causing **[1]**   39/18
caution **[3]**   25/22 34/1 76/25
centuries **[1]**   82/14
certain **[3]**   11/5 14/13 24/1
certainly **[9]**   20/10 38/4 58/18
61/6 77/19 91/23 108/18 109/13
126/12
certification **[6]**   40/4 40/24
56/12 56/15 65/16 88/1
certified **[1]**   89/20
certify **[2]**   43/7 130/3
certifying **[1]**   113/15
certiorari **[2]**   113/12 114/4
cetera **[3]**   66/25 76/4 93/9
chair **[1]**   80/16
Chairman **[3]**   16/4 16/5 16/9
Chairperson **[1]**   14/5
challenge **[1]**   61/21
challenges **[3]**   44/5 60/3 60/8
chamber **[8]**   52/1 52/3 52/7 115/23
115/25 124/19 124/22 125/3
chambers **[1]**   70/7
chance **[3]**   99/8 128/4 129/3
change **[7]**   20/18 20/19 22/7 22/13
22/22 116/19 127/9
changes **[1]**   65/9
changing **[1]**   97/17
chant **[3]**   41/15 88/25 113/2
chaos **[1]**   103/1
chaotic **[1]**   107/22
characterization **[1]**   105/10
charge **[9]**   98/12 98/14 98/19
100/10 102/1 109/22 109/25 110/2
117/9
charged **[6]**   36/7 93/7 93/12 96/5
100/8 109/1
charges **[4]**   6/22 99/1 99/4 99/18
check **[1]**   95/24
cheer **[3]**   38/20 111/3 112/11
112/11 112/12 116/11 117/2
cheering **[4]**   38/21 111/4 112/14
112/17
chest **[3]**   39/18 54/19 71/2
Chief **[2]**   4/9 16/13
China **[2]**   40/17 82/22

**C**

Chinese [1]  82/3
choice [1]  81/21
choose [8]  40/17 40/18 82/4 82/22 82/23 82/24 83/9 89/19
choosing [1]  83/2
chose [3]  9/19 40/19 76/24
chosen [1]  81/23
chronologically [1]  119/22
circled [2]  39/8 119/16
Circuit [9]  10/2 10/8 55/25 56/5 63/12 64/16 64/17 65/19 66/15
Circuit's [1]  10/1
circumstance [2]  19/23 75/21
circumstances [2]  68/24 99/16
circumstantially [1]  126/3
cites [1]  13/10
civil [2]  56/3 56/8
claim [6]  16/2 16/21 19/3 19/6 36/19 37/6
claiming [2]  15/21 15/24
claims [4]  11/2 14/3 14/10 17/15
clarification [2]  58/21 62/22
clarify [2]  57/7 59/11
clarity [1]  86/14
clause [3]  15/12 17/10 89/17
clear [30]  19/3 39/23 39/24 47/23 48/3 49/18 49/22 51/6 55/9 60/20 66/24 69/7 69/20 69/20 70/12 71/21 72/1 77/15 82/14 84/14 86/15 99/19 105/19 115/22 119/9 125/2 125/5 126/2 126/3 126/4
cleared [1]  67/10
clearing [1]  105/21
clearly [11]  37/3 37/10 41/9 45/4 47/10 54/2 60/1 105/23 117/4 120/10 122/8
clears [1]  53/6
clerk [3]  6/18 101/19 128/17
client [9]  20/24 23/24 29/5 44/24 98/24 99/9 99/23 100/9 107/15
clients [1]  126/20
climbed [1]  40/8
clock [6]  50/2 50/6 53/2 53/7 53/17 119/11
close [10]  10/16 34/12 46/8 52/22 60/16 66/22 85/20 85/22 86/17 118/8
closed [2]  9/17 46/1
closer [1]  89/2
closing [10]  3/3 3/4 3/5 3/6 3/7 36/5 43/19 87/2 95/2 118/19
cloth [1]  78/22
cocounsel [2]  4/8 73/1
cocounsel's [1]  66/19
cocounsels [1]  95/9
Code [2]  95/14 108/1
codefendant [5]  74/6 104/6 105/19 111/12 113/1
codefendants [1]  95/9
colleague [1]  87/6
colleagues [1]  8/17
colloquies [1]  33/13
colloquy [3]  26/13 35/1 35/2
collusion [1]  11/20
COLUMBIA [2]  1/1 21/25
combat [1]  91/7
combative [1]  38/23
come [31]  17/24 21/14 24/16 24/18 25/25 27/21 34/2 37/4 37/12 37/19 38/7 48/9 53/1 53/16 62/6 65/21 67/13 67/15 67/22 69/5 75/2 78/21 92/18 99/24 100/18 101/18 105/22 105/25 116/19 128/2 129/2
comes [6]  24/22 25/21 64/2 75/5 89/16 126/14
coming [11]  23/1 24/17 25/5 50/14 54/11 68/1 74/19 101/15 103/11 123/8 123/11
comma [3]  108/4 108/4 108/4
command [1]  69/7

commands [3]  48/18 78/9 78/12
comment [1]  77/1
comments [1]  51/3
commit [1]  109/21
committee [18]  13/6 13/12 13/17 14/5 14/9 14/10 14/20 15/6 15/21 16/5 16/7 16/10 16/16 17/16 19/6 19/18 19/22 19/25
Committee's [1]  16/3
common [3]  118/24 119/1 119/4
commotion [1]  104/22
communicated [1]  96/12
communicating [1]  46/3
communications [3]  13/14 13/24 23/24
communist [2]  40/17 82/22
community [1]  20/3
compare [3]  45/11 55/24 56/15
compel [1]  15/14
completed [1]  37/22
completely [3]  13/17 16/7 115/10
complicated [1]  9/1
complied [2]  72/2 117/7
components [1]  94/5
conceal [1]  72/20
concealment [1]  127/8
concede [2]  69/15 97/5
concern [2]  22/13 63/2
concerns [2]  22/9 118/2
conclude [8]  59/19 60/17 75/2 78/17 88/1 89/24 90/23 97/2
concluded [3]  8/17 10/2 129/7
concludes [2]  36/1 65/17
conclusion [10]  10/5 11/15 16/16 22/14 57/20 57/23 59/24 60/23 85/17 92/18
condition [1]  10/7
conduct [25]  11/7 11/14 12/15 36/7 40/3 45/7 72/15 73/16 73/17 77/25 83/21 85/14 87/9 87/16 91/25 92/7 92/15 93/1 93/5 93/6 93/11 93/14 94/2 94/15 121/1
conducted [1]  26/10
confer [4]  30/17 33/17 61/24 101/17
confidence [2]  18/17 18/19
confident [1]  71/14
confidential [2]  13/20 17/23
confirm [4]  4/25 5/4 6/14 32/16
confront [5]  29/6 30/14 31/23 124/18 124/22
confrontation [6]  41/23 42/12 43/8 92/3 124/6 125/6
confrontational [1]  103/21
confrontations [2]  77/22 77/23
confronting [1]  70/24
confused [1]  42/24
confusing [1]  110/6
congress [25]  9/19 14/21 15/9 15/14 15/20 16/18 18/1 18/6 20/5 20/6 43/6 55/22 56/7 74/8 74/25 76/12 78/11 79/3 84/12 85/12 88/17 88/18 112/19 112/19 113/15
Congress' [1]  9/21
congressional [2]  14/20 87/15
congressman [1]  81/9
congressmen [3]  38/20 111/3 117/2
conjunction [2]  41/18 72/25
consciousness [2]  38/16 43/11
consents [1]  6/15
consider [8]  18/25 48/23 55/17 56/4 58/16 58/19 85/16 109/4
consideration [6]  20/12 44/1 44/6 67/20 86/18 90/3
considered [3]  45/12 55/14 114/20
considering [2]  18/23 58/19
consistent [10]  15/6 63/21 71/7 73/18 73/19 73/20 73/22 74/7 82/12 85/14
conspiracy [1]  17/25
constitute [1]  38/9
constitutes [1]  130/4

Constitution [2]  1/24 2/14
constitutional [3]  34/14 34/14 35/4 112/1
consult [8]  5/9 5/21 6/9 28/24 34/19 35/9 35/23 86/21
contact [14]  71/6 71/7 71/16 78/1 98/16 101/1 102/16 102/16 105/1 105/2 106/6 106/24 108/2 109/20
contain [1]  17/16
contained [1]  42/14
containing [1]  36/23
contains [1]  42/14
contention [1]  9/14
contents [2]  3/1 19/14
contest [1]  45/2
contesting [2]  70/3 70/14
context [18]  19/5 50/18 61/5 74/5 75/9 76/5 76/5 76/7 77/7 78/25 82/15 98/17 98/18 101/4 116/12 122/1 122/2 122/3
continue [4]  43/1 67/17 67/19 94/14
CONTINUED [1]  1/21
contrary [1]  59/24
contrast [3]  45/11 47/12 56/16
Contreras [2]  8/23 128/20
control [3]  15/19 109/7 109/8
conversation [1]  98/23
convey [2]  68/13 89/18
convict [7]  43/9 65/7 65/8 73/9 85/24 89/5 127/11
convicting [1]  66/11
conviction [2]  36/10 96/10
convictions [1]  23/12
convince [2]  51/4 72/2
convincing [1]  77/16
cop [1]  126/23
cops [6]  104/15 104/17 104/17 104/19 105/21 105/22
cops' [1]  104/18
cordon [1]  8/19
cordoned [3]  7/7 7/24 9/9
corner [5]  53/9 74/14 84/21 84/23 119/16
correct [15]  7/16 7/19 20/15 29/2 37/2 57/25 61/19 63/15 76/5 100/21 100/22 104/2 122/23 122/25 130/4
correctly [2]  14/20 64/25
corridor [8]  50/2 50/6 50/16 50/17 53/2 53/7 53/17 119/12
corroborate [1]  115/20
corrupt [44]  39/23 43/11 45/6 45/8 48/22 55/15 56/11 62/10 62/10 62/11 64/15 67/21 70/14 70/15 72/5 72/13 78/10 80/18 83/20 83/22 83/24 85/3 88/23 90/9 90/22 92/8 92/19 93/2 93/16 108/8 108/19 110/16 110/16 111/15 111/15 111/17 111/19 111/21 111/22 112/5 112/6 114/11 119/25 127/5
corruption [1]  80/23
corruptly [22]  38/15 62/13 62/23 63/3 63/7 64/5 64/10 64/18 65/18 80/11 80/13 81/13 85/11 87/17 88/3 92/24 93/3 93/16 94/3 100/25 113/4 115/19
corruptness [1]  100/25
could [38]  17/7 20/6 25/1 31/20 32/17 34/11 51/24 53/12 57/13 58/12 59/23 60/23 65/15 66/19 67/10 79/14 79/16 84/8 85/25 87/3 97/4 102/10 102/20 106/8 106/24 107/5 107/13 108/17 109/4 109/9 113/25 115/25 117/25 118/6 119/17 121/19 125/16 125/20
counsel [12]  4/5 4/6 4/9 10/21 14/8 58/4 72/22 96/9 96/13 121/25 126/18 128/12
Counsel's [2]  10/14 10/15
count [13]  7/3 7/11 7/17 7/21 8/4

## C

count... [8]   26/15 38/11 56/25
70/4 88/14 95/12 101/12 102/21
counted [1]   88/2
counter [1]   37/21
counterprotesters [1]   91/13
country [2]   86/1 110/20
counts [9]   7/3 12/21 36/11 44/2
95/19 96/10 96/13 96/14 97/14
couple [6]   56/5 77/20 102/8
102/14 103/8 105/7
course [4]   15/5 43/18 55/17 86/19
court [114]   1/1 1/22 1/23 2/12
2/13 11/2 11/9 15/16 18/14 19/10
19/16 20/1 24/5 26/11 33/19 33/20
36/10 36/14 36/15 38/14 41/17
42/13 43/13 43/16 43/25 44/1 45/9
46/25 47/11 48/4 48/10 48/22 49/1
49/21 50/18 51/11 53/6 55/1 56/7
56/22 57/2 57/19 58/1 59/4 59/22
60/7 61/15 61/15 62/7 62/13 62/20
63/5 63/22 65/7 65/8 65/13 66/5
66/8 66/14 66/19 68/4 71/14 72/12
73/25 77/13 78/21 80/10 82/12
82/15 84/7 88/22 89/24 90/5 90/6
90/25 91/3 91/4 91/20 91/24 92/5
92/18 92/20 92/25 93/5 95/18
95/23 96/2 96/14 96/18 97/12
97/14 100/4 101/4 106/4 108/22
109/17 110/10 113/8 113/9 113/10
113/12 113/13 113/16 114/2 114/3
114/24 115/9 116/15 117/23 118/5
118/22 126/18 130/3 130/13
Court to [1]   108/22
Court's [7]   14/18 44/6 55/13
67/20 93/18 95/22 101/16
courtrooms [1]   21/15
courts [5]   1/23 2/13 45/11 114/8
114/19
cover [1]   73/11
COVID [1]   84/20
created [1]   20/3
credible [1]   126/11
credits [1]   85/14
crime [2]   38/9 117/11
criminal [11]   1/3 1/15 4/2 12/12
15/16 19/7 20/7 72/23 81/2 82/14
94/9
cross [1]   29/6
cross-examine [1]   29/6
crowd [17]   39/1 39/14 85/5 90/18
92/11 103/11 103/12 103/13 103/15
103/21 104/16 104/21 104/22
105/13 107/22 117/20 122/3
crowded [1]   103/1
culpability [1]   83/23
culpable [3]   64/15 84/3 85/14
current [6]   57/16 62/14 62/15
65/5 88/3 89/7
cursing [1]   84/5
cursor [2]   53/12 79/17
custody [1]   15/19
CX [1]   23/17

## D

D.C [7]   55/25 56/5 63/11 64/16
64/17 65/19 66/15
damage [1]   68/23
damning [2]   89/16 90/6
dangerous [2]   109/5 109/14
Daniel [3]   102/17 102/20 103/7
data [1]   13/13
Dated [1]   130/10
dating [1]   85/20
DAVID [2]   2/6 4/18
day [18]   17/3 17/21 47/12 60/7
61/9 72/11 76/18 84/25 91/4 91/6
94/16 110/12 110/15 111/9 111/9
112/21 124/13 130/10
DC [11]   1/5 1/16 1/25 2/4 2/8
2/15 21/6 21/9 21/10 56/11 68/2

deadly [2]   93/8 109/1
deal [2]   108/23 128/12
deals [1]   10/24
debate [1]   15/12
debunk [1]   13/17
decide [5]   6/5 27/16 32/5 35/22
44/23
decided [6]   23/5 63/18 121/22
126/22 126/24 127/2
deciding [1]   113/18
decision [49]   5/5 5/7 5/12 5/18
5/24 5/25 6/12 9/18 9/25 10/1
10/8 10/12 18/4 22/11 22/15 23/3
23/3 23/5 27/6 28/18 28/20 32/18
32/19 32/22 34/15 34/18 34/20
35/5 35/5 35/7 35/20 35/21 59/22
60/15 60/22 65/22 65/24 66/5
66/10 66/13 113/14 113/16 114/2
115/4 115/6 121/21 123/7 128/3
128/8
decisions [1]   59/14
declaration [4]   21/4 21/6 21/20
22/3
defacing [1]   91/5
defendant [19]   1/17 2/2 2/6 10/15
19/11 19/17 26/12 28/2 29/18 31/3
36/11 39/7 39/8 39/9 49/9 55/19
56/24 109/20 128/12
defendant's [3]   9/25 16/15 87/21
defendants [44]   1/8 4/25 7/1 7/2
7/12 11/13 11/23 11/25 12/1 12/3
12/24 14/11 15/6 16/19 20/1 21/16
21/18 24/10 27/17 33/14 36/13
38/15 38/19 38/24 40/14 40/22
40/25 41/19 41/21 42/11 43/9
43/13 46/15 47/25 51/13 59/20
66/11 68/7 97/13 103/8 103/22
104/1 125/15 127/12
defendants' [11]   10/13 14/8 23/14
23/15 23/19 23/21 43/5 44/16
95/22 119/23 119/25
defense [32]   14/20 14/23 18/9
18/20 20/4 23/14 25/4 27/8 33/16
34/8 34/9 34/25 35/17 43/15 57/15
58/1 58/23 59/21 60/21 65/14
85/22 85/23 96/9 96/13 98/10 99/4
100/2 117/13 118/13 119/22 126/20
127/15
defense's [1]   125/14
defensive [1]   121/22
defer [1]   26/23
define [2]   62/10 88/3
defines [2]   9/7 9/8
defining [1]   9/16
definitely [1]   69/1
definition [8]   62/11 64/4 64/18
65/17 73/21 78/12 81/12 86/12
definitions [3]   63/11 64/21 92/24
degree [4]   77/9 80/25 85/13 85/20
delay [1]   113/15
delaying [2]   44/19 87/25
delegation [1]   115/11
deleted [1]   14/13
delineate [1]   9/19
delivered [1]   19/16
democrat [1]   83/10
democratic [8]   40/18 55/21 82/23
83/1 83/9 111/13 111/14 111/16
democrats [1]   82/4
demonstration [5]   75/17 112/10
116/17 116/20 120/24
demonstrative [5]   39/4 41/5 52/24
78/5 79/11
demonstrator [2]   106/9 107/7
demonstrators [4]   105/2 105/24
106/3 106/23
denials [1]   95/22
denied [5]   12/17 20/12 22/2 25/17
113/12
deny [7]   12/24 20/17 23/6 24/16
24/21 25/18 25/20
denying [1]   44/10

Department [5]   14/4 15/10 15/22
115/7 128/12
depicted [4]   46/19 50/3 50/21
51/7
depicting [1]   46/14
depicts [1]   54/12
deploy [1]   121/19
deploying [1]   105/1
deposition [1]   16/8
depositions [1]   13/14
deprivation [1]   37/24
deprive [5]   37/9 37/23 37/25 38/1
38/2
deprived [1]   14/10
deputy [5]   4/9 6/18 10/21 101/19
128/17
derogatory [1]   51/3
describe [1]   73/10
described [1]   121/4
description [1]   120/20
designating [1]   10/19
desire [2]   63/9 125/12
despite [1]   81/23
destroy [1]   85/7
destroyed [7]   13/23 14/9 16/1
16/16 16/19 17/8 17/14
destroying [1]   68/8
destruction [9]   13/5 16/2 16/13
64/5 64/6 64/8 68/22 91/5 91/21
destructive [1]   94/15
determinations [1]   59/12
determines [1]   59/5
determining [2]   11/4 58/16
determinant [1]   40/4
DH [4]   102/21 103/7 104/25 109/21
dialogue [1]   112/14
did [47]   7/5 7/12 7/23 8/14 8/22
20/7 20/23 22/15 28/10 28/12
29/25 30/2 30/3 30/7 30/20 31/10
31/12 32/4 37/3 37/25 53/15 68/15
74/24 78/1 78/14 79/1 79/7 79/9
79/22 80/2 80/11 81/15 81/15
84/19 91/6 92/17 93/23 93/25 98/4
98/6 98/7 100/25 109/4 115/5
120/16 123/2 124/14
didn't [21]   13/9 16/7 32/15 55/17
78/1 78/21 79/19 79/20 79/20 83/6
84/9 84/18 85/7 85/7 85/9 98/11
104/18 115/22 116/2 116/5 117/5
difference [2]   14/15 116/21
different [15]   10/24 13/8 18/21
21/11 45/10 62/12 63/3 65/4 66/2
85/25 96/6 97/10 114/17 125/7
126/7
differently [4]   102/21 103/2
106/5 106/18
difficult [5]   44/3 44/7 45/7
60/16 85/24
difficulties [1]   46/3
difficulty [1]   11/4
direct [5]   19/10 19/20 51/3 55/13
125/4
directed [1]   117/7
directing [1]   69/22
direction [3]   52/3 52/5 72/7
directly [5]   19/16 73/16 104/9
disagree [3]   58/22 92/19 113/16
disagreeing [1]   63/22
disagrees [1]   64/10
disappointing [1]   99/10
disclosed [1]   15/6 18/20
disclosure [1]   15/3
discovered [1]   18/3
discovery [2]   15/7 15/16
discuss [4]   10/17 87/19 88/6
88/13
discussed [9]   10/15 30/5 31/15
63/12 65/18 91/9 91/12 91/12 93/5
discussing [1]   14/6
discussion [4]   96/9 100/15 101/24
116/3
disenfranchised [1]   56/1

**D**

**dismiss [4]**   7/3 12/19 12/20 13/4
**disobedience [1]**   56/3
**disorderly [1]**   87/16
**disorganized [1]**   14/14
**displeasure [1]**   74/9
**disputes [1]**   113/7
**disregard [1]**   69/7
**disregarding [1]**   55/4
**disrespect [2]**   85/7 85/9
**disrupt [5]**   76/12 78/11 78/12
  79/2 111/8
**disruptive [2]**   78/13 94/15
**dissent [1]**   118/23
**distinct [2]**   73/11 94/4
**distinction [7]**   49/10 57/6 57/11
  58/10 59/3 59/7 116/17
**distinguish [2]**   64/14 92/22
**distorted [1]**   24/3
**DISTRICT [7]**   1/1 1/1 1/11 1/23
  2/13 20/1 21/25
**DM [6]**   121/9 121/10 121/14 121/16
  121/20 122/14
**do [108]**   5/17 6/4 6/8 6/16 8/2
  8/16 9/4 11/19 18/25 24/15 26/23
  27/11 28/3 28/13 29/19 30/8 30/12
  30/13 30/16 30/21 31/13 31/17
  31/21 31/22 31/25 32/3 33/8 34/11
  35/1 36/2 36/15 39/25 42/18 42/22
  42/25 43/23 44/25 45/9 46/4 46/6
  47/17 48/9 58/1 58/4 58/15 59/18
  60/10 62/9 64/24 65/2 65/3 65/20
  66/10 66/22 67/7 73/7 73/7 73/15
  73/16 76/12 76/23 76/23 78/8
  78/11 80/12 84/9 84/10 85/9 87/10
  87/10 88/7 89/4 89/19 89/19 90/10
  93/25 94/21 97/19 98/15 98/17
  99/15 100/17 100/18 100/19 101/3
  101/5 102/2 102/6 102/15 109/19
  110/1 111/14 113/21 116/4 117/6
  117/6 117/18 117/23 119/3 120/12
  123/10 124/20 125/14 125/24 126/8
  126/16 127/8 128/22
**docket [1]**   87/13
**document [15]**   28/10 28/14 28/25
  29/25 30/4 30/22 30/24 31/10
  31/14 32/8 32/9 32/19 42/15 95/21
  99/14
**documents [3]**   13/13 15/18 95/19
**does [43]**   7/21 8/18 9/13 9/20
  9/23 10/17 11/1 11/23 14/18 17/22
  18/7 18/13 18/21 21/9 21/24 27/8
  59/20 59/24 60/1 65/23 68/3 68/13
  83/22 88/1 88/2 88/25 90/8 90/21
  92/9 93/15 94/15 100/9 107/16
  108/12 108/13 108/16 109/24 118/9
  121/1 126/24 127/5 127/9 128/6
**doesn't [15]**   10/7 12/7 15/15 50/4
  57/1 57/3 57/22 65/13 65/18 73/2
  77/8 98/24 99/12 115/2 125/13
**doing [14]**   7/21 9/17 21/4 21/21
  28/16 30/11 42/19 84/6 84/6 84/16
  85/4 113/22 117/24 120/17
**don't [78]**   5/15 10/19 10/23 12/23
  19/1 19/17 24/9 24/19 25/4 27/12
  27/19 27/20 29/3 29/14 35/2 37/8
  38/1 43/9 49/16 49/19 51/2 54/17
  54/17 54/23 55/9 55/21 57/25 58/9
  59/6 60/14 60/15 61/6 61/12 62/4
  62/22 63/5 64/9 64/15 64/17 66/9
  67/8 67/13 67/15 72/4 72/25 74/22
  74/22 76/6 77/11 77/24 78/13
  81/11 82/8 83/5 83/15 89/23 90/21
  93/3 99/20 100/6 100/6 101/17
  101/18 104/3 110/19 112/13 112/16
  113/5 113/18 114/22 120/8 121/24
  125/23 125/24 126/17 127/6 127/7
  127/7
**don't quite [1]**   60/14
**Donald [1]**   13/22
**done [7]**   21/13 56/3 66/20 79/3
79/4 85/25 125/21
**door [27]**   39/16 40/7 40/9 42/4
  46/22 47/23 47/25 53/23 54/12
  69/5 69/10 69/16 69/14 69/23 72/9
  74/15 74/19 75/6 75/7 75/7 75/11
  75/21 75/22 76/11 76/14 77/5 77/7
  80/5 85/5 88/9 98/12 121/5 121/11
  121/13 121/15 121/18 122/2 122/6
  122/22 123/9 124/2 124/3
**doors [11]**   41/2 45/24 46/18 46/20
  47/13 48/12 50/8 68/23 79/24
  80/22 125/23
**doorways [2]**   115/24 116/1
**Dorrance [1]**   1/18
**doubt [50]**   15/13 36/7 36/15 38/13
  44/15 45/5 57/14 57/20 58/17 59/2
  59/6 59/13 59/19 60/18 60/24 61/7
  61/10 61/16 62/19 65/8 67/2 73/8
  74/11 74/24 77/17 80/20 81/1
  83/16 83/19 85/20 86/12 86/16
  87/11 87/20 88/23 89/6 90/9 93/15
  94/8 96/3 96/19 96/21 96/23 97/3
  97/15 98/21 100/5 100/6 118/10
  126/10
**doubts [1]**   69/3
**down [26]**   40/7 42/18 42/25 50/1
  50/15 50/16 53/8 55/25 56/4 64/2
  70/8 70/10 76/25 79/15 79/20 86/2
  110/23 110/24 110/25 111/2 115/7
  115/18 115/18 120/16 124/4 126/14
**downstairs [4]**   41/22 41/25 42/7
  70/24
**dozens [2]**   114/19 114/19
**drag [1]**   81/9
**draw [11]**   18/24 38/14 73/17 73/18
  73/20 73/21 80/10 82/8 82/12
  124/7 127/11
**drawing [1]**   77/10
**drawn [1]**   125/13
**dress [1]**   56/2
**driver's [1]**   76/16
**drop [2]**   23/16 99/1
**dropped [1]**   106/22
**drown [1]**   86/4
**drowned [1]**   86/2
**drugstore [1]**   37/18
**due [4]**   13/4 13/5 15/12 17/9
**duplicate [1]**   46/5
**during [1]**   68/16

**E**

**each [18]**   4/25 5/3 5/4 6/15 7/1
  24/9 24/14 26/11 36/11 54/21
  56/22 84/24 96/4 97/12 97/16
  100/7 100/8 128/12
**earlier [3]**   88/15 95/23 96/8
**easily [1]**   117/25
**east [1]**   53/22
**edited [1]**   24/3
**effect [2]**   43/2 44/15
**effort [1]**   71/15
**efforts [1]**   72/20
**egress [2]**   53/23 121/12
**eight [1]**   21/13
**either [6]**   6/22 12/23 13/1 13/2
  17/10 106/25
**elbow [3]**   54/19 84/20 84/22
**electing [1]**   81/20
**election [9]**   40/24 43/7 56/7
  65/16 84/7 89/20 112/3 113/16
  114/14
**electoral [1]**   82/7
**electors [4]**   40/17 82/4 82/22
  83/2
**element [7]**   36/7 67/21 96/4 97/16
  100/7 100/9 109/20
**elements [8]**   38/13 44/13 56/24
  57/3 81/13 93/22 94/4 99/7
**Ellipse [2]**   38/18 110/14
**else [19]**   16/18 26/2 26/4 29/11
  32/11 37/1 47/18 52/8 55/12 63/10
  79/6 83/23 90/2 109/12 109/13
117/13 118/13 125/8 127/15
**mails [1]**   40/10
**emergency [2]**   40/10 121/12
**Emily [1]**   4/22
**emphasizes [1]**   14/21
**empty [2]**   70/7 123/17
**enact [1]**   90/1
**encounter [2]**   53/9 68/17
**encountered [4]**   53/13 79/25
  124/12 125/18
**end [9]**   50/15 50/17 53/20 61/9
  89/17 90/13 90/19 116/3 117/4
**ended [2]**   41/23 106/22
**ends [1]**   16/22
**enforcement [6]**   10/18 11/8 41/8
  76/8 90/11 91/25
**engage [11]**   7/5 25/2 41/18 55/11
  56/14 71/15 84/18 91/8 94/16
  111/7 111/9
**engaged [8]**   10/6 72/17 87/15 91/1
  91/4 91/21 91/24 121/2
**engaging [2]**   92/3 94/14
**enough [20]**   17/4 17/8 18/11 26/25
  28/24 35/9 35/23 43/9 44/23 45/5
  64/3 80/19 83/13 83/18 85/19 93/1
  94/6 98/19 98/20 127/11
**enter [15]**   7/13 7/23 9/3 46/23
  47/17 49/17 68/8 69/8 71/24 74/21
  74/23 76/2 104/18 122/18 125/20
**entered [14]**   40/9 40/10 46/15
  49/25 68/5 68/5 75/6 88/9 88/16
  91/23 104/17 121/23 122/12 125/17
**entering [8]**   11/16 48/13 48/20
  60/4 74/21 121/18 122/1 122/10
**enters [3]**   70/6 74/12 74/13
**entire [1]**   19/14
**entirely [4]**   13/8 15/11 19/3 63/3
**entities [1]**   10/18
**entitled [2]**   63/11 130/5
**entity [2]**   8/19 10/6
**entrance [11]**   42/1 52/6 53/4
  68/25 76/10 79/19 79/20 79/21
  122/9 124/5 125/15
**entrances [2]**   125/16 125/19
**entrapment [1]**   23/11
**entry [10]**   45/23 47/9 48/19 49/23
  50/5 55/2 55/3 68/21 69/16 121/4
**entryway [2]**   46/25 68/24
**enumerated [1]**   96/5
**epiphany [1]**   126/21
**episode [6]**   100/20 108/15 108/16
  108/17 108/18 120/21
**equal [1]**   83/16
**equally [1]**   76/13
**equivalent [1]**   37/17
**erased [1]**   16/23
**error [2]**   18/15 113/14
**escalate [1]**   121/21
**especially [1]**   105/20
**essence [1]**   108/15
**essentially [7]**   21/21 45/20 53/7
  64/1 73/6 73/9 104/20
**establish [8]**   44/13 55/15 57/3
  96/4 97/16 99/6 100/7 100/8
**establishing [2]**   56/23 72/4
**esteemed [1]**   87/6
**et [3]**   66/25 76/4 93/9
**et cetera [2]**   66/25 93/9
**evacuated [2]**   88/17 88/18
**evaluate [1]**   108/9
**evaluating [1]**   11/2
**even [26]**   16/18 16/24 17/4 17/5
  17/17 18/10 44/4 65/7 66/8 66/14
  74/2 74/18 75/6 75/7 76/1 77/21
  83/13 113/11 113/15 114/6 114/16
  114/21 114/21 115/22 117/5 119/2
**event [4]**   10/20 10/23 11/21 76/6
**events [3]**   13/24 14/25 110/15
**eventually [1]**   124/24 125/1
**every [8]**   21/12 36/7 72/5 87/8
  96/4 97/16 100/7 100/8
**everybody [2]**   128/6 128/25

**E**

everyone [8]  40/13 54/6 54/8 63/6
69/13 95/8 114/23 123/2
everything [9]  30/21 30/24 32/8
43/10 43/21 49/22 74/20 116/25
126/25
evidence [132]
evidentiary [1]  25/12
ex [2]  8/13 12/11
exact [2]  78/14 80/11
exactly [6]  37/17 40/22 42/11
46/25 63/5 99/18
examination [3]  19/10 19/17 19/20
examine [1]  29/6
example [5]  27/24 63/6 65/14
103/12 113/17
examples [1]  65/19
exception [1]  25/19
exchange [1]  99/4
exclude [9]  23/12 23/19 23/21
23/22 23/23 23/24 24/1 24/2 24/3
excluding [2]  63/1 64/20
exculpatory [5]  13/20 17/11 17/15
17/20 18/10
excuse [2]  40/2 41/18
excused [2]  92/6 92/14
executive [6]  14/19 14/22 15/11
15/13 15/22 15/25
exercise [1]  5/18
exhibit [30]  39/3 39/4 39/11 40/7
41/4 41/14 42/12 42/14 45/19 46/1
46/13 46/20 47/3 48/3 48/10 50/3
50/16 51/9 51/15 52/19 52/19
52/22 54/1 54/11 54/12 102/8
119/9 119/12 120/2 122/17
Exhibit 10 [1]  42/12
Exhibit 11 [2]  46/1 122/17
Exhibit 13 [1]  50/16
Exhibit 14 [1]  54/1
Exhibit 15 [1]  54/12
Exhibit 16.1 [1]  41/4
Exhibit 17 [1]  52/22
Exhibit 6 [1]  41/14
Exhibit 7 [1]  119/12
Exhibit 8 [1]  51/9
exhibits [9]  26/21 26/22 27/14
33/4 33/8 33/12 33/15 88/10
127/24
existed [1]  91/22
existence [5]  96/3 96/19 97/15
97/19 100/4
exists [1]  118/3
exit [23]  40/11 50/1 51/25 53/21
54/12 54/13 54/16 55/3 71/8 72/6
78/20 78/23 78/23 78/24 79/1 79/2
79/5 79/8 79/9 79/9 80/2 81/7
127/1
exited [4]  70/11 80/3 84/2 88/19
exiting [1]  46/22
exits [2]  53/20 80/8
expect [4]  25/12 80/12 80/14
80/14
expectations [1]  38/22
experienced [1]  44/4
explain [1]  70/18
explained [3]  10/8 18/14 89/22
explanation [6]  118/3 118/6
126/10 126/11 126/11 126/12
explanations [3]  77/18 84/1 118/9
explicitly [1]  14/12
expressed [2]  12/14 112/22
expressing [1]  22/9
expression [2]  74/9 74/9
extent [9]  12/5 15/20 15/24 20/3
22/12 26/25 82/11 108/24 114/23
extraordinarily [2]  86/8 86/9
extremely [3]  13/18 119/2 120/9
extricate [1]  108/13

**F**

face [1]  104/9

Facebook [1]  72/17
facilitate [1]  121/6
fact [34]  12/7 13/8 15/12 15/25
17/18 24/18 32/25 57/13 57/19
57/23 59/14 59/23 60/23 65/6 75/1
76/14 83/18 91/9 91/16 93/11
94/18 99/2 99/13 104/9 105/12
109/4 111/19 112/10 113/19 117/22
123/24 125/22 126/19 127/9
facto [2]  8/13 12/11
factors [1]  85/16
facts [67]  12/6 25/3 26/13 28/5
28/18 29/22 30/5 30/5 30/18 31/7
31/15 32/5 32/24 36/14 36/22 38/8
38/14 42/15 55/24 56/19 57/18
58/2 60/5 61/4 61/10 62/9 65/6
66/2 67/20 68/24 72/24 73/7 75/16
75/18 87/10 88/6 88/18 89/8 92/23
94/5 96/3 96/19 96/20 96/21 96/23
96/24 96/25 97/1 97/6 97/7 97/12
97/15 97/20 97/21 97/24 99/5 99/6
99/6 100/4 104/13 111/23 113/18
113/22 116/23 116/25 121/7 123/8
factual [4]  16/2 17/7 82/13 87/6
failed [2]  13/13 17/12
fails [3]  8/5 11/6 15/23
failure [2]  9/21 16/10
fair [13]  11/7 11/14 21/9 21/19
21/25 22/2 22/24 59/16 64/3 64/23
67/3 75/14 83/13
fairly [1]  82/14
fairness [1]  70/1
faith [12]  17/12 17/13 111/25
113/3 113/11 113/13 113/23 113/25
114/5 114/6 115/4 115/7
fake [1]  79/4
fall [2]  39/18 65/19
fallen [2]  4/8 64/17
falls [2]  107/19 120/22
familiar [1]  114/24
far [6]  65/14 65/18 68/21 72/11
74/5 86/5
favor [2]  8/11 22/22
FBI [1]  23/22
federal [3]  10/18 14/21 20/6
federally [1]  10/4
feel [2]  21/24 30/21
feet [2]  40/20 86/2
fell [1]  39/17
fellow [3]  121/17 121/19 121/23
felonies [1]  93/7
felonious [2]  93/6 93/11
felony [7]  93/11 93/12 109/6
109/21 109/22 110/7 110/8
feverish [1]  20/2
few [6]  40/20 47/7 106/14 106/15
107/21 123/9
Fifth [1]  116/12
fight [5]  40/1 51/2 54/17 110/19
110/19
figure [5]  27/11 64/14 73/15
83/11 99/25
file [2]  103/16 105/22
filed [3]  21/3 21/20 24/7
filing [1]  60/21
filled [1]  122/5
film [3]  74/18 78/19 112/14
final [5]  31/7 81/16 85/13 89/14
95/21
finally [4]  6/4 8/12 19/24 117/4
find [20]  36/14 43/13 44/4 56/23
56/24 57/13 58/1 66/19 81/1 82/15
85/19 92/20 93/2 94/21 96/23
97/12 97/19 100/6 118/21 128/21
finder [7]  57/13 57/19 57/23
59/14 65/6 75/1 83/18
finding [2]  60/7 61/17
findings [1]  32/24
finds [7]  61/15 61/15 67/2 96/2
96/18 97/14 100/4
fine [14]  7/2 27/18 62/5 62/21
63/4 71/13 74/10 95/6 101/15

102/4 116/15 117/16 128/15 128/16
128/18
finger [1]  121/3
fire [1]  121/12
first [32]  6/25 8/4 8/13 12/19
12/21 14/3 16/2 23/13 24/11 39/22
43/15 45/14 45/17 45/18 54/18
55/16 73/12 73/25 74/8 84/21 88/6
100/17 100/18 102/24 103/7 106/8
106/9 106/12 106/13 107/20 116/15
116/16
Fischer [12]  55/16 55/19 55/20
62/7 63/12 64/2 64/22 66/25 68/18
72/16 88/4 92/21
fist [2]  71/8 84/20
fit [2]  87/10 87/10
flags [1]  51/16
flak [3]  91/10 91/14 91/15
flashing [1]  46/7
flees [1]  69/12
flight [1]  51/17
flighting [1]  122/3
floated [1]  86/3
floor [43]  37/11 40/15 41/14
41/20 41/22 42/1 42/8 43/6 49/6
49/8 49/10 49/12 49/14 49/17 50/2
50/4 50/5 50/8 50/15 52/1 52/5
52/20 53/11 70/8 71/25 79/16
79/18 79/25 89/2 123/16 123/18
123/21 123/23 124/4 124/5 125/10
125/12 125/16 125/19 125/20
126/15 126/16 127/5
flow [1]  121/1
fly [1]  128/10
focus [7]  36/8 39/13 87/8 88/15
90/24 92/24 95/13
focused [1]  18/4
folks [4]  74/16 80/20 84/19
127/25
follow [1]  56/1
followed [8]  72/8 78/8 84/12 85/5
90/16 90/16 107/12 110/15
follower [1]  90/18
following [5]  64/10 76/13 78/11
94/10 121/9
foot [2]  74/18 108/12
footage [2]  102/19 103/6
footnote [2]  15/4 19/24
force [11]  48/17 55/12 68/10
68/14 68/15 68/19 70/20 108/18
116/21 116/25 121/20
forced [1]  55/3
forceful [1]  105/2
forcing [1]  104/21
foreclose [1]  57/22
forecloses [1]  57/20
foreclosing [2]  66/21 66/22
foregoing [2]  31/14 130/4
forever [1]  14/13
forget [1]  79/12
forgotten [1]  20/5
form [1]  91/19
format [3]  27/12 58/12 60/6
forward [1]  60/8
found [1]  92/25
founders [2]  56/2 85/24
four [3]  8/4 93/7 94/4
fourth [4]  10/1 10/2 10/8 47/23
Fox [2]  13/10 13/10
fragments [1]  23/21
frames [1]  47/7
frankly [6]  13/7 20/8 63/4 72/10
98/25 99/10
fraud [1]  117/22
freaken [1]  89/4
freaking [2]  42/22 89/17
free [3]  28/16 30/8 31/18
Friedman [1]  8/24
Friedman's [1]  9/24
friendly [2]  72/10 120/4
friends [1]  43/1
front [5]  6/21 41/23 59/15 66/1
107/21

**F**

full **[3]**   70/1 98/18 107/24
fully **[9]**   28/14 28/21 30/6 31/16
31/16 31/20 32/1 32/22 73/25
fundamental **[1]**   85/21
fundamentally **[2]**   21/6 21/7
furniture **[1]**   37/1
further **[9]**   22/8 22/9 59/10 59/17
71/22 71/22 90/15 116/9 118/14

**G**

gallery **[36]**   36/24 37/11 40/16
41/1 41/3 41/11 41/12 41/21 41/25
42/2 42/6 49/2 49/7 49/11 49/25
50/1 51/2 51/20 51/21 53/11 69/9
69/11 70/6 70/11 70/17 71/25 78/5
79/14 79/15 88/11 88/24 123/15
123/15 123/18 123/25 126/14
gallows **[1]**   55/22
game **[2]**   66/9 67/3
GARY **[3]**   1/7 4/4 4/18
gave **[2]**   56/2 78/15
gaze **[1]**   79/20
gear **[3]**   36/23 91/8 91/8
general **[2]**   14/6 15/7
generally **[1]**   15/18
GEORGE **[1]**   2/6
gestures **[1]**   17/14
gesturing **[1]**   71/3
get **[35]**   37/8 39/1 39/22 40/6
40/13 41/19 43/21 49/14 54/6 54/9
54/10 55/21 55/21 55/23 66/11
72/2 75/8 75/13 77/25 79/23 80/1
81/15 84/9 89/11 94/14 97/8
108/13 116/5 117/6 120/10 120/18
125/10 125/12 126/23 127/4
gets **[2]**   65/23 65/24
getting **[4]**   41/10 92/23 113/6
115/9
Giglio **[2]**   14/17 18/13
Ginsburg **[1]**   118/23
give **[11]**   6/18 11/6 45/9 54/18
65/21 99/8 110/3 122/16 123/12
128/3 129/3
given **[9]**   13/8 17/1 17/20 17/22
48/18 59/21 62/7 65/4 123/24
gives **[3]**   82/5 84/20 84/21
giving **[10]**   17/6 24/24 29/5 30/14
31/22 84/7 84/17 99/3 115/17
128/8
glad **[2]**   67/5 71/10
glass **[1]**   47/6
glasses **[1]**   47/14
glimpses **[1]**   54/3
go **[94]**   5/3 5/15 12/7 22/23 24/11
24/23 27/22 29/15 32/16 41/10
43/14 45/10 45/14 45/14 45/17
45/25 46/9 47/7 47/17 47/19 50/16
51/17 51/21 52/17 54/3 54/10
59/10 59/17 59/21 65/13 65/14
65/24 67/1 67/11 68/2 70/22 71/25
74/7 74/25 75/12 77/1 78/3 78/4
78/6 78/13 78/13 78/16 79/1 79/2
79/5 79/5 79/14 79/18 79/22 80/8
80/9 81/6 83/8 84/1 85/22 85/23
89/9 90/14 94/11 95/17 97/24
102/13 103/3 103/24 104/23 105/5
105/6 105/21 106/1 106/8 106/19
107/14 108/11 108/12 110/10
110/20 112/11 112/19 112/19
115/25 119/12 120/7 122/17 122/18
123/24 124/8 127/23 127/25 129/3
goal **[1]**   43/2
God **[1]**   86/4
goes **[13]**   60/11 74/16 74/17 86/10
87/19 91/16 91/16 94/13 107/23
110/11 116/17 117/19 120/14
going **[104]**   6/23 14/4 20/25 23/6
24/16 24/25 25/9 26/16 27/13
27/16 27/17 34/7 34/24 34/25 36/8
38/19 38/21 39/3 40/11 40/17

40/18 41/4 44/8 45/2 45/24 46/1
46/9 47/2 47/22 48/7 49/3 49/6
49/7 49/11 49/11 51/6 51/15 52/18
52/24 53/24 53/25 54/3 60/8 61/11
62/8 62/14 62/15 63/19 63/21
63/25 64/1 64/7 64/8 66/10 66/10
66/14 67/19 67/21 68/25 70/7
71/14 71/22 72/17 73/1 74/9 76/2
77/4 77/20 78/8 80/10 81/8 81/8
82/3 82/22 82/23 83/9 88/15 94/25
97/21 98/9 101/8 101/10 101/25
102/1 103/12 106/9 110/22 110/24
110/25 111/2 111/3 111/4 111/13
111/16 112/21 114/7 119/12 119/13
120/21 122/4 122/6 125/3 127/3
127/4
gone **[7]**   45/16 52/2 52/4 79/15
79/16 103/13 122/10
good **[28]**   4/7 4/13 4/15 4/15 4/17
4/19 4/20 4/23 29/16 34/21 76/15
80/20 84/7 85/23 86/5 86/7 87/4
108/9 111/25 113/3 113/11 113/13
113/23 113/25 114/5 114/6 115/3
115/7
got **[12]**   42/19 113/9 113/10 114/8
114/20 115/21 122/2 122/3 122/4
122/6 122/13 124/20
gotten **[1]**   103/15
government **[77]**   4/6 6/14 11/16
11/25 13/9 14/7 14/9 14/22 14/24
15/5 15/8 15/15 15/18 15/20 16/8
17/9 17/12 20/6 23/10 24/7 25/10
25/24 26/18 27/13 27/15 29/11
33/1 33/15 34/4 34/6 36/6 38/2
44/14 44/22 45/16 45/19 49/3
50/19 52/19 56/23 57/8 57/14
57/23 58/17 58/20 59/16 60/12
60/17 61/16 61/25 62/19 67/23
68/11 73/23 76/11 77/3 87/20
88/21 89/5 90/22 92/1 92/4 98/23
99/1 99/3 99/8 99/21 99/22 99/24
108/4 109/24 115/5 116/6 117/8
118/3 118/18 125/13
government's **[13]**   8/8 8/12 10/25
13/20 15/7 17/22 23/13 23/16
23/17 49/13 58/22 82/25 84/11
governs **[1]**   15/16
grab **[9]**   50/25 102/23 106/2 106/8
106/16 107/4 107/16 109/4 120/14
grabbed **[5]**   39/16 101/2 106/3
106/10 107/7
grabbing **[2]**   109/11 109/11
grabs **[1]**   65/10
grand **[1]**   44/22
granted **[1]**   70/12
granting **[1]**   114/3
grasp **[1]**   55/1
grass **[1]**   103/14
great **[2]**   111/9 111/11
green **[1]**   39/9
Grider **[1]**   8/22
grievances **[1]**   56/2
Griffin **[4]**   8/22 9/18 10/8 10/12
ground **[8]**   39/17 39/19 75/20
107/19 107/21 107/23 108/12
120/23
grounds **[17]**   7/7 7/9 7/24 8/1 9/4
9/8 9/9 9/11 9/24 12/2 12/20
12/21 38/16 75/10 75/23 88/8 93/9
group **[10]**   41/12 72/7 90/18 91/2
92/13 116/18 117/1 119/16 120/16
120/16
guard **[1]**   37/20
guess **[10]**   21/4 22/5 37/15 60/10
66/5 72/11 99/23 100/14 111/12
113/10
guilt **[1]**   36/14 73/20 100/10
guilty **[10]**   43/13 56/25 66/20
73/21 82/13 86/3 94/22 97/13
98/18 117/11
gum **[1]**   37/18

guy **[2]**   85/4 122/21
guys **[22]**   70/17 76/7 /6 84/25
84/25 115/18 115/21 115/22 116/4
116/9
guys.' **[1]**   124/13

**H**

had **[77]**   5/9 5/21 6/9 8/15 10/9
13/14 15/1 15/23 16/18 18/19
22/14 28/24 33/14 34/19 35/9
35/23 36/16 37/4 37/9 41/20 48/11
49/3 51/5 51/13 55/20 56/6 56/13
56/13 57/12 57/14 67/25 70/12
71/23 71/24 74/6 74/23 77/4 77/5
77/21 78/15 81/5 82/16 84/3 84/18
88/17 91/3 91/12 91/15 92/11
93/10 96/8 98/16 101/1 101/24
102/16 103/13 103/15 104/15
104/15 104/16 105/3 105/22 106/21
106/25 107/12 107/20 111/12
111/15 112/5 112/10 117/14 123/22
124/12 125/20 126/21 126/25 128/4
had the **[1]**   51/13
hall **[1]**   79/15
hallway **[8]**   37/11 40/15 50/6
51/22 53/8 53/20 70/23 122/8
hallways **[1]**   115/23
hand **[9]**   29/17 39/14 47/6 47/24
48/14 54/20 74/14 84/21 84/23
handful **[2]**   6/24 114/24
handlers **[1]**   17/25
hands **[4]**   97/25 114/7 114/22
115/3
hangar **[1]**   10/10
happen **[4]**   40/2 70/5 79/7 83/7
happened **[10]**   14/2 20/9 20/11
39/21 66/15 77/14 77/18 119/23
123/14 126/25
happening **[7]**   40/22 41/20 50/17
50/22 65/20 113/3 123/22
happens **[5]**   49/18 65/20 66/17
72/5 77/14
happy **[6]**   18/25 26/7 88/14 99/7
100/11 100/18
hard **[1]**   120/22
has **[59]**   4/8 8/6 12/10 12/14 14/9
15/21 19/10 19/14 20/5 21/3 21/21
21/23 21/23 21/24 22/2 22/11
22/18 34/4 35/16 36/6 36/8 37/13
44/14 45/6 45/16 56/23 58/17
58/20 59/2 59/21 60/17 61/16
63/12 64/10 64/16 64/17 65/18
65/19 67/23 68/4 69/24 70/2 75/8
78/11 79/11 82/14 83/20 83/21
99/4 100/9 107/12 115/24 116/15
117/8 122/9 123/9 125/13 126/18
126/20
hasn't **[2]**   18/12 57/23
have **[221]**
haven't **[3]**   22/6 63/4 63/18
having **[4]**   35/13 46/2 48/24 54/25
he **[228]**
he has **[1]**   21/24
head **[3]**   27/6 73/15 84/15
Health **[2]**   115/8 115/12
hear **[6]**   39/11 54/8 57/7 88/25
100/11 112/16
heard **[7]**   38/19 58/3 65/22 73/10
78/18 85/8 117/2
hearing **[2]**   29/7 101/14
hearings **[2]**   20/10 20/11
heavy **[5]**   44/22 45/2 67/23 72/4
83/19
held **[3]**   92/25 115/10 116/6
hell **[2]**   110/19 110/20
help **[2]**   52/24 95/4
helpful **[7]**   26/24 27/3 27/6 59/11
61/3 67/4 129/5
here **[104]**   4/24 7/21 9/1 9/7 9/10
12/15 19/18 19/21 21/16 21/24
22/2 26/5 35/13 39/7 40/6 41/10
43/24 44/12 45/17 45/17 46/2

**H**

**here... [83]** 46/16 47/3 47/5
48/16 48/21 50/3 50/14 50/15
50/16 50/21 50/23 52/1 52/3 53/3
53/4 53/4 53/4 53/4 53/14 54/15
54/20 56/3 56/11 58/10 59/17
66/10 72/19 72/25 73/7 77/3 78/13
80/9 80/24 80/25 81/2 81/10 81/14
83/15 83/17 85/21 88/13 90/10
93/3 95/4 95/8 98/22 99/11 100/3
102/20 103/5 103/13 103/21 103/22
104/6 104/7 104/7 104/24 105/21
106/10 106/11 107/9 107/9 107/15
108/5 110/23 111/1 113/6 113/19
114/23 115/13 116/12 120/2 120/8
122/21 125/6 125/7 126/8 126/11
126/16 126/23 128/1 128/9 128/12
**hereby [1]** 96/23
**hey [3]** 81/6 84/25 115/17
**high [6]** 13/18 86/8 86/9 103/14
114/11 116/7
**higher [1]** 114/12
**highest [3]** 81/1 94/8 114/12
**highlighting [1]** 36/9
**him [25]** 17/19 34/12 37/4 39/17
43/1 51/19 54/20 57/1 72/9 72/23
78/1 78/2 79/1 91/3 92/16 94/10
94/10 94/11 97/25 99/4 99/18
106/21 107/12 123/10 124/19
**himself [4]** 40/6 91/24 106/21
106/23 108/13 112/10 115/17
**HIPAA [1]** 90/2
**his [57]** 8/11 15/4 15/23 16/1
16/2 16/6 16/22 17/15 18/9 18/10
19/17 21/4 21/5 21/5 21/20 21/20
22/2 22/2 22/6 22/7 22/12 29/5
32/18 43/1 44/17 44/25 48/14
54/20 55/11 58/5 71/1 71/8 72/15
72/22 74/18 74/18 77/20 79/2 83/4
87/23 90/9 92/7 92/10 94/2 94/19
97/25 104/9 105/1 105/17 105/17
105/23 107/1 108/12 120/7 121/16
121/19 121/23
**historic [1]** 111/9
**history [2]** 112/1 115/14
**hit [1]** 64/16
**Hodges [13]** 39/12 39/13 39/18
43/3 45/20 102/17 102/19 102/20
102/21 103/7 106/20 119/24 120/20
**Hodges' [2]** 39/11 39/16
**hold [5]** 28/8 74/19 92/10 102/11
114/5
**holding [6]** 8/20 10/11 29/21
74/15 107/23 108/2
**honestly [1]** 114/1
**Honor [171]**
**Honor's [2]** 62/12 83/14
**HONORABLE [1]** 1/10
**hope [6]** 53/6 62/4 62/13 62/19
62/20 86/6
**hopefully [2]** 46/11 48/3
**hopes [1]** 115/15
**horns [1]** 51/16
**horrible [1]** 55/2
**horse [1]** 65/13
**hortatory [1]** 78/15
**hours [1]** 24/24
**House [4]** 13/5 13/11 13/15 16/5
**how [28]** 5/1 9/22 11/4 16/24 26/5
27/10 33/21 42/2 55/2 62/23 67/8
68/12 72/4 72/8 79/23 79/24 80/1
97/19 99/25 100/6 100/12 119/24
122/2 122/3 122/13 126/23 128/13
128/23
**however [3]** 20/23 26/7 76/7
**huge [1]** 122/3
**human [3]** 17/23 115/8 115/12
**hundreds [3]** 21/18 92/11 123/8
**hurt [1]** 76/20
**hyperbole [1]** 110/21
**hypothetically [1]** 65/17

**hypotheticals [1]** 63/1

**I**

**I am [1]** 81/4
**I'd [17]** 43/8 43/16 45/14 45/25
55/13 62/21 68/2 86/6 87/12 88/6
89/9 90/21 93/14 95/18 108/22
110/10 127/23
**I'll [1]** 83/3
**I'm [9]** 81/3 81/17 96/1 98/6
101/10 103/25 112/15 119/5 124/25
**idea [1]** 57/3
**identical [1]** 16/14
**identified [2]** 65/20 125/25
**identifies [1]** 16/10
**ignoring [1]** 40/12
**ill [1]** 4/9
**illegally [1]** 74/8
**illustrate [2]** 101/3 105/7
**images [1]** 97/25
**imagine [2]** 84/3 84/8
**immediately [7]** 39/15 41/22 72/8
117/7 123/24 124/4 126/22
**immunity [1]** 15/13
**impeachment [1]** 18/12
**impede [5]** 9/5 30/10 31/20 93/24
94/3
**implore [1]** 108/8
**implored [1]** 78/15
**important [8]** 44/9 47/11 49/7
51/8 69/6 71/19 76/7 116/17
**importantly [1]** 75/24
**improper [2]** 44/18 87/24
**impute [1]** 110/12
**incident [2]** 74/5 85/1
**include [1]** 109/19
**including [4]** 13/14 18/12 65/16
68/11
**inconsistent [2]** 14/1 85/11
**incorrect [1]** 14/23
**Increase [1]** 85/21
**increased [3]** 42/9 124/24 125/2
**indeed [1]** 15/8
**indefensible [1]** 12/14
**independent [2]** 93/6 93/11
**indicate [2]** 71/5 108/20
**indicated [2]** 20/22 106/17
**indicates [5]** 71/10 74/21 84/9
97/11 104/14
**indicating [1]** 28/14 30/4 31/14
**indication [7]** 39/23 47/15 55/11
56/13 58/15 82/5 84/15
**indicative [1]** 94/19
**indices [1]** 16/10
**indictment [5]** 7/3 11/23 12/1
12/4 17/1
**individual [5]** 48/11 51/5 51/16
54/15 70/10
**individuals [10]** 46/19 46/21
46/23 47/13 50/24 69/5 104/14
121/18 121/20 121/23
**indulgence [2]** 86/13 93/18
**infer [8]** 41/17 43/5 78/17 78/21
88/22 92/5 117/23 118/4
**inference [5]** 41/24 74/3 74/11
80/10 82/7
**inferences [12]** 18/24 38/14 73/7
73/18 73/19 73/22 77/10 77/10
77/12 82/11 85/2 127/10
**inferentially [1]** 73/16
**influence [7]** 28/17 30/9 31/19
32/17 32/18 32/20 32/21
**information [5]** 14/11 15/2 15/9
17/19 18/13
**informed [2]** 32/18 32/22
**informs [1]** 43/11
**initially [1]** 71/24
**inner [2]** 9/19 46/18
**innocence [5]** 73/19 73/19 73/22
82/12 101/25
**innocent [4]** 18/5 86/3 86/4
110/14

**innocently [1]** 111/22
**inquiring [1]** 63/2
**inquiries [3]** 116/10 117/21 118/1
**inside [13]** 38/17 38/24 41/12
77/24 88/8 88/11 88/20 88/24 92/1
93/8 116/3 123/15 124/18
**instance [2]** 81/3 81/5
**instead [6]** 22/12 41/8 79/5 84/14
85/9 121/22
**institutions [1]** 113/7
**instruct [1]** 96/24
**instructing [1]** 79/10
**instructions [1]** 72/8
**insufficiency [1]** 58/23
**insurrection [3]** 55/11 56/8 91/1
**intend [1]** 74/4
**intended [6]** 58/15 84/9 84/11
93/24 93/25 96/14
**intending [2]** 71/5 76/12
**intent [54]** 9/5 37/5 37/9 37/23
38/1 39/23 43/11 55/11 56/12
56/13 62/10 62/11 62/11 70/15
73/14 74/25 77/15 77/16 78/10
79/2 83/20 84/1 84/14 85/4 85/11
88/23 90/9 90/9 90/22 91/16 92/8
92/19 93/16 94/19 108/8 108/19
109/21 110/13 110/15 110/17 111/7
111/22 112/7 112/8 113/20 114/10
114/11 114/11 114/13 116/8 116/8
120/1 123/19 127/5
**intention [1]** 124/18
**intentionally [1]** 85/24
**interacted [1]** 17/2
**interaction [3]** 75/25 89/15 120/4
**interactions [1]** 48/23
**interest [1]** 111/11
**interesting [2]** 102/18 103/10
**interfere [2]** 85/11 113/15
**interior [1]** 121/15
**interpret [3]** 98/4 98/7 124/14
**interpretation [7]** 8/9 8/12 10/25
12/13 89/24 123/22 126/18
**interpretations [2]** 12/12 126/7
**interpreted [1]** 125/9
**interpreting [1]** 125/5
**interrupting [1]** 95/17
**interruptive [1]** 87/16
**intervention [1]** 56/6
**interview [1]** 17/18
**interviewed [1]** 13/16
**interviews [2]** 17/16 17/17
**introduce [1]** 102/7
**introduced [1]** 57/18
**introducing [1]** 57/3
**invading [1]** 103/9
**invalidated [1]** 11/3
**investigate [1]** 13/6
**investigated [1]** 13/12
**investigation [1]** 14/25
**investigations [3]** 16/12 117/21
118/1
**invite [4]** 85/15 106/4 108/22
110/10
**invites [1]** 11/8
**inviting [1]** 76/11
**invoking [1]** 72/21
**involved [1]** 14/24
**involving [2]** 70/20 72/13
**irrelevant [1]** 23/19
**is [694]**
**is once [1]** 69/8
**island [1]** 106/21
**isn't [3]** 71/14 123/18 126/9
**issue [24]** 10/9 10/20 10/23 12/15
12/23 14/19 15/3 22/4 22/5 22/8
44/6 48/21 57/25 58/2 58/4 59/12
61/6 65/22 66/10 69/17 93/6
100/13 102/5 117/17
**issued [1]** 10/22
**issues [4]** 22/5 60/19 66/1 114/20
**it [309]**
**items [1]** 23/23

**I**

**its [16]** 7/9 8/1 14/23 16/8 17/9 18/16 20/4 44/1 56/23 57/14 57/24 58/20 60/18 113/14 114/2 117/9
**itself [2]** 14/20 17/19

**J**

**jabbing [1]** 71/1
**January [16]** 13/6 13/12 13/25 16/23 17/24 20/1 21/7 21/10 21/16 40/23 44/25 55/7 55/19 56/10 110/12 121/9
**January 5th [1]** 16/23
**January 6 [15]** 13/6 13/12 13/25 17/24 20/1 21/7 21/10 21/16 40/23 44/25 55/7 55/19 56/10 110/12 121/9
**Jeffrey [1]** 4/11
**Jencks [6]** 14/17 19/2 19/2 19/7 19/7 20/8
**job [14]** 39/25 42/19 42/21 42/22 42/22 84/17 85/5 89/3 89/4 89/4 89/18 90/10 94/13 117/18
**jobs [6]** 43/1 117/25 120/12 120/17 126/9 126/17
**Joe [1]** 13/22
**John [1]** 4/20
**Johnson [1]** 11/8
**join [3]** 8/17 95/10 115/18
**joined [3]** 41/12 113/1 123/20
**joining [2]** 41/15 117/1
**joint [2]** 18/1 18/5
**Josephine [1]** 4/10
**JR [1]** 2/2
**JUDGE [31]** 1/11 6/19 7/19 8/20 8/21 8/22 8/22 8/23 8/23 8/24 8/24 9/24 10/7 10/12 15/3 16/13 23/2 36/21 37/2 64/21 87/5 91/11 92/9 92/21 93/21 94/19 118/8 118/11 122/7 122/21 128/19
**judgment [2]** 66/12 108/10
**Judicial [1]** 12/11
**jump [2]** 49/19 70/10
**jumping [1]** 70/8
**jurisdiction [1]** 22/24
**jurors [1]** 21/14
**jury [17]** 5/2 5/5 5/19 6/1 6/6 6/13 21/5 21/6 21/9 21/14 21/17 22/24 22/24 44/22 44/24 66/1 96/25
**just [108]** 7/20 9/5 9/22 11/18 12/15 21/3 22/25 23/9 27/15 27/23 29/4 32/16 33/14 33/17 33/25 41/20 43/10 43/20 45/14 46/6 46/11 47/7 47/25 48/11 48/15 49/14 50/6 50/14 50/17 50/21 51/5 51/7 54/21 55/2 56/4 57/7 58/3 59/18 60/19 63/12 64/9 64/16 64/21 65/3 65/17 66/19 66/24 67/1 67/18 70/8 70/17 71/2 72/3 75/9 75/21 77/8 77/24 78/25 80/16 81/2 81/4 84/7 86/12 86/14 86/15 87/3 89/8 89/11 89/14 90/19 92/25 93/21 98/4 98/8 99/14 99/16 99/17 102/7 102/14 106/2 106/15 108/16 113/24 114/20 114/22 115/6 115/10 117/18 117/20 117/25 119/8 119/9 119/16 119/21 120/3 120/11 120/14 121/1 121/3 122/18 123/22 125/4 126/3 126/23 127/2 127/22 128/8 128/9
**justice [6]** 14/4 15/10 15/22 81/2 94/9 118/23
**justify [1]** 114/6

**K**

**keep [8]** 103/24 104/23 105/12 107/8 107/14 108/11 119/14 119/17
**Kelly [2]** 8/23 15/3
**kept [1]** 115/8
**key [1]** 99/13
**kick [1]** 108/13
**kidnapping [1]** 120/2
**kind [9]** 67/9 68/2 70/18 84/8 86/10 89/22 97/8 109/25 110/21
**knew [6]** 40/22 42/11 44/17 87/23 114/14 123/25
**know [49]** 5/2 7/1 13/1 21/8 22/23 23/10 37/15 37/16 49/3 53/19 60/15 63/5 66/9 67/8 70/17 71/8 71/20 72/4 78/2 79/3 81/7 84/22 84/24 85/5 85/8 86/2 91/18 98/10 100/6 101/19 106/24 113/5 113/7 113/20 114/14 115/22 116/2 116/5 117/5 120/24 121/25 121/25 123/19 125/13 125/23 125/24 125/24 126/19 127/25
**knowingly [6]** 7/5 7/13 9/3 9/4 87/14 94/1
**knowledge [3]** 20/9 56/14 63/9
**KNOWLTON [82]** 1/6 2/2 4/3 4/14 6/4 7/12 7/17 7/21 7/22 8/4 12/5 12/17 20/21 27/20 27/22 28/2 28/4 32/16 33/6 34/8 34/9 34/12 34/13 36/12 39/8 39/11 39/20 40/1 40/16 40/20 41/16 42/17 47/1 47/4 47/17 48/13 48/23 50/13 51/1 54/2 54/9 54/16 54/18 55/10 56/11 56/22 68/7 68/12 68/15 69/11 70/2 70/24 71/15 72/1 73/9 73/11 73/24 74/16 75/25 78/8 78/14 78/25 80/11 80/16 80/21 81/22 82/3 84/23 90/16 90/17 91/10 91/15 104/6 104/10 120/15 124/11 124/13 124/15 124/16 124/23 125/1 127/16
**Knowlton's [9]** 68/9 69/7 81/14 81/21 81/25 84/1 84/15 124/14 124/17
**knows [5]** 40/13 71/9 73/14 73/25 85/25
**Kollar [1]** 8/21
**Kollar-Kotelly [1]** 8/21
**Kotelly [1]** 8/21

**L**

**lack [3]** 16/11 18/24 68/1
**lacks [1]** 16/2
**Lambert [1]** 4/22
**Lamberth [1]** 8/24
**language [14]** 8/25 9/13 11/10 12/9 59/21 59/25 60/1 61/1 81/18 96/6 96/6 97/10 97/11 97/13
**lapse [1]** 108/9
**laptop [2]** 46/2 46/4
**Larry [2]** 49/9 56/6
**last [5]** 21/3 22/8 28/8 29/22 55/25
**late [1]** 23/1
**later [7]** 14/7 39/8 40/25 49/24 49/25 71/12 106/14
**law [27]** 2/3 8/13 10/18 11/5 12/11 12/14 40/5 41/8 57/16 62/14 63/9 65/5 65/9 76/8 81/18 82/13 87/10 88/4 89/7 90/11 91/25 112/1 114/1 118/24 119/1 119/4 124/17
**law-abiding [1]** 40/5
**lawful [1]** 8/2
**lawn [6]** 38/25 68/6 100/21 101/1 119/24 127/1
**lawyer [7]** 5/10 5/22 28/22 28/25 34/20 35/10 77/25
**lawyer's [1]** 35/5
**lawyers [5]** 6/10 30/18 32/2 34/21 35/24
**lead [1]** 35/13
**leading [2]** 68/3 121/16
**leads [2]** 50/14 99/19
**leap [2]** 83/8 83/11
**least [12]** 12/4 20/24 22/14 55/10 80/25 82/24 99/12 106/3 110/16 115/23 116/1 123/20
**leave [20]** 46/19 53/15 60/12 61/11 61/12 69/8 72/6 72/8 79/24
**leaves [2]** 84/25 119/18
**leaving [6]** 20/1 72/9 73/13 84/4 84/23 94/11
**led [1]** 43/10
**left [15]** 13/22 36/25 41/21 41/25 42/6 74/14 78/16 84/2 84/19 85/10 90/13 94/18 106/20 124/24 125/1
**left-hand [1]** 74/14
**legal [8]** 10/13 10/15 10/21 45/12 55/17 60/19 87/5 97/9
**legally [3]** 45/4 59/5 61/18
**legislative [2]** 14/21 20/6
**length [1]** 93/6
**lengthier [1]** 60/5
**lenity [3]** 8/10 12/8 12/10
**less [2]** 11/14 18/10
**let [42]** 4/25 5/3 5/6 6/14 7/14 7/20 9/5 12/25 23/10 24/15 25/6 46/9 46/24 47/7 48/10 51/4 51/5 51/6 57/7 64/9 71/24 72/2 72/3 78/2 78/3 78/6 82/3 82/15 86/4 96/17 98/23 99/23 101/17 101/18 102/13 105/21 108/23 111/13 122/15 125/3 127/22 128/17
**let's [14]** 5/15 9/5 27/22 45/13 75/12 80/14 81/2 81/5 97/23 112/19 112/19 114/9 128/21 129/2
**lethal [1]** 121/20
**letting [7]** 20/10 71/9 72/3 73/6 76/14 77/9 77/21
**level [11]** 83/22 87/11 88/22 89/7 90/8 90/22 92/7 92/14 93/15 109/14 118/9
**liability [3]** 13/2 37/7 37/16
**Libby [1]** 15/17
**license [1]** 76/16
**Lieutenant [5]** 121/9 121/10 121/14 121/16 121/20
**life [1]** 76/16
**light [3]** 66/5 76/22 76/24
**like [72]** 21/2 21/25 24/12 24/14 26/5 27/2 27/5 33/17 33/21 43/17 45/9 45/13 45/14 45/25 46/7 47/18 49/8 51/5 51/7 51/11 54/25 55/5 55/13 56/1 57/2 60/4 60/8 60/9 62/8 63/3 64/6 64/8 65/15 67/14 68/2 68/18 72/15 72/16 72/18 76/24 76/25 77/7 80/23 83/15 84/8 84/24 84/24 85/3 85/4 85/4 87/5 87/8 87/12 88/6 89/9 90/24 92/17 92/21 92/24 94/13 95/18 100/17 109/11 110/19 110/19 113/1 115/14 122/8 127/3 127/4 127/15 127/23
**likely [4]** 13/19 44/17 66/13 87/23
**limine [14]** 23/8 23/11 23/13 23/14 23/16 23/17 23/18 23/19 23/20 23/21 23/23 23/24 23/25 24/2
**limit [4]** 7/20 63/25 64/8 64/19
**LINDSAY [4]** 1/22 2/12 130/3 130/12
**line [11]** 45/8 90/15 103/17 104/20 105/22 105/24 116/15 118/7 120/10 120/11 125/13
**lines [1]** 37/21
**listening [2]** 81/4 111/11
**literally [2]** 21/15 21/15
**litigation [2]** 36/9 113/8
**little [18]** 14/15 33/24 45/9 53/12 54/19 54/19 67/11 67/18 95/4 97/4 99/10 99/15 100/15 103/18 103/20 108/17 108/18 120/21
**live [1]** 29/6
**LLP [1]** 2/7
**locations [1]** 23/18
**lock [4]** 41/2 69/10 69/14 124/2
**locked [1]** 125/24

**locking [3]** 69/10 69/23 124/3
**locks [1]** 121/11
**long [7]** 42/2 63/2 64/20 84/25 85/7 128/7 128/12
**longer [1]** 33/24
**look [19]** 27/2 68/17 70/22 70/25 71/12 73/16 79/13 79/17 79/16 79/20 84/1 93/21 93/22 105/17 107/16 107/25 108/22 110/3 127/25
**looked [3]** 21/23 21/23 55/18
**looking [12]** 41/25 73/14 78/18 78/20 78/22 78/24 79/8 79/23 79/24 82/16 83/25 110/7
**looks [4]** 59/4 74/17 85/3 85/4
**loss [1]** 99/15
**lost [5]** 16/16 16/18 17/8 77/25 109/7
**lot [11]** 21/8 44/7 60/11 75/23 85/9 103/20 104/22 106/6 112/20 116/8 127/6
**lots [1]** 114/17
**loud [2]** 76/4 121/13
**Loudermilk [2]** 16/4 16/6
**Loudermilk's [1]** 16/9
**lower [2]** 53/22 103/14
**lunch [2]** 67/7 118/21
**lynch [1]** 20/2

**M**

**mad [1]** 84/4
**made [26]** 14/8 22/11 23/2 28/17 30/9 31/19 40/20 49/17 49/24 59/7 68/10 71/21 72/1 72/23 85/24 90/19 92/1 94/17 95/11 102/16 106/24 109/20 114/2 114/3 117/24 121/20
**magnetic [1]** 121/11
**maintain [2]** 13/9 47/9
**make [46]** 11/1 22/23 23/3 25/22 26/20 27/6 32/18 32/19 33/1 34/13 34/15 35/3 37/14 38/8 39/14 39/14 44/8 50/5 53/24 57/19 59/14 59/16 60/7 60/19 61/20 62/15 67/11 71/5 77/11 83/23 86/15 86/17 95/12 98/13 100/15 102/2 102/14 103/7 104/19 105/24 109/9 110/21 112/24 117/1 119/9 120/7
**makes [6]** 8/4 13/4 14/15 65/11 74/11 113/13
**making [10]** 22/15 32/18 58/4 81/10 85/2 105/1 105/21 106/6 108/1 120/6
**man [2]** 106/10 107/20
**manager [1]** 20/22
**manages [1]** 38/22
**manifest [1]** 84/14
**manifesting [1]** 108/19
**manner [2]** 72/10 92/20
**many [10]** 8/17 17/23 21/13 21/14 21/17 73/19 105/2 110/21 112/2 112/3
**map [3]** 52/20 67/19 79/12
**March [1]** 1/5
**marginal [1]** 11/5
**mark [4]** 46/21 50/24 64/16 107/10
**marked [1]** 40/10
**mask [2]** 104/10 122/21
**masks [1]** 119/19
**mass [1]** 41/17
**massive [1]** 75/16
**material [4]** 17/11 17/15 18/14 18/16
**materials [4]** 15/5 15/9 16/3 26/6
**Mather [1]** 85/21
**matter [5]** 10/24 14/18 19/13 19/15 130/5
**matters [4]** 114/22 115/3 122/13 125/12
**may [38]** 11/16 12/12 17/18 18/2 20/3 33/1 37/12 43/18 43/20 43/25

52/9 52/12 56/22 56/24 58/7 59/11 104/7 104/14 64/11 66/11 66/12 67/17 77/15 77/15 79/11 86/12 86/14 86/21 90/24 95/12 97/12 97/17 99/13 102/6 113/8 113/9 117/14 117/15
**maybe [11]** 38/1 41/10 57/7 66/16 100/10 113/1 113/6 113/25 114/12 122/17 122/18
**Mayer [1]** 3/4
**mayhem [3]** 75/8 75/15 77/7
**Mayr [9]** 4/13 24/10 25/8 27/19 34/7 67/17 73/10 87/6 121/4
**Mayr's [1]** 25/16
**McFadden [2]** 8/22 10/8
**McFadden's [1]** 10/12
**McHugh [2]** 8/23 9/25
**me [69]** 4/10 4/25 5/3 6/14 6/21 7/14 7/20 9/5 12/25 18/23 19/3 22/16 23/2 23/24 24/20 24/23 25/6 27/1 27/2 27/2 27/5 27/6 33/21 33/25 46/9 47/20 47/21 47/24 48/10 51/12 52/24 57/7 57/7 57/22 59/15 60/21 61/1 61/3 62/21 63/7 64/9 65/11 66/16 67/5 70/23 72/3 76/19 76/21 78/10 89/15 95/4 96/17 97/3 98/24 99/22 101/19 102/14 108/23 110/3 110/7 114/21 115/18 122/15 122/16 123/12 127/22 128/13 128/17 129/3
**mean [25]** 9/9 10/7 49/19 49/23 52/19 58/18 58/25 59/21 61/14 64/10 65/23 70/1 70/1 70/9 70/11 78/25 79/13 82/2 85/8 86/19 99/21 99/21 113/5 115/2 118/6
**meaning [2]** 18/18 83/20
**meanings [1]** 11/11
**means [10]** 9/22 18/18 39/23 40/13 63/7 82/13 113/11 113/14 118/4 126/9
**meant [4]** 60/4 63/22 90/12 124/20
**measurably [1]** 21/11
**measurements [1]** 59/4
**media [3]** 23/23 55/12 127/7
**meet [4]** 18/22 72/25 73/2 90/22
**meeting [5]** 59/17 60/12 99/12 99/14 99/20
**meets [3]** 45/2 61/10 72/4
**members [2]** 21/17 117/20
**memorandum [2]** 44/10 87/13
**memory [1]** 27/1
**men [1]** 116/24
**mens [3]** 84/3 84/3 85/15
**mentioned [5]** 70/20 98/4 98/8 98/8 113/19
**merely [1]** 48/15
**merit [1]** 114/5
**messages [6]** 13/24 16/23 18/8 18/9 55/20 56/1
**met [5]** 56/23 57/14 67/23 108/5 117/9
**metaphor [1]** 20/3
**method [1]** 9/23
**Metropolitan [3]** 102/17 103/10 103/16
**MICHAEL [2]** 1/14 4/9
**microphone [4]** 34/12 95/24 95/25 101/9
**middle [2]** 56/21 104/7
**midst [1]** 69/10
**might [20]** 11/5 15/2 16/1 17/16 18/8 26/24 55/23 55/23 57/9 63/1 75/3 77/14 80/12 80/14 80/14 85/14 90/3 101/13 101/15 114/5
**militate [1]** 85/17
**millions [1]** 112/3
**mind [5]** 62/4 64/4 77/20 82/17 116/19
**minds [5]** 59/17 99/13 99/14 99/20 119/9
**mindset [1]** 72/19
**minimizes [1]** 120/21

**minute [9]** 46/24 49/4 50/23 104/8 107/8 107/10
**minutes [13]** 33/22 34/1 34/2 42/4 49/3 49/4 49/24 49/25 54/22 88/12 88/16 88/20 101/15
**MISCELLANY [1]** 3/2
**misdemeanor [4]** 93/14 108/25 109/17 110/8
**misdemeanors [1]** 93/13
**mishandling [1]** 13/4
**misplaced [1]** 14/14
**missed [2]** 76/16 76/21
**missing [3]** 13/15 17/11 75/4
**mistake [2]** 114/2 114/3
**mistaken [2]** 12/25 100/10
**mistrial [2]** 99/16 101/15
**misunderstanding [1]** 61/13
**misunderstands [1]** 19/6
**mob [2]** 20/2 40/9
**modest [1]** 119/2
**moment [34]** 27/16 42/3 43/20 46/19 48/6 48/12 50/18 52/10 52/12 52/13 55/5 55/6 55/13 58/6 61/22 61/24 70/5 70/16 71/20 71/21 92/11 103/20 104/17 106/25 107/12 111/7 112/9 115/14 116/3 119/14 122/13 122/16 123/12 127/2
**momentary [2]** 108/9 108/17
**moments [3]** 40/25 50/22 68/3
**monitored [1]** 21/22
**monitoring [1]** 17/23
**MONTGOMERY [100]** 1/6 1/17 4/3 4/21 5/6 7/5 7/12 12/20 13/3 13/10 14/1 15/21 17/2 17/5 17/10 18/2 18/5 18/7 18/13 18/21 19/24 20/25 21/3 21/20 24/13 25/19 29/15 29/16 29/18 29/21 33/10 34/23 35/3 36/12 39/9 39/15 39/17 39/21 39/25 40/10 41/16 42/19 47/2 47/4 47/16 48/13 48/24 51/1 54/3 54/14 56/22 75/19 92/2 95/3 95/14 97/25 98/16 99/2 99/17 100/25 102/16 102/22 103/1 103/8 104/8 105/7 105/17 105/20 105/23 106/4 106/13 106/24 107/15 107/19 107/23 108/1 108/10 108/12 108/25 109/10 110/14 111/11 111/20 111/24 113/22 114/14 115/21 116/2 116/24 117/10 120/6 120/14 120/15 124/11 124/19 124/20 124/23 125/1 127/21 128/8
**Montgomery's [6]** 16/21 17/1 19/2 23/12 23/20 120/20
**months [2]** 13/22 56/5
**moot [13]** 12/17 12/24 20/14 20/17 22/16 22/19 23/6 23/8 23/10 24/8 25/10 25/17 25/18
**mooted [1]** 6/22
**Moran [2]** 96/8 96/11
**more [18]** 45/14 59/11 59/20 60/6 60/11 63/21 67/8 70/18 70/25 71/7 71/10 77/11 97/5 100/11 107/18 113/6 114/24 124/11
**moreover [1]** 119/1
**Morgan [8]** 41/23 42/7 42/12 42/18 43/3 124/7 125/25 126/5
**morning [9]** 4/7 4/13 4/16 4/17 4/19 4/20 4/23 29/16 81/13
**MOSS [1]** 1/10
**most [7]** 6/21 14/12 89/16 90/6 99/11 114/18 127/24
**Mostofsky [1]** 8/21
**motion [43]** 8/3 12/17 12/19 12/24 13/3 13/7 16/18 16/23 19/11 20/12 20/13 20/18 20/19 20/23 22/6 22/7 22/10 22/13 22/14 22/19 22/19 22/22 22/23 23/6 23/10 23/12 23/13 23/14 23/17 23/18 23/19 23/20 23/21 23/22 23/23 23/25 24/2 57/12 62/12 63/23 97/8 97/9
**motions [9]** 6/20 6/21 6/24 23/7

**M**

motions... [5]   24/7 24/24 25/18
44/11 95/23
motive [2]   63/8 63/8
mountain [1]   85/16
move [4]   45/22 46/17 49/1 50/1
moved [3]   7/3 12/20 86/5
movement [2]   71/23 119/3
movements [1]   119/23
moving [8]   48/24 51/23 51/23
51/25 68/8 81/9 123/12 123/14
MPD [1]   39/1
Mr [12]   3/4 3/5 3/6 24/10 24/11
25/16 35/15 35/15 35/16 80/11
87/6 87/7
Mr. [263]
Mr. Barbari [1]   87/1
Mr. Barbari's [1]   126/6
Mr. Benowitz [1]   25/14
Mr. Brady [1]   4/14
Mr. Fischer [1]   55/20
Mr. Gary [1]   4/18
Mr. Knowlton [65]   6/4 7/17 7/21
7/22 8/4 12/5 12/17 20/21 27/20
27/22 28/4 32/16 33/6 34/8 34/9
34/12 34/13 36/12 39/11 39/20
40/1 40/16 40/20 41/16 42/17 47/1
47/4 47/17 48/13 48/23 50/13 51/1
54/2 54/9 54/16 54/18 55/10 56/11
68/7 68/12 68/15 69/11 70/24 70/24
71/15 72/1 73/9 73/11 73/24 75/25
78/8 78/14 78/25 80/16 80/21
81/22 82/3 84/23 90/16 90/17
91/10 91/15 104/10 120/15 127/16
Mr. Knowlton's [7]   68/9 69/7
81/14 81/21 81/25 84/1 84/15
Mr. Mayr [6]   25/8 27/19 34/7
67/17 73/10 121/4
Mr. Mayr's [1]   25/16
Mr. Montgomery [87]   5/6 7/5 12/20
13/3 13/10 14/1 15/21 17/2 17/5
17/10 18/2 18/5 18/7 18/13 18/21
19/24 20/25 21/3 21/20 24/13
25/19 29/15 29/16 29/21 33/10
34/23 35/3 36/12 39/15 39/17
39/21 39/25 40/19 41/16 42/19
47/2 47/4 47/16 48/13 48/24 51/1
54/3 54/14 75/19 92/2 95/3 95/14
97/25 98/16 99/2 99/17 100/25
102/16 102/22 103/1 103/8 104/8
105/7 105/17 105/20 105/23 106/4
106/13 106/24 107/15 107/19
107/23 108/1 108/10 108/12 108/25
109/10 110/14 111/11 111/20
111/24 113/22 114/14 115/21 116/2
116/24 117/10 120/6 120/14 120/15
127/21 128/8
Mr. Montgomery's [6]   16/21 17/1
19/2 23/12 23/20 120/20
Mr. Piece [1]   118/15
Mr. Pierce [3]   21/13 34/23 94/24
Mr. Robertson [1]   93/7
Mr. Romano [1]   65/2
Mr. Roots [8]   20/25 94/25 95/1
96/16 101/23 117/20 120/6 128/9
Mr. Sullivan [7]   62/3 67/21 70/17
73/4 89/22 94/7 118/7
Mr. Trump [1]   117/2
Mr. Wilson [57]   5/16 5/17 12/20
20/14 23/24 31/2 31/6 33/7 35/18
36/13 36/20 36/23 39/20 40/2
40/19 41/12 41/15 42/21 47/2 47/4
47/16 48/13 48/23 51/1 54/15 87/5
87/7 87/9 88/7 89/3 89/16 90/7
91/1 91/3 91/6 91/10 91/15 91/21
91/24 92/4 92/12 92/23 93/1 93/4
93/10 94/9 94/22 105/20 117/15
117/24 118/11 119/10 119/18
120/15 123/20 126/13 127/18
Mr. Wilson's [5]   23/22 23/25 24/1
24/3 126/8

**Ms [3]**   3/3 3/7 128/18
**Ms. [7]**   96/7 96/8 96/11
96/11 102/10 122/17 123/13
**Ms. Moran [2]**   96/8 96/11
**Ms. Nevin [3]**   36/4 96/7 96/11
**Ms. Roberts [3]**   40/7 122/17
123/13
**Ms. Walker [1]**   102/10
**much [12]**   11/13 18/10 33/21 38/21
67/8 75/14 82/8 83/8 89/23 90/17
107/17 111/5
**multiple [6]**   11/11 62/25 63/12
80/8 94/7 106/15
**mundane [1]**   75/21
**must [5]**   9/17 15/6 17/10 76/20
87/20
**my [44]**   4/8 5/6 8/17 14/22 19/22
20/11 23/4 27/5 28/9 28/19 32/24
34/17 35/21 36/22 37/14 45/24
52/9 52/9 55/23 58/13 59/12 60/13
60/15 60/22 62/24 64/19 66/4
66/18 73/1 74/3 76/15 76/16
87/9 88/15 89/14 99/14 100/22
113/24 114/7 114/16 114/21 123/7
128/3
**myself [2]**   21/13 95/12

**N**

**name [3]**   4/6 64/24 112/5
**named [1]**   102/17
**narrowing [1]**   6/22
**natural [3]**   44/15 87/21 94/1
**nature [3]**   19/2 76/3 113/21
**near [3]**   18/3 121/15 124/4
**nearby [2]**   92/5 92/6
**necessarily [1]**   61/17
**necessary [4]**   10/7 40/3 74/3 99/7
**need [13]**   15/8 15/18 23/2 24/4
26/2 37/8 54/23 55/23 86/7 96/15
101/9 113/6 126/22
**negate [2]**   126/25 127/5
**neither [2]**   16/17 89/6
**never [14]**   15/23 17/17 22/6 22/11
22/14 22/17 22/20 24/25 36/24
37/25 38/3 68/13 109/7 115/14
**Nevertheless [1]**   124/3
**NEVIN [8]**   1/13 3/3 3/7 4/7 36/4
96/7 96/11 128/18
**new [2]**   65/22 66/6
**News [2]**   13/10 13/11
**next [9]**   1/21 24/23 29/15 38/7
44/20 46/24 66/16 86/24 127/22
**night [2]**   21/3 22/8
**no [71]**   1/4 10/9 10/10 11/10
11/13 12/10 16/24 17/13 17/19
25/11 28/16 29/13 30/8 31/18
32/13 32/14 33/6 33/11 34/25 45/8
47/15 48/16 49/5 49/16 49/21
52/21 55/3 55/5 55/4 55/10 56/13
57/13 58/14 59/23 60/22 65/18
66/4 68/9 68/9 68/22 69/6 69/22
70/20 72/12 72/14 72/20 77/6
77/25 78/1 78/8 78/16 80/20 81/15
81/24 83/3 90/25 91/2 91/4 91/7
91/20 91/23 93/9 96/12 97/2 97/3
102/5 104/15 105/10 107/18 109/2
127/20
**non [3]**   69/19 78/10 121/20
**non-lethal [1]**   121/20
**non-uniformed [1]**   69/19
**none [4]**   17/24 49/18 56/9 104/1
**nonfact [1]**   125/22
**Nordean [2]**   8/23 15/4
**norm [1]**   85/21
**normal [1]**   122/9
**not [265]**
**notable [1]**   68/17
**Notably [1]**   18/7
**note [6]**   27/14 49/7 69/6 76/7
91/9 118/25
**noted [5]**   16/13 44/13 44/21 53/19
62/24

**notes [1]**   16/8
**nothing [6]**   5/23 6/7 9/15 49/5 49/5
71/4 72/18 74/6 114/13 108/20
112/11 113/21 115/18 116/12
118/14 118/16 123/17
**notice [6]**   11/7 11/13 11/14 45/23
69/18 78/3
**notices [1]**   107/11
**notifications [1]**   11/24
**noting [3]**   55/18 70/18 72/12
**now [46]**   22/11 22/19 24/17 24/21
31/2 33/17 36/3 39/3 42/13 46/7
46/8 46/24 47/2 47/9 48/8 50/17
53/12 53/25 54/13 54/23 56/3
58/13 61/11 61/13 67/7 67/9 68/2
69/18 72/25 75/3 75/14 77/3 78/6
78/20 79/11 80/9 84/2 89/9 96/22
98/5 101/13 101/15 104/2 107/15
110/8 114/7
**nowhere [2]**   111/23 116/23
**nuance [1]**   97/5
**nuanced [1]**   101/4
**number [24]**   17/21 22/5 23/7 23/12
23/15 23/16 23/20 23/21 23/22
23/23 23/25 24/1 24/2 46/13 46/20
47/3 48/10 51/16 52/19 54/11
87/13 102/19 109/19
**NW [5]**   1/15 1/24 2/3 2/7 2/14

**O**

**oath [1]**   27/23
**object [3]**   33/8 56/17 56/17
**objecting [3]**   25/5 25/24 105/9
**objection [4]**   33/5 33/6 33/11
52/21
**objections [2]**   25/12 95/22
**objective [1]**   99/13
**obligation [1]**   15/15
**obligations [4]**   15/3 15/7 17/9
65/15
**observed [1]**   15/17
**obstruct [27]**   17/25 44/16 44/17
49/6 56/12 56/14 70/15 74/4 74/8
74/25 84/12 87/22 87/23 91/18
93/17 93/23 93/24 93/25 94/2
94/20 108/19 111/8 118/4 120/17
120/19 123/17 123/19
**obstructed [1]**   87/17
**obstructing [5]**   18/5 102/2 112/11
115/19 117/10
**obstruction [11]**   13/4 38/12 45/6
45/8 48/22 55/15 67/21 72/5 72/14
93/23 108/7
**obstructive [1]**   72/20
**obtain [1]**   72/22
**obtaining [2]**   81/13 81/18
**obtains [1]**   15/5
**obviously [14]**   44/2 47/8 56/25
86/15 88/3 97/24 102/15 105/14
107/15 107/17 107/25 108/5 109/7
109/8
**occupy [1]**   43/6
**occurred [1]**   76/6
**occurring [1]**   49/6
**occurs [1]**   18/15
**off [11]**   7/7 7/24 8/19 9/9 40/11
54/21 54/24 68/25 77/4 98/22 99/8
**offense [3]**   8/5 97/16 99/7
**offenses [2]**   96/5 100/8
**offensive [3]**   71/6 71/16 77/25
**offer [1]**   27/13
**offered [2]**   19/21 126/18
**offering [1]**   33/3
**offers [1]**   16/24
**office [8]**   1/14 10/13 10/14 10/21
13/22 41/24 81/23 95/8
**officer [85]**   39/11 39/12 39/13
39/16 39/17 39/18 41/23 42/7
42/12 42/17 43/2 43/3 45/20 47/9
47/21 48/14 50/25 54/7 54/8 54/18
54/20 69/10 69/12 69/14 70/24
71/2 74/15 74/18 75/19 78/1 78/7

**O**

**officer... [54]**   78/19 78/24 79/5 84/21 84/24 89/2 90/11 92/3 94/11 94/17 95/14 98/17 101/1 101/1 102/3 102/17 102/17 102/19 102/20 103/1 104/25 104/25 106/5 106/17 106/20 106/24 107/9 107/11 107/21 109/7 109/8 109/20 116/4 117/5 117/7 119/24 120/20 120/22 120/22 122/14 122/22 124/4 124/10 124/10 124/13 124/14 124/17 124/19 124/23 124/25 125/5 125/25 126/5 126/15
**officer's [5]**   71/1 98/1 103/6 106/3 107/10
**officers [77]**   37/4 39/1 41/2 41/9 46/18 47/14 48/15 48/16 48/24 50/21 50/24 51/4 51/4 51/6 51/13 53/9 53/13 54/7 54/17 54/18 54/21 68/11 68/14 68/16 68/19 69/4 69/21 71/6 71/9 71/16 71/21 71/24 72/1 74/1 74/20 75/20 77/1 77/22 79/9 79/19 79/21 79/22 79/23 79/25 79/25 80/7 80/9 80/22 81/7 84/16 85/6 102/22 103/2 103/9 103/10 103/12 103/16 105/10 105/25 106/6 106/18 106/21 107/2 107/12 119/11 119/17 120/7 120/10 120/11 121/17 121/19 121/23 122/4 123/9 124/1 124/3 125/18
**officers' [1]**   52/7
**offices [1]**   115/9
**official [22]**   1/23 2/13 18/1 38/12 44/16 44/19 45/6 87/18 87/22 87/25 88/2 91/18 91/25 93/17 93/24 94/3 102/2 108/8 108/19 117/10 130/3 130/13
**oh [4]**   6/1 75/12 79/4 127/3
**Ohio [6]**   50/2 50/6 53/2 53/7 53/17 119/11
**okay [59]**   4/12 4/15 5/14 6/2 6/12 6/17 7/20 21/1 24/9 26/19 27/7 29/14 33/5 33/16 33/23 34/7 34/19 34/22 42/5 48/5 50/12 52/22 53/5 53/18 62/17 62/20 67/24 71/18 74/21 75/2 80/6 81/10 83/3 83/13 86/23 96/16 96/19 96/22 100/14 100/19 101/24 102/11 104/1 104/6 104/23 105/8 105/14 105/16 106/9 107/3 113/14 114/9 117/12 119/7 119/20 126/22 128/8 128/9 128/13
**once [8]**   39/22 69/8 72/1 74/12 78/7 78/7 124/24 125/1
**one [45]**   5/14 6/2 7/14 7/17 9/6 10/6 32/15 36/16 42/3 43/24 45/19 50/25 54/21 59/5 59/20 63/18 64/3 64/4 65/18 68/12 71/24 76/16 77/6 81/13 81/17 83/10 83/10 86/10 87/14 89/7 89/23 90/5 90/7 110/3 113/24 115/15 117/14 118/5 119/2 119/14 122/14 122/16 122/24 123/12 125/15
**ones [1]**   7/14
**oneself [1]**   63/10
**only [24]**   7/16 8/3 8/5 8/15 9/6 9/15 14/11 18/15 19/5 20/9 27/11 27/15 29/3 40/11 45/4 58/20 61/20 62/21 74/23 75/10 83/3 89/4 93/11 121/12
**open [10]**   69/5 74/15 74/19 75/11 75/22 88/9 101/8 101/11 121/12 123/2
**opened [4]**   56/3 85/6 121/13 123/6
**opening [3]**   27/13 46/18 122/24
**operate [1]**   8/13
**opinion [14]**   10/14 10/15 10/17 10/21 10/22 15/4 44/10 44/12 56/4 62/24 87/13 92/22 92/22 119/6
**opinions [4]**   21/10 21/11 63/13 112/22
**opportunity [2]**   33/17 65/21

**oppose [1]**   108/4
**opposed [2]**   49/24 49/25
**opposite [5]**   47/3 52/3 52/4 78/14 80/12
**opposition [1]**   16/9
**opted [1]**   22/18
**order [6]**   19/16 44/10 44/13 79/18 86/8 87/19
**orders [2]**   84/12 94/10
**ordinary [3]**   11/6 11/15 11/21
**other [64]**   9/11 10/17 11/24 13/24 20/8 21/12 21/22 37/4 41/1 45/11 47/6 47/12 47/21 48/15 49/8 51/5 51/13 55/14 60/18 61/4 63/8 64/14 64/25 68/7 72/13 72/21 72/21 74/19 77/18 78/4 83/1 83/25 84/18 85/16 86/11 88/10 89/1 94/15 95/19 96/4 96/10 96/13 96/14 97/3 97/14 100/8 102/22 103/2 105/19 105/24 106/6 106/18 107/2 107/11 111/25 113/23 114/12 120/13 120/25 123/20 124/2 124/12 125/14 128/21
**others [5]**   12/18 24/2 90/16 91/8 94/10
**otherwise [6]**   7/8 7/25 9/10 14/14 18/8 60/5
**ought [2]**   59/16 99/23
**our [47]**   14/21 20/24 21/2 24/6 26/20 29/5 38/20 39/4 39/12 39/13 40/17 42/21 43/4 44/1 44/11 44/24 56/2 56/18 56/19 57/4 58/25 60/25 62/11 62/12 62/13 63/22 63/23 65/4 68/12 81/2 82/4 82/22 87/6 87/7 89/3 94/8 96/17 98/9 101/13 103/22 107/15 111/3 114/21 114/22 115/3 119/9 123/1
**ourselves [2]**   44/4 111/20
**out [45]**   12/1 34/1 36/24 36/25 40/6 40/13 44/14 44/20 45/24 46/8 49/18 54/6 54/9 54/10 64/14 65/24 67/19 67/25 68/11 68/22 73/15 76/7 77/6 78/18 78/21 79/19 79/23 80/1 80/1 81/6 81/9 83/11 95/4 99/24 99/25 101/18 106/16 115/24 116/5 117/6 117/7 117/8 124/20 126/23 128/1
**outcome [2]**   18/17 18/19
**outnumbered [1]**   121/17
**outside [15]**   40/25 50/3 50/6 54/20 63/16 63/20 63/20 73/23 74/7 75/6 75/7 76/2 89/2 91/22 123/14
**over [42]**   15/14 45/16 47/14 50/10 52/1 52/3 79/21 94/7 110/22 111/11 115/5 115/7
**Oversight [1]**   16/4
**overthrow [1]**   91/2
**overturn [2]**   56/7 111/17
**own [10]**   20/4 28/16 30/8 31/18 37/14 92/7 114/7 114/22 115/3 116/19

**P**

**p.m [14]**   38/25 40/14 45/21 45/22 46/16 54/13 55/7 67/16 88/19 88/20 101/22 121/14 126/25 129/7
**pack [1]**   37/18
**page [14]**   1/21 28/8 29/22 31/7 44/12 63/17 95/20 95/20 109/19 119/5 121/8 121/8 124/8 124/8
**pamphlets [1]**   126/4
**Pan [1]**   64/21
**panicked [1]**   106/25
**paraded [1]**   87/14
**paragraph [18]**   38/22 40/21 42/9 56/19 56/21 70/9 70/9 82/18 88/17 91/12 95/20 96/7 97/24 105/11 110/11 110/19 121/7 124/7
**paralegal [1]**   4/10 4/22
**part [15]**   14/23 16/25 58/4 68/9 69/7 69/17 72/7 72/19 87/7 91/11

**participate [2]**   112/9 112/9
**participated [1]**   14/25
**participatory [1]**   75/25
**particular [14]**   8/20 9/23 13/19 16/20 44/21 48/6 55/6 56/5 58/4 70/4 70/16 71/20 71/21 116/11
**particularly [5]**   16/17 17/1 17/22 70/4 76/10
**parties [7]**   10/9 60/20 65/5 96/2 96/24 97/14 97/20
**party [6]**   40/19 82/24 83/1 83/9 111/14 111/16
**pass [3]**   50/24 51/14 72/1
**passed [2]**   48/11 79/24
**past [10]**   14/8 26/10 71/23 72/3 79/17 79/18 115/23 116/1 125/19 125/19
**path [2]**   56/2 105/21
**PATRICK [3]**   1/6 4/3 4/21
**pats [1]**   84/24
**pause [4]**   46/19 48/8 52/16 62/2
**paying [1]**   37/19
**peaceful [7]**   45/23 49/23 72/10 75/21 112/6 113/20 121/4
**pendency [1]**   62/7
**pending [3]**   6/21 6/25 7/15
**Pennsylvania [4]**   111/2 113/9 113/13 114/1
**people [21]**   11/6 17/21 63/2 70/7 72/17 74/19 74/21 76/13 77/9 78/4 78/22 84/20 86/8 92/11 105/20 106/16 115/8 122/25 123/3 123/8 123/10
**percent [3]**   24/24 25/7 25/7
**perfect [2]**   27/7 76/22
**perhaps [2]**   89/15 114/18
**perimeter [1]**   38/24
**period [3]**   49/4 88/12 107/18
**periods [1]**   73/11
**permission [2]**   70/12 74/23
**permit [3]**   33/19 33/20 43/16
**permitted [1]**   48/20
**person [14]**   7/6 9/11 11/16 11/21 40/5 47/22 47/23 71/24 75/10 86/4 102/23 106/13 122/9 125/9
**person's [2]**   11/15 47/24
**personal [7]**   5/4 5/6 5/18 5/19 6/5 81/14 81/18
**personally [3]**   17/19 35/18 120/8
**personnel [2]**   69/19 92/1
**perspective [1]**   45/15
**persuade [2]**   116/18 117/1
**persuaded [1]**   8/16
**persuading [1]**   117/1
**persuasion [1]**   116/13
**persuasive [1]**   10/11
**pertained [1]**   16/19
**pertains [5]**   19/7 88/7 92/2 92/23 93/4
**phone [3]**   98/3 98/7 98/8
**photo [1]**   50/9
**photos [1]**   23/20
**physical [8]**   7/5 69/13 77/23 85/8 91/21 94/16 108/18 109/20
**physically [5]**   40/1 69/12 74/15 120/9 123/10
**picked [1]**   36/23
**picture [1]**   75/6
**pictures [1]**   73/10
**piece [4]**   36/25 89/16 90/7 118/15
**Pierce [4]**   4/20 21/13 34/23 94/24
**pipe [2]**   18/3 18/4
**place [14]**   21/12 38/4 45/21 46/25 49/1 49/5 49/23 53/14 54/13 54/20 84/4 85/8 91/6 98/16
**placed [2]**   47/6 48/14
**plain [3]**   8/25 9/13 96/18
**plainly [1]**   8/18
**Plaintiff [2]**   1/4 1/13
**plan [3]**   17/25 36/9 56/14

**100/24 103/14 108/10 120/15 121/18

**P**

planning [3]  17/24 26/21 68/1
plans [1]  96/9
plausible [6]  17/7 76/13 77/18
114/18 126/10 126/17
play [8]  39/3 41/4 42/13 46/24
47/19 48/9 103/3 122/19
played [7]  39/6 41/6 42/16 51/10
102/12 103/4 104/5
playing [8]  26/22 103/24 104/23
107/9 107/14 108/11 119/14 119/17
plea [1]  27/24
please [9]  4/5 23/10 29/17 40/7
43/24 43/25 58/8 119/14 119/14
plenty [2]  5/9 113/8
PLLC [1]  2/3
pocket [1]  37/19
podium [3]  4/5 27/20 27/21
point [48]  6/25 8/3 14/12 20/14
22/20 23/6 23/8 23/10 24/21 33/2
34/5 36/3 37/13 39/1 40/5 40/16
46/17 47/1 47/10 47/17 53/25
65/25 67/19 68/16 70/1 70/11
70/12 71/16 76/1 77/11 82/14 87/8
92/2 95/4 105/4 105/11 106/23
107/10 112/24 113/24 114/16
114/21 117/15 118/10 119/18
121/24 126/20 126/24
pointed [4]  67/25 68/11 68/22
115/24
pointing [4]  44/14 71/2 71/6
74/14
points [7]  12/1 73/23 95/11 95/13
102/3 102/8 103/8
police [54]  18/2 37/4 39/24 41/2
41/9 42/9 42/25 46/18 47/8 47/14
49/15 51/4 54/17 54/18 68/11
70/20 70/24 71/1 71/2 74/1 74/6
75/19 75/20 75/23 76/1 76/14
76/23 77/1 77/4 77/5 77/21 78/13
80/22 81/6 84/4 84/12 85/6 98/1
103/10 103/16 105/3 105/12 119/11
119/17 120/16 120/10 120/11 120/17
124/1 124/15 124/16 124/21 124/24
125/2
police's [1]  104/18
policymaker [1]  116/13
policymakers [4]  116/14 116/18
116/22 116/25
political [7]  110/21 111/6 111/7
111/7 112/9 112/10 112/20
politicians [1]  110/21
politics [1]  111/9
polls [1]  112/3
pont [1]  22/16
pool [4]  21/6 21/9 21/17 22/24
pop [1]  45/24
popped [1]  46/11
popular [1]  81/23
portion [4]  47/5 48/2 110/7 119/8
position [10]  24/6 56/19 57/4
58/14 58/25 63/6 65/4 103/14
121/22 123/5
positioning [1]  105/17
possessed [2]  14/19 15/25
possession [4]  15/9 15/10 15/19
19/12
possibility [2]  13/16 69/16
possible [3]  98/12 114/12 118/5
possibly [1]  97/5
post [3]  8/13 12/11 55/23
posted [4]  7/7 7/24 9/9 55/25
postings [1]  11/24
potential [3]  13/1 64/21 92/14
potentially [3]  18/11 38/23 65/9
power [1]  112/6
powerful [1]  77/19
PowerPoint [1]  45/25
practitioners [1]  44/4
precise [1]  64/18
preclude [6]  23/11 23/13 23/15
23/16 57/1 60/21
predecessor [20]  11/20 11/20
predicate [1]  82/13
prefer [2]  5/2 26/22
prejudice [2]  24/19 24/22
premature [2]  24/17 25/20
premises [1]  84/13
prepare [1]  91/17
preplanning [1]  91/1
prescribed [1]  11/14
presence [6]  42/9 75/23 92/10
105/3 124/25 125/2
present [9]  9/6 17/21 38/6 44/23
58/11 59/8 60/5 104/15 105/12
presentation [5]  33/1 36/1 44/8
45/25 49/20
presentations [1]  129/5
presented [1]  58/12
preserve [4]  13/13 17/12 64/1
64/16
president [9]  7/9 8/1 9/11 13/23
38/19 110/18 110/23 115/16 116/11
presidential [2]  40/24 89/20
press [3]  16/6 22/14 41/8
pressing [1]  17/5
presumably [4]  14/24 69/23 90/1
125/16
presumption [1]  11/3
pretrial [2]  26/3 36/9
pretty [1]  76/15
prevent [6]  40/1 41/10 43/6
113/14 123/10 124/3
previously [2]  20/22 50/20
PRICE [1]  2/7
principle [1]  22/5
prior [6]  19/4 23/12 55/6 56/10
68/1 127/5
probability [2]  18/18 18/18
probable [4]  44/15 87/21 94/2
98/19
probably [7]  27/1 32/16 38/21
66/14 100/14 101/15 111/4
problem [1]  115/11
procedurally [1]  65/12
procedure [1]  26/11
proceed [5]  5/1 6/6 22/15 23/4
23/5 26/5 26/7 27/9 36/2 53/25
54/11 76/25 99/17 99/25 100/12
proceeding [29]  6/23 19/9 27/10
38/12 44/12 44/16 44/18 44/19
45/6 57/5 60/9 87/18 87/22 87/23
87/25 88/2 91/18 93/17 93/24 94/3
94/20 102/2 108/8 108/20 117/10
120/19 121/1 123/19 125/7
proceedings [14]  18/1 18/4 18/21
32/25 45/22 56/12 56/15 65/15
70/16 74/4 116/9 116/10 129/7
130/5
process [2]  17/9 82/7
produce [3]  15/8 15/18 19/12
proffer [7]  28/15 30/6 30/7 30/11
31/16 31/17 31/20
prohibited [1]  10/18
promulgated [1]  115/12
proof [12]  61/10 67/2 73/8 74/11
74/24 77/17 80/19 81/1 83/16
83/19 85/19 98/21
proper [1]  112/4
property [9]  7/6 37/10 38/2 38/3
68/23 85/7 91/5 91/5 119/10
propose [1]  128/1
proposition [3]  17/20 83/14 83/17
propriety [1]  112/2
prosecution [5]  15/1 17/1 19/8
20/7 100/20
prosecution's [1]  13/17
prosecutor [1]  98/4
prosecutors [1]  14/11
prospective [1]  21/14
protected [4]  9/12 9/21 73/25
74/10
protectee [1]  11/17
protectees [1]  9/16
protecting [20]  9/25 11/20 126/16
protection [1]  109/12
protective [2]  36/23 91/8
protest [3]  71/22 84/17 120/24
protesting [3]  76/3 76/3 76/3
proudly [1]  72/17 72/18
prove [9]  19/1 44/14 45/5 74/23
87/14 87/17 87/20 88/23 93/16
proven [9]  36/6 38/12 57/4 58/17
59/2 59/6 61/16 97/2 126/9
provide [5]  14/8 16/10 20/7 21/9
63/9
provided [2]  21/7 118/5
Providence [1]  1/19
provides [3]  9/2 17/13 82/24
provision [2]  12/3 16/11
provisions [1]  13/2
public [2]  20/5 106/7
publicly [1]  17/18
publish [5]  45/25 52/13 52/17
54/1 54/23
published [1]  43/23
pull [4]  52/13 71/4 71/11 122/17
Puma [1]  8/24 9/25
punishes [1]  11/7
purpose [3]  39/24 44/19 87/24
purposes [14]  8/6 8/16 9/7 22/1
27/23 27/24 32/25 38/6 59/12
60/13 62/25 102/1 108/7 109/3
pursuant [3]  10/16 62/8 62/12
purview [1]  12/3
push [1]  51/2
pushed [1]  107/20
pushes [1]  69/13
pushing [7]  20/19 47/13 47/14
47/22 69/4 80/22 105/1
put [11]  27/17 27/22 33/18 38/7
45/15 50/18 53/12 65/3 86/2 89/23
97/23
puts [1]  37/18
putting [6]  29/8 34/24 60/19 61/4
65/12 111/19

**Q**

qua [1]  78/10
question [20]  8/14 10/11 12/6
12/8 17/4 36/16 43/3 52/14 58/20
60/14 65/25 66/4 66/22 70/19
76/17 78/19 78/21 101/8 101/11
123/5
questionable [1]  70/16
questions [4]  69/1 69/3 70/5
88/14
quintessential [1]  111/6
quite [9]  13/7 20/8 60/6 60/14
60/15 72/10 75/1 87/16 98/25
quote [3]  82/16 82/21 87/13
quotes [1]  14/5
quoting [4]  9/25 10/12 11/8 87/12

**R**

rain [1]  23/16
raise [4]  24/16 24/20 25/21 29/17
raised [2]  25/19 44/5
raising [1]  20/19
rally [3]  38/18 111/17 117/23
RAMMY [2]  2/6 4/17 25/15 87/4
RANDOLPH [1]  1/10
rather [2]  16/11 17/13
rational [1]  59/23
re [3]  23/17 23/18 56/2
re-dress [1]  56/2
rea [3]  84/3 84/3 85/15
reach [2]  11/21 83/18
reached [3]  8/21 59/23 60/23
reaching [3]  47/23 57/22 106/16
read [11]  16/15 26/6 26/12 28/4
28/10 29/25 30/4 31/10 31/14 63/4
99/5
reading [2]  99/14 99/22

**R**

**ready [3]**  90/19 91/8 101/19
**real [1]**  48/8
**realizes [1]**  70/8
**really [18]**  44/11 44/20 55/1 59/3
76/20 90/11 90/12 90/18 95/13
105/3 105/18 106/4 108/8 110/14
111/10 120/21 124/16 128/4
**reason [18]**  10/9 11/20 15/1 16/24
17/4 18/9 21/4 21/5 21/21 47/11
61/20 64/13 70/4 85/23 86/5 86/7
106/17 119/10
**reasonable [56]**  11/15 18/18 36/7
36/15 38/13 44/15 45/5 57/13
57/14 57/20 58/17 59/2 59/6 59/13
59/19 60/18 60/23 60/24 61/7
61/10 61/16 62/19 65/6 65/8 67/2
73/8 74/11 74/24 75/1 76/8 77/17
80/20 81/1 83/16 83/19 85/19
86/12 86/16 87/11 87/20 88/23
89/6 90/9 93/15 94/8 96/3 96/19
96/20 96/23 97/3 97/15 98/21
100/5 100/6 118/10 126/9
**reasonably [2]**  74/20 78/21
**reasons [3]**  17/14 43/12 94/21
**reasserting [1]**  24/22
**rebellion [2]**  56/4 56/8
**rebuttal [3]**  3/7 118/17 118/19
**recalled [1]**  124/11
**recant [1]**  22/23
**received [1]**  16/6
**recess [5]**  18/4 34/3 45/22 67/16
101/22
**recognize [3]**  69/25 114/9 116/15
**recognizes [2]**  65/14 70/2
**recognizing [1]**  44/9
**reconvene [1]**  43/7
**record [13]**  4/6 25/9 29/5 29/9
46/13 75/15 75/16 81/24 83/15
86/15 127/9 127/10 130/5
**records [11]**  13/10 14/3 14/13
14/16 14/19 15/14 15/22 15/24
16/13 17/16 18/2
**red [3]**  39/8 76/22 76/24
**redacted [1]**  23/23
**reduce [1]**  60/5
**reference [5]**  9/15 12/14 112/13
112/16 112/17
**referenced [1]**  10/15
**references [1]**  23/25
**referred [1]**  109/17
**referring [4]**  19/5 26/21 109/21
117/25
**reflected [2]**  51/2 70/9
**reflection [1]**  47/21
**reflects [2]**  45/20 50/23
**reflexes [1]**  107/13
**reform [1]**  90/2
**regard [5]**  19/8 95/11 110/16
116/16 117/9
**regarding [3]**  56/25 57/1 110/15
**regardless [1]**  37/5
**regulation [1]**  115/11
**rejected [2]**  11/19 63/23
**rejecting [1]**  16/14
**relate [1]**  19/15
**related [1]**  44/2
**relates [2]**  19/13 108/24
**relating [1]**  18/24
**relation [1]**  19/4
**relevant [10]**  9/1 9/6 9/7 9/10
15/2 15/25 18/9 48/22 67/20 68/20
**reliance [2]**  9/25 10/13
**rely [1]**  43/10
**relying [1]**  88/22
**remain [4]**  7/13 7/23 9/3 72/22
**remainder [2]**  51/22 62/18
**remand [3]**  66/5 66/7 66/14
**remarkable [1]**  17/20
**remarks [3]**  78/15 110/22 111/12
**remedy [1]**  125/8

**remember [4]**  29/4 71/23 76/18
**remind [2]**  20/4 51/12
**removed [2]**  38/3 38/4
**repackages [1]**  11/18
**replay [1]**  48/2
**report [1]**  16/9
**reported [2]**  16/11 17/24
**Reporter [6]**  1/22 1/23 2/12 2/13
130/3 130/13
**reports [2]**  13/20 21/22
**represent [1]**  49/3
**representations [1]**  25/16
**Representatives [1]**  13/6
**require [3]**  8/18 9/23 114/13
**required [2]**  93/22 114/10
**requirement [2]**  118/24 119/1
**requires [1]**  64/5
**reservation [3]**  28/15 30/7 31/17
**reserve [1]**  84/16
**reserving [1]**  7/1
**residents [2]**  21/10 21/11
**resist [1]**  108/4
**resolved [1]**  8/11
**resolves [1]**  101/12
**resolving [1]**  113/7
**respect [24]**  7/2 7/21 8/3 12/4
12/6 12/8 14/2 22/10 22/13 25/24
33/9 33/10 36/19 86/11 95/19
97/11 97/13 99/17 99/18 100/12
101/5 115/11 119/24 123/6
**respected [1]**  84/16
**respectfully [6]**  22/21 85/18 88/5
92/9 92/19 101/7
**respects [1]**  71/9
**respond [4]**  25/1 58/7 83/3 96/17
**responded [1]**  78/24
**response [2]**  69/13 119/10
**responsibility [2]**  44/25 69/24
**rest [3]**  27/15 35/1 93/12
**rested [2]**  34/4 57/12
**restrict [5]**  8/6 8/14 8/19 9/5
11/16
**restricted [17]**  7/6 7/8 7/13 7/23
7/25 9/3 9/8 9/8 9/10 9/22 10/4
10/5 10/19 12/2 38/24 70/3 93/9
**restricting [3]**  9/18 9/20 9/23
**restriction [2]**  10/6 69/17
**restrictions [2]**  9/15 11/25
**restricts [1]**  96/12
**rests [4]**  33/15 34/6 34/10 35/17
**result [3]**  8/21 99/16 121/19
**resulting [1]**  20/2
**results [18]**  18/20 20/2 40/24 43/7
65/16
**retain [1]**  37/5
**retreated [1]**  39/21
**retroactively [1]**  12/13
**review [6]**  102/18 102/25 106/5
107/17 107/24 128/4
**reviewed [1]**  120/3
**revisit [1]**  95/12
**revolution [1]**  56/8
**RI [1]**  1/19
**right [123]**  4/19 4/23 4/24 5/1
5/5 5/15 5/19 5/19 6/2 6/5 6/6
6/17 7/18 22/2 22/25 23/7 25/8
25/21 26/5 27/22 29/5 29/10 29/14
29/17 30/14 31/1 31/2 31/6 31/23
32/11 32/23 33/16 34/4 34/14
34/23 35/4 35/12 35/19 35/20 36/4
38/1 38/6 38/6 39/20 40/16 41/16
43/14 43/24 45/13 45/17 45/17
46/6 46/21 47/5 47/8 50/10 50/13
50/18 52/2 52/4 53/3 53/14 54/14
54/15 54/16 54/23 55/16 57/17
58/13 59/21 61/11 61/13 63/18
65/11 66/4 66/18 67/17 70/21
72/22 73/3 74/8 77/24 78/6 78/20
80/5 82/10 82/21 83/22 84/21
84/23 86/24 90/13 92/11 93/19
94/12 94/18 94/23 94/24 95/1 95/3

98/2 101/23 102/6 103/21 104/2
104/12 104/18 105/1 105/15
104/25 106/24 107/5 107/6 107/9
109/1 111/1 111/25 112/1 112/2
117/19 118/17 119/19 122/20
123/14 124/4 125/17 127/14
**right-hand [2]**  84/21 84/23
**rights [1]**  7/1
**riot [2]**  13/12 75/13
**rioters [15]**  37/4 39/14 41/1
41/12 41/13 41/17 120/5 120/9
120/13 122/1 122/5 123/20 124/2
124/12 124/21
**rise [10]**  17/6 83/22 87/11 88/22
89/7 90/8 93/15 101/21 109/14
118/9
**rises [2]**  92/7 92/13
**risk [1]**  24/19
**RNC [1]**  18/3
**road [1]**  67/19
**robbery [1]**  118/25
**Roberts [4]**  4/10 40/7 122/17
123/13
**Robertson [12]**  55/24 55/25 63/13
64/24 65/1 66/25 68/18 72/16 88/4
92/22 93/5 93/7
**ROGER [2]**  1/17 4/21
**ROMANO [3]**  1/14 4/9 65/2
**RONALD [2]**  2/2 2/3 4/14
**room [3]**  1/24 2/14 114/23
**ROOTS [12]**  1/17 3/6 4/21 20/25
24/11 94/25 95/1 96/16 101/23
117/20 120/6 126/6
**rotunda [1]**  121/16
**rough [2]**  74/1 74/2
**route [1]**  53/23
**RPR [1]**  130/12
**rule [18]**  8/10 12/8 12/10 15/16
17/10 20/8 22/22 24/20 45/3 56/18
57/12 57/21 58/3 58/24 59/1 61/20
62/8 97/8
**ruled [6]**  22/6 22/6 22/11 22/17
22/20 116/16
**ruling [5]**  20/24 21/2 22/1 22/19
24/4
**rulings [2]**  24/14 24/24
**run [2]**  23/9 24/9

**S**

**safely [1]**  121/19
**safety [1]**  121/22
**said [34]**  21/5 22/7 22/17 23/2
25/6 42/8 44/20 49/3 53/20 60/14
66/21 68/12 78/7 78/7 78/16 78/19
78/23 79/4 81/6 82/3 83/20 94/18
110/13 110/18 111/10 111/12
112/10 113/1 117/3 117/6 117/20
118/7 124/13 124/19
**sake [1]**  37/15
**salon [1]**  53/22
**same [15]**  8/21 27/23 35/1 35/2
43/3 47/24 60/7 63/17 69/2 94/1
98/4 98/8 106/3 107/7 125/19
**satisfied [4]**  28/21 32/1 37/15
38/8
**saw [14]**  37/3 45/18 49/1 50/20
51/7 51/16 53/7 68/24 72/6 81/24
91/10 122/7 124/1 124/2
**say [37]**  18/8 21/15 21/16 21/17
38/19 48/19 59/22 60/1 60/11
60/15 61/2 62/22 64/9 77/13 78/13
80/15 80/19 81/2 81/5 81/7 85/13
87/13 89/13 89/21 90/6 94/19
97/21 98/6 98/11 99/20 108/16
109/9 115/3 120/23 123/8 125/14
125/22
**saying [18]**  22/19 25/10 41/8
42/19 59/18 60/22 61/3 63/2 72/17
78/2 78/6 86/17 110/24 114/4
114/6 115/17 126/5 126/16
**says [18]**  9/17 17/17 42/21 42/23
54/5 54/9 59/25 77/3 89/3 90/10
94/12 94/13 95/21 98/25 99/22

says... [3] 100/3 100/3 121/8
scene [6] 103/11 103/23 104/2
104/7 105/7 105/10
scenes [1] 47/12
scheduled [1] 128/10
schedules [1] 128/2
Schumer's [1] 41/24
screen [2] 46/7 74/14
screening [1] 122/10
screenshot [1] 48/11
sea [1] 106/22
second [17] 8/8 10/25 16/21 28/8
37/11 41/22 50/2 50/24 52/20
73/12 87/4 102/24 106/2 106/14
107/4 110/3 124/4
seconds [14] 86/12 103/6 103/22
104/8 105/7 105/18 106/11 106/14
106/14 106/15 107/8 107/18 107/21
119/13
Secret [18] 8/5 8/14 8/15 8/19
9/12 9/14 9/15 10/4 10/5 10/10
10/16 11/17 11/18 13/23 16/21
17/3 18/8 23/17
section [17] 1/15 7/22 8/18 9/2
9/7 9/17 10/17 10/19 11/10 12/22
18/6 96/5 118/24 119/2 119/3
121/6 124/9
secured [2] 10/10 121/11
security [4] 37/20 69/19 69/21
69/24
see [63] 5/15 7/14 9/5 25/4 33/18
37/20 39/7 39/8 45/13 46/7 46/15
46/17 46/21 46/23 46/25 47/1 47/5
47/22 48/14 48/15 50/13 50/25
51/8 52/25 53/3 53/8 54/2 54/3
54/18 54/20 57/6 59/7 67/15 70/25
71/8 71/15 72/9 74/13 77/21 78/22
84/14 84/19 90/17 92/12 102/22
102/25 103/7 104/6 104/9 104/24
105/19 105/23 106/14 109/23 110/8
112/13 112/17 119/16 119/25 120/2
120/8 120/8 129/4
seeing [3] 72/13 91/15 119/11
seeking [1] 72/7
seem [6] 59/24 77/8 98/24 99/12
99/22 100/9
seemed [1] 89/15
seems [11] 14/1 22/16 60/21 61/1
74/4 77/6 89/18 92/17 114/20
127/3 127/4
seen [7] 26/21 49/8 54/25 72/21
73/10 75/9 127/24
sees [3] 70/5 70/6 70/7
segment [4] 102/23 106/11 106/12
112/25
select [13] 13/6 13/11 13/16 14/5
14/9 15/21 16/3 16/7 16/9 19/6
19/18 19/21 19/25
self [3] 98/10 100/2 109/12
self-defense [2] 98/10 100/2
senate [68] 17/16 19/21 36/24
40/15 40/25 41/2 41/11 41/13
41/20 42/1 42/8 42/8 43/6 49/2
49/6 49/10 49/17 49/25 50/1 50/4
50/5 50/7 50/8 51/20 52/1 52/1
52/3 52/6 53/21 54/12 69/9 69/11
70/6 70/11 71/25 72/9 78/5 79/12
79/13 79/14 79/15 79/16 79/18
79/25 80/17 88/11 88/24 89/2
115/23 123/14 123/16 123/21
123/23 123/25 124/5 124/14 124/21
125/3 125/10 125/12 125/16 125/19
125/20 126/1 126/13 126/15 126/16
127/5
Senator [1] 41/24
senators [8] 38/20 89/19 111/3
112/12 117/2 124/18 124/22 126/17
senators' [7] 42/22 89/4 89/18
94/13 117/18 117/25 126/8
sense [5] 18/16 58/24 65/11 77/23

83/23
sentment [1] 80/21
sent [2] 55/20 125/18
sentence [1] 95/21
sentencing [2] 20/2 66/11
separate [2] 15/19 115/25
separately [1] 13/21
sequence [3] 106/20 107/25 117/4
sergeant [1] 121/10
serious [1] 117/9
serve [1] 62/25
Service [16] 8/6 8/14 8/15 8/19
9/12 9/14 9/15 10/4 10/5 10/10
11/17 11/18 13/23 16/22 17/3
23/17
Service's [2] 10/16 18/8
Services [2] 115/8 115/12
session [2] 18/1 18/6
set [3] 43/21 59/22 60/22
sets [1] 9/14
setting [1] 107/22
settled [2] 15/17 67/10
Seventh [1] 2/7
several [2] 13/22 115/23
severely [1] 121/17
shadow [3] 47/20 47/24 47/25
shall [1] 19/11 19/16
shape [1] 91/19
share [1] 14/4
shared [1] 17/18
sharing [1] 14/7
She [1] 111/25
shenanigans [1] 84/18
SHERRY [4] 1/22 2/12 130/3 130/12
shield [1] 109/13
shoes [1] 111/20
short [3] 102/23 106/12 107/18
shortly [2] 53/25 54/4
should [34] 8/11 18/24 23/1 23/2
25/4 25/12 25/25 29/12 32/5 32/12
32/16 33/22 38/14 41/17 43/5
53/19 58/1 59/22 60/22 65/8 66/16
66/17 69/2 89/20 96/14 96/25
99/16 99/17 100/12 100/14 113/12
116/6 116/7 124/16
shoulder [1] 84/24
shouldn't [2] 24/18 41/10
shouting [4] 41/13 75/20 123/21
126/14
show [34] 17/8 17/10 18/3 18/11
18/13 27/6 37/2 38/15 41/14 48/2
48/10 50/4 50/22 51/11 56/10
58/11 68/3 71/11 74/23 75/3 80/4
87/21 98/15 101/3 102/8 104/13
105/16 106/9 108/16 112/3 116/7
119/8 120/14 122/15
showed [2] 50/19 92/4
showing [6] 24/20 27/2 45/19 46/6
47/10 47/21
shown [3] 18/12 71/23 88/9
shows [11] 16/18 40/21 68/3 92/6
92/19 93/10 94/19 103/19 110/14
112/8 126/13
shred [1] 56/10
shutting [1] 98/11
side [10] 47/6 47/21 47/25 51/13
74/20 77/5 112/1 112/1 112/2
116/11
sign [9] 5/3 5/14 6/2 6/17 28/18
28/20 28/25 32/5 40/12
signage [1] 23/15
signals [1] 76/8
signatory [1] 10/22
signature [4] 28/7 28/9 29/23
31/7
signed [4] 28/11 30/1 30/18 32/19
significance [1] 83/21
significant [1] 78/7
signing [5] 28/13 30/3 30/11
31/11 31/13
signs [2] 42/8 126/4
silent [1] 72/22

silly [1] 24/23
simpler [1] 60/10
simply [1] 11/4 16/1 19/17 20/4
21/19 79/7 80/24 81/10 85/1 85/18
90/5 92/10 92/12 92/25 94/6
125/24
since [2] 24/18 27/19
sine [1] 78/10
single [6] 56/10 103/16 104/20
105/22 113/19 115/19
sir [2] 5/13 30/23
sirens [1] 77/4
sit [1] 95/3
sitting [1] 37/20
situation [7] 38/23 44/3 80/10
101/4 103/1 120/3 121/21
Sixth [3] 29/5 30/14 31/23
slamming [1] 98/11
slight [1] 119/3
slightly [1] 65/3
slip [1] 44/12
slow [2] 76/24 79/20
slowly [1] 127/25
smoother [1] 67/11
snippets [1] 75/5
so [158]
social [2] 55/12 127/7
some [57] 6/20 12/6 16/10 17/6
26/21 36/10 37/12 38/21 45/10
45/11 45/15 48/21 53/25 55/14
58/11 58/21 64/14 65/15 67/10
69/1 69/24 72/12 73/24 75/18
78/15 82/5 82/25 83/14 83/15
83/21 84/8 85/14 91/18 92/6 92/17
95/4 95/12 96/8 97/21 99/1 99/3
102/2 102/16 104/21 104/22 110/13
111/5 114/25 115/5 120/4 120/25
121/3 125/13 126/21 126/24 127/23
127/24
somebody [2] 69/24 78/23
somebody's [1] 73/15
somehow [3] 14/16 64/18 84/13
someone [16] 37/18 42/25 49/11
49/11 63/10 75/22 80/12 80/16
83/1 84/3 87/14 87/17 109/12
113/8 113/9 114/5
something [21] 22/9 24/4 37/21
44/9 58/15 58/16 63/8 64/6 64/8
64/11 76/25 77/14 77/14 80/23
84/8 111/13 111/14 113/1 115/6
116/7 125/8
sometime [1] 128/2
sometimes [2] 42/20 74/1
somewhere [4] 37/1 52/8 79/5
112/25
sorry [9] 81/3 81/17 96/1 98/6
101/10 103/25 112/15 119/5 124/25
sort [20] 17/20 68/1 68/13 71/5
73/1 84/3 85/17 86/20 91/2 91/7
91/24 92/14 103/9 103/19 106/20
106/21 106/22 107/12 108/9 111/6
sorts [1] 82/7
sought [1] 81/20
sound [2] 83/15 121/13
sources [2] 13/21 17/23
space [6] 73/21 80/18 103/9
104/17 104/18 106/15
span [1] 54/22
spangled [1] 104/9
spans [1] 95/20
speak [4] 20/25 43/17 73/6 77/25
speaking [2] 24/13 96/7
speaks [1] 44/11
Special [1] 4/10
specific [4] 105/3 114/10 114/10
114/13
specifically [3] 73/24 74/17 87/9
specify [1] 9/22
speculate [1] 18/7
speculates [1] 13/19
speculation [1] 16/24

**S**

**speech [9]** 157/12 73/25 74/1 74/2 110/11 110/13 111/6 112/5 115/17
**speeches [1]** 112/21
**spend [3]** 24/23 121/3 127/23
**spoke [1]** 19/18
**spoliation [1]** 13/4
**squarely [1]** 39/18
**squeezing [1]** 80/22
**stage [1]** 89/15
**staircase [1]** 122/5
**stairs [8]** 40/8 51/15 51/17 51/21 52/2 52/4 71/25 121/16
**stairway [1]** 50/14
**stairwell [2]** 53/3 53/10
**stamp [4]** 39/4 41/5 46/16 119/13
**stand [3]** 42/18 42/25 95/10
**standard [11]** 18/22 59/13 61/8 62/15 62/23 66/6 81/1 86/8 86/9 86/16 94/8
**standardless [1]** 11/7
**standards [1]** 62/25
**standing [8]** 41/16 47/8 48/15 69/4 69/11 74/20 77/5 121/15
**star [1]** 104/9
**stark [1]** 47/11
**start [13]** 5/6 27/20 42/20 43/25 44/9 45/13 54/25 55/16 55/16 87/12 118/20 119/13 119/23
**started [1]** 78/18
**starting [2]** 4/6 39/4
**starts [1]** 16/22
**state [5]** 4/5 8/5 57/16 65/5 65/9
**stated [3]** 40/16 44/10 45/23
**statement [32]** 16/3 19/15 26/12 28/5 28/18 29/22 30/4 30/18 31/7 31/15 32/5 32/24 40/21 40/21 75/14 83/17 83/17 89/1 90/5 90/7 90/10 90/19 94/12 111/15 111/23 113/19 113/21 116/23 116/25 117/18 124/14 126/8
**statements [8]** 14/8 16/25 19/4 19/12 24/2 74/7 88/21 89/5
**states [26]** 1/1 1/3 1/11 1/14 4/3 4/8 7/8 7/25 8/5 11/9 15/17 16/14 18/15 19/8 19/9 19/10 19/11 19/13 19/19 21/12 37/10 110/24 113/12 115/16 118/22 122/10
**stating [2]** 21/20 55/20
**status [1]** 88/3
**statute [13]** 8/25 9/13 9/16 9/20 9/23 11/1 11/1 11/3 11/11 12/12 83/23 108/3 110/4
**statutory [3]** 11/10 11/19 11/21
**stayed [1]** 88/20
**steal [5]** 38/18 43/2 111/18 111/19 111/20 111/21 112/5 117/23 127/4
**step [6]** 42/18 43/4 66/16 98/22 99/7 124/20
**steps [5]** 42/7 78/4 78/6 126/14 127/22
**still [16]** 6/20 6/24 7/14 13/1 13/15 14/15 20/19 24/4 41/8 44/5 60/13 76/19 76/21 84/13 97/18 113/25
**stip [1]** 56/19
**stipulate [2]** 51/25 97/6
**stipulated [61]** 25/2 25/24 26/9 26/13 27/14 28/5 28/18 29/23 30/5 30/19 31/8 31/15 32/6 32/24 33/8 36/14 37/13 38/13 42/15 45/1 46/1 46/13 46/20 47/3 47/16 48/10 48/20 50/3 51/9 52/19 54/1 54/11 55/8 58/12 60/3 65/6 65/23 66/2 70/10 75/16 88/18 91/16 95/18 96/21 96/22 96/25 97/7 97/20 97/21 97/24 99/11 100/5 100/10 101/12 104/13 105/11 108/5 111/23 113/18 121/6 123/8
**stipulated facts [1]** 96/21

**stipulating [3]** 96/20 96/21
**stipulation [7]** 29/4 58/22 91/11 98/25 99/3 105/15 108/25
**stipulations [1]** 55/8
**stolen [4]** 112/4 114/14 114/17 119/19
**stood [3]** 39/20 41/1 44/20
**stop [25]** 9/5 38/18 40/4 40/23 42/19 43/2 52/12 79/19 92/17 102/13 103/5 105/6 111/18 111/21 112/5 112/6 113/4 113/20 116/8 116/10 117/22 119/14 121/20 122/20 127/3
**stopped [2]** 72/18 103/5
**stopping [5]** 39/10 44/19 47/2 87/25 119/15
**stories [1]** 85/8
**storm [1]** 84/5
**stormed [1]** 115/8
**straight [5]** 42/1 42/7 79/21 79/22 79/22
**stream [1]** 41/11
**streamed [1]** 41/11
**Street [4]** 1/15 1/18 2/3 2/7
**streets [1]** 10/16
**stretch [1]** 74/5
**strikes [1]** 78/10
**strongest [1]** 74/13
**structure [1]** 67/11
**structure this [1]** 67/11
**study [2]** 22/8 105/14
**subcommittee [2]** 14/3 16/4
**subcommittee's [1]** 14/3
**subject [6]** 13/1 15/2 19/13 19/15 36/9 74/1
**subjective [2]** 99/12 99/19
**submit [22]** 43/8 73/18 78/20 85/18 89/6 90/8 90/12 90/21 91/1 91/14 92/9 93/14 94/6 98/17 102/21 107/24 111/14 113/2 115/20 116/23 117/8 118/9
**submits [1]** 100/20
**submitted [2]** 22/9 26/7
**submitting [1]** 22/10
**subsequent [1]** 63/13
**such [9]** 15/20 17/12 19/6 19/9 19/14 57/19 99/2 99/13 110/18
**suddenly [1]** 103/15
**suffice [1]** 33/22
**sufficiency [11]** 45/12 55/15 55/17 56/18 57/1 60/3 62/15 65/9 67/1 93/1 98/20
**sufficient [16]** 12/2 16/2 18/19 30/17 32/4 37/14 45/4 58/2 58/14 59/5 59/20 61/18 62/9 73/8 97/6 97/7
**suggest [4]** 17/7 18/8 74/3 100/9
**suggestion [1]** 109/9
**suggests [2]** 14/7 113/22
**suit [1]** 90/16
**Suite [3]** 1/18 2/4 2/8
**SULLIVAN [11]** 2/2 2/3 4/14 62/3 67/21 70/17 73/4 87/7 89/22 94/7 118/7
**sum [2]** 93/21 108/15
**Sunday [1]** 75/10
**sunny [1]** 75/9
**super [1]** 114/10
**Supp [1]** 9/19
**support [6]** 9/14 16/15 62/10 77/8 82/25 83/17
**supported [2]** 77/13 126/12
**supporting [1]** 83/12
**supportive [1]** 72/14
**supports [3]** 36/10 41/24 108/21
**suppose [2]** 37/18 64/3
**supposed [7]** 38/5 40/12 76/9 76/10 123/25 126/15 126/21
**suppress [1]** 20/13
**suppression [1]** 18/16
**Supreme [18]** 11/9 18/14 56/7 62/7

62/13 63/5 65/13 66/5 66/13 113/9 113/13 114/2 114/2 114/2 114/3 114/24 115/9 118/21
**sure [21]** 25/23 32/19 34/13 34/15 35/3 37/14 38/8 43/22 46/11 57/6 59/16 60/19 75/15 77/24 89/13 98/25 108/2 108/4 113/11 115/1 125/11
**surplusage [1]** 64/11
**surprise [1]** 103/19
**surprised [1]** 104/22
**surprising [1]** 103/18
**surrounded [1]** 106/22
**surrounding [1]** 68/25
**surveillance [1]** 50/21
**survey [2]** 21/8 21/8
**surveys [1]** 21/23
**survive [1]** 97/8
**susceptible [1]** 11/11
**suspect [3]** 15/2 24/24 114/23
**sworn [5]** 13/23 21/5 28/2 29/18 31/3
**sympathy [1]** 124/15
**system [3]** 81/2 94/9 114/22

**T**

**table [3]** 2/18 4/9 4/22
**take [19]** 33/17 40/7 55/21 57/25 58/2 58/4 58/6 61/6 76/8 77/11 81/19 82/8 91/6 101/13 102/5 114/7 114/22 115/3 121/22
**taken [8]** 34/3 51/19 53/10 53/14 53/21 53/22 67/16 101/22
**taker [1]** 76/15
**takes [4]** 45/21 49/1 54/13 83/8
**taking [5]** 46/25 49/5 49/22 75/5 86/17
**talk [7]** 55/5 66/17 79/18 81/8 99/8 99/23 127/22
**talked [1]** 63/14
**talking [9]** 58/13 66/15 78/2 89/2 90/10 97/5 111/1 121/4 126/15
**talks [1]** 118/23
**tape [1]** 79/14
**task [1]** 39/14
**tasked [1]** 17/23
**team [2]** 16/6 98/9
**tees [1]** 38/22
**tell [6]** 24/15 33/21 33/25 63/7 90/5 96/22
**telling [2]** 42/25 116/13
**tells [2]** 42/17 54/10
**template [1]** 14/6
**temporarily [3]** 7/10 8/2 9/12
**tend [1]** 15/13
**terms [5]** 20/7 24/1 25/23 68/4 96/12
**terrace [9]** 40/8 40/10 45/24 46/14 103/15 121/5 121/11 121/15 121/18
**test [3]** 76/15 76/16 76/16
**testified [4]** 19/10 19/14 19/21 124/10
**testify [12]** 19/19 34/14 34/15 35/4 35/4 35/8 35/19 35/20 35/22 121/8 121/9 124/10
**testimony [2]** 19/15 23/22
**text [6]** 8/18 11/22 13/24 16/23 55/20 119/3
**than [24]** 16/11 59/12 60/19 62/12 63/8 71/10 72/21 77/12 83/1 95/19 96/6 97/10 102/22 103/2 106/6 106/18 107/18 111/25 113/6 113/23 114/12 114/24 124/12 128/2
**thank [40]** 4/12 6/19 21/1 25/13 27/7 29/9 29/20 31/1 31/5 34/22 42/5 43/14 48/7 52/25 53/18 67/6 67/18 73/3 73/5 73/5 79/17 80/6 82/19 86/22 86/23 93/20 94/23 95/7 95/7 95/8 95/8 102/7 110/8 117/12 117/17 119/7 119/20 123/13 127/13 127/14

**thanking [1]**  43/25
**thanks [2]**  84/25 84/25
**that [1044]**
**that the [1]**  62/19
**theft [3]**  36/13 36/19 37/22
**their [39]**  4/6 5/4 7/1 17/25 33/9 36/14 37/19 39/23 39/23 39/24 39/25 39/25 40/3 41/18 43/1 43/1 43/11 43/11 48/19 49/24 51/3 55/2 55/2 55/3 55/6 60/12 81/22 84/16 91/16 92/1 104/17 104/21 115/9 116/19 116/19 118/2 120/12 120/17 126/20
**them [73]**  5/3 5/4 8/25 13/1 15/1 17/24 23/9 24/16 24/16 24/21 24/22 25/20 25/21 32/4 37/25 38/21 39/21 40/1 40/18 40/19 48/17 48/18 50/5 50/25 50/25 51/4 51/6 53/8 53/10 53/21 53/22 54/10 59/3 59/3 66/8 69/22 70/13 71/6 71/9 71/23 72/2 72/2 72/3 75/11 76/14 77/21 78/15 78/16 80/1 80/7 80/9 80/22 82/23 82/24 83/9 92/20 92/22 94/5 96/9 99/21 99/22 100/6 111/5 114/25 116/18 116/19 117/6 117/7 124/3 125/3 126/2 126/3 127/11
**themselves [2]**  41/9 91/13
**then [75]**  5/14 5/15 6/4 6/20 7/20 9/10 12/10 12/16 13/3 18/5 19/24 20/18 22/8 22/8 22/9 22/17 22/23 23/7 24/10 26/6 26/14 27/20 29/14 34/23 35/12 36/2 37/6 38/15 40/8 48/12 50/25 51/11 51/21 54/4 54/19 54/20 54/21 56/3 58/11 59/5 65/9 65/21 65/22 65/24 66/20 67/13 67/15 67/21 69/13 78/17 80/17 81/16 82/13 84/13 84/22 86/11 89/1 94/13 94/13 97/2 99/24 100/15 107/12 114/22 120/23 122/5 123/15 124/16 125/17 125/18 126/14 126/22 127/6 127/22 129/4
**theory [4]**  23/16 37/17 81/19 84/11
**there [288]**
**thereafter [1]**  53/25
**therefore [7]**  12/9 92/7 92/19 100/5 100/9 115/4 118/7
**these [46]**  14/16 21/9 21/14 21/16 21/18 21/18 23/9 26/25 33/8 41/9 42/23 43/12 46/18 48/15 48/16 50/20 52/2 52/4 60/4 60/4 69/21 71/16 73/21 73/24 77/5 77/18 80/20 81/16 95/4 96/3 96/19 97/15 100/4 103/8 103/16 103/20 104/14 105/20 110/21 115/21 115/22 116/9 116/24 122/1 123/10 129/5
**these men [1]**  116/24
**they [197]**
**they'll [1]**  79/5
**thin [1]**  16/15
**thing [11]**  27/11 27/15 29/3 32/15 62/21 76/22 79/4 85/13 87/14 87/17 103/10
**things [11]**  44/7 45/15 67/10 72/13 72/24 80/12 81/16 95/4 100/25 110/18 114/7
**think [118]**  7/16 7/16 10/19 10/23 11/18 11/19 11/20 12/9 12/16 20/13 20/14 20/25 22/1 22/12 22/13 22/25 23/8 24/18 24/19 24/23 26/7 26/10 27/12 32/15 33/22 37/8 44/9 44/11 48/22 49/8 49/10 49/16 51/7 51/8 51/24 52/23 55/18 57/11 58/9 58/18 58/20 59/10 59/14 59/24 60/1 60/11 60/13 60/16 60/17 61/12 61/20 62/6 62/9 62/11 62/22 62/24 63/1 63/16 63/18 63/19 63/21 64/9 64/15 65/4 66/18 66/22 67/10

67/12 67/20 68/17 68/19 69/5 74/12 75/1 75/4 75/8 77/14 77/19 81/17 82/4 82/25 83/8 89/22 89/24 90/18 97/4 98/22 99/13 100/22 101/2 101/7 101/12 101/14 102/25 110/12 111/1 111/1 112/18 112/20 113/8 113/10 113/24 114/4 114/7 114/18 114/19 115/9 117/23 120/19 123/2 126/17 128/7 128/9
**thinking [1]**  89/14
**thinks [6]**  29/11 32/11 33/2 89/18 113/13 114/25
**third [11]**  8/10 29/22 40/15 47/22 50/15 52/5 53/11 73/13 102/23 102/24 106/13
**this [281]**
**Thompson [1]**  14/5
**those [48]**  5/3 6/17 6/18 12/5 12/21 12/24 13/12 15/14 16/24 18/25 19/17 20/9 20/11 24/14 25/19 25/20 37/21 46/20 46/21 48/12 50/19 50/22 52/7 63/18 66/1 66/25 68/12 68/14 69/18 71/24 72/8 72/24 72/24 74/7 79/18 80/12 84/16 89/4 89/7 94/21 96/4 96/24 97/1 97/12 99/6 99/6 125/23 127/9
**though [10]**  25/22 44/4 58/21 60/13 65/7 75/5 75/7 91/11 114/16 115/2
**thought [6]**  40/6 75/12 84/16 113/11 115/4 115/6
**thousands [1]**  17/17
**thrashed [1]**  80/17
**threat [4]**  68/9 68/13 69/13 94/17
**threaten [1]**  116/21
**threatened [1]**  69/12
**threatening [1]**  91/25
**threats [6]**  28/17 30/8 31/18 55/4 68/10 94/16
**three [4]**  24/23 73/10 75/11 88/25
**through [60]**  5/4 23/9 24/9 24/23 26/6 26/12 28/5 33/12 39/1 40/9 40/10 45/10 45/14 45/23 46/3 46/22 47/13 48/11 48/25 51/3 51/5 51/5 51/7 53/16 54/12 68/2 69/5 69/14 75/8 75/13 75/22 76/23 77/1 77/2 78/3 78/4 80/17 85/10 88/9 88/9 88/10 89/9 90/17 99/11 103/11 104/20 104/21 105/22 105/25 120/7 121/5 121/18 122/1 122/6 122/10 123/9 124/9 125/17 127/23 129/3
**throughout [1]**  71/16
**throw [2]**  37/20 86/8
**thrown [1]**  65/24
**thus [2]**  10/4 65/18
**tie [2]**  67/22 73/1
**time [43]**  5/9 5/21 6/9 10/21 20/23 24/21 28/24 30/17 32/4 33/3 33/21 34/19 35/9 35/23 37/13 39/4 40/6 41/5 46/16 48/8 49/5 55/6 65/25 66/11 67/8 69/2 73/11 84/15 86/1 88/12 94/20 101/13 101/16 103/3 104/12 104/16 106/19 107/3 107/18 119/13 121/3 127/23 128/21
**timeline [4]**  45/10 45/14 45/18 49/2
**times [3]**  14/1 88/25 94/7
**timing [1]**  128/6
**title [1]**  111/17
**today [2]**  26/6 44/12
**today's [1]**  32/25
**together [2]**  67/22 73/1
**told [12]**  16/6 47/17 79/1 79/25 80/7 80/9 85/10 90/14 94/11 104/14 106/2 107/3
**too [5]**  16/15 23/1 78/6 82/8 89/23
**took [10]**  36/24 36/24 37/10 37/24 49/13 66/10 88/13 95/23 115/5 115/7

**top [4]**  27/1 36/25 46/16 84/20
**total [4]**
**touch [3]**  78/1 78/1 92/21
**tour [1]**  75/12
**toward [1]**  67/1
**towards [6]**  37/4 41/13 60/11 91/25 120/10 123/21
**town [2]**  40/15 128/1
**tracks [1]**  119/4
**traditional [1]**  63/11
**transcript [3]**  1/10 42/14 130/4
**transcripts [3]**  14/10 16/11 112/17
**transfer [1]**  112/6
**transparency [1]**  82/6
**traveled [1]**  128/1
**treason [10]**  41/13 41/13 41/20 88/25 113/1 113/2 113/2 113/3 123/21 126/14
**treasonous [1]**  123/23
**treat [1]**  52/23
**treated [1]**  96/25
**trial [46]**  1/10 4/24 5/1 5/5 5/19 6/6 6/7 6/13 6/23 6/24 12/7 18/17 19/25 21/5 21/19 21/21 21/25 22/7 22/12 22/16 22/18 22/18 23/4 23/6 25/2 25/24 26/9 27/12 28/5 28/18 29/23 30/5 30/19 31/8 31/15 32/6 32/24 57/12 60/6 66/1 95/18 96/15 99/11 99/18 101/11 101/12
**trials [2]**  21/14 60/3
**tried [3]**  39/16 72/2 120/13
**trier [3]**  24/18 59/23 60/23
**tries [2]**  94/14 94/14
**trigger [1]**  116/9
**troubled [1]**  95/17
**true [8]**  16/17 17/22 30/24 32/8 32/9 97/22 127/8 130/4
**truly [2]**  114/1 114/2
**Trump [9]**  13/22 38/19 55/21 110/11 110/18 112/4 112/10 116/11 117/2
**try [6]**  51/4 71/15 91/18 111/16 113/4 119/21
**trying [21]**  39/1 39/13 41/2 41/9 47/9 49/14 69/10 69/14 86/20 92/16 92/18 107/1 108/13 108/13 116/18 116/21 119/21 120/10 120/12 120/18 124/2
**turn [9]**  15/14 47/18 53/8 53/15 53/16 54/24 68/2 95/18 120/18
**turned [3]**  48/12 49/15 125/17
**turning [1]**  38/11
**turns [1]**  107/10
**two [11]**  12/24 59/6 83/10 86/12 88/21 89/5 106/3 115/24 116/1 125/15 126/14
**type [13]**  26/13 56/18 56/20 57/1 57/21 58/3 85/3 88/10 91/6 114/12 120/4 120/25 126/21
**types [1]**  63/1
**typically [1]**  121/11

**U**
**U.S [4]**  1/23 2/13 108/1 118/22
**U.S.C [6]**  7/4 7/11 12/22 56/24 87/15 87/18
**ultimately [1]**  125/11
**unavailable [1]**  14/14
**unavailing [1]**  10/2
**uncertain [1]**  96/12
**unclear [3]**  47/20 70/23 90/11
**unconstitutionally [2]**  8/9 11/6
**under [33]**  8/10 10/19 12/3 13/2 15/7 15/15 17/9 18/6 18/13 20/7 27/23 30/9 31/19 32/17 32/20 32/21 37/7 37/16 57/15 58/3 62/14 62/14 83/23 88/4 88/4 89/7 89/8 90/3 99/15 108/24 110/7 118/24 119/2
**underlying [1]**  14/25
**undermine [1]**  18/19

## U

**undermines [1]** 18/17
**understand [33]** 5/12 5/17 6/4 28/13 28/14 28/19 30/3 30/6 30/10 30/13 30/21 31/13 31/16 31/20 31/22 34/13 34/16 34/17 35/3 35/6 35/19 35/21 37/13 52/24 55/1 61/4 62/23 63/3 90/4 90/6 96/7 99/20 120/5
**understanding [9]** 36/22 49/22 52/9 60/20 60/25 88/3 96/18 100/23 114/18
**understands [2]** 98/18 99/21
**understood [3]** 10/3 27/4 38/10
**undisputed [2]** 96/25 97/1
**unequivocal [2]** 69/20 69/20
**unexpected [1]** 12/13
**unfair [1]** 21/7
**uniformed [1]** 69/19
**unique [1]** 115/14
**UNITED [25]** 1/1 1/3 1/11 1/14 4/2 4/8 7/8 7/25 8/5 11/9 15/17 16/14 18/15 19/8 19/10 19/11 19/13 19/19 21/12 37/10 110/24 113/12 115/16 118/22 122/10
**universe [6]** 25/4 63/4 63/16 63/17 63/21 65/19
**unknown [1]** 54/15
**unlawful [5]** 9/2 9/4 39/23 39/24 93/14
**unlawfully [3]** 7/13 7/23 56/14
**unless [2]** 12/25 61/13
**unorganized [1]** 16/7
**unpersuaded [3]** 12/8 12/11 12/16
**unpersuasive [1]** 10/14
**unseen [1]** 23/15
**unsupported [2]** 12/6 14/23
**unswitch [1]** 46/9
**until [5]** 81/8 104/16 104/17 105/4 127/1
**unusual [1]** 44/3
**up [66]** 27/21 28/8 29/5 29/21 30/14 31/22 36/23 38/22 39/22 40/8 41/23 43/10 43/21 44/22 46/11 46/16 46/17 47/5 47/7 48/3 49/2 49/24 50/10 50/10 50/14 51/15 51/17 51/19 51/21 52/13 53/6 54/25 55/5 59/21 65/9 67/8 67/22 68/4 71/4 71/11 71/25 75/11 78/4 78/5 80/20 84/5 86/3 86/24 88/15 93/21 95/23 99/3 103/12 103/13 104/16 105/3 105/10 105/22 106/22 107/5 108/13 121/6 122/4 122/17 128/11 128/13
**upper [8]** 40/8 40/9 45/24 46/14 121/5 121/10 121/15 121/18
**upstairs [2]** 52/5 53/10
**urge [2]** 36/15 85/15
**urging [3]** 78/16 82/5 116/14
**us [27]** 13/5 25/12 33/23 40/18 40/19 41/10 44/3 44/21 56/2 73/6 78/3 78/6 81/9 82/23 82/24 83/10 84/7 89/23 95/8 95/14 98/4 99/19 105/12 112/8 113/10 124/1 128/15
**USCP [2]** 121/10 121/17
**use [9]** 19/17 51/8 55/12 68/15 83/14 101/13 101/16 109/14 114/17
**used [2]** 48/17 68/19
**useful [1]** 18/11
**uses [3]** 73/24 74/18 74/18
**using [6]** 76/10 77/22 105/23 109/1 109/10 120/6
**utilized [1]** 109/12

## V

**vague [3]** 8/9 11/4 11/6
**vagueness [4]** 11/1 11/2 11/12 12/7
**vaguest [1]** 20/9
**variations [1]** 24/1
**variety [2]** 95/22 112/21

**various [3]** 88/10 92/24 94/4
**Document 231 Filed 04/20/24 Page 150 of [?]** 22/22
**verbal [2]** 69/7 125/6
**verbally [1]** 120/9
**versus [8]** 4/3 11/9 15/17 16/15 18/15 49/11 97/13 118/22
**very [29]** 27/1 44/2 44/3 47/11 47/11 49/22 74/1 85/7 89/14 89/14 89/17 89/17 95/21 105/19 105/23 106/12 107/17 107/18 107/22 108/3 115/22 115/13 115/13 115/13 115/22 116/6 117/9 125/5 129/5
**vest [3]** 91/10 91/14 91/16
**via [1]** 121/11
**vice [1]** 7/9 8/1 9/11
**victims [3]** 21/15 21/16 21/17
**video [32]** 23/19 24/3 37/3 39/6 41/6 42/16 45/18 45/19 47/15 50/4 50/22 50/23 51/2 51/10 69/18 70/23 72/6 88/24 89/1 90/17 98/16 102/3 102/12 103/4 104/4 104/5 109/3 112/16 120/2 120/4 122/7 127/23
**videos [6]** 13/21 16/8 16/11 50/19 68/12 95/5
**videotaped [1]** 13/14
**view [11]** 14/18 14/22 17/15 46/20 47/3 54/5 57/15 62/13 82/25 114/5 114/6
**violate [1]** 113/25
**violated [2]** 7/22 17/9
**violates [1]** 14/17
**violating [2]** 25/23 63/9
**violation [4]** 7/4 7/11 19/1 44/13
**violations [1]** 12/22
**violence [16]** 7/6 41/9 48/17 55/4 55/11 68/10 68/14 68/16 72/18 91/13 91/24 94/16 94/17 108/18 120/21 122/12
**violent [2]** 55/23 108/17
**virtually [1]** 16/14
**visiting [3]** 7/10 8/2 9/13
**visitor [1]** 122/8
**vocabulary [1]** 84/17
**vociferous [1]** 76/4
**voice [2]** 84/17 118/2
**voices [1]** 117/2
**void [3]** 11/1 11/2 11/11
**volumes [1]** 44/11
**voluntarily [4]** 28/16 30/8 31/18 116/19
**vote [2]** 55/22 81/23
**voter [1]** 117/22
**vs [1]** 1/5

## W

**waive [5]** 5/5 5/19 6/1 6/6 6/13
**waivers [2]** 5/2 5/3
**waiving [1]** 95/21
**walk [5]** 50/15 110/22 110/24 110/25 111/2
**walked [8]** 79/15 79/17 79/18 85/6 85/9 115/23 116/1 125/15
**Walker [1]** 102/10
**walking [4]** 40/15 47/4 53/8 78/22
**walks [1]** 54/21
**wander [1]** 75/12
**wandered [2]** 75/11 75/22
**want [76]** 5/1 5/18 6/5 22/19 25/22 32/19 33/18 33/25 34/13 34/15 35/1 35/3 35/18 36/2 37/12 37/14 37/15 38/7 43/23 43/25 46/24 49/21 49/21 54/10 58/21 60/19 64/16 64/17 65/25 66/2 67/7 70/22 73/6 74/7 75/12 76/6 77/11 77/11 77/12 77/24 78/12 78/12 82/8 83/6 83/15 86/15 89/23 92/5 95/3 95/13 98/13 98/15 101/3 102/2 102/8 105/6 105/16 107/16 110/25 116/4 116/4 117/6 117/6 118/20 119/8 121/3 121/24 124/7

124/8 125/7 125/7 125/10 126/6 126/6 126/9 147/25
**wanted [18]** 22/15 22/17 23/5 43/6 55/1 76/22 79/14 82/6 83/1 115/25 116/10 116/10 117/18 117/21 117/21 118/10 124/21 125/20
**wanting [2]** 56/12 116/18
**wants [8]** 18/23 22/11 43/14 54/6 54/9 88/22 89/5 90/22
**war [2]** 55/21 56/8
**warned [1]** 56/6
**was [223]**
**Washington [8]** 1/5 1/16 1/25 2/4 2/8 2/15 56/11 68/2
**wasn't [13]** 26/21 32/17 72/19 74/2 75/21 82/2 83/11 86/19 90/1 94/17 99/2 114/14 115/10
**watch [2]** 40/2 69/18
**watched [1]** 21/22
**watching [1]** 41/7
**water [1]** 92/10
**waving [3]** 76/23 77/2 77/5
**way [53]** 16/25 16/25 17/2 27/8 27/23 28/17 39/14 39/15 39/25 42/21 49/24 51/3 59/8 60/10 62/10 62/22 64/14 65/4 65/12 66/9 70/20 77/3 78/18 80/13 84/2 84/2 85/21 86/10 86/11 88/11 89/3 90/14 91/18 92/6 92/17 94/11 94/14 97/23 98/3 98/5 98/8 99/11 100/19 104/21 105/21 105/24 107/1 107/19 109/10 110/10 110/20 122/9 124/20
**ways [3]** 51/25 85/25 114/18
**we [283]**
**we'll [5]** 41/14 42/13 79/5 103/5 128/9
**weapon [8]** 93/8 109/1 109/5 109/10 109/12 109/14 109/25 110/1
**weapons [2]** 91/3 127/7
**wearing [2]** 91/7 91/10 91/15
**Wednesday [3]** 128/3 128/3 129/2
**weeds [1]** 113/6
**week [1]** 96/8
**Weeks [1]** 4/11
**weigh [1]** 86/1
**welcome [3]** 18/25 24/11 101/5
**well [27]** 4/10 6/3 6/15 6/25 12/22 20/12 22/4 22/25 25/6 42/8 45/3 53/23 61/2 61/21 63/7 64/7 70/19 77/4 78/24 80/19 86/2 86/10 94/11 106/17 110/20 113/5 114/9
**went [25]** 41/22 41/25 42/1 42/6 49/10 68/5 72/8 73/12 75/7 75/13 78/4 78/5 79/8 79/9 79/19 79/21 79/22 80/1 80/17 94/7 115/5 115/7 117/8 124/4 125/19
**were [112]** 11/24 12/1 15/24 15/25 16/7 16/22 17/4 17/6 17/17 17/21 17/23 18/3 19/19 22/21 23/7 31/19 38/16 38/19 38/20 38/24 39/1 40/11 40/14 40/20 40/23 41/2 41/9 41/16 41/19 42/2 42/8 42/11 43/3 44/16 44/17 47/12 47/13 47/17 47/20 48/13 48/18 48/19 49/14 49/14 51/6 52/9 53/13 55/2 57/11 59/19 60/17 62/24 68/5 68/25 69/2 69/3 69/4 69/18 69/21 70/3 72/23 75/10 76/2 76/2 76/14 77/4 79/8 79/9 80/20 83/2 83/10 84/16 85/10 86/3 86/3 87/22 87/23 90/14 90/14 98/11 103/2 103/8 103/10 103/11 104/14 104/14 104/19 104/20 104/20 105/10 105/10 106/3 116/5 116/9 117/5 117/22 118/2 119/11 120/13 120/15 120/18 121/17 123/18 123/23 125/18 125/23 126/2 126/3 126/5 126/5 129/5
**weren't [4]** 32/20 76/1 85/6 126/21
**west [15]** 38/25 40/8 40/9 45/24 46/14 68/5 100/20 101/1 103/14

**W**

west... [6]  119/24 121/5 121/10
121/15 121/18 126/25
what [134]
whatever [7]  15/5 33/1 33/25 66/6
67/14 90/2 126/4
whatsoever [2]  50/5 94/15
when [66]  11/6 14/9 16/13 17/12
27/6 32/19 32/20 40/20 41/21 45/8
48/12 49/1 49/24 51/1 51/6 53/8
53/24 54/11 56/15 60/15 66/17
68/17 70/1 70/5 70/5 70/6 70/8
71/21 73/11 74/13 74/16 74/17
76/17 77/20 77/21 78/14 78/16
79/1 79/13 79/13 79/19 84/23
85/10 86/16 89/1 93/21 93/21
94/11 94/17 98/17 101/19 103/15
106/20 107/25 109/16 115/10
115/21 115/21 117/5 117/24 118/8
118/8 123/19 124/19 125/18 127/1
whenever [2]  64/1 73/14
where [84]  7/9 8/1 9/11 15/4
16/17 21/18 24/24 25/2 25/4 40/12
41/1 41/19 41/22 42/11 45/11
46/15 47/12 48/14 49/9 50/8 50/14
51/14 52/6 53/9 53/12 53/13 53/15
54/10 55/25 57/15 63/14 64/17
69/9 69/12 70/24 72/7 72/9 72/16
74/14 74/15 76/9 76/9 78/23 79/1
79/1 80/2 80/7 80/8 80/10 81/6
81/14 85/5 86/1 87/13 89/3 89/13
89/15 95/17 99/11 99/19 101/14
101/23 103/10 107/1 107/9 110/8
113/20 115/16 115/22 116/2 116/5
116/13 117/5 118/23 119/25 120/3
121/7 122/18 125/25 126/2 126/3
126/4 126/20 127/2
Whereas [1]  11/9
whether [45]  5/18 6/5 10/17 14/18
23/3 27/16 27/19 28/25 32/5 33/18
35/19 37/16 42/24 44/23 45/5 45/7
47/20 47/24 48/21 58/18 58/19
58/21 59/1 59/5 59/6 61/10 65/25
66/2 67/1 69/1 69/3 70/15 70/25
71/1 71/2 76/9 99/16 101/8 101/11
101/11 120/13 123/6 125/11 125/12
125/23
which [61]  8/3 11/17 12/14 12/20
12/23 12/25 15/1 15/16 19/13
19/13 20/13 20/14 22/14 22/19
22/20 23/8 36/11 38/11 38/22 39/4
39/11 40/16 41/4 42/13 42/14 46/1
53/23 55/17 55/24 58/3 59/4 63/10
63/18 65/4 75/21 76/6 77/13 89/18
89/19 90/14 91/6 92/11 94/11
95/14 97/11 102/8 108/24 109/5
109/5 110/11 110/14 114/11 118/25
119/18 121/7 122/14 123/21 123/25
124/7 124/8 125/16
while [12]  10/14 19/2 38/16 38/25
40/11 41/12 41/15 43/21 44/24
73/13 92/1 93/8
White [1]  13/15
who [43]  8/17 9/17 9/20 9/21
17/21 19/18 19/20 19/21 35/12
41/2 42/23 42/25 43/14 47/23
48/11 54/5 54/5 69/24 74/19 80/13
81/25 82/3 82/4 82/5 83/2 83/4
83/11 84/4 85/4 86/24 89/19 106/3
113/1 113/3 120/10 120/11 120/13
121/23 122/9 122/22 122/24 125/9
126/15
whole [5]  65/23 75/5 76/6 78/22
79/4
whose [1]  21/17
why [20]  5/15 16/24 24/9 27/19
27/20 29/14 35/2 59/8 67/13 67/15
67/22 70/13 73/2 73/7 79/21 87/9
99/1 101/17 101/18 106/17
will [78]  4/5 5/14 6/2 6/17 9/12
12/24 20/4 20/17 23/8 24/15 24/15

24/21 25/18 25/20 25/22 26/21
27/15 27/20 27/25 28/5 28/11 28/12
28/16 30/8 31/18 32/23 34/2 39/8
40/3 46/12 47/7 48/2 48/2 48/3
48/8 49/3 49/18 51/8 52/13 54/3
56/1 59/13 60/16 62/18 63/20 65/7
67/15 69/15 69/18 70/18 71/10
78/3 82/15 84/19 85/13 87/8 88/4
89/21 95/10 100/19 101/18 102/7
102/22 102/25 103/7 105/14 110/23
110/24 112/12 115/14 115/17 119/3
119/9 119/23 128/11 128/13 128/25
129/3 129/4
willing [2]  39/25 40/2
willingness [1]  41/18
WILSON [71]  1/7 2/6 4/4 4/18 5/16
5/17 7/12 12/20 20/14 23/24 25/16
31/2 31/3 31/6 33/7 35/15 35/16
35/18 36/13 36/20 36/23 39/9
39/20 40/2 40/19 41/12 41/15
42/21 47/2 47/4 47/16 48/13 48/23
51/1 54/15 56/22 87/5 87/7 87/9
88/7 89/3 89/16 90/7 91/1 91/3
91/6 91/10 91/15 91/21 91/24 92/4
92/12 92/23 93/1 93/4 93/10 94/9
94/22 105/20 117/15 117/24 118/11
119/10 119/18 120/15 123/20
124/11 124/24 125/1 126/13 127/18
Wilson's [5]  23/22 23/25 24/1
24/3 126/8
window [2]  80/17 88/10
windows [1]  68/24
winner [2]  89/20 112/4
withdrawing [1]  20/23
within [6]  7/8 7/25 13/21 49/6
63/17 65/19
without [12]  8/2 9/4 23/4 24/21
28/15 30/7 31/17 37/19 85/1 92/23
95/21 122/12
witness [7]  13/21 14/9 19/9 19/12
19/14 19/16 19/20
witnessed [1]  70/10
witnesses [10]  13/16 19/4 19/5
19/18 19/19 26/16 29/6 30/14
31/23 60/6
women [2]  38/20 111/4
won [1]  111/16
won't [3]  56/1 66/8 66/8
wondering [1]  104/1
word [11]  62/23 63/3 63/7 64/5
83/20 83/24 88/25 94/18 97/18
114/17 115/19
worded [1]  108/3
wording [1]  96/18
words [9]  20/4 42/23 43/5 73/24
73/24 77/11 102/8 109/21 116/11
work [4]  46/12 107/1 128/6 128/25
working [1]  46/2
works [1]  128/2
world [1]  99/1
worn [6]  91/17 92/4 92/12 102/19
103/6 110/21
worth [3]  55/18 70/18 72/11
would [146]
wouldn't [8]  60/8 66/7 81/10
83/23 86/4 109/9 109/13 114/6
wow [1]  84/9
wrapped [1]  100/21
wrench [1]  76/6
wrenched [1]  77/6
wrestle [1]  39/16
wrestling [1]  75/19
writes [1]  118/25
written [1]  5/2
wrong [8]  113/9 113/10 114/8
114/20 114/25 115/4 115/6 115/10
wrongdoing [2]  38/16 43/12
wrongful [2]  44/18 87/24
wrote [2]  15/4 63/22

**Y**

yeah [8]  21/2 29/2 58/18 61/23

63/24 66/7 86/14 115/13
year [1]  109/15
yell [2]  39/12 54/17
yelling [1]  122/4
yellow [1]  39/9
yells [1]  39/14
yep [1]  122/18
yes [61]  5/8 5/13 5/20 5/23 20/16
24/13 25/15 26/1 28/1 28/12 30/16
30/23 30/25 31/4 31/9 31/12 31/21
31/25 32/3 32/7 32/10 34/6 34/21
35/2 35/6 35/14 35/16 35/25 36/18
36/21 46/6 51/18 52/11 54/9 57/10
62/1 65/1 75/17 76/3 77/4 78/14
79/4 86/19 86/21 87/3 89/12 93/19
93/20 96/1 98/19 100/23 101/10
101/20 104/11 106/10 109/18 110/5
122/12 123/1 123/4 129/1
yet [2]  17/24 104/3
yield [1]  73/1
you [434]
you want [1]  25/22
you'll [2]  119/15 122/19
you're [1]  108/3
your [239]
yourselves [2]  33/18 101/18

**Z**

Zink [1]  16/15
zone [1]  10/5
Zooming [1]  47/5