**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

        **Complainant**

    **-v-**

**PATRICK MONTGOMERY,**

        **Defendant.**

**Consolidated with BRADY**
**KNOWLTON and GARY WILSON**

       **Defendants**

Criminal  Case No. 1:21-cr-46 (RDM)

  Assigned to the Honorable
  Randolph D. Moss, District Court Judge

**DEFENDANT PATRICK MONTGOMERY'S MOTION TO VACATE**
**18 U.S.C. § 1512(c)(2) CONVICTION BY WRIT OF**
**VACUTOR, ARREST OF JUDGMENT, RULE 35, RULE 32(K), OR UNDER**
**28 U.S.C. § 2255 OR IN THE ALTERNATIVE UNDER RULE 29**
**OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

Defendant PATRICK MONTGOMERY ("Montgomery"), by and through undersigned

counsel, hereby respectfully moves the Court to enter an order vacating his conviction under a

distorted version of 18 U.S.C. § 1512(c)(2), including but not limited to

1)  Rule 32(k) of the Federal Rules of Criminal Procedure, and/or

2)  Rule 35 of the Fed.R.Crim.Proc., and/or

3)  Arrest of Judgment, and/or

4)  a Writ of Vacatur, and/or

5)  28 U.S.C. 2255 and/or

6)  renewal of his motion to vacate the conviction under Rule 29 of the Federal Rules of

Criminal Procedure, and/or

7)  Writ of Coram Nobis.

(Please note that nothing herein is meant to waive or take away from Montgomery's right to appeal especially on other questions apart from 18 U.S.C. § 1512(c)(2).)

## I.    <u>INTRODUCTION</u>

On June 28, 2024, the U.S. Supreme Court concluded its opinion with the following order.  The U.S. Supreme Court vacated and remanded the consolidated appeal and decision of the U.S. Court of Appeals for the District of Columbia Circuit, Record No. 22-3038.   *United States v. Lang*, 64 F.4th 329 (D.C. Cir. 2023), *rehearing denied*, 2023 LEXIS 12753 (D.C. Cir., May 23, 2023).

\* \* \*

**To prove a violation of Section § 1512(c)(2), the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or as we earlier explained, other things used in the proceeding, or attempted to do so. See *supra*, at 9. The judgment of the D. C. Circuit is therefore vacated, and the case is remanded for further proceedings consistent with this opinion. On remand, the D. C. Circuit may assess the sufficiency of Count Three of Fischer's in-dictment in light of our interpretation of Section § 1512(c)(2).**

*It is so ordered.*

*United States v. Fischer*, 603 U.S. _____ (June 28, 2024) (Record No. 23-5572).

On August 7, 2024, the U.S. Court of Appeals for the District of Columbia issued its mandate and ordered the question of the application of 18 U.S.C. § 1512(c)(2) to be re-evaluated by the District Court in light of the Supreme Court's *Fischer* opinion.

## **O R D E R**

In light of the Supreme Court's judgments in <u>Fischer v. United States</u>, No. 23-5572 (July 30, 2024) (Court of Appeals No. 22-3038), <u>Lang v.</u>

United States, No. 23-32 (Aug. 5, 2024) (Court of Appeals No. 22-3039), and Miller v. United States, No. 23-94 (Aug. 5, 2024) (Court of Appeals No. 22-3041), which vacated this court's April 7, 2023 judgment and remanded these cases for further consideration in light of Fischer v. United States, 144 S. Ct. 2176 (2024), it is

**ORDERED**, on the court's own motion, that these cases be remanded to the District Court for further proceedings consistent with the Supreme Court's opinion in Fischer. The Clerk is directed to issue the mandate forthwith to the District Court.

Naturally, the entire U.S. Supreme Court opinion is important and very instructive in its analysis and details. However, the final paragraph quoted above is unusually helpful in summarizing very concisely and accurately the outcome, end result, and state of the law as a result of the *Fischer* decision.

The U.S. Supreme Court did not strike down 18 U.S.C. § 1512(c)(2) entirely – although it should have, *see infra* – but purported to be correctly construing the statute, such that it remains possible to apply the statute and prosecute someone – but only within the construction placed on it by the U.S. Supreme Court in *Fischer.*

The U.S. Attorney's Office for the District of Columbia as an office of the DOJ has had a complex series of responses to this decision. Observing from the outside (of course) it appears that the USAO has postponed decisions and actions while trying to think through the *Fischer* decision and decide what it means and how to respond. Assistant U.S. Attorneys filed many motions in various cases asking for extensions of time at various stages in those cases for USAO to (in this counsel's wording) formulate a response and decide on a course of action. Some prosecutions under 1512(c)(2) were voluntarily dismissed relatively quickly. Some were spontaneously dismissed by trial judges of this District. However, in most cases the response has been delay which is somewhat understandable.

Eventually, however, the delay and other actions lead to the suspicion that the USAO is not merely taking some time to think about *Fischer* but instead exploring every possible way to resist *Fischer*.   That approach is not only concerning in terms of respect for the Supreme Court's decisions.[1]  The attempt to salvage flawed prosecutions under an imaginative, unprecedented, and improbable interpretation of an older statute 1512(c)(2) by replacing it with an even more improbable, more fanciful theory is heading in the wrong direction.  Defendant concedes that reactions have been diverse from one case to another and one AUSA to another, even though the strong hesitation from most of the USAO is also apparent.  On the other hand, a vindictive campaign to recalculate sentencing to punish defendants for the DOJ's mistake by finagling the same sentencing punishment without 1512(c)(2) is clear.  The DOJ knowingly and intentionally prosecuted ordinary protestors who – if they had only had the good sense to be political Leftists instead of supporters of Trump – would have gotten their cases dismissed or only a $50 fine by the thousands and thousands of cases for an invented version of a statute that is not a crime.  Had they been Leftists, they would have been generally excused for the crime.  Here, however, there actually was no crime. [2]

The U.S. Supreme Court ruled that only a prosecution [which proves beyond a reasonable doubt] that a defendant "**impaired the availability or integrity for use in an official proceeding of records, documents, objects, or as we earlier explained, other things used in the proceeding, or attempted to do so**" is a valid conviction under 18 U.S.C. § 1512(c)(2).

---

[1]     Of course not every Supreme Court decision covers every aspect of a topic and it is possible that room remains to pursue some aspects of a topic not addressed, but it is also possible as we think here to directly ignore what the Supreme Court was saying.

[2]     It should be obvious and not need repeating, but almost all Defendants are charged with multiple Counts.  Obviously we must consider each Count separately.  Obviously this discussion pertains to the Count of obstruction of an official proceeding under 18 U.S.C. 1512(c)(2).  A Defendant could be guilty of something else, although not guilty of that particular Count.

By the way, the Supreme Court did restate the elements differently in this summary from what the statute says but the meaning sounds consistent nevertheless.

## II.    GOVERNING LAW:  RULE 32(k)

**Federal Rule 32(k) "Sentencing and Judgment"** *(emphasis added)* provides that after sentencing:

* * *

(k) Judgment.
(1) *In General.* In the judgment of conviction, the court must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence. If the defendant is found not guilty ___or is otherwise entitled to be discharged, the court must so order___. The judge must sign the judgment, and the clerk must enter it.

* * *

Sentencing is scheduled for October 31, 2024.  The issuance of the Judgment would occur on that day or shortly thereafter.  Presumably the discharge of a count would therefore not occur until the time for issuing a Judgment after sentencing.

As below, the Court might wish to order that the PSIR and Sentencing Memoranda either present both scenarios in their sentencing recommendations or assume the dismissal of the charge.  Naturally, the Government will by then have submitted any Opposition or Response to this instant motion.

## III.    GOVERNING LAW:  RULE 35 CORRECTION

**Rule 35, Fed R. of Crim P. allows a judgment of acquittal upon a motion**:

### Rule 35. Correcting or Reducing a Sentence
 (a) CORRECTING CLEAR ERROR. Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, ___or other clear error___.

\* \* \*

Sentencing is scheduled for October 31, 2024.  Defendant, by counsel, argues that any time prior to 14 days after October 31, 2024, is "within 14 days" – that is including any time prior to that deadline.

> Accordingly, we join our sister circuits in holding that 18 U.S.C. § 3582 does not "deprive the district court of [authority] to alter a sentence during the course of the same [sentencing] hearing." See *Ochoa*, 809 F.3d at 458. Rather, a sentence becomes final and binding for Section 3582 purposes only once (1) it has been "unequivocally state[d]" in open court, Fields, 552 F.3d at 405 (cleaned up); and (2) there has been a "formal break in the proceedings from which to logically and reasonably conclude that sentencing had finished," *Luna-Acosta*, 715 F.3d at 865 (quoting *Meza*, 620 F.3d at 509).

> Melvin maintains that Rule 35 of the Federal Rules of Criminal Procedure compels us to hold that a sentence is imposed the moment it is uttered. His argument relies on Rule 35(c), which defines "sentencing" to mean "the oral announcement of the sentence." See Fed. R. Crim. P. 35(c). **But no part of Rule 35 defines when a sentence is imposed - nor prohibits district courts from adjusting a sentence during an ongoing sentencing hearing, as the court did here.**

*United States v. Melvin*, 23-4618 (4th Cir. Jun 26, 2024) *(emphasis added)*.

However, if the Court chooses to enter a Rule 35 Judgment of Acquittal on the date of sentencing currently scheduled on October 31, 2024, this would not affect the Defendants' rights except to the extent that the Pre-Trial Services probation officer's Pre-Sentence Investigation Report (PSIR) might present calculations and/or recommendations of sentencing levels or points based on inclusion of the 18 U.S.C. § 1512(c)(2) charge.  This might also involving the Defendant and the Government submitting Sentencing Memoranda based on the removal of the charge.

The Court might wish to order that the PSIR and Sentencing Memoranda either present both scenarios in their sentencing recommendations or assume the dismissal of the charge.

Naturally, the Government will by then have submitted any Opposition or Response to this instant motion.

## IV.    GOVERNING LAW:  ARREST OF JUDGMENT

"An arrest of judgment was the technical term describing the act of a trial judge refusing to enter judgment on the verdict because of an error appearing on the face of the record that rendered the judgment invalid." *United States v. Sisson*, 399 U.S. 267, 280–81, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970) (plurality opinion). It bore some semblance to a motion for judgment notwithstanding the verdict, but the analogy is not precise. See Arrest of Judgment , Giles Jacob, A New Law-Dictionary (1st ed. 1729).

> In *United States v. Bramblett*, 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955), a former Member of Congress was charged under § 1001 for falsely representing to the House Disbursing Office that a named person was entitled to compensation as his official clerk. The district court had granted Bramblett's motion for arrest of judgment following his conviction on the ground that he had not falsified a material fact "within the jurisdiction of any department or agency of the United States" because the Disbursing Office was not a department or agency within the meaning of § 1001. See 348 U.S. at 505, 75 S.Ct. at 506. The government appealed, and the Supreme Court reversed.

*U.S. v. Oakar*, 111 F.3d 146, 324 US App DC 104 (D.C. Cir. 1997) (turning on whether the Congressional Disbursing Office counted as a "department or agency of the United States," which was then over-ruled in *Hubbard v. United States*, 514 U.S. 695, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995)").

> The district court denied Hale's motion for arrest of judgment or a new trial. We review the court's decision not to grant the motion for abuse of discretion. *United States v. George*, 960 F.2d 97, 101 (9th Cir.1992).
>
> Hale's motion before the district court asserted a variance between the indictment and the court's instructions to the jury. 23 He argued that, while the indictment charged him with "transporting, shipping, receiving, possessing, and distributing" contraband cigarettes, the court instructed

the jury it could find him guilty of violating the CCTA if it found that he "sold or purchased" the cigarettes. 24 As the district court held, this argument is specious. "Distributing" includes "selling" and "receiving" includes "purchasing." There was no variance between the indictment and the jury instructions. Hale's motion for a new trial or arrest of judgment was properly denied.

*U.S. v. Baker*, 63 F.3d 1478 (9th Cir. 1995).  By contrast, there is no way to harmonize the

prosecution here against Patrick Montgomery with the "new" (the original) construction of 18

U.S.C. § 1512(c)(2) rendered by the U.S. Supreme Court in *Fischer.*

On the Government's motion, that court dismissed the appeals as untimely under Rule 37(a)(2). 280 F.2d 24. It held, in effect, that, although there is no such express limitation in the Rules, the provisions of Rule 377 impliedly modify and limit the provisions of Rule 37(a)(2). And it concluded that, although 'motion(s) * * * in arrest of judgment' had, in fact, 'been made within the 10-day period' after entry of the judgment appealed from (Rule 37(a) (2)), it cannot be so regarded under these Rules because the tender by petitioners and acceptance by the court of the pleas of nolo contendere on March 17 constituted the 'determination of (their) guilt,' and, inasmuch as the motions in arrest were not made 'within 5 days after (that) determination of guilt' as required by Rule 34, it followed that, to be timely under Rule 37(a) (2), the appeals had to 'be taken within 10 days after entry of the judgment or order appealed from' (Rule 37(a)(2)), or by June 30 or July 2—depending upon whether it was the oral pronouncement of June 19 or the formal entry of June 22 that constituted the judgment—and not 'within 10 days after entry of the order denying the motion.' Rule 37(a)(2). 280 F.2d at pages 27 28. Because of a conflict between the circuits upon the question presented8 and of its importance to the proper administration of the criminal Rules, we granted certiorari. 364 U.S. 813, 81 S.Ct. 63, 5 L.Ed.2d 45.

*Lott v. United States*, 367 U.S. 421, 423-424, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961).

Though we are impressed by this demonstration and argument, as also by the legalisms of the Government's countervailing argument, and although recognizing, as we do, the obscurity, if not inconsistency, in these Rules that has been exposed by this case, we need not here decide whether Rules 33 and 34 modify Rule 37(a)(2) so as to limit the time which it specifies for the taking of an appeal—but may and should leave that problem and its kindred ones, brought to the fore in this case, for resolution by the rule-making process, 9 *United States v. Robinson*, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259—for we have concluded that it was the judgment of conviction and sentence, not the tender and acceptance of the pleas of nolo

contendere, that constituted the 'determination of guilt' within the meaning of Rule 34. And, inasmuch as the motions in arrest were 'made within 5 days after (that) determination of guilt,' as required by Rule 34, and thus, in any view, were also 'made within the 10-day period' after entry of the judgment appealed from, as required by Rule 37(a)(2), the appeal, taken 'within 10 days after entry of the order denying the motion,' was timely.

*Lott v. United States*, 367 U.S. at 425-426.

"Reversed and remanded."

*Id.*

Here, of course, the reversal of the Circuit Court by the U.S. Supreme Court in *United States v. Joseph Fischer*, was a "prejudicial surprise" and "substantial prejudice to the accused." Even though many commentators and predictors announced many "court watching" opinions – most of them insisting that the U.S. Supreme Court would reject Joseph Fischer's appeal – an actual, official decision reversing § 1512(c)(2) is different from a chorus of commentary:

Technically, a claim that the indictment does not charge an offense may be raised on a motion in arrest of judgment and such motion was made in time here. [See Fed.R.Crim.P. 12(b)(2).] But the courts of the United States long ago withdrew their hospitality toward technical claims of invalidity of an indictment first raised after trial, absent a clear showing of substantial prejudice to the accused--such as a showing that the indictment is so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had.

Id. (quotation omitted); *United States v. Fistel*, 460 F.2d 157, 161 (2d Cir.1972) (quoting id.).

*U.S. v. Wydermyer*, 51 F.3d 319, 324-325 (2nd Cir. 1995)

## V.    <u>GOVERNING LAW:  WRIT OF VACUTOR</u>

The District Court retains jurisdiction of the case.  Patrick Montgomery is awaiting sentencing.  No formal Judgment has been entered since sentencing has not yet occurred.  The time for noting an appeal has not yet arrived.  The dissent in *Carlisle v. U.S.*, 517 U.S. 416, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (Stevens and Kennedy dissenting) responded to a Rule 29

motion which was untimely.   The majority and dissent differed little except as to whether the time had expired:

> It is quite wrong, however, to assume that a judge is nothing more than a referee whose authority is limited to granting or denying motions advanced by the parties. As Learned Hand tersely noted, a "judge, at least in a federal court, is more than a moderator; he is affirmatively charged with securing a fair trial, and he must intervene sua sponte to that end, when necessary." *Brown v. Walter*, 62 F. 2d 798, 799 (CA2 1933). That duty encompasses not only the avoidance of error before it occurs, but the correction of error that may have occurred earlier in a proceeding.

> The basic principle has been stated many times. There is a "power `inherent in every court of justice so long as it retains control of the subject matter and of the parties, to correct that which has been wrongfully done by virtue of its process.' *Arkadelphia Co. v. St. Louis Southwestern Ry. Co.*, 249 U. S. 134, 146. See *Northwestern Fuel Co. v. Brock*, 139 U. S. 216, 219." *United States v. Morgan*, 307 U. S. 183, 197 (1939). Although that statement was made in a civil case, we have made it clear that a federal court has even broader discretion to notice error independently in the trial of a criminal case than in civil cases. *Crawford v. United States*, 212 U. S. 183, 194 (1909).

> Examples of the exercise of the federal courts' inherent powers are abundant in both our civil and our criminal jurisprudence. 7 Indeed, when he was serving on the Court of Appeals for the Ninth Circuit, then-Judge Kennedy, after considering a series of cases that recognized various inherent judicial powers, 8 correctly pointed out:

>> "Exercise of judicial power by entry of orders not expressly sanctioned by rule or statute in order to correct the legal process or avert its misfunction has been approved in varied circumstances. *Arizona v. Manypenny*, 672 F. 2d 761, 765, cert. denied, 459 U. S. 850 (1982).

> When a federal court declines to enter a judgment of conviction against a defendant whom it should have directed the jury to acquit, it clearly corrects the legal process and averts its misfunctioning. Given the various sua sponte powers that district courts unquestionably may exercise in order to ensure that legally innocent defendants are not convicted, it is clear that they also possess the inherent authority sua sponte to enter post-verdict acquittals when the Government has failed to prove that a defendant is guilty.

District courts have long exercised their inherent power to direct an acquittal sua sponte when the prosecution fails to prove its case at the close of evidence. See *Wiborg v. United States*, 163 U. S. 632, 659 (1896); Cady v. United States, 293 F. 829 (CADC 1923); *Nosowitz v. United States*, 282 F. 575, 578 (CA2 1922). 9 They have also long exercised their inherent power to set aside a jury verdict for insufficiency of the evidence sua sponte. See *United States v. Harding*, 26 F. Cas. 131, 136 (No. 15,301) (ED Pa. 1846); *United States v. Fullerton*, 25 F. Cas. 1225 (No. 15,176) (SDNY 1870); see also F. Wharton, Criminal Law of the United States 669 (1846) ("Where, however, evidence is not sufficient in law to authorize a verdict, a new trial will be granted, even though no objection be made at the trial"); id., at 643(s) (explaining that the judge reserves "it to himself, if there be an improper conviction, to arrest the judgment or set aside the verdict"); *Charles v. State*, 4 Port. 107, 109-110 (Ala. 1836). 10

The District Courts' longstanding exercise of these inherent powers is entirely consistent with the conclusion that a district court acts within its power when it enters a judgment of acquittal upon setting aside an unsupported jury verdict. To be sure, the early cases reveal that district courts typically ordered new trials, rather than acquittals, upon concluding that the jury's verdict was not supported by legally sufficient evidence. However, subsequent cases demonstrate that as courts became concerned that the new trial remedy trenched on the prohibition against double jeopardy, they began to enter judgments of acquittals. See *Ex parte United States*, 101 F. 2d 870, 878 (CA7 1939), aff'd by an equally divided court in United States v. Stone, 308 U. S. 519 (1939).

\* \* \*

In light of this history, it makes no sense to conclude that a federal district court lacks the inherent power to enter sua sponte a postverdict judgment of acquittal. A trial court's postverdict entry of a judgment of acquittal is in substance no different from an appellate court's order directing entry of that same judgment. Moreover, the double jeopardy concerns that may bar a district court from ordering a new trial to remedy its failure to have directed an acquittal cannot sensibly be understood to prohibit the district court from providing a defendant some measure of relief from a legally insufficient guilty verdict. See *United States v. Smith*, 331 U. S. 469, 474 (1947). Finally, given that a motion was not thought to be needed in order for the District Court to exercise its inherent power either to direct an acquittal, or to set aside an unsupported verdict and order a new trial, there is no reason to conclude that a district court is utterly powerless to remedy a wrongful conviction in the exceedingly rare circumstance in which an unforeseen accident

results in the defendant's failure to file a motion for acquittal.

In all events, a district court clearly has the inherent authority to ensure that a legally innocent defendant is not wrongfully convicted. It would be most strange to conclude that this authority, which enables a district court to keep a case from the jury altogether when the Government fails to prove its case, does not permit that same court to revise a guilty verdict that the jury returns despite the Government's insufficient proof. That conclusion is particularly difficult to fathom when one considers that the latter action may be appealed by the Government, while the former may not. *United States v. Wilson*, 420 U. S. 332, 345 (1975). Not surprisingly, therefore, numerous courts have recognized that, prior to the passage of Rule 29, district courts possessed the inherent power to acquit defendants sua sponte. See *United States v. Hughes*, 759 F. Supp. 530, 532-536 (WD Ark.), aff'd, sub nom. *United States v. Haren*, 952 F. 2d 190 (CA8 1991); *United States v. DiBernardo*, 880 F. 2d 1216, 1225, n. 4 (CA11 1989); *United States v. Coleman*, 811 F. 2d 804 (CA3 1987); *United States v. Giampa*, 758 F. 2d 928, 936, n. 1 (CA3 1985); *Arizona v. Manypenny*, 672 F. 2d, at 765; *Ansley v. United States*, 135 F. 2d, at 208; see also *United States v. Weinstein*, 452 F. 2d 704, 713, 714 (CA2 1971); *United States v. Broadus*, 664 F. Supp. 592, 595-598 (DC 1987).

*Carlisle v. U.S.*, 517 U.S. 416, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (Stevens and Kennedy dissenting).

## VI.    <u>GOVERNING LAW:  28 U.S.C. § 2255</u>

In *Davis v. United States,* 417 U.S. 333 (1974), the Supreme Court held that an interpretation of law rendering a conviction invalid is a proper basis for relief under section 2255. The Court stated, "There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under § 2255."

28 U.S.C. § 2255 provides that:

**(a)** A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed

the sentence to vacate, set aside or correct the sentence.

**(b)** Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

**(c)** A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

**(d)** An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

**(e)** An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

**(f)** A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

> **(1)** the date on which the judgment of conviction becomes final;

> **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> **(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

### Notes of Advisory Committee on Rules—1967

*Subdivision (a)*. Title 28 U.S.C. §2241(a) authorizes circuit judges to issue the writ of habeas corpus. Section 2241(b), however, authorizes a circuit judge to decline to entertain an application and to transfer it to the

appropriate district court, and this is the usual practice. The first two sentences merely make present practice explicit. Title 28 U.S.C. §2253 seems clearly to contemplate that once an application is presented to a district judge and is denied by him, the remedy is an appeal from the order of denial. But the language of 28 U.S.C. §2241 seems to authorize a second original application to a circuit judge following a denial by a district judge. *In re Gersing,* 79 U.S.App.D.C. 245, 145 F.2d 481 (D.C. Cir., 1944) and *Chapman v. Teets*, 241 F.2d 186 (9th Cir., 1957) acknowledge the availability of such a procedure. But the procedure is ordinarily a waste of time for all involved, and the final sentence attempts to discourage it.

A court of appeals has no jurisdiction as a court to grant an original writ of habeas corpus, and courts of appeals have dismissed applications addressed to them. *Loum v. Alvis*, 263 F.2d 836 (6th Cir., 1959); *In re Berry*, 221 F.2d 798 (9th Cir., 1955); *Posey v. Dowd*, 134 F.2d 613 (7th Cir., 1943). The fairer and more expeditious practice is for the court of appeals to regard an application addressed to it as being addressed to one of its members, and to transfer the application to the appropriate district court in accordance with the provisions of this rule. Perhaps such a disposition is required by the rationale of *In re Burwell,* 350 U.S. 521, 76 S.Ct. 539, 100 L.Ed. 666 (1956).

* * *

**Amendment by Public Law**

**1996** —Pub. L. 104–132 inserted "and section 2255" after "corpus" in catchline and amended text generally. Prior to amendment, text read as follows:

"(a) *Application for the original writ*.—An application for a writ of habeas corpus shall be made to the appropriate district court. If application is made to a circuit judge, the application will ordinarily be transferred to the appropriate district court. If an application is made to or transferred to the district court and denied, renewal of the application before a circuit judge is not favored; the proper remedy is by appeal to the court of appeals from the order of the district court denying the writ.

* * *

## VII.    RULE 29:  RENEWAL OF MONTGOMERY'S MOTIONS TO DISMISS

Technically, a criminal Defendant is not convicted until a Judgment is entered upon

sentencing.  Rule 32(k) Fed R. Crim. Procedure.  Patrick Montgomery has not yet undergone

sentencing and no Judgment has been issued or entered as of yet.

Meanwhile, Rule 29 of the Fed R. Crim. Procedure allow for a Judgment of Acquittal, which Motion to Dismiss must be filed within 14 days of conviction.

However, here, Patrick Montgomery filed a Motion to Dismiss the same Count 10 under ECF Dkt. #39 sometime in mid June 2021.[3]  The Government filed its Opposition on June 29, 2021, at ECF Dkt. #41.  Montgomery filed a 54 page Supplementary Brief on September 17, 2021, at ECF Dkt. # 60, including challenging 18 U.S.C. 1512(c)(2) as unconstitutionally void for vagueness on the grounds that "corruptly" has too many alternate meanings.  Granted extended time, the Government filed its Opposition on October 15, 2021, at ECF Dkt. # 64.

Montgomery renewed and repeated his motion in response to the Second Superseding Indictment at ECF Dkt. # 80 at December 6, 2021.  Montgomery filed supplementary authority on the unconstitutional vagueness of "corruptly" in the statute on December 10, 2021, at ECF Dkt. # 84.  The Court entered a 54 page order and Memorandum Opinion on December 28, 2021, at ECF Dkt. # 87 denying the Motion to Dismiss Count Ten of the Second Superseding Indictment.  The Court's Memorandum Opinion considered and embraced all of the objections which Montgomery raises here, and more.  Unfortunately, reciting to the Government's allegations, the Opinion included the false information that "The rampage left multiple people dead," when five people died exclusively at the hands of the police, not a single one by "the rampage."  And the Government has steadfastly refused to itemize its claims of damage which appear to be 20 times larger than any damage that can be substantiated with facts.   The undersigned counsel elicited testimony from the Architect of the Capitol in *United States v. Enrique Tarrio [formerly Nordean],* Case No. 1:27-cr-00175, that replacing one very large

---

[3]    Strangely PACER is missing docket items 36 through 39.

window, left-side, cost only $750 including labor, but only a handful of windows and doors were

damaged throughout the 750 foot long Capitol building.  It would require replacing

approximately 3,897 such windows to approach the Government's loose estimate.

Montgomery renewed and repeated the Motion to Dismiss upon the Third Superseding

Indictment, which was filed at ECF Dkt. #151, on July 17, 2023.  The Government filed its

Opposition to Montgomery's Motion on the Third Superseding Indictment on July 31, 2023, at

ECF Dkt. # 160.

Conspicuously, Montgomery plainly addressed the legal points at issue here.  The Court's

December 28,2 021, Memorandum Opinion summarized on pages 7 and 8 *(emphases added):*

## II.

Defendants argue that Count 10 should be dismissed for three
overarching reasons. Each of their arguments, however, turns on a
common theme: in Defendants' view, each of the key terms contained in
Section 1512(c)(2)—"official proceeding," "otherwise obstructs,
influences, or impedes," and "corruptly"—must be construed in a
manner that ***limits the reach of Section 1512(c)(2) to tampering or
interfering with the availability or presentation of evidence in a judicial
or quasi-judicial proceeding***. To construe the terms otherwise, they add,
would render the statute unconstitutionally vague or overbroad as
applied in this case. Because that is not what the statute says, and
because Defendants' constitutional and other non-textual arguments are
unpersuasive, the Court will deny Defendants' motion.

Thus, **two and a half years before the U.S. Supreme Court's *Fischer* decision**,

Montgomery directly advanced the U.S. Supreme Court's corrected interpretation of 18 U.S.C.

1512(c)(2), among other things.  The Court directly addressed the holding in *Fischer* ***two and a***

***half years before*** the U.S. Supreme Court decided *Fischer*.[4]  While Judge Karl Nichols' and the

U.S. Supreme Court's analyses were complex, finely-balanced, and unexpected, nevertheless the

---

[4]    Of course some of the arguments advanced were not accepted by the U.S. Supreme
Court, some not considered at all by the High Court.  But the key dispositive issue was directly
addressed in this case.

very distinction that *Fischer* ultimate created was considered in Montgomery's motions herein. Specifically, that is "***tampering or interfering with the availability or presentation of evidence.***"

Yet nevertheless, the Government did not present any evidence in the record to support that interpretation of 18 U.S.C. § 1512(c)(2).

Instead, the Government's theory of the case and the scope of their evidence was limited to the alleged physical disruption by demonstration that the U.S. Supreme Court rejected in its *Fischer* decision. Although no one can do everything, resources are limited, and hindsight is 20/20, the Government might have covered its bases by presenting evidence – if it could – of both versions of § 1512(c)(2).  But it was clear that the DOJ was more interested in cementing its new limitless scope of § 1512(c)(2) as a massive expansion of its authority.

Montgomery now renews these motions in light of the *Fischer* change to the law. Montgomery contends that on this extensive record of raising the same points previously the Court should vacate the conviction under Count Ten even under Rule 29 as a renewed motion.

## VIII.  GOVERNING LAW:  RULE 29 (RENEWAL OF MOTION)

**Rule 29 states that a Court may grant a judgment of acquittal when the prosecution fails to prove all elements of a crime charged**.

**1**. The Court must examine what was proven, not what might have been proven.  The question is what did the Government actually prove, not what it could have possibly proven.  . Evaluation is limited to what is in the record, not to what could have been placed into evidence.

**2**. "The Court must grant a motion for judgment of acquittal if "a reasonable juror must necessarily have had a reasonable doubt as to the defendant[']s guilt." *See United States v. Weisz*, 718 F.2d at 437 (emphasis in original) (*citing United States v. Singleton*, 702 F.2d 1159, 1162-63 (D.C. Cir. 1983)). *See also United States v. Reese*, 561 F.2d 894, 898 (D.C. Cir. 1977); *Curley v. United States*, 160 F.2d 229, 232-33 (D.C. Cir. 1947) ("[I]f there is no evidence upon which a

reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion [for judgment of acquittal] must be granted."), *cert denied*, 331 U.S. 837 (1947). *United States v. Jabr*, 2019 U.S. Dist. LEXIS 238718, *9-10, 2019 WL 13110682 (D.D.C., May 16, 2019).

"The court may not permit a jury to render a guilty verdict based on 'ambiguous evidence' from the government, which encourages the jury to 'engage in speculation.' *Bailey v. United States*, 416 F.2d 1110, 1116 (D.C. Cir. 1969); see also *United States v. Preston*, 331 F. Supp. 457, 459 (D.D.C. 1971) ("[S]uspicion is not enough to permit the case to go the jury."). At the Rule 29 stage, the Court does not analyze whether there is a "visceral or moral" doubt about guilt, but whether there is "a doubt upon the record," whereby "the lack of essential proof creates the doubt as a legal matter." *Hiet v. United States*, 365 F.2d 504, 506 (D.C. Cir. 1966).

**3**.  This Court must make a reasonable assessment and give the government the benefit of only "*legitimate inferences*." *United States v. Singleton*, 702 F.2d 1159, 1163 (D.C. Cir. 1983). In other words, this court should not speculate or rescue the government by reconstructing the indictment or bending statutes to lend credence to the government's narrative.

> Moreover, Rule 29 does not require the Court to view the evidence through dirty windowpanes and assume that evidence which otherwise can be explained as equally innocent must be evidence of guilt. *See Curley*, 160 F.2d at 233 (if "a reasonable mind must be in balance as between guilt and innocence, a verdict of guilt cannot be sustained"). Rather, in order to find a legitimate and nonspeculative inference of guilt the government must articulate a rational basis in the evidence upon which that inference can arise.

*United States v. Recognition Equip., Inc.*, 725 F. Supp. 587, 588 (D.D.C. 1989).

**4**.  Therefore, even after giving the government the benefit of the most favorable light, if a reasonable trier of fact would have a reasonable doubt as to the existence of any of the essential elements of the crime, the Court must acquit [or order acquittal]. *United States v. Durant*, 208 U.S. App. D.C. 374, 648 F.2d 747 (D.C. Cir. 1981); *see also United States v. Foster*, 251 U.S. App.

D.C. 272, 783 F.2d 1087, 1088 (D.C. Cir. 1986).

**5.**  The prosecution must state all elements of the crime with specificity and then prove beyond a reasonable doubt each element of every crime charged. Evidence is insufficient to sustain a conviction when it goes no further than to "raise a question [of guilt] in a reasonable man's mind" or "create suspicion." *Cooper v. United States*, 218 F.2d 39, 42 (D.C. Cir. 1954). Even when evidence raises a "grave suspicion" in the reasonable juror's mind as to guilt, it is insufficient to support a verdict, unless proof of guilt beyond "a reasonable doubt" is possible on the evidence. *Scott v. United States*, 232 F.2d 362, 364 (D.C. Cir. 1956). In other words, *"some* evidence of guilt" is not enough. *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015) *(emphasis added).* There can be no "maybes" as to guilt in criminal prosecutions.

## IX.    <u>GOVERNING LAW:  MOTION TO DISMISS INDICTMENT COUNT TEN</u>

The D.C. Circuit has ruled on the necessity of factual allegations. *United States v. Nance*, 533 F.2d 699, 701-703 (D.C. Cir. 1976) (reversing where the indictment failed to make necessary factual allegations).

In *Hunter v. District of Columbia* , 47 App. D.C. 406 (D.C. Cir. 1918), the Court said:

> [i]t is elementary that an information or indictment must set out the facts constituting the offense, with sufficient clearness to apprise the defendant of the charge he is expected to meet, and to inform the court of their sufficiency to sustain the conviction. ... In other words, when the accused is led to the bar of justice, the information or indictment must contain the elements of the offense with which he is charged, with sufficient clearness to fully advise him of the *exact* crime which he is alleged to have committed.

*Id.* at 409, 410 (emphasis added) (internal quotation marks and citation omitted).The *Hunter* Court also helpfully observed that the defendants in that case could have engaged in a number of acts that fell outside the scope of the statute, and thus, by failing to specify the defendants' particular

conduct, the indictment was "too vague, general, and uncertain to meet the requirements of the established rules of criminal pleading," which in turn rendered it "insufficient in law." *Id.* at 410.

Likewise, here, there are a great many possible scenarios which would seem to variously fall inside or outside the statute.

In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007). An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged. *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

Here, however, no facts were alleged in the Third Superseding Indictment.

A criminal complaint is also meant to satisfy at least two constitutional provisions. First, it gives Sixth Amendment notice of the nature and circumstances of the alleged crime so the accused may meet the charge and defend himself. *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001); *Hamling v. United States*, 418 U.S. 87, 117 (1974). Second, a valid indictment fulfills the Fifth Amendment's edicts that citizens are not placed in jeopardy twice for the same offense. *Stirone v. United States*, 361 U.S. 212, 218 (1960); *United States v. Martinez,* 764 F.Supp.2d 166, 170 (D.D.C.2011) (quotations and citations omitted).

A criminal complaint may be dismissed as constitutionally insufficient when it does not join the elements with factual allegations. See *Russell v. United States*, 369 U.S. 749, 763-771 (1962); *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. Jan. 5, 2017); (Jackson, D.J.).

The Supreme Court spoke to this requirement many years ago:

> "[The second object of an indictment is] to inform the court of
> the facts alleged, so that it may decide whether they are

> sufficient in law to support a conviction. For this, facts are to
> be stated, not conclusions of law alone."

*United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

The Supreme Court also noted:

> "It is an elementary principle of criminal pleading, that where
> the definition of an offence, whether it be at common law or
> by statute, `includes generic terms, it is not sufficient that the
> indictment shall charge the offence in the same generic terms
> as in the definition; but it must+

*Id.* Special notice should be paid to the descriptor "generic" as being inadequate. Allegations that are generic and not specific to a particular Defendant are not sufficient.

## X.    ARGUMENT

### A.  THE U.S. SUPREME COURT CONSTRUED 18 U.S.C. § 1512(c)(2) IN A DRAMATIC DEPARTURE AND DIFFERENT UNDERSTANDING OF THE STATUTE IN *United States v. Fischer.*

Patrick Montgomery has been convicted under a different version of 18 U.S.C. § 1512(c)(2). The U.S. Supreme Court would maintain that it was *always* the only correct interpretation, but that the adventurous re-imagining of the statute was incorrect. But to now sentence him under the corrected interpretation is still to prosecute a different crime than what the DOJ thought it was pursuing.

### B.  THE FACTUAL EVIDENCE IN THE RECORD DOES NOT SUPPORT CONVICTION UNDER CORRECTED INTERPRETATION

The evidence presented at trial, the factual allegations in the Statement of the Facts, and the Indictment do not support the revised interpretation of the statute. The record is closed.

Moreover, "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *United States v. Stone*, 2012 U.S. Dist. LEXIS 41434, *20 (citing *Stirone v. United States*, 361 U.S. 212, 215-16, 80 S. Ct. 270, 4 L. Ed.

2d 252 (1960)). "This is because defendants are entitled to have fair notice of the criminal

charges against them so that they can prepare a defense." Id. (citing United States v. Combs, 369

F.3d 925, 935 (6th Cir. 2004)).

The Second Circuit examined "whether, in violation of the Fifth Amendment, the

defendants were tried on charges upon which a grand jury had not passed. See *Stirone v. United*

*States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960)." *U.S. v. Wydermyer*, 51 F.3d

319 (2nd Cir. 1995)

Thus, the Government undertook the risk over many objections of rushing forward.

*Fischer* is actually a very unusual situation.  The 1512(c)(2) charges were dismissed by Judge

Nichols, and the Government appealed.  If the Government had not been the Appellant, we still

would not have the question before the Supreme Court.  But while that question was pending on

appeal, the USAO chose to forge ahead in a sprint rather than a marathon.

Therefore, if it seems like a hard case this is a gamble that the Government willingly

undertook.  The evidence is closed.

The Government presented its case under its interpretation of 1512(c)(2):


## COUNT TEN

On or about January 6, 2021, within the District of Columbia and
elsewhere, PATRICK MONTGOMERY, and BRADY KNOWLTON and
GARY WILSON, attempted to and did, corruptly obstruct, influence and[5]
impede an official proceeding, that is, a proceeding before Congress,
specifically Congress' certification of the Electoral College vote as set out in
the Twelfth Amendment of the Constitution of the United States and 3 U.S.C.
15-18.
        **(Obstruction of an Official Proceeding and Aiding and**

---

[5]     The statute provides "or" not and.  But the Grand Jury indicted on the grounds that all
three were required to be proven, not just one of the alternatives.  Thus, technically, the
Government would have to prove that Montgomery did all three, not just one.

**Abetting**, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2).

This is non-specific as to which interpretation of 1512(c)(2) it refers to, thus requiring application of the prohibition against Double Jeopardy.  However, the evidence presented at trial did not support or prove beyond a reasonable doubt the interpretation of 1512(c)(2) construed by the U.S. Supreme Court in *Fischer*.  The evidence presented at trial concerned physical disruption by a crowd of demonstrators and a few rioters.[6]

The Statement of Facts presented in support of the arrest warrant at ECF Dkt. #1-1 on January 13, 2021, does not support the charge under 18 U.S.C. § 1512(c)(2).  It indicates that Montgomery entered the Senate chamber and took some photographs but clearly when the Senate chamber was not in use.  The Statement does not specify times but the photographs included demonstrate that Congress had recessed and all Senators and their staff had left before Montgomery arrived.  Nevertheless, the Government's evidence and argument was of physical disruption by a demonstration.

No evidence was submitted into the record which matches in any way the U.S. Supreme Court's restatement of 18 U.S.C. § 1512(c)(2).  It is too late for that now.

Unfortunately, the Government has fiercely resisted disclosing when and why the Joint Session of Congress recessed.  The U.S. Capitol Police and the U.S. Congress are the two alleged victims of the crime.  The DOJ cannot prosecute for crimes against the U.S.C.P. and then disclaim possession of U.S.C.P. records for the purpose of *Brady v. Maryland*.

---

[6]    Montgomery disputes this including because the Capitol building is 750 feet long and frequently contains hundreds of visitors, tourists, school field trips, lobbyists, journalists, and interested citizens without disrupting the official business of the Congress.  And to some extent, interacting with citizens and reporters *is* **in part the business of Congress.**  However, without conceding, that is not the problem here.

Many Defendants have demanded as-it-happened documents and records as to <u>why</u> the decision was made. Secret Service agent and liaison to the Capitol Elizabeth Glavey has testified repeatedly. She testified in on July 11, 2023, in *United States v. David L'Esperance, et al.*, Case No. 1:21-cr-00575-JDB (Court Reporter: Bryan Wayne) as the first or second witness. Glavey also testified in *United States v. Richard Barnett*, Case No. 1:21-cr-00038 (CRC). Glavey testified in *L'Esperance* that the presence of the crowd out on the Capitol Grounds <u>*did not*</u> cause the relocation of the Vice President. She testified to hearing windows breaking, telling her chain of command guarding Mike Pence, but there was no reaction other than to inform her to double-check the evacuation route. Even when some demonstrators went off the tracks and broke windows, the Secret Service detail guarding Vice President Mike Pence did not consider that serious enough to relocate the Vice President.

### C. MAINTAINING THE INTEGRITY OF ELECTORAL COLLEGE DOCUMENTS IS TEXTUALLY COMMITTED TO THE ELECTORAL COUNT ACT

The Electoral Count Act provides a mechanism for ensuring the integrity and availability of the results of the Electoral College selection ("ascertainment") and their votes. Therefore, it appears that the Electoral Count Act supersedes any application of 18 U.S.C. § 1512(c)(2).

In statutory interpretation, a canon of construction is that the specific controls over the general. *see HCSC– Laundry v. United States*, 450 U.S. 1, 6, 101 S.Ct. 836, 67 L.Ed.2d 1 (1981)." *Downing v. Globe Direct LLC*, 682 F.3d 18 (1st Cir. 2012). Here, there is a statute 3 U.S.C. §§ 1 – 21 that specifically controls the handling of documents of Electoral College votes, whereas 18 U.S.C. § 1512(c)(2) is exceedingly vague and generic and offers no hint of any application to any situation remotely like the counting of Electoral College votes. Therefore, the ECA pre-empts and over-rides 1512(c)(2).

The Electoral Count Act at 3 U.S.C. 15(d) provides for the Congress to raise, hear, and resolve disputes about Electoral College votes.  3 U.S.C. 15(d)(1)  refers to papers "***purporting*** to be certificates of the votes of electors appointed…."

So, the ECA contemplates that certificates and votes of slates of Electors may be disputed.  It would appear that ***all*** documents "purporting" to represent the votes of Electors are to be presented to the President of the Senate, even competing slates of Electors claiming to be votes for different presidential candidates.  So, doing that correctly  ***IS***  the business of Congress.

Pursuant to the Electoral Count Act 3 U.S.C. § 5, the President of the Senate (which is the Vice President of the United States whenever he chooses to fulfill that role) has about three major duties.  One of those duties is to receive the Electoral College votes and related documents from around the country.

Therefore, presumably, in keeping with one of his three major duties the Vice President would be obligated to retain custody, possession, and control of those documents along with the tellers to whom he hands the votes for counting.

When the Joint Session of Congress recessed, it was the Vice President's duty to keep those records with him and guard their presence and integrity.  Surely the tellers of the Congress could not leave their posts without taking those documents with them and keeping them secure.[7] At least, that would be the terms of the statute textually committing that responsibility to the President of the Senate.

In other words, at all times, the documents were actually or constructively in the possession or safeguarding of the Vice President Mike Pence, by Constitutional mandate.

---

[7]     Some members of Congress left on their desks their own personal notes relating to what they themselves planned to say.  But Defendant by counsel rejects that these speaking notes constitute official documents in the sense that the U.S. Supreme Court addressed in *Fischer*.

Also at 3 U.S.C. § 5, in pertinent part:

* * *

(b)**TRANSMISSION.—**It shall be the duty of the executive of each State—

(1) to transmit to the Archivist of the United States, immediately after the issuance of a certificate of ascertainment[8] of appointment of electors and by the most expeditious method available, such certificate of ascertainment of appointment of electors; and

(2) to transmit to the electors of such State, on or before the day on which the electors are required to meet under section 7, six duplicate-originals of the same certificate.

And the Electoral Count Act at 3 U.S.C. § 11[9] also requires after the Electors in each

State meet and vote *(emphases added)*:

The electors shall immediately transmit at the same time and by the most expeditious method available the certificates of votes so made by them, together with the annexed certificates of ascertainment of appointment of electors, as follows:

**(1)** One set shall be sent ***to the President of the Senate*** at the seat of government.

**(2)** Two sets shall be sent to the chief election officer of the State, one of which shall be held ***subject to the order of the President of the Senate***, the other to be preserved by such official for one year and shall be a part of the public records of such office and shall be open to public inspection.

**(3)** Two sets shall be sent to the Archivist of the United States at the seat of government, one of which shall be held ***subject to the order of the President of the Senate*** and the other of which shall be preserved by the Archivist of the United States for one year and shall be a part of the public records of such office and shall be open to public inspection.

---

8 An excessively elaborate word for just "selecting" the Electors who are to serve.

9 The statute was revised – but that still did not change any of the pertinent issues here – in 2022, even after the demonstrations on January 6, 2021

    **(4)**        One set shall be sent to the judge of the district in which the electors shall have assembled.

Therefore, six (6) original sets are prepared and entrusted to various officials.  Three (3) original sets are either lodged with or subject to the instant retrieval of the President of the Senate, with no process or procedure required.

Therefore, it is not possible to impair the availability of the Electoral College ballots and certification documents and any other records sent from the States to the Federal Government. There are three (3) originals available to the President of the Senate's unfettered command. In any event the process under the ECA specifically applicable governs in place of the vague and extremely generic 1512(c)(2).

And where are those three (3) original sets?  The documents and evidence at issue in the counting of the votes on January 6, 2021, were in the custody of the Archivist of the United States, at the Federal Records Center, headquartered at 4205 Suitland Road, Suitland, Maryland 20746, not on Capitol Hill, [10] as well as official originals also filed with each State's chief election official, the judge where the Electors assembled, and the President of the Senate.

No January 6 Defendant could impair the availability of these documents on Capitol Hill, in Washington, D.C., when a duplicate original resided in Suitland, Maryland, and another duplicate original with the chief election official of each State, subject to the unquestioned and unconditional retrieval by the President of the Senate.

While in theory the 1512(c)(2) statute improbably includes the vague term "impedes," nothing in the record of the evidence included any incident in which the original set lodged in the U.S. Senate was impaired, lost, or damaged and the President of the Senate sent word to the

---

[10]    https://www.archives.gov/frc/locations

Archivist and/or chief election officials of the States to forward an additional original set. Nothing in the evidence established any delay (impeding) while duplicate originals were transported to Capitol Hill.

### D. OBJECTS AND THINGS ARE NOT INVITATION TO CREATIVITY

References to "objects" or "other things" clearly and explicitly refer to <u>evidence</u>. Where evidence consists of a thing rather than a document, it comes under the same rules as "records" or "documents." For example, a murder weapon would be an object which is evidence in a prosecution for murder. There is no other permissible role, however, for objects or other things to be implicated in some other overly-imaginative role. Oddly, in a related statute fish thrown overboard from a fishing boat were ruled not to qualify even though those objects would have proven that many fish caught and taken on board were under the legal size. This *Yates* decision, *infra*, is a bit surprising since like bullets retrieved from the scene of a shooting under-sized fish are evidence, the Court of Appeals in *Yates* ruled that fish are not objects that can store or record data like a paper record would.

There is no invitation on the table for creative brainstorming to invent yet another strained interpretation of 18 U.S.C. § 1512(c)(2). 18 U.S.C. § 1512(c) was enacted as part of the Sarbanes-Oxley Act of 2002, which is titled "Corporate Fraud Accountability," and which targets "corporate malfeasance." Pub.L. No. 107-204, 116 Stat. 745. Sarbanes-Oxley was designed to "protect investors and restore trust in financial markets following the collapse of the Enron Corporation" after revelations that Enron's outside auditor had "systematically destroyed potentially incriminating documents." *Yates v. U.S.* 574 U.S. 528, 532 (2015).

In *Yates*, the Supreme Court narrowly interpreted the term "tangible object" in Section

1519 in keeping with the specific context and purpose of Sarbanes-Oxley.[11] In the Sarbanes-Oxley legislation, "Congress trained its attention on corporate and accounting deception and cover-ups." *Id.* at 532. The Supreme Court held that the Act did not contemplate penalizing the act of tossing undersized fish overboard to avoid the consequences of an inspection by federal authorities. Rather, in the context of the statute's purpose, a "tangible object' must be one used to record or preserve information." *Id*. So while fish are tangible objects in the ordinary sense of that phrase, they do not qualify as tangible objects for the purposes of Section 1519.

### E. THERE ARE MANY OTHER, ADDITIONAL LEGAL DEFECTS IN 18 U.S.C. § 1512(c)(2) THAT WERE NOT WITHIN THE SCOPE OF *United States v. Fischer* WHICH FURTHER INVALIDATE IT

There are reasons other than *Fischer* as to why Count 10 should be dismissed.

Some very important legal questions were overlooked even though they had been raised in those cases in the District Court. The trial Judge Carl Nichols dismissed the §1512(c)(2) charges for the same reasons (even relying in one case on Nichols' opinion in another).

### F. GOVERNING LAW: VAGUENESS RENDERS STATUTE UNCONSTITUTIONAL UNDER DUE PROCESS

A law is unconstitutionally vague when "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). As stated in *Johnson*

> [O]ur holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp. For instance, we have deemed a law prohibiting grocers from charging an "unjust or unreasonable rate" void for vagueness — even though

---

[11] 18 U.S.C. §1519 provides: "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States."

charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable. *L. Cohen Grocery Co.,* 255 U.S. at 89, 41 S.Ct 298. We have similarly deemed void for vagueness a law prohibiting people on sidewalks from "conduct[ing] themselves in a manner annoying to persons passing by"—even though spitting in someone's face would surely be annoying. *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed. 2d 214 (1971). These decisions refute any suggestion that the existence of *some* obviously risky crimes establishes the residual clause's constitutionality.

This Supreme Court has taught how a vague criminal statute is unconstitutional:

> *The Johnson Court held the residual clause unconstitutional under the void-for-vagueness doctrine,* a doctrine that is mandated by the Due Process Clauses of the Fifth Amendment (with respect to the Federal Government) and the Fourteenth Amendment (with respect to the States). *The void-for-vagueness doctrine prohibits the government from imposing sanctions "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."* Id., at ——, 135 S.Ct., at 2556. *Johnson* determined that the residual clause could not be reconciled with that prohibition.
>
> * * *
>
> * * *  In the Johnson Court's view, the "indeterminacy of the wide-ranging inquiry" made the residual clause more unpredictable and arbitrary in its application than the Constitution allows. Id., at —— –, 135 S.Ct., at 2557.
>
> *"Invoking so shapeless a provision to condemn someone to prison for 15 years to life," the Court held, "does not comport with the Constitution's guarantee of due process." Id., at ——, 135 S.Ct., at 2560.*

*Welch v. United States*, 136 S. Ct. 1257, 1261-1262, 194 L.Ed.2d 387 (2016) *(emphases added)*

> Resisting the force of these decisions, the dissent insists that "a statute is void for vagueness only if it is vague in all its applications." *Post*, at 2574.

*Johnson v. United States*, 135 S. Ct. 2551, 2561, 192 L. Ed. 2d 569 (2015) *(emphases added)*.

A statute purporting to criminalize conduct can be unconstitutional if it leaves a public

official with unbridled, standardless discretion to effectively make up their own law within the vagueness of the statute. The statute must not invite enforcement officials to legislate from the grand jury room.

### G. INFLUENCE IS VOID FOR VAGUENESS OR A VIOLATION OF THE FIRST AMENDMENT

18 U.S.C § 1512(c)(2) violates the First Amendment to the U.S. Constitution in that the statute imposes up to 20 years in prison for "influencing" or attempting to "**_influence_**" an official proceeding despite the command of the First Amendment that the right to Petition the Government for the Redress of Grievances shall not be denied.

> If the line drawn by the decree between the permitted and prohibited activities of the NAACP, its members and lawyers is an ambiguous one, we will not presume that the statute curtails constitutionally protected activity as little as possible. For standards of permissible statutory vagueness are strict in the area of free expression. See *Smith* v. *California*, 361 U.S. 147, 151; *Winters* v. *New York*, 333 U.S. 507, 509-510, 517-518; *Herndon* v. *Lowry*, 301 U.S. 242; *Stromberg* v. *California*, 283 U.S. 359; *United States* v. *C.I.O.*, 335 U.S. 106, 142 (Rutledge, J., concurring). *N.A.A.C.P.* at 432.

*N.A.A.C.P. v. Button*, 371 U.S. 415, 83 S. Ct. 328 (1963).

> An overbroad statute 'sweeps within its scope a wide range of both protected and non-protected expressive activity.'" *Hobbs v. Thompson,* 448 F.2d 456, 460 (5th Cir. 1971).

*Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 435 (Tex. 1998)

As stated in *Hobbs* at 460 *(emphases added):*

> The overbreadth doctrine, therefore, **_focuses directly on the need for precision in legislative draftmanship_** to avoid conflict with First Amendment rights. Even though the interests a statute promotes may justify some infringement upon First Amendment rights, **_the overbreadth doctrine condemns those means to that legitimate end which comprehend too broad an incursion_** upon the realm of First Amendment activity. Where a law is substantially overbroad, in that it sweeps within its scope a wide range of both protected and non-protected expressive

activity, and where no "readily apparent construction suggests itself as a
vehicle for rehabilitating the statute in a single [proceeding],"

As further stated in *Hobbs* at 460-461

> Lack of fair warning to actors or lack of adequate standards to guide
> enforcers also may lead to a "chill" on privileged activity. A person
> contemplating action who might be covered by a vague statute is left in
> doubt as to whether he is covered by the statute and, if so, whether his
> claim of privilege will be upheld. See, e.g., NAACP v. Button, 1963,371
> U.S. 415, 432, 83 S.Ct 328, 9 L.Ed. 2d 405. See also Coates v.
> Cincinnati, 1971, 402 U.S. 611, 91 S. Ct. 1686, 29 L.Ed. 2d 214.

Therefore, subsection (c)(2) is unconstitutionally void for vagueness and overbreadth in

impinging upon the fundamental rights of the First Amendment.

The First Amendment is violated by 18 U.S.C. § 1512(c)(2), because U.S. citizens have

the constitutional right to "influence" official proceedings.

To the extent one can imagine a scenario under which "influence" might mean something

other than pure Free Speech or Petitioning the Government for Redress of Grievances, this

creates unacceptable, unconstitutional ambiguity in a criminal statute. *The statute does not say*

*that.*  1512(c)(2) might or might not mean First Amendment activity.  It is void for vagueness.

18 U.S.C. §  1512(c) provides:

> Whoever corruptly
>
> (1)    Alters, destroys, mutilates, or conceals a record,
> document, or other object, or attempts to do so, with the intent to impair
> the object's integrity or availability for use in an official proceeding; or
>
> (2)    Otherwise obstructs, influences, or impedes any official
> proceeding, or attempts to do so
>
> …shall be fine….or imprisoned…

Therefore, the statute applies to either "obstructing" or "influencing" or "impeding" any

official proceeding.  In this case, the Indictment says "and" meaning that Patrick Montgomery

would have to "obstruct" AND "influence" AND impede to commit the indicted crime.

However, "influencing" an official proceeding is a guaranteed right under the First Amendment, including as Free Speech and/or as Petitioning the Government for Redress of Grievances. If "influence" means what it appears, the statute is unconstitutional as a constitutional violation of the First Amendment.

But we must consider how juries operate. Presented with Count 10, the jury could have – we will never know – rejected the idea that Montgomery "obstructed" the Joint Session of Congress, but might have compromised in deliberation on "influence."

A jury could say "Well, I don't know what it means to obstruct or impede simply by being in a crowd, but we all agree that Montgomery 'influenced' – right? So influence it is."

The possibility that a jury could – unknown to anyone ever – compromise on "influence" means that the entire statute violates the First Amendment. The fact that "influence" in context is the easiest compromise for a jury to reach in deliberation sharpens and worsens this danger.

### H. CONGRESS INTENTIONALLY CHOSE "CORRUPTLY" DISTINCT FROM "UNLAWFULLY." THEY CANNOT MEAN THE SAME THING

Congress has <u>*foreclosed*</u> an interpretation of "corruptly" which is nothing more than "unlawfully" or "illegally."

A search of the United States Code through research tool Fastcase, revealed that Congress conditioned crimes

> A) on the word "**corruptly**" -- **26 times**[12]
> B) on the word "**unlawfully**" -- **203 times**
> C) on the word "**willfully**" -- **729 times**
> D) on the word "**knowingly**" -- **1,177 times**

---

[12]    The Circuit Opinion references on page 19 that there are around 50 other references to "corruptly" in Title 18 of the U.S. Code but *Amici's* search turned up only 26 of these.

When Congress wants to say "unlawfully," it knows how to say it.  When Congress uses the word "corruptly" sparingly, it must mean something different from "unlawfully."

> "This Court's duty to give effect, where possible, to every word of a statute, *United States v. Menasche*, 348 U.S. 528, 538-539, makes the Court reluctant to treat statutory terms as surplusage. This is especially so when the term occupies so pivotal a place in the statutory scheme..."

*Duncan v Walker*, 533 U.S. 158, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001) *(emphasis added)*.

Treating the term "corruptly" as nothing more than "unlawfully" would erase and read the term out of the statute.

> "It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another," *Chicago v. Environmental Defense Fund,* [13] *ante*, at 338   (internal quotation marks omitted), and that presumption is even stronger when the omission entails the replacement of standard legal terminology with a neologism.

*BFP v. Resolution Trust Corp*., 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).


### *"Corruptly" cannot simply be another way of saying "unlawfully."*


The Judiciary  is constrained by Congress' intent to treat "corruptly" as something *different*.  Congress did not accidentally or inadvertently say "corruptly."

### A.  CORRUPTLY IS VOID FOR VAGUENESS.

Three times, Justice Neil Gorsuch announced in open court in official session of three different cases in the U.S. Supreme Court that the word "corruptly" is not well defined, including

---

[13]      *I.e.,* 511 U.S. 328 (1994).

in the oral argument on *Fischer* itself.[14]  **The day before, in *Snyder v. United States*, Justices challenged the Government's ill-defined and vague assertions of "corruptly."** [15]

> JUSTICE GORSUCH: -- but I am going to interrupt there because I think the questions and the ones I'm interested in have to do with *mens rea* on "corruptly." And I think that's what Justice Kavanaugh is getting at. SO put aside the *actus reus* for a moment. You say "corruptly" carries with it some *mens rea.*
>
> MS. SINZDAK: Absolutely.
>
> JUSTICE GORSUCH: What is it?
>
> MS. SINZDAK: Consciousness of wrongdoing.
>
> JUSTICE GORSUCH: So you think the defendant has to know that what he is doing is unlawful?
>
> MS. SINZDAK: Or wrongful. He -- he doesn't have –
>
> JUSTICE GORSUCH: Unlawful or –
>
> MS. SINZDAK: -- to know about the specific -- well, he does not -- JUSTICE GORSUCH: -- wrongful?
>
> MS. SINZDAK: Or wrongful, inherently wrongful. That's correct.
>
> JUSTICE GORSUCH: Where does that -- where does that come from?
>
> MS. SINZDAK: That comes from Arthur Andersen. So –
>
> JUSTICE GORSUCH: Well, the consciousness of wrongdoing usually means that I know. I mean, wrongdoing is defined by law usually, right? But you're saying -- you're saying no, it doesn't -- he doesn't have to know that it's unlawful. He has to know that it is unlawful or -- fill in the blank.
>
> MS. SINZDAK: Wrongful. And I think sometimes actually -- so unlawful is usually, you're right, going to get you there. And, here, I think we have someone who did everything he could to hide that he was getting this money and said that it was a consulting fee. So you have a lot of evidence of consciousness –

---

[14]    Oral Argument, United States v. Joseph Fischer, et al., U.S. Supreme Court, at time stamp 37:45 to 56:30, particularly 39:10 to 53:20, accessible at no cost at C-SPAN at https://www.c-span.org/video/?534910-1/fischer-v-united-states-oral-argument

[15]    Transcript, Oral Argument, U.S. Supreme Court, *Snyder v. United States* Docket Number: 23-108, April 15, 2024, 49:15 to 53:25 and 62:2 to 64:18 , accessible at: https://www.supremecourt.gov/oral_arguments/argument_transcripts/2023/23-108_4hd5.pdf

JUSTICE GORSUCH: How do you know if it's wrongful if it's -- if it's perfectly legal?

MS. SINZDAK: Well, so it is -- it was not perfectly –

JUSTICE GORSUCH: I mean, is it a sin? Are we now talking about something that, you know -- you know, something that would be a -- a venal sin, or does it have to be a mortal one?

MS. SINZDAK: I want to ground us in the facts of this case. So I think it's important here to establish that the Indiana code actually bars giving a gratuity to a public official. The Indiana –

JUSTICE GORSUCH: I'm not asking about Indiana.

MS. SINZDAK: -- Portage -- okay. I hear that.

JUSTICE GORSUCH: I'm asking about what the government's position is on "corruptly" and *mens rea,* and you say it has to be unlawful or wrongful. And wrongful in what sense?

MS. SINZDAK: So, again, I think what we're talking about here is wrongful in the sense that Arthur Andersen said evil, corrupt, immoral. And sometimes that's when –

JUSTICE GORSUCH: Immoral?

MS. SINZDAK: That is what this Court said in Arthur Andersen.

JUSTICE GORSUCH: So a gift of pornography, as -- as -- as your counsel -- friend on the other side pointed out in her opening, is -- is -- would that count in the government's view?

MS. SINZDAK: It needs to be wrongful in the way -- in the way that the statute is targeting. So, here, again, what the statute is targeting, the obviously wrongful conduct that the statute is targeting is taking public acts for private gain. So where, again -- and I'm just going to give you the three circumstances.

JUSTICE KAVANAUGH: That -- that defeats your whole theory -- I'm sorry -- because, if the public act was done, completed, I've done -- we're done with the new zoning reg, we're done with the new school board decision, and then the gratuity, the gift, the thank you arrives, you're still going to prosecute those cases as corrupt under your theory of what "corruptly" means, correct?

MS. SINZDAK: Where one of three circumstances is met.

JUSTICE KAVANAUGH: So that means where you haven't taken the public action for private gain.

MS. SINZDAK: No. I think that's where the -- the -- the problem is coming in. So, here, for example, imagine that the official just knows that the Buha brothers, they pay big rewards to people who give them contracts. So what he decides to do is award the contract to the Buha

brothers. Afterwards, he's going to ask for the payment. That is corrupt. He took

JUSTICE KAVANAUGH: The facts of this case are great in that sense for you to respond to the question, but there are 19 million employees who are going to –

MS. SINZDAK: And what I'm saying –

JUSTICE KAVANAUGH: -- wonder about the thank yous.

* * *

JUSTICE GORSUCH: And how does -- counsel, how -- how does anyone in the real world know the line? Put aside billionaires and hospitals. Deal with small gifts with teachers, doctors, police officers, all the time. And one could make an argument if it -- if -- if consciousness of wrongdoing doesn't mean consciousness of illegality, awareness of illegality, if it means something more abstract than that, how does this statute give fair notice to anyone in the world as to -- and I hate to do it, but I'm going to -- the difference between the Cheese Factory and –

JUSTICE ALITO: Cheesecake. (Laughter.)

JUSTICE GORSUCH: -- and -- and -- and

JUSTICE BARRETT: Inn at Little Washington.

JUSTICE GORSUCH: -- and the Inn at Little Washington. Thank you, thank you. How does anyone know?

MS. SINZDAK: Well, again, Justice Gorsuch, I do not mean to suggest that if you are aware that you are violating the law, that's not going to establish consciousness of wrongdoing.

JUSTICE GORSUCH: No. No, no. Counsel, put that aside. We all –

MS. SINZDAK: Okay.

JUSTICE GORSUCH: You've -- you've rejected that as the definition of consciousness of wrongdoing. You say it includes consciousness of either illegality, which I would have thought might mean wrongdoing, but I'm wrong. It can mean something more than that. It can mean a venial sin, it can mean a mortal sin. How does -- how does somebody who accepts The Cheesecake Factory know a trip to The Cheesecake Factory for nice treatment at the hospital, for treating my child well in school, for an arrest made, how does that person know whether that falls on what you call the wrongfulness side of the equation or not?

MS. SINZDAK: Well, certainly, they can look at ethical guideline -- guidance and -- guidelines as they were for the City of Portage.

JUSTICE GORSUCH: How about looking at state law? Counsel, how about, like, looking at state law as –

37

MS. SINZDAK: They could -- they could do that as well.

JUSTICE GORSUCH: Yeah. And let's say it's all legal under state law. And you would -- and –

MS. SINZDAK: If it's all legal under state law, the government is not going to be able to prove consciousness of wrongdoing.

JUSTICE GORSUCH: Why -- why not?

MS. SINZDAK: I think -- I think that where we've come -- JUSTICE KAVANAUGH: Why?

JUSTICE GORSUCH: Why not? We're going to have –

MS. SINZDAK: Because I think –

JUSTICE GORSUCH: Counsel, please. *[Interrupting for a question]*

A few days later, Justice Gorsuch travelled rather far from the topic of that subsequent case to announce from the dais in open court, in official session, **"<u>nobody knows what corruptly means</u>"** explicitly using application 1512 and *Fischer* concerning a President for hypotheticals in *United States v. Trump*. [16]

JUSTICE GORSUCH: Well, he -- he could have given speeches against it. He did.

MR. DREEBEN: Yes.

JUSTICE GORSUCH: But he left -- he -- he -- he did something more, and it -- and it corruptly impeded and sought to influence an official proceeding.

MR. DREEBEN: Well, so I -- I don't know -- we're -- we're starting with the layers, I think, of protection. And we're now down through whether the statute would be construed to apply to him. Then there would be a question of whether –

JUSTICE GORSUCH: Assume it does.

MR. DREEBEN: I will assume it. Then -- then there's the question of whether he has the state of mind necessary –

JUSTICE GORSUCH: Assume he does.

MR. DREEBEN: -- to violate it.

---

[16]     Transcript, Oral Argument, U.S. Supreme Court, ***Donald Trump v. United States*** Docket Number: 23-939, April 25, 2024, 88:23 to 90:16, *(emphases added),* accessible at: https://www.supremecourt.gov/oral_arguments/argument_transcripts/2023/23-939_f2qg.pdf

JUSTICE GORSUCH: Corrupt –

MR. DREEBEN: Okay.

JUSTICE GORSUCH: ***Nobody knows what corrupt intent means[]***
***[17]  We've been around that tree*** –

MR. DREEBEN: I think we will probably

JUSTICE GORSUCH: -- twice already.

MR. DREEBEN: -- find out.

JUSTICE GORSUCH: And maybe it means that he knows that he
was doing wrong, is what

MR. DREEBEN: Perhaps.

JUSTICE GORSUCH: -- the government told us.

MR. DREEBEN: Right.

JUSTICE GORSUCH: He knows he's doing wrong. He knows he
shouldn't be out there blocking congressmen from going to vote.

MR. DREEBEN: Well, let me get to the next layer then, which is that
the president does have access to the attorney general to provide legal
advice and regularly gets legal advice from the attorney general on the
lawful scope of the president's activities.

When a Supreme Court *Justice* declares[18] that **"nobody knows what corruptly means"**

– officially and in open court in session – it is clear that the statute is unconstitutionally void for

vagueness and/or over-breadth. (And he is clearly talking to his colleagues, attempting to win

them over.  He is saying he wants to hold that "corruptly" is unconstitutionally void for

vagueness if other Justices will simply join him.)

If a U.S. Supreme Court Justice concludes that there is a super-abundance of different

definitions of the key word "corruptly" such that "nobody knows what corruptly means," then

---

[17]    The transcript erroneously contains a question mark, at 89:19 to 21, ***when Justice
Gorsuch in the oral argument recording is clearly not asking a question***.  Justice Gorsuch is
clearly making a statement without any question in it.  See
https://www.supremecourt.gov/oral_arguments/audio/2023/23-939 or https://www.c-
span.org/video/?534673-1/trump-v-united-states-oral-argument-presidents-immunity-claim

[18]    Again, the audio shows this to be a declaration, not a question.

the statute is clearly void for vagueness.

Justice Amy Coney Barrett mentioned in the dissent she authored that:

> To begin with, the Court ignores that (c)(2) requires proof that a defendant acted "corruptly." The meaning of this term is unsettled, but all of its possible definitions limit the scope of liability. [19]

**When another Supreme Court Justice says that "The meaning of this term is unsettled,"** this is just a nicer way of agreeing with Justice Gorsuch that **"nobody knows what corruptly means."**

18 U.S.C. § 1515 contains definitions for other aspects of 18 U.S.C. § 1512 under "(a)" but it defines "corruptly" only for the purposes of 18 U.S.C. § 1505, not § 1512(c). Worse, this makes a definition even more confusing, because it is yet another inconsistent approach:

> (b) As used in section 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

The Government argues in *United States v. Caldwell (later named Rhodes)*, 1:21-cr-00028, Dkt. # 437 at 21:

> "For purposes of Section 1512(c)(2), "corruptly" includes two components:
> (1) intent to obstruct, impede, or influence;
>                        and
> (2) wrongfulness."

**So, wrongfulness is wrongful because it is wrongful?**

**What kind of definition is that? Or does "corrupt" merely = "unlawful?"**

---

[19]     *United States v. Joseph Fischer, et al.*, Record No. 23-5572, U.S. Supreme Court, Slip Op. No 14, Dissent by Justice Amy Barrett, with Justice Elena Kagan and Justice Sonia Sotomayor, Section C.  https://www.supremecourt.gov/opinions/23pdf/23-5572_l6hn.pdf

That is, the "intent to obstruct, impede, or influence" is a given, a constant. The undefined variable is "corruptly" which now means only "wrongful."

This is apparently in contrast to all the other illegal activities which are *not* wrongful.

So, we are back again to "corruptly" simply means "illegal" (unlawful).

But how does this limit anything? All violations of a statute, regulation, law, or rule whether criminal or quasi-criminal, regulatory, or even torts are – by definition – "wrongful."

This definition separates certain activity from all those other crimes which are perfectly proper, rightful, honorable, and good. Are there crimes that are not wrongful?

So this definition is no definition at all. It is an illusion. It is a puff of smoke:

> According to a standard dictionary, "corruptly" is the adverbial form of the adjective "corrupt," which means "**depraved, evil: perverted into a state of moral weakness or wickedness ... of debased political morality:** characterized by bribery, the selling of political favors, or other improper political or legal transactions or arrangements." Webster's Third New International Dictionary 512 (1976).

*United States v. North*, 910 F.2d 843, 881 (D.C. Cir. 1990) (per curiam), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990) (per curiam) *(emphasis added)*.

Bribery dominates the common understanding. Yet corrupt also means immoral or sexual abuse or seduction of minors. E.g., Phil Ray, "**Man Enters Guilty Plea to Corrupting a Minor**," Altoona Mirror, June 21, 2021, https://www.altoonamirror.com/news/local-news/2021/06/man-enters-guilty-plea-to-corrupting-a-minor/ The statute charged involved seducing an underage child. Apart from sexual perversion, an adult who trains a youth in a life of crime would also be "corrupting" that child.

Dictionary definitions are contradictory, yet often emphasize bribery.  Yet corrupt also means immoral, not illegal.   The Cambridge Dictionary.[20]   **"[T]o make someone or something become dishonest or immoral:   'The study claimed that violence on television corrupts the minds of children.'"**   *Id. (emphasis added)*.

Or  "When information on a computer becomes corrupt, it cannot be used because it has changed and become wrong:  **'corrupt data' or 'a corrupt file.'"**   *Id. (emphasis added)*.

Again, the issue is a super-abundance of possible interpretations.  Merriam-Webster's dictionary includes as a definition of "corrupt" as a verb [21] -- **"to alter from the original or correct form or version"** or as an adjective **"morally degenerate and perverted : Depraved."** [22]  Or **"to become tainted or rotten" or "to become morally debased."**

Synonyms for "corrupt" as an adjective listed by Merriam Webster include:[23]

- debased
- debauched
- decadent
- degenerate
- degraded
- demoralized
- depraved
- dissipated
- dissolute
- perverse
- perverted
- reprobate
- sick

---

[20]     See Cambridge Dictionary, Appendix, page 48.
https://dictionary.cambridge.org/dictionary/english/corrupt
[21]     https://www.merriam-webster.com/dictionary/corruptly#dictionary-entry-1
[22]     https://www.merriam-webster.com/dictionary/corruptly#dictionary-entry-2
[23]     https://www.merriam-webster.com/dictionary/corruptly#synonyms

- unclean
- unwholesome
- warped

The ordinary meaning is not a synonym for "unlawfully."

The Cambridge Dictionary[24] defines "corruptly" as --

> **in a way that dishonestly uses your position or power to get an advantage, especially for money**

However, note that the problem is the super-abundance of definitions.  The definition above is simply yet another, different, inconsistent choice.

## XI.    <u>CONCLUSION</u>

The Court should vacate or dismiss the conviction under Count Ten rather than waiting for the U.S. Court of Appeals to do it.  18 U.S.C. 1512(c)(2) is unconstitutionally void for vagueness and in violation of the First Amendment in criminalizing "influence" of an official proceeding.  There is no set of facts under which a prosecution can stand.

September 22, 2024                        **RESPECTFULLY SUBMITED,**
                                          Roger Roots, Esq.


                                          _____/s/ Roger Roots_____

                                          JOHN PIERCE LAW
                                          21550 Oxnard Street 3rd Floor, PMB #172
                                          Woodland Hills, California 91367
                                          rroots@johnpiercelaw.com
                                          jpierce@johnpiercelaw.com
                                          (775) 764-9347
                                          (213) 400-0725
                                          *Counsel for Defendant*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date my law firm is filing the foregoing with the Court by its ECF record-keeping and filing system, which automatically provides a copy to:

---

[24]    https://dictionary.cambridge.org/us/dictionary/english/corruptly

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

CAROLINA NEVIN, Esq.
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 803-1612
carolina.nevin@usdoj.gov

KELLY ELIZABETH MORAN, Esq.
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
202-740-4690
kelly.moran@usdoj.gov

**James Pearce**
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION APPELLATE SECTION
Department of Justice, Criminal Division
950 Pennsylvania Ave NW, Suite 1250
Washington, DC 20530
(202) 532-4991
(202) 305-2121 (fax)
james.pearce@usdoj.gov

**Karen E. Rochlin**
DOJ-USAO
99 Northeast 4th Street
Miami, FL 33132
(305) 961-9234
karen.rochlin@usdoj.gov

_/s/ Roger Roots_
Roger Roots